**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC, and MOLLY TEA HOLDING INC. <br><br>             Plaintiffs, <br><br>             -and- <br><br> MOLLYTEA SHOPS LLC, derivatively on behalf of MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC., <br><br>             Plaintiff, <br><br>             -against- <br><br> MHL NY LLC, MOLLY TEA CU LLC, GENESIS BRAND MANAGEMENT LLC, MEI HUI LIN, XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN XU, <br><br>             Defendants, <br><br>             -and- <br><br> MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC., <br><br>             Nominal Defendants. | 1:26-cv-04051 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**BERGSTEIN FLYNN KNOWLTON & POLLINA PLLC**
780 Third Avenue
Suite 902
New York, New York 10017
(212) 803-9025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................IV

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

    A.    The "Molly Tea" Brand and Plaintiffs' Trademark Rights ......................................... 3

    B.    Defendants' Repudiation of the Joint Venture and Unauthorized Seizure of the
        "Molly Tea" Brand .................................................................................................. 4

    C.    The Unauthorized Opening and Operation of the Columbia Store.............................. 6

    D.    The Columbia Store's Off-System Point-of-Sale and Unauthorized Supply Chain..... 8

    E.    The Unauthorized Long Island City Concession ........................................................ 8

    F.    Termination and Defendants' Continued Infringement Across All Locations ........... 10

    G.    Irreparable Harm to Plaintiffs and the Molly Tea Marks .......................................... 10

LEGAL ARGUMENT........................................................................................................ 11

    I.    Legal Standard ......................................................................................................... 11

    II.    Plaintiffs Have a Substantial Likelihood of Success on the Merits ........................... 12

    III.    Plaintiffs Face a Substantial Threat of Irreparable Harm ......................................... 19

    IV.    The Balance of Hardships Tips Strongly in Plaintiffs' Favor.................................... 22

    V.    No Public Interest Would be Disserved by an Injunction.......................................... 24

    VI.    Notice to Defendants................................................................................................ 25

    VII.    A Temporary Restraining Order and Preliminary Injunction are Appropriate ........... 25

CONCLUSION.................................................................................................................. 27

WORD COUNT CERTIFICATION ................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
119 F.4th 234 (2d Cir. 2024) ................................................................................... 13

*AFAB Indus. Servs., Inc. v. Little Chelsea, Inc.*,
No. 23-CV-03095 (MMG), 2026 WL 575305 (S.D.N.Y. Mar. 2, 2026) .......................... 12, 13

*Almontaser v. N.Y.C. Dep't of Educ.*,
519 F.3d 505 (2d Cir. 2008)..................................................................................... 20

*Andino v. Fischer*,
555 F. Supp.2d 418 (S.D.N.Y. 2008)......................................................................... 20

*Basank v. Decker*,
449 F. Supp.3d 205 (S.D.N.Y. 2020)......................................................................... 20

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015)..................................................................................... 12

*Choice Hotels Int'l, Inc. v. Kolath Hotels & Casinos, Inc.*,
No. 113-cv-192-GLS-CFH, 2016 WL 225690 (N.D.N.Y. Jan. 19, 2016) ...................... 21

*Church of Scientology Intern. v. Elmira Mission*,
794 F.2d 38 (2d Cir. 1986)................................................................................... 21, 22

*Courtenay Commc'ns Corp. v. Hall*,
334 F.3d 210 (2d Cir. 2003)..................................................................................... 13

*Doctor's Associates, Inc. v. Distajo*,
107 F.3d 126 (2d Cir. 1997)..................................................................................... 26

*Dunkin' Donuts Inc. v. N. Queens Bakery, Inc.*,
216 F. Supp.2d 31 (E.D.N.Y. 2001) ...................................................................... 20, 21

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)..................................................................................... 17

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*,
897 F.3d 413 (2d Cir. 2018)................................................................................... 12, 13

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)..................................................................................... 19

*Fla. State Univ. v. Individuals Identified on Schedule A*,
No. 21 CIV. 10631 (VM), 2022 WL 9481947 (S.D.N.Y. Oct. 14, 2022) ...................... 24

*Folkes Home Servs. Heating, Cooling, Plumbing & Elec., LLC v. Folkes Bros. Home Servs. LLC*,
No. 24 CV 9844 (NSR), 2026 WL 311515 (S.D.N.Y. Feb. 5, 2026) ........................... 12, 13, 20

*G.F.F. v. Trump*,
781 F. Supp.3d 195 (S.D.N.Y. 2025) ....................................................................................... 26

*Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*,
991 F.2d 1072 (2d Cir. 1993) .................................................................................................. 13

*Heisman Trophy Tr. v. Smack Apparel Co.*,
595 F. Supp.2d 320 (S.D.N.Y. 2009) ....................................................................................... 26

*Interlink Int'l Fin. Servs., Inc. v. Block*,
145 F. Supp.2d 312 (S.D.N.Y. 2001) ....................................................................................... 26

*I.T. by & through Next Friend B.V.T.R. v. Kennedy*,
No. 26-CV-02563 (JAV), 2026 WL 882917 (S.D.N.Y. Mar. 31, 2026) ................................... 19

*Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*,
No. CV18814SJFSIL, 2018 WL 2012875 (E.D.N.Y. Apr. 30, 2018) ....................................... 22

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp.2d 305 (S.D.N.Y. 2010) ....................................................................................... 24

*Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*,
937 F.2d 77 (2d Cir. 1991) ....................................................................................................... 22

*Polaroid Corp. v. Polarad Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961) ......................................................................................... 13, 14, 16

*Power Test Petroleum Distributors v. Calcu Gas*,
754 F.2d 91 (2d Cir. 1985) ....................................................................................................... 20

*Rivera v. Town of Huntington Hous. Auth.*,
No. 12-cv-901-DRH-ARL, 2012 WL 1933767 (E.D.N.Y. May 29, 2012) ............................... 26

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010) ....................................................................................................... 12

S*ingas Famous Pizza Brands Corp. v. New York Advert. LLC*,
No. 10 CIV. 8976 RJH, 2011 WL 497978 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 468 F. App'x 43
(2d Cir. 2012) .................................................................................................... 17, 20, 21

*SK & F, Co. v. Premo Pharm. Labs., Inc.*,
625 F.2d 1055 (3d Cir.1980) .................................................................................................... 24

*Sunward Elec., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004) ....................................................................................................... 21

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
   511 F. App'x 81 (2d Cir. 2013) ........................................................................................... 12

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
   800 F. Supp.2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013)...... 22, 23, 25

**Rules**

Federal Rule of Civil Procedure 65 ....................................................................................... 11, 25

Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("**Shenzhen Molly Tea**"), Mollytea Shops LLC ("**Molly Tea Shops**"), and Molly Tea Holding Inc. ("**Molly Tea Holding**") and Mollytea Shops LLC, derivatively on behalf of Molly Tea NYC Inc., Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. respectfully submit this memorandum of law in support of their motion, by order to show cause, for a temporary restraining order and preliminary injunction. For the reasons set forth below, the Court should enjoin Defendants as set forth in the proposed order to show cause.

## PRELIMINARY STATEMENT

This case involves the Defendants' ongoing misappropriation of a worldwide brand and presents a textbook showing for preliminary injunctive relief under Sections 32(a) and 43(a) of the Lanham Act, as well as New York trademark and contract common law. Shenzhen Molly Tea is the owner of two valid, subsisting United States federal trademark registrations for the "Molly Tea" mark, under which three joint ventures between Molly Tea Shops and Defendant MHL NY LLC ("**MHL**") operated three "Molly Tea" stores in New York (the "**Joint Venture Stores**" or "**Joint Venture Entities**").

Defendants—signatories, alongside Shenzhen Molly Tea, to the Brand Authorization and Technical Service Cooperation Agreement dated December 20, 2023 (the "**Brand License Agreement**") and the Shareholder Agreements and Bylaws (together, the "**Shareholder Agreements**") governing the joint-venture owned stores—have repudiated those agreements and unilaterally opened an unauthorized "Molly Tea" store near Columbia University, located at 2857 Broadway, New York, New York (the "**Columbia Store**") and entered into an unauthorized license to open "Molly Tea" food-court concession at 28-07 Jackson Avenue, Long Island City, New York (the "**LIC Concession**"). The Columbia Store operates on an unapproved point-of-sale system, entirely outside of Plaintiffs' designated supply chain, and utilizes a design, sales

1

promotions, and social-media advertising that Plaintiffs never reviewed nor approved, a right the Brand License Agreement explicitly afforded to Shenzhen Molly Tea.  Based on MHL's many breaches, on May 1, 2026, Shenzhen Molly Tea formally terminated the Brand License Agreement, extinguishing any remaining authority Defendants had to use the Molly Tea Marks anywhere, including at all Joint Venture Stores and the Columbia Store.  Defendants have refused to cease.

Each day these unauthorized stores remain open under the "Molly Tea" name, Defendants infringe Plaintiffs' federally registered marks, while selling non-conforming and sub-standard products to consumers under those marks, and irreparably erode the goodwill that Plaintiffs have spent years and substantial resources to build—precisely the harm that is presumed upon a showing of a likelihood of success on a federal infringement claim.  Only an immediate order enjoining Defendants' continued use of the Molly Tea Marks and the continued operation of the Joint Venture Stores, the Columbia Store and the LIC Concession (to the extent the LIC Concession is operating) can prevent the continuing, incalculable harm to Plaintiffs, to the consuming public, and to the "Molly Tea" brand.

For the reasons set forth below, the Court should enjoin Defendants from:  (1) utilizing the Molly Tea Marks, including the Registered Marks, and any other "Molly Tea" trade name, trademark, or trade dress; (2) operating or permitting the operation of the Columbia Store, LIC Concession, or Joint Venture Stores to the extent that those locations, in any way, make use of the aforementioned, including by maintaining or displaying any Molly Tea Marks on storefronts, elements of store design, products, or social media; and (3) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction.  The Court should further order Defendants

to make a verified report to the Court within thirty (30) days setting forth all actions taken by the Defendants to comply with the injunction and the dates such actions were taken.

**STATEMENT OF FACTS**

The facts relevant to the Court's consideration of this motion are set forth in the Verified Complaint, dated May 13, 2026 (the "**Verified Complaint**"), the exhibits annexed thereto, the Declaration of Lee Bergstein, dated May 18, 2026 ("**Bergstein Decl.**"), and the exhibit annexed thereto, all of which are fully incorporated herein by reference.  A summary of the relevant facts is reproduced below.

**A.      The "Molly Tea" Brand and Plaintiffs' Trademark Rights**

The "Molly Tea" brand is one of the leading premium milk-tea brands originating in Shenzhen, China, recognized for its "light milk tea" formulation, its distinctive trade dress, its jasmine-forward menu, and its uniform store design.  As of November 2025, Molly Tea operates more than 2,000 stores worldwide.  Shenzhen Molly Tea is the originator and sole owner of the "Molly Tea" brand, including its Corporate Identity System (the "**CIS**"), all "Molly Tea" trademarks and trade dress, proprietary store designs, recipes, supply chain, and training materials. The CIS constitutes a unified and proprietary brand system governing all aspects of the "Molly Tea" customer experience and store operations; stores' adherence to that CIS ensures that consumers at every authorized "Molly Tea" location encounter a consistent experience characterized by uniform products, service standards, and brand identity.

Shenzhen Molly Tea is the owner of two registered United States trademarks:  U.S. Trademark Registration No. 8205316 covering, among other services, bubble tea shops, tea shops, cafe and restaurant services, and franchise and business management services for milk tea shops. Shenzhen Molly Tea is also the owner of record of U.S. Trademark Registration No. 7996117 for bubble tea shops, tea shops, eateries, bar services, cafe services, and restaurant services (together,

3

the "**Registered Marks**").  Both registrations are valid, subsisting, and in full force and effect,

constituting *prima facie* evidence of Shenzhen Molly Tea's exclusive right to use the Molly Tea

Marks in commerce.  Shenzhen Molly Tea also owns common-law rights in the "Molly Tea" name

and trade dress—encompassing the distinctive storefront design, ambient lighting, color schemes,

ceiling treatments, interior layouts, and employee uniforms uniformly applied across every

authorized location through the CIS (collectively with the Registered Marks, the "**Molly Tea**

**Marks**").

**B.      Defendants' Repudiation of the Joint Venture and Unauthorized Seizure of the "Molly Tea" Brand**

On December 20, 2023, Shenzhen Molly Tea and MHL entered into the Brand License

Agreement, authorizing MHL to open up to five "Molly Tea" locations subject to strict brand-

control requirements, including:  construction of each store in strict accordance with the CIS; use

of only Shenzhen Molly Tea's designated suppliers, recipes, and product specifications; prior

approval of all pricing, promotions, and marketing; no independent social-media accounts without

written consent; and exclusive use of Shenzhen Molly Tea's designated point-of-sale system and

supply-chain partner.  The Brand License Agreement conveys no rights in or to the Registered

Marks or any independent right to operate stores outside the brand-control framework set forth

therein.  Pursuant to the Brand License Agreement, three authorized joint-venture "Molly Tea"

stores were opened in New York—the Flushing Store, the Brooklyn Store, and the Chinatown

Store—each operated through respective joint-venture entities in which Mollytea Shops holds a

35% interest–with approval rights over operating standards, product specifications, point-of-sale

systems, and supply chain–and MHL holds a 65% interest.

In January 2026, Plaintiff Molly Tea Holding executed a "good guy" guaranty (the

"**Columbia Guaranty**"), together with Defendants Mei Hui Lin ("**Lin**") and Binbin Xu ("**Xu**"),

for a lease at 2857 Broadway, in reliance on the mutual understanding that the Columbia Store would open as the next authorized Joint Venture Store. However, Defendant Molly Tea CU LLC ("**Molly Tea CU**")—an entity in which Plaintiffs hold no equity interest—executed the Columbia lease as tenant, entirely outside the agreed-upon joint venture structure governing all New York stores. Defendants utilized Molly Tea Holding's credit to support the Columbia Guaranty, while capturing for themselves the goodwill of the "Molly Tea" brand, free of any contractual accountability to Plaintiffs. While Plaintiffs and Defendants were engaged in inchoate discussions about a Columbia Store, no agreement was reached and Plaintiffs never authorized the opening of the Columbia Store pursuant to the Brand License Agreement or the use of the Molly Tea Marks in connection therewith.

Next in February 2026, Defendants unequivocally repudiated the Brand License Agreement and the Shareholder Agreements, cancelling a scheduled joint-venture meeting, removing Defendant Xiaozhe Liu a/k/a Ziaozhe Liu ("**Liu**") from a Molly Tea legal coordination group chat, removing Plaintiffs' personnel from a Flushing Store group chat, refusing to engage with Plaintiffs' standing offer to bring the Columbia Store within the joint-venture framework, and ignoring Plaintiffs' repeated compliance demands.

Plaintiffs even proposed a resolution favorable to Defendants, whereby Plaintiffs would have directly operated the Columbia Store, with MHL and/or Lin and Liu receiving minority equity interests, and Plaintiffs would assume the remaining obligations under the Brooklyn Nets Sponsorship Agreement, which MHL had expressed an inability to comply with. Lin flatly rejected this proposal and instead demanded that (i) Plaintiffs continue subsidizing the Brooklyn Nets sponsorship obligation; (ii) compensate Defendants for any losses caused by so-called "forced" demands to transfer equity in the Columbia Store and the LIC Concession; and (iii)

guarantee that Plaintiffs would not interfere with Defendants' continued unilateral operation of the Joint Venture Stores. Hence, rather than take steps to satisfy their obligations under the Brand License Agreement, Defendants simply ignored Plaintiffs' good-faith resolution attempts and continued to operate Joint Venture Stores and simultaneously advance the unauthorized opening of the Columbia Store. After Defendants ignored Plaintiffs' March 27 and April 2, 2026 compliance notices, Shenzhen Molly Tea suspended the Joint Venture Stores effective April 3, 2026.

**C.    The Unauthorized Opening and Operation of the Columbia Store**

On April 17, 2026, Defendants opened the Columbia Store with a publicly advertised grand-opening promotion, without Plaintiffs' authorization and in material non-compliance with the Brand License Agreement. Section 6.4.3 of the Brand License Agreement provides that "[a] Store may be opened only upon [Shenzhen Molly Tea's] verification and approval," and that opening without prior consent "shall constitute a material breach." The opening was not authorized by any written license, sublicense, franchise, or other agreement between Plaintiffs and any Defendant, and Defendants obtained none of the required approvals for the Columbia Store's build-out, signage, equipment, suppliers, menu, or grand-opening promotions.

A site inspection on April 17, 2026 documented six material deviations from Plaintiffs' originally approved design: the required storefront shape and ambient light strips were missing; the required side-sign logo was absent; the required waterproof awning was not installed; the required kitchen-counter partition curtain was not installed; the required light-film ceiling design was replaced with ordinary spotlights; and the required stepped ceiling-to-wall connection was not executed. Each deviation impairs the brand value, consumer perception, and distinctiveness of the Molly Tea Marks and trade dress, and was undertaken without Plaintiffs' knowledge or consent. On its opening day, the Columbia Store also suffered repeated point-of-sale system malfunctions

6

at checkout, prospective customers were held at the entrance rather than permitted to enter, and staff demeanor toward customers was inconsistent with Molly Tea's retail hospitality standards.

All this was in direct violation of numerous provisions of the Brand License Agreement, requiring that Defendants, *inter alia*:  "entrust the Store's decoration works to the professional decoration and design companies designated by [Shenzhen Molly Tea]" (Art. 6.4.3(b)); strictly adhere to Plaintiffs' supply chain, including by procuring "[a]ll items used by [Defendants] for business purposes that form part of the 'Molly Tea Authorized Identification System'" from Plaintiffs and "not privately produce them or procure them from any third party" (Arts. 8.1-8.3); be "strictly prohibited from independently establishing any official self-media accounts on any platform" (Art. 10.7.4); comply with "selling prices of the products . . . [that are] determined by [Shenzhen Molly Tea]" . . . and "not adjust such prices at [Defendants'] sole discretion" (Art. 7.8); and "use the POS system in compliance with [Shenzhen Molly Tea]'s requirements" (Art. 10.2).

Defendants simultaneously promoted the Columbia Store through unauthorized social-media channels—the Instagram account @mollyteamood and RedNote account "茉莉奶白纽约 MollyTea NYC"—each using the Molly Tea Marks and trade dress without authorization, in violation of Section 10.7.4 of the Brand License Agreement.  On those channels, Defendants posted regarding pricing, promotions and offerings at the Columbia Store that were never reviewed or approved by Plaintiffs, including a "buy one, get one free" promotion running from on or about April 17 through April 19, 2026, and a promotion offering the first one hundred customers a "Jasmine Needle King Tea Gift Box" valued at $24.99, as well as a 12% discount offer and a free magnet for customers purchasing two drinks, all of which were promoted through unauthorized social-media campaigns designed to engage influencers.

None of these actions were authorized by Plaintiffs, and they are inconsistent with Plaintiffs' pricing and promotional standards which are followed by the thousands of other Molly

Tea stores in operation.  Indeed, such promotions violated Section 7.8 of the Brand License Agreement, which requires all selling prices to be determined by Shenzhen Molly Tea.

**D.      The Columbia Store's Off-System Point-of-Sale and Unauthorized Supply Chain**

All authorized "Molly Tea" stores are required under the Brand License Agreement to use Shenzhen Molly Tea's designated point-of-sale system, which routes transaction-level telemetry—sales, menu, pricing, and SKU data—directly to Shenzhen Molly Tea to enable brand-compliance monitoring, royalty calculation, and quality control.  In blatant violation, Liu unilaterally contracted with Toast, Inc. to install the unauthorized Toast point-of-sale system at the Columbia Store, which was observed in use on April 17, 2026.

The Columbia Store has operated from day one entirely outside of Plaintiffs' supply chain. Under the Brand License Agreement, Shenzhen Molly Tea supplies tea bases, flavor concentrates, proprietary recipes, branded packaging, and related inputs to all authorized locations, and Section 8.2 of the agreement prohibits procurement from any non-designated source.  To Plaintiffs' knowledge, zero orders for the Columbia Store have ever been placed through any Plaintiff-designated supplier, and no authorized Molly Tea supply-chain agreement was ever extended to Molly Tea CU.  Defendants are either sourcing non-authentic inputs from third parties or diverting authentic "Molly Tea" product from the Joint Venture Stores, in either case exposing consumers to non-conforming goods sold under the Molly Tea Marks without Plaintiffs' consent or quality control, and depriving Plaintiffs of supply-chain margin and royalty rights.

**E.      The Unauthorized Long Island City Concession**

On or about January 13, 2026, Defendant Genesis Brand Management LLC ("**Genesis**"), doing business as "Molly Tea 茉莉奶白," entered into a ten-year concession agreement (the "**LIC Concession Agreement**") with The LIC Food Court LLC to operate the LIC Concession, a "Molly

8

Tea" food-court stall at 28-07 Jackson Avenue, Long Island City, New York. The LIC Concession Agreement was executed by Liu, as president of Genesis, and defines the "Vendor's Trade Name" as "Molly Tea 茉莉奶白," falsely representing to The LIC Food Court LLC that Genesis was affiliated with, sponsored by, or authorized to operate a genuine "Molly Tea" branded location. Genesis has no license, sublicense, franchise, or other authority from Plaintiffs to use the Molly Tea Marks at any location.

The LIC Concession Agreement is secured by personal guaranties from Defendants Liu, Lin, and Xu, and by Molly Tea NYC Inc., one of the Joint Venture Entities, as a corporate guarantor (the "**LIC Corporate Guaranty**"). Defendant Lin executed the LIC Corporate Guaranty in the name of Molly Tea NYC Inc., without Plaintiffs' knowledge or consent, violating multiple provisions of the Shareholder Agreements and Bylaws that require unanimous director approval for the incurrence of debt exceeding $20,000 and entry into any contract with a term greater than one year or a value greater than $50,000. The LIC Corporate Guaranty is void and unenforceable as against Molly Tea NYC Inc. To the extent it does or has operated, the LIC Concession utilizes an unauthorized point-of-sale system, outside of the mandatory supply chain, and without quality-control oversight by Plaintiffs. The unauthorized Columbia Store and LIC Concession reflect a coordinated scheme by Defendants to expand the "Molly Tea" brand outside Plaintiffs' license structure, eroding and siphoning to themselves the goodwill, name recognition, and supply chain that Plaintiffs have built.

Knowing that Plaintiffs were preparing to enforce their trademark rights in advance of the unauthorized Columbia Store opening on April 17, 2026, on April 16, 2026, MHL filed a frivolous, forum-shopping complaint in Queens County Supreme Court, seeking to enjoin, *inter alia*, Shenzhen Molly Tea, Molly Tea Holding, and Molly Tea Shops from terminating their supply-

9

chain support for Defendants' stores.  MHL relied on stale limited liability company agreements that had long since been superseded and replaced by the Shareholder Agreements and ignored the Brand License Agreement and Defendants' infringement thereof.  Accordingly, that court declined to issue the temporary restraining order MHL sought.  The Queens County case does not involve any federal or state trademark claims, the Columbia Store, or the LIC Concession, and poses no impediment to this Court's adjudication of the instant dispute.

**F.      Termination and Defendants' Continued Infringement Across All Locations**

On May 1, 2026, Shenzhen Molly Tea formally notified MHL of its termination of the Brand License Agreement, citing material breaches including: the unauthorized opening and operation of the Columbia Store and the LIC Concession; the diversion of inventory and assets from the Joint Venture Stores; the use of unauthorized point-of-sale, supply-chain systems, and social-media accounts; and the failure to provide financial reporting and remit brand usage and management fees.  The termination extinguished any and all remaining authority of MHL—and any alter-ego or affiliate, including Molly Tea CU and Genesis—to use the Molly Tea Marks, the CIS, the proprietary recipes, and the designated point-of-sale and supply-chain infrastructure.

**G.      Irreparable Harm to Plaintiffs and the Molly Tea Marks**

Notwithstanding Plaintiffs' termination of the Brand License Agreement, Defendants continue to operate the Columbia Store and all three Joint Venture Stores under the Molly Tea Marks, constituting separate and ongoing trademark infringements, have ceased all financial reporting to Plaintiffs regarding the Joint Venture Stores and, upon information and belief, are diverting all revenue to themselves and/or the unlawfully opened Columbia Store.

Defendants' continued, unauthorized use of the Molly Tea Marks is causing, and will continue to cause, Plaintiffs to lose control over the reputation, goodwill, and quality of goods and services sold under those marks.  Plaintiffs cannot verify that products sold at the unauthorized

10

locations conform to "Molly Tea" recipes, ingredient specifications, or quality standards; cannot police the pricing or promotional environment under which their Marks are used; and cannot ensure that the consumer experience is consistent with authorized "Molly Tea" locations.  The continuing unauthorized use compounds the harm.  As of the date of this filing, Defendants operate an Instagram account, @mollyteany, that publicly identifies itself as "Molly Tea Official" and a live commercial website at mollyteany.com that features an "order online" function permitting consumers to place orders directly with the Joint Venture Stores and Columbia Store.  Defendants are thus not merely using the Molly Tea Marks at physical locations but also holding themselves out to the consuming public as the official "Molly Tea" presence in New York.  Each day that account and website, along with the unauthorized stores they promote, remain active, the universe of consumers who associate the Molly Tea Marks with non-conforming, non-authorized products expands—irreparably eroding the brand goodwill that Plaintiffs' exclusive trademark rights are designed to protect.  This injury is continuing, irreparable, and incapable of being adequately compensated by money damages alone, and is precisely the harm presumed upon a showing of a likelihood of success on a federal trademark infringement claim.  Only injunctive relief—enjoining Defendants' use of the Molly Tea Marks and closing the Columbia Store and the Joint Venture Stores—can prevent further harm.

## LEGAL ARGUMENT

### I.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) authorizes federal courts to issue a preliminary injunction, while Federal Rule of Civil Procedure 65(b) authorizes federal courts to issue a temporary restraining order.  "A party seeking a preliminary injunction must demonstrate:  (1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's

11

favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)) (internal quotation marks omitted). Plaintiffs satisfy this standard.

The issuance of injunctive relief pursuant to Lanham Act violations requires only one viable claim, even if all others are discounted. *Folkes Home Servs. Heating, Cooling, Plumbing & Elec., LLC v. Folkes Bros. Home Servs. LLC*, No. 24 CV 9844 (NSR), 2026 WL 311515, at *14 (S.D.N.Y. Feb. 5, 2026) (citing *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d Cir. 2013)).

## II.    PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs are very likely to succeed on the merits of their claims. Most saliently, Plaintiffs possess colorable claims of trademark infringement and dilution and unfair competition under the Lanham Act and under New York common law. Additionally, Plaintiffs possess strong claims for breach of contract, due to Defendants' repeated, material breaches, as well as unjustified and explicit repudiation of the Brand License Agreement and the Shareholder Agreements and Bylaws. As such, this first factor tips strongly in Plaintiffs' favor and in favor of the issuance of a temporary restraining order and a preliminary injunction.

"Courts apply a two-step legal test to analyze trademark infringement claims under the Lanham Act." *AFAB Indus. Servs., Inc. v. Little Chelsea, Inc.*, No. 23-CV-03095 (MMG), 2026 WL 575305, at *9 (S.D.N.Y. Mar. 2, 2026) (citing *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 421 (2d Cir. 2018)). "At step one, a court determines whether a trademark is entitled to protection. A mark that is 'inherently distinctive' is entitled to protection.

12

A court presumes a mark is 'inherently distinctive,' and therefore entitled to protection, if it is registered with the Patent and Trademark Office ('PTO')." *Id.* (citing *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1076–77 (2d Cir. 1993)) (internal citations omitted).  Even absent registration, "an unregistered mark is protectable so long as it is 'capable of distinguishing the applicant's goods [or services] from those of others.'" *Id.* at *5 (citing *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 217 (2d Cir. 2003)).

"At step two, a court determines whether consumers are likely to be confused by the infringing product." *AFAB Indus.*, 2026 WL 575305, at *9 (citing *Excelled Sheepskin*, 897 F.3d at 421).  "Courts in the Second Circuit assess whether an infringing use of a mark is likely to cause consumer confusion by applying the eight *Polaroid* factors." *Id.* (citing *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 247 (2d Cir. 2024)).  Those factors are:  "(1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the proximity of the parties' goods or services; (4) the likelihood that the senior user will bridge the gap; (5) evidence of actual confusion; (6) the junior user's bad faith; (7) the quality of the parties' goods or services; and (8) the sophistication of the relevant consumers." *Folkes*, 2026 WL 311515, at *7 (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

"The elements of 'trademark infringement and unfair competition under New York common law largely mirror' those under the Lanham Act, except that a common law unfair competition claim additionally requires bad faith." *Folkes*, 2026 WL 311515, at *4.  Hence, the federal and New York claims are "analyze[d] . . . under the same framework, with the added requirement of bad faith for the common law claim." *Id.*

Here, both factors of the two-step analysis under the Lanham Act are satisfied.  First, the Registered Marks are entitled to protection because they are, as a matter of law, "inherently

distinctive" because they are registered with the U.S. Patent and Trademark Office under U.S. Trademark Registration Nos. 7996117 and 8205316. Both trademarks are valid, subsisting, and in full force and effect. Even absent registration, the entirety of the Molly Tea Marks, including the trade dress, is readily capable of distinguishing Plaintiff's goods and services from those of others; indeed, Molly Tea stores utilize a highly distinctive trade dress. As such, the Molly Tea Marks, including the Registered Marks, are entitled to protection.

Next, all eight *Polaroid* factors cut strongly in Plaintiffs' favor. First, Plaintiff's marks are strong. Both the Registered Marks as well as the greater Molly Tea Marks are highly distinctive; indeed, Plaintiff has deliberately and painstakingly cultivated the distinctive storefront design, ambient lighting, color schemes, ceiling treatments, interior layouts, and employee uniforms, which are uniformly applied across every authorized location through the Molly Tea CIS. In short, the uniform and distinctive appearance of Molly Tea stores and products is integral to the success of its brand. Second, the similarity of the marks clearly favors Plaintiffs, as Defendants are invalidly and extensively utilizing Plaintiffs' protected marks; that is, the marks are identical. Third, the proximity of Plaintiffs' and Defendants' goods and services is identical in that Defendants are selling Plaintiffs' proprietary products, including tea bases, flavor concentrates, proprietary recipes, branded packaging. To the extent Defendants have deviated by sourcing any materials from outside of the authorized Molly Tea supply chain, the products sold by Defendants are still highly similar, albeit inferior. Fourth, there is a very strong likelihood that Plaintiffs—the senior users—will "bridge the gap" because Plaintiffs and Defendants operate in the very same market. Plaintiffs, as the owner of the Molly Tea Marks, are legally entitled to continue expanding into the New York City market by selling distinctive jasmine-forward light milk tea products. Indeed, the purpose of licensing the Molly Tea Marks to Defendants was to introduce the Molly

14

Tea brand to New York in a limited number of locations.  Hence, Defendants' unauthorized stores are direct competitors with Plaintiffs' right to operate in the New York City market and any future stores Plaintiffs may open or license to other entities.

Fifth, customers are highly likely to be confused by Defendants' use of the Molly Tea Marks, as they are utilizing Plaintiffs' genuine products and visual branding, yet are selling them in an inferior manner that deviates from the rigid standards established by Plaintiffs.  Sixth, Defendants—the junior users—clearly are utilizing the Molly Tea Marks in bad faith.  As discussed above, Defendants are well aware that they possess no legal right to utilize the Molly Tea Marks anywhere, as that right has been explicitly and validly terminated by Plaintiffs pursuant to the express terms of the Brand License Agreement, and Plaintiffs have repeatedly warned Defendants to immediately cease; yet, Defendants have not.

Seventh, Defendants' goods and services are of inferior quality, as Defendants' stores do not adhere to the Molly Tea design standards or CIS, utilize an unapproved point-of-sale system, entirely outside of Plaintiffs' designated supply chain, engage in sale promotions and social-media advertising that are inconsistent with Plaintiffs' approved promotions.  As detailed above, the Columbia Store departs materially from Plaintiffs' approved design, POS, supply chain and operational standards, and on its opening day suffered repeated operational failures inconsistent with authorized Molly Tea locations.  These deviations impact customers' perception of the Molly Tea brand, injuring Plaintiffs.

Eighth, customers for light milk tea products are not equipped or reasonably expected to engage in a rigorous inquiry into the nature of the products being sold at Defendants' stores and whether the goods and services comply with Plaintiffs' standards followed at Molly Tea locations around the world.  Customers simply visit a store bearing the name and, at the surface, all the

15

trappings of a genuine Molly Tea store and expect to receive a genuine Molly Tea product that that brand supplies. That is, the purchase of a milk tea beverage cannot be compared to a transaction among sophisticated business entities in which due diligence is to be expected. As a result, customers are highly likely to be confused by Defendants' nonconforming products and operations.

Hence, all eight of the *Polaroid* factors cut strongly in Plaintiffs' favor. Defendants' actions and utilization of the Molly Tea Marks are highly likely to result in confusion among customers and are likely to deceive the public as to their origin. Therefore, Plaintiffs are likely to succeed on the merits of their Lanham Act claims.

Likewise, Plaintiffs have also satisfied the bad-faith element required under New York common law. As detailed *supra*, Defendants refused to engage with Plaintiffs' attempts to bring the Columbia Store within the joint-venture framework and ignored repeated compliance demands, including on March 27, March 30, and April 2, 2026. Shenzhen Molly Tea subsequently suspended the Joint Venture Stores effective April 3, 2026, which Defendants ignored, and continued to operate the stores while taking steps to prevent Shenzhen Molly Tea and its affiliates' contractually guaranteed transparency into the stores' financial picture. While doing so, Defendants simultaneously advanced the opening of the unauthorized Columbia Store.

Based on all of these actions, on May 1, 2026, Shenzhen Molly Tea formally terminated the Brand License Agreement, extinguishing any remaining authority Defendants had to use the Molly Tea Marks anywhere, including at the Columbia Store and the Joint Venture Stores. Yet, Defendants have utterly ignored the termination and continue to operate the Joint Venture Stores and the unlawfully opened Columbia Store, fully aware they possess no legal basis to do so. This

flagrant breach of the Brand License Agreement and infringement of Shenzhen Molly Tea's federal and state trademarks and trade dress constitutes bad faith.

Likewise, Plaintiffs are likely to prevail on their breach of contract claims. Under New York law, in order to succeed on their breach of contract claim, Plaintiffs will have to show: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff[s], (3) breach of contract by the defendant[s], and (4) damages.'" *Singas Famous Pizza Brands Corp. v. New York Advert. LLC*, No. 10 CIV. 8976 RJH, 2011 WL 497978, at *10 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 468 F. App'x 43 (2d Cir. 2012) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

The Brand License Agreement defines specific acts as material or fundamental breaches sufficient to support immediate termination. Article 6.4.3(f) expressly provides that opening a store without Shenzhen Molly Tea's prior consent "shall constitute a material breach" of the Agreement; Article 8.2(d) provides that the diversion of designated supplier materials to any non-authorized location "shall constitute material breach;" Article 10.2(c) expressly defines as a fundamental breach the use of any POS system other than the system designated by Shenzhen Molly Tea; and Articles 2.4 and 16.3.3 expressly prohibit MHL from operating any competing or "Molly Tea" branded businesses outside the Brand License Agreement. As the May 1, 2026 termination notice catalogues, each of these provisions have been breached, and Plaintiffs were entitled to terminate the Brand License Agreement immediately pursuant to Article 12.2.1.

Plaintiffs have proved the existence of the Brand License Agreement, under which they have fully performed. Defendants are in direct material and continuing breach of that agreement. Beginning on February 26, 2026, Defendants embarked on a campaign of unequivocally repudiating the Brand License Agreement, cancelling a scheduled joint-venture meeting, removing

17

Plaintiffs' personnel from the operational WeChat group, and refusing to make their required contribution to the Brooklyn Nets Sponsorship Agreement. Defendants refused to bring the Columbia Store within the joint-venture framework, as required by the agreement, and ignored repeated demands to comply.

Defendants also opened and are operating the Columbia Store without Plaintiffs' authorization in violation of Article 6.4.3(f), took steps to open, and potentially are still operating, the LIC Concession in violation of Articles 2.4 and 16.3.3, pledged Joint Venture Entity Molly Tea NYC Inc.'s corporate credit on the LIC Concession Agreement without authorization, illicitly diverted Joint Venture inventory and Plaintiffs' designated supplier materials to the unauthorized Columbia Store, utilized unauthorized point-of-sale and supply-chain systems at their stores, failed to remit brand usage fees, brand security deposits, and management fees owed to Shenzhen Molly Tea, opened and operated numerous unauthorized social-media accounts that held themselves out as the official Molly Tea in violation of Article 10.7.4, infringed on Plaintiffs' trademark rights, and publicly promoted unauthorized sales and promotions in violation of Articles 7.8(b) and 7.8(c).

Defendants have separately breached the Shareholder Agreements and Bylaws governing the Joint Venture Entities. The Bylaws require unanimous director approval for the incurrence of any debt exceeding $20,000, the opening or closing of any store, and entry into any contract with a term greater than one year or value greater than $50,000 (Bylaws Section 4.15). The Bylaws also prohibit any officer or agent of the Joint Venture Entities from binding the corporation by any contract or engagement, or pledging its credit, absent board authorization (Bylaws Section 10.1). Lin nonetheless caused Joint Venture Entity Molly Tea NYC Inc. to be pledged as corporate guarantor on the LIC Concession Agreement without unanimous director approval and/or board authorization. Further, Defendants' unilateral switch of the Columbia Store onto an unauthorized

18

POS, their operation outside Plaintiffs' designated supply chain, their establishment of unauthorized social-media accounts, and their freeze-out of Molly Tea Shops from financial reporting, audit access, and governance are independent breaches of Bylaw Sections 4.4 and 4.16.

Defendants then ignored repeated notices that they were required to comply with the Brand License Agreement, after which Shenzhen Molly Tea suspended and then subsequently terminated the agreement, thereby extinguishing Defendants' right to use the "Molly Tea" brand anywhere. Yet, they continue to do so as of this submission.

Hence, Defendants are in breach of the Brand License Agreement and are liable to Plaintiffs for substantial damages as a result of the injury to Plaintiffs' brand, goodwill, and reputation. Accordingly, Plaintiffs are likely to prevail on their contract-related claims.

### III.        PLAINTIFFS FACE A SUBSTANTIAL THREAT OF IRREPARABLE HARM

Plaintiffs presently face, and will continue to face, irreparable harm to their brand, goodwill, and reputation as a direct consequence of Defendants' ongoing operation of unauthorized, renegade "Molly Tea" stores. Even were those stores not selling substandard products and engaging in nonconforming store designs and operations, that injury alone is significant and irreparable and is not compensable by money damages.

"In the Second Circuit, a 'showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *I.T. by & through Next Friend B.V.T.R. v. Kennedy*, No. 26-CV-02563 (JAV), 2026 WL 882917, at *2 (S.D.N.Y. Mar. 31, 2026) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Singas Famous Pizza*, 2011 WL 497978, at *9 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d

60, 66 (2d Cir. 2007)). That is, "movant[s] must demonstrate 'that [they] would suffer irreparable harm if the TRO does not issue.'" *Basank v. Decker*, 449 F. Supp.3d 205, 210 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp.2d 418, 419 (S.D.N.Y. 2008)).

"The district court has wide discretion in determining whether to grant a preliminary injunction." *Basank*, 449 F. Supp.3d at 210 (quoting *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008)). The "alleg[ation] of ongoing and continuing use of the challenged marks in connection with competing services . . . threatens continuing harm to Plaintiff's goodwill, reputation, and ability to control its marks." *Folkes*, 2026 WL 311515, at *14. Such an "injur[y] [is] not readily compensable by monetary damages alone and [is] the type for which injunctive relief is traditionally available under the Lanham Act." *Id*.

Here, Plaintiffs are presently suffering, and will continue to suffer, irreparable harm to the "Molly Tea" brand, including infringement and dilution of the Molly Tea Marks, including the Registered Marks, the CIS, and the overall "Molly Tea" brand, as a direct result of Defendants' unauthorized use of the trademarks and trade dress at renegade and unauthorized "Molly Tea" locations that do not adhere to important visual and operational components of the "Molly Tea" CIS, and which sell non-conforming and substandard products. Hence, every day that goes by, Plaintiffs are injured by this erosion of their hard-earned goodwill and reputation and by the violation of Plaintiffs' right to control their marks.

"Where the party seeking a preliminary injunction in a trademark case shows that it will 'lose control over the reputation of its trademark pending trial,' the requirement of irreparable injury is satisfied." *Dunkin' Donuts Inc. v. N. Queens Bakery, Inc.*, 216 F. Supp.2d 31, 40 (E.D.N.Y. 2001) (quoting *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985)). Specifically, "[w]here a . . . misimpression results from trademark infringement by a

20

former licensee, courts have found consumer confusion to be at least strong evidence of irreparable harm because 'after a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder.'" *Singas Famous Pizza*, 2011 WL 497978, at *9 (quoting *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004)).  That is, when an entity "continues to hold itself out as operating [an authorized location], despite the termination of its . . . agreement, 'likelihood of confusion is inevitable.'" *Choice Hotels Int'l, Inc. v. Kolath Hotels & Casinos, Inc.*, No. 113-cv-192-GLS-CFH, 2016 WL 225690, at *3 (N.D.N.Y. Jan. 19, 2016) (emphasis added) (quoting *Dunkin' Donuts*, 216 F. Supp.2d at 43-44).

Indeed, "[c]ourts have repeatedly held in situations similar to this one that damages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm." *Dunkin' Donuts*, 216 F. Supp.2d at 40.  "The need to issue a preliminary injunction where a former licensee continues to use a trademark after its license to do so has been revoked is compelling because of the danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder." *Id*. (citing *Church of Scientology Intern. v. Elmira Mission*, 794 F.2d 38, 41–42 (2d Cir. 1986)).

Put simply, the Defendants' "Molly Tea" stores are "essentially [] renegade [Molly Tea location]." If th[ose] restaurant[s] serve[] food that is different from the kind of food that [Molly Tea] customers expect, [Molly Tea] stands to lose goodwill among those customers." *Singas Famous Pizza*, 2011 WL 497978, at *9.  As the Second Circuit has recognized, "[a] licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder.  When such party, as defendants here, loses its authorization yet continues to use the mark, the potential for consumer

21

confusion is greater than in the case of a random infringer. Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public." *Church of Scientology Int'l*, 794 F.2d at 44.

For that reason, "the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, [and] remedies at law cannot adequately compensate Plaintiff for its injuries." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp.2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (citing *Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*, 937 F.2d 77, 80 (2d Cir. 1991)); *see Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, No. CV18814SJFSIL, 2018 WL 2012875, at *6 (E.D.N.Y. Apr. 30, 2018).

Hence, Plaintiffs are facing, and will continue to face, irreparable harm in the form of erosion of their hard-earned goodwill and reputation. Plaintiffs have built up the "Molly Tea" brand over the course of years and at great expense and effort. Defendants, without authorization, are flagrantly infringing upon Plaintiffs' rights to that goodwill and to exclusively control their marks. These injuries are immediate, significant, and irreparable, as they cannot be redressed by money damages alone. As such, a temporary restraining order and preliminary injunction should issue.

## IV.    THE BALANCE OF HARDSHIPS TIPS STRONGLY IN PLAINTIFFS' FAVOR

As discussed above, Plaintiffs are suffering, and will continue to suffer, significant harm that cannot be remedied by money damages as a result of Defendants' continued misuse of their trademarks and dress. Meanwhile, Defendants, who are newcomers that only recently were licensed by Plaintiffs to utilize the Molly Tea Marks, subject to numerous conditions to which Defendants immediately failed to adhere, will suffer comparatively far less injury from the issuance of interim injunctive relief.

22

In regard to the balance of hardships prong, in *U.S. Polo Ass'n*, this Court considered the degree to which and relative amount of time in which the parties had engaged in the particular strain of commerce. *See U.S. Polo Ass'n*, 800 F. Supp.2d at 541. For example, it found that one party had sold products bearing the marks in question for thirty years and possessed multiple registered trademarks for those products. *Id*. By comparison the other party, "ha[d] yet to enter [that] market in earnest." *Id*. As such, the "substantial likelihood of consumer confusion and potential loss to [the former party] both in terms of sales and reputation threaten to cause [it] serious harm." *Id*.

Precisely the same considerations are at play here, tipping the balance of equities firmly in Plaintiffs' favor. Plaintiffs have exclusively operated the "Molly Tea" brand around the world and unambiguously own the Molly Tea Marks, including the two trademarks registered with the U.S. Patent and Trademark Office, and have the unambiguous right to license and control the use of those marks by licensees, including Defendants. That right of Defendants has now been conclusively terminated.

By contrast, Defendants are newcomers who were only recently granted licenses to utilize the Molly Tea Marks and operate "Molly Tea" stores in a limited geographic area, subject to numerous conditions and the rights of Plaintiffs to supervise and control that use. And the facts bear out that Defendants have repeatedly breached the agreement governing those licenses and otherwise brazenly misappropriated the Molly Tea brand for their sole benefit.

To the extent Defendants will incur any burden as a result of being enjoined from using the Molly Tea Marks, such as any lease or payroll obligations, such obligations are entirely self-imposed by Defendants, as Plaintiffs never induced Defendants to enter into any commercial lease for the unauthorized stores; moreover, any such lease and payroll obligations were always subject

to Plaintiff's rights under the Brand License Agreement and Shareholder Agreements and Bylaws, including Shenzhen Molly Tea's right to terminate the Brand License Agreement.  In any event, the requested temporary restraining order and preliminary injunction are narrowly tailored to enjoin the use of the Molly Tea Marks and not any underlying lease or employee obligations of Defendants.  As such, the balance of hardships tips strongly in Plaintiffs' favor.

## V.        NO PUBLIC INTEREST WOULD BE DISSERVED BY AN INJUNCTION

The public would be directly served by the issuance of a temporary restraining order and preliminary injunction.  The consuming public has an interest, as a matter of law, in not being deceived by Defendants into believing that their non-conforming and substandard products being sold from unauthorized "Molly Tea" stores are, in fact, part of the "Molly Tea" brand and authorized by Plaintiffs.  This weighs firmly in favor of the issuance of interim injunctive relief.

"[G]ranting injunctive relief would not disserve the public interest because the public has an interest in being assured of goods' origin and quality, as well as an avoidance of confusion and deception."  *Fla. State Univ. v. Individuals Identified on Schedule A*, No. 21 CIV. 10631 (VM), 2022 WL 9481947, at *2 (S.D.N.Y. Oct. 14, 2022).  That is, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."  *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp.2d 305, 344 (S.D.N.Y. 2010) (citing *SK & F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1067 (3d Cir.1980)).

As discussed *supra*, due to Defendants' usurpation of the Molly Tea Marks, without authorization and in breach of agreements with Plaintiffs, in order to sell substandard and non-conforming products from locations, including the Columbia Store and LIC Concession, that do not conform to Plaintiff's CIS, the consuming public is currently, and will continue to be, deceived and confused into believing that Defendants' stores and products are legitimately part of the

24

"Molly Tea" brand and authorized by Plaintiffs.   Hence, "[b]ecause of the likelihood of consumer confusion in this case, the public interest would be served by the issuance of an injunction, and this factor weighs in Plaintiff's favor." *U.S. Polo Ass'n*, 800 F. Supp.2d at 541.  As such, this and all four factors weigh firmly in Plaintiffs' interest and militate in favor of the issuance of a temporary restraining order and preliminary injunction.

## VI.      NOTICE TO DEFENDANTS

On May 1, 2026, Shenzhen Molly Tea sent a notice of termination of the Brand License Agreement to Defendant MHL that Shenzhen Molly Tea was terminating the agreement pursuant to Article 12.2.1. of same, and demanding that MHL cease operations at the Columbia Store and use of the Molly Tea Marks.  Defendants did not comply.

Further, as set forth in the Bergstein Decl., the undersigned firm contacted counsel for Defendant MHL in the Queens County Supreme Court case, Yimin Chen, Esq. of the Law Offices of Chen & Associates, P.C., on May 15, 2026, demanding that Defendants immediately cease utilizing the Molly Tea Marks and Molly Tea systems at the Columbia Store, LIC Concession, and the Joint Venture Stores, forwarded counsel the Verified Complaint, and informed same that Plaintiffs intended to seek a temporary restraining order and preliminary injunction from this Court on or after May 18, 2026 at 9:30 a.m.  Neither Ms. Chen nor Defendants responded or ceased their use of the Molly Tea Marks.

## VII.     A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE APPROPRIATE

For the reasons set forth above, injunctive relief is warranted.  Plaintiffs respectfully request that the Court enter the temporary restraining order and, after hearing Plaintiffs' motion, the preliminary injunction, in the form set forth in the accompanying proposed Order to Show Cause.  "'Rule 65(c) [of the Federal Rules of Civil Procedure] gives the district court wide

discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm.'" *G.F.F. v. Trump*, 781 F. Supp.3d 195, 213 (S.D.N.Y. 2025) (quoting *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)); *see Rivera v. Town of Huntington Hous. Auth.*, No. 12-cv-901-DRH-ARL, 2012 WL 1933767, at *8 (E.D.N.Y. May 29, 2012).  Declining to require security is appropriate unless the opponent of the order can "'show[] that [it] will likely suffer harm absent the posting of [a] bond'" (*Heisman Trophy Tr. v. Smack Apparel Co.*, 595 F. Supp.2d 320, 329 (S.D.N.Y. 2009) (quoting *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)) or when the "assumed item of damages can only be described as speculative and conjectural." *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp.2d 312, 316 (S.D.N.Y. 2001).

Here, Defendants will suffer no actual harm as a result of the temporary restraining order or preliminary injunction requested.  The Columbia Store and LIC Concession were never authorized by Shenzhen Molly Tea and, therefore, Defendants never had any right to operate them in the first place.  Likewise, Defendants' right to utilize the Molly Tea Marks, which are owned by Plaintiffs, is purely a creature of contract, which Shenzhen Molly Tea validly terminated pursuant to the terms of the contract.  As such, Defendants will suffer no harm from being prevented from using the Molly Tea Marks, which are not theirs to use.  To the extent Defendants might suffer any harm, that harm is purely speculative and conjectural, which, as a matter of law, cannot sustain Defendants' burden of proving actual harm.  Accordingly, the Court should require no security.  In the event the Court is inclined to require security, such security should be of the smallest amount necessary, in light of Defendants' breaches of contract and unauthorized use of the protected Molly Tea Marks, all to Plaintiffs' detriment.

26

Further, to the extent the Court declines to grant the temporary restraining order solely upon the papers filed, Plaintiffs respectfully request that the Court hold an emergency hearing, in person or telephonically, as may be convenient to the Court, on Plaintiffs' motion as soon as the parties can be heard.  An emergency hearing is necessary because, as set forth herein, Plaintiffs have suffered and will continue to suffer irreparable harm until Defendants' conduct is restrained and enjoined.

## CONCLUSION

For all of the foregoing reasons, the Court should enjoin Defendants as set forth in the accompanying Proposed Order to Show Cause and Plaintiffs' request for a temporary restraining order and a preliminary injunction should be granted, as well as such other and further relief as the Court deems just, equitable, and proper.

Dated: New York, New York
      May 18, 2026

By:    */s/ Lee Bergstein*
Lee Bergstein
Bradley P. Pollina
Joseph M. DiPietro
BERGSTEIN FLYNN KNOWLTON & POLLINA PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
brad@bfklawoffice.com
joseph@bfklawoffice.com
Tel: 212-803-9025

*Counsel for Plaintiffs*

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that this Memorandum was prepared using Microsoft Word, and that there are 8,267 words in this document, exclusive of the caption, and signature block.  This document complies with the word count limit in Local Civil Rule 7.1.

Dated: New York, New York
      May 18, 2026

By:   <u>*/s/ Lee Bergstein*         </u>
Lee Bergstein
BERGSTEIN FLYNN KNOWLTON & POLLINA PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
Tel: 212-803-9025

*Counsel for Plaintiffs*

28