# Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC, and MOLLY TEA HOLDING INC.<br><br>Plaintiffs,<br><br>-and-<br><br>MOLLYTEA SHOPS LLC, derivatively on behalf of MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC.,<br><br>Plaintiff,<br><br>-against-<br><br>MHL NY LLC, MOLLY TEA CU LLC, GENESIS BRAND MANAGEMENT LLC, MEI HUI LIN, XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN XU,<br><br>Defendants,<br><br>-and-<br><br>MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC.,<br><br>Nominal Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT**<br>**WITH JURY DEMAND** |

Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("**Shenzhen Molly Tea**"), Mollytea Shops LLC ("**Mollytea Shops**"), and Molly Tea Holding Inc. ("**Molly Tea Holding**"), (collectively, "**Plaintiffs**" or "**Molly Tea**"), individually, and Mollytea Shops,

Deleted:

Deleted: .

derivatively, in its capacity as a shareholder of Nominal Defendants Molly Tea NYC Inc. (**Molly Tea NYC**"), Molly Tea BK Inc. ("**Molly Tea BK**"), and Molly Tea Manhattan Chinatown Inc. ("**Molly Tea Manhattan Chinatown**") (collectively, the "**Joint Venture Entities**"), by and through their attorneys Bergstein Flynn Knowlton & Pollina PLLC, as and for their Verified Complaint with Jury Demand against Defendants MHL NY LLC ("**MHL**"), Molly Tea CU LLC ("**Molly Tea CU**"), Genesis Brand Management LLC ("**Genesis**"), Mei Hui Lin ("**Lin**"), Xiaozhe Liu a/k/a Ziaozhe Liu ("**Liu**"), and Binbin Xu ("**Xu**"), (collectively, "**Defendants**") allege as follows:

## NATURE OF THE ACTION

1.      This action arises from Defendants' unauthorized use of Plaintiffs' federally registered Molly Tea trademarks, trade dress, and proprietary brand system at a renegade store at 2857 Broadway, New York, New York 10025 (the "**Columbia Store**") and a renegade food-court stall at 28-07 Jackson Avenue, Long Island City, New York (the "**LIC Concession**"), and from Defendants' corollary breaches of the parties' written brand-license, shareholder, and corporate governance agreements that have governed the operation of three authorized "Molly Tea" stores in New York since 2023.

2.      Shenzhen Molly Tea is the owner of record of the United States federal trademark registrations for the "Molly Tea" mark and is the licensor under a written Brand Authorization and Technical Service Cooperation Contract dated December 20, 2023 (the "**Brand License Agreement**") with Defendant MHL.  The Molly Tea brand is a popular, modern Chinese tea brand specializing in premium, floral scented milk teas.  The brand has thousands of stores worldwide, with a strong presence in the United States.

3.      Pursuant to the Brand License Agreement, the parties created the Joint Venture Entities to operate three "Molly Tea" stores in Flushing, Brooklyn, and Manhattan's Chinatown

2

(the "**Joint Venture Stores**").  For each of the Joint Venture Entities, Plaintiff Mollytea Shops holds a thirty-five percent (35%) "Brand Shareholder" interest and MHL holds a sixty-five percent (65%) "Investor Shareholder" interest.  The Joint Venture Entity Shareholder Agreements and Bylaws (collectively, the "**Shareholder Agreements**"), along with the Brand License Agreement, subjects the operation of any Molly Tea store to mandatory brand standards, supply-chain exclusivity, designated point-of-sale ("**POS**") systems, prior approval of all material decisions, and a "Brand Director" veto over operating standards, product specifications, and supply-chain matters.

4.      Beginning in late February 2026, Defendants embarked on a coordinated campaign to capture the goodwill of the Molly Tea brand for themselves outside the terms of the Brand License Agreement.  On February 26, 2026, Defendants cancelled a scheduled March 2, 2026 business meeting between the joint-venture partners and removed Plaintiffs' personnel from the WeChat group set up by the parties to administer the Joint Venture Stores.  On February 27, 2026, in a separate WeChat conversation with Plaintiffs' United States Headquarters Company Manager, Liu stated that MHL would not remit the outstanding $250,000 balance due by it under an existing Brooklyn Nets Sponsorship Agreement, and refused to bring the contemplated Columbia Store within the existing joint-venture framework.

5.      Defendants ignored Plaintiffs' repeated demands to bring the relationship into compliance with the contractual requirements, refused to provide financial reporting required by the Brand License Agreement, refused to remit any of the brand usage fees, brand security deposits, or management fees owed to Shenzhen Molly Tea, and proceeded, without Plaintiffs' permission or knowledge, to open the Columbia Store using the Molly Tea marks, trade dress, and reputation while operating entirely outside of the agreement between the parties.

3

6.    Compounding the unauthorized opening of the Columbia Store, Defendant Liu, through an entity he controls, Genesis, also caused one of the joint venture entities, Molly Tea NYC, to be pledged as a corporate guarantor on a separate, unauthorized food-court concession at 28-07 Jackson Avenue, Long Island City—the LIC Concession—all without Molly Tea's consent or approval, or any license or franchise authority from Plaintiffs.

7.    On May 1, 2026, due to MHL's many breaches, Shenzhen Molly Tea formally terminated the Brand License Agreement.  Notwithstanding the termination, Defendants continue to operate the Columbia Store and the three Joint Venture Stores using the "Molly Tea" marks, trade dress, and brand system, in flagrant violation of Plaintiffs' rights.

8.    Plaintiffs bring this action for:  (i) breach of contract under New York common law arising under the Brand License Agreement; (ii) breach of contract under New York common law arising under the Shareholder Agreements and Bylaws; (iii) conversion under New York common law; (iv) federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (v) federal trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114; (vi) common-law unfair competition under New York law; (vii) common-law trademark infringement under New York law; (viii) trademark dilution and injury to business reputation under New York General Business Law § 360-l; (ix) unfair competition and deceptive trade practices under New York General Business Law § 349; and  (x) breach of fiduciary duty under New York law against Defendants Lin and Liu, individually, in favor of Mollytea Shops as Brand Shareholder; (xi) breach of fiduciary duty under New York law against Defendants Lin and Liu, derivatively on behalf of the Joint Venture Entities; and (xii) declaratory judgment under 28 U.S.C. § 2201 voiding the LIC Corporate Guaranty as against Molly Tea NYC and confirming the termination of the Brand License Agreement and the absence of any continuing

4

authority of Defendants to use the Molly Tea Marks. Plaintiffs further seek declaratory and injunctive relief, including a preliminary and permanent injunction closing the Columbia Store and the three Joint Venture Stores, prohibiting the opening and operation of the LIC Concession, and ending Defendants' unauthorized use of the Molly Tea Marks at all locations. Damages are continuing and Plaintiffs' ability to police the quality and uniformity of goods sold under the Molly Tea Marks is being irreparably impaired with each day the unauthorized operations continue.

## THE PARTIES

**A.    Plaintiffs**

9.    Shenzhen Molly Tea is, and at all times relevant herein has been, a company organized and existing under the laws of the People's Republic of China, with its principal place of business in Shenzhen, Guangdong, China. Shenzhen Molly Tea is also rendered in certain translated documents as "Shenzhen Jasmine Milk White Catering Management Co., Ltd.", which is the literal English translation of 茉莉奶白, and both names denote the same legal entity. Shenzhen Molly Tea is the record owner of the United States federal Molly Tea trademark registrations described below and is the licensor under the Brand License Agreement. Biao Zhang is the founder of Shenzhen Molly Tea.

10.    Mollytea Shops is, and at all relevant times has been, a limited liability company organized and existing under the laws of the State of Delaware. Mollytea Shops is the vehicle through which Molly Tea participates in joint-venture operations of Molly Tea stores in the United States, including the three Joint Venture Stores in New York. Mr. Zhang is the Manager of Mollytea Shops. Mollytea Shops brings claims herein in its own right and derivatively on behalf of each of the three Joint Venture Entities/Nominal Defendants.

5

11.     Molly Tea Holding is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Delaware.  Molly Tea Holding is the holding company that holds Plaintiffs' direct ownership interests in U.S. company-operated (i.e., non-joint-venture) Molly Tea stores. Mr. Zhang is a director of Molly Tea Holding.

**B.     Defendants**

12.      MHL is, and at all relevant times has been, a limited liability company organized and existing under the laws of the State of New York with its principal place of business at 152-15 Jewel Avenue, Apt.175B, Flushing, New York 11367.  MHL is the licensee under the Brand License Agreement and is the 65% Investor Shareholder in each of the three Joint Venture Entities. Defendant Lin is the managing member of MHL.

13.     Molly Tea CU is a limited liability company organized and existing under the laws of the State of New York.  Upon information and belief, Molly Tea CU is wholly owned and controlled by some combination of Defendants Lin, Liu, and Xu.  Unlike the Joint Venture Entities, Plaintiffs have no shareholder interest in Molly Tea CU.

14.     Genesis is, and at all relevant times has been, a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 36-16 Main Street, Suite 605, Flushing, New York 11354.  Upon information and belief, Genesis is owned and controlled by Defendants Lin, Liu, and Xu.

15.     Mei Hui Lin is, and at all relevant times has been, an individual residing at 152-15 Jewel Avenue, Apt. 175B, Flushing, New York 11367.  Lin is the managing member of MHL, the President of each Joint Venture Entity, a personal guarantor of each Joint Venture Store lease, an individual guarantor of the LIC Concession Agreement, and a personal guarantor under the Columbia Guaranty.

6

16. Xiaozhe Liu, also known as Ziaozhe Liu is, upon information and belief, an individual residing at 68 Village Road, Manhasset, New York 11030. Liu is the operational principal of MHL. Liu executed the Brand License Agreement on behalf of MHL. In his capacity as director of each of the three Joint Venture Entities, Liu signed each of the Shareholder Agreements on behalf of MHL. Liu is also the president of Genesis and personally guaranteed the Long Island City Concession Agreement. Liu is also a member of Molly Tea CU.

17. Defendant Binbin Xu is, and at all relevant times has been, an individual residing at 80 Dekalb Avenue, Apt. 16K, Brooklyn, New York 11201. Upon information and belief, Xu is an owner and/or principal of Defendant Molly Tea CU LLC, is a personal guarantor under the Columbia Guaranty, and a personal guarantor on the LIC Concession Agreement.

**C.**     **Nominal Defendants**

18. Molly Tea NYC is a corporation organized and existing under the laws of the State of New York. It is the operating entity and tenant for the Joint Venture Store at 37-11C Prince Street, Flushing, New York 11354 (the "**Flushing Store**").

19. Molly Tea BK is a corporation organized and existing under the laws of the State of New York. It is the operating entity and tenant for the Joint Venture Store at 5909 8th Avenue, Brooklyn, New York 11220 (the "**Brooklyn Store**").

20. Molly Tea Manhattan Chinatown is a corporation organized and existing under the laws of the State of New York. It is the operating entity and tenant for the Joint Venture Store at 63 Mott Street, New York, New York 10013 (the "**Chinatown Store**").

### JURISDICTION AND VENUE

21. This Court has original and subject-matter jurisdiction over the federal trademark claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §1331. This Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a) as they form part of

the same case or controversy arising out of Defendants' unauthorized use of the "Molly Tea" marks at the Columbia Store, the LIC Concession, and the Joint Venture Stores, and Defendants' corresponding breaches of the parties' written agreements.

22. The Court has personal jurisdiction over each Defendant. Defendants Lin, Liu and Xu are domiciled in the State of New York. Defendants MHL NY LLC, Molly Tea CU LLC, and Genesis Brand Management LLC are each formed under and have their principal place of business in the State of New York.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including the unauthorized opening, build-out, advertisement, and operation of the Columbia Store at 2857 Broadway, New York, N.Y.

## **FACTUAL ALLEGATIONS**

### A. **The Molly Tea Brand and Plaintiffs' Trademark and Intellectual Property**

24. The "Molly Tea" brand is one of the leading premium milk-tea brands originating in Shenzhen, China and is recognized for, among other things, its "light milk tea" formulation, its distinctive Jasmine Milk White trade dress, its jasmine-forward menu, and its uniform store design. As of November 2025, Molly Tea has more than 2,000 stores worldwide, including locations in Australia, the United Kingdom, Thailand, Indonesia, Singapore, Canada, and the United States.

25. The Molly Tea brand is operated through a uniform, comprehensive set of design, operational, marketing, and quality-control standards, developed, maintained, and continually updated by Shenzhen Molly Tea and embodied in, among other things, Plaintiff's Authorized Business System Corporate Identity System (the "**Corporate Identity System**" or "**CIS**") and its "Authorized Business System."

8

26.     Both systems are defined in the Brand License Agreement. The CIS is " the unified system composed of the identifying symbols associated with the "Molly Tea" authorized business system and their carriers, including but not limited to trademarks, authorization certificates, store signage, packaging materials and packaging methods, utensils, trays and tray liners, equipment, distinctive exterior and interior designs (including decoration, ornamentation, color schemes, layouts, furniture, etc.), uniforms, advertisements and other promotional materials, documents, coupons, business cards, letterheads, and the like."

27.     The Authorized System is the unified "Molly Tea" authorized business system, including but not limited to, products, trademarks, service marks, store signage, copyrighted information and materials, distinctive exterior and interior designs (including decoration, ornamentation, color schemes and layouts), uniforms, advertising and promotions, training systems, operational systems, financial and accounting systems, information network systems, ERP software systems (including POS systems, sales cost systems, and transmission systems), proprietary technology systems, product manufacturing or procurement channels, distribution, and other business operation and management systems."

28.     Through strict adherence to these systems, consumers at authorized Molly Tea stores encounter a consistent experience characterized by uniform products, service standards, environment, and brand identity.

29.     Shenzhen Molly Tea is the originator and owner of the "Molly Tea" brand, including the CIS and the Authorized System, the Molly Tea Marks, the trade dress, the store design system, the recipes, the supply chain and the training materials.

30.     Shenzhen Molly Tea is the owner of record of U.S. Trademark Registration No. 8205316 covering, among other services, bubble tea shops, tea shops, cafe and restaurant services,

9

and franchise and business management services for milk tea shops, and U.S. Trademark Registration No. 7996117 for bubble tea shops, tea shops, eateries, bar services, cafe services, and restaurant services (collectively, the "**Registered Marks**").    The Registered Marks are valid, subsisting, and in full force and effect, reflecting Shenzhen Molly Tea's exclusive right to use the Molly Tea mark in commerce in connection with the goods and services identified therein.

31.    The Registered Marks reflect a First Use Anywhere date of February 15, 2021,which reflects the date when the goods were first sold or services first rendered under the mark in the ordinary course of trade in the United States or anywhere in the world, and a First Use in Commerce date of April 6, 2024, which is the date when the goods were first sold or transported, or services first rendered under the mark in a type of commerce lawfully regulated by U.S. Congress, and in the ordinary course of trade.  True and accurate copies of the U.S. Registration Certificates are annexed hereto as **Exhibit 1.**

32.    Shenzhen Molly Tea separately owns PRC Trademark Registration No. 50234810 for the mark for 茉莉奶白 (the "**Chinese Mark**").

33.    Shenzhen Molly Tea also owns common-law rights in the Molly Tea name and related trade dress based on its substantial, continuous, and prior use of the marks in commerce in New York and elsewhere in the United States, including through its licensees and affiliates.  Those common-law rights encompass the distinctive storefront design, ambient lighting, color schemes, ceiling treatments, interior layouts, and employee uniforms uniformly applied across every authorized Molly Tea location through the CIS.  Molly Tea's uniform and distinctive design results in a consistent and recognizable commercial impression, including a distinctive storefront appearance, interior trade dress, product presentation, and customer experience, that consumers associate exclusively with the "Molly Tea" brand.   The Registered Marks, together with these

10

common-law rights in the "Molly Tea" name and trade dress, are referred to herein collectively as the "**Molly Tea Marks**."

**B.      The Brand License Agreement and the New York Joint Venture**

34.      In 2023, Defendant Liu approached Molly Tea about expanding its United States presence to New York.  In order to do so, Liu required Molly Tea's capital and brand support.  Liu, along with the other individual defendants, established MHL for the express purpose of licensing the Molly Tea brand.

35.      On December 20, 2023, Shenzhen Molly Tea, as Licensor, and MHL, as Licensee," entered into the Brand License Agreement, granting MHL a "Single-Store License" to open up to five "Molly Tea" locations.  The Brand License Agreement was signed by Defendant Liu on behalf of MHL and stamped with the Shenzhen Molly Tea official seal.[1]  A true and accurate copy of the Brand License Agreement and Certified Translation is annexed hereto as **Exhibit 2**.  The Brand License Agreement is the sole contractual instrument under which MHL has any right to use the Molly Tea Marks or to operate any Molly Tea branded store in the United States.

36.      In connection with the license to operate up to five "Molly Tea" stores, the Brand License Agreement permits MHL the right to use:  (i) the Chinese Mark; (ii) the Molly Tea Brand; (iii) the CIS and Authorized System; (iv) Plaintiff's proprietary technology, including its formulas, process flows, technical specifications, and management and sales techniques; and (v) access to the Molly Tea operations manuals, together with the corresponding technical service, training and management support furnished by Plaintiff.

---

[1] In Chinese commercial practice, a document bearing a legitimate, registered, official company seal or "chop" is legally binding.  See Civil Code of the PRC Article 490 ("Where the parties conclude a contract in the form of a written agreement, the contract is formed at the time when the parties all sign, stamp, or put their fingerprints on the written agreement").

11

37.    The Brand License Agreement imposes economic obligations on MHL including a payment to Shenzhen Molly Tea of:  (i) a $15,000 brand usage fee; (ii) a $15,000 brand security deposit; and (iii) and a monthly management fee at the rate of two percent (2%) of each store's actual monthly net operating revenue. The agreement also contemplates other fees due to Shenzhen Molly Tea including training, new store selection, and engineering fees.

38.    The Brand License Agreement subjects MHL's operation of every authorized store to mandatory brand and quality control standards.  In part, the Brand License Agreement requires that: (i) each authorized store be designed and constructed in accordance with the CIS and requiring that surveying and design services, floor plan design, construction drawings, and renderings be conducted through a design firm designated by Plaintiff to ensure uniform physical appearance at each authorized location; (ii) all products be procured from Shenzhen Molly Tea's designated suppliers and all products sold strictly confirm to Molly Tea's product quality standards; (iii) all pricing, promotions, and marketing be set in accordance with Molly Tea's unified standards; (iv) MHL and its affiliates not establish or operate independent social media accounts, including but not limited to WeChat, Weibo, Xiaohongshu (RedNote), Instagram, Dianping, and other similar platforms without Shenzhen Molly Tea's express written consent; and (v) each authorized store be operated on the POS system designed by Shenzhen Molly Tea.

39.    The Molly Tea Marks, the CIS and the Authorized System, including the proprietary recipes and product specifications, the operations manuals, Plaintiff's designated POS and supply chain infrastructure, together constitute the brand assets that enable each Joint Venture Store to operate as a Molly Tea store.  Each of those assets were developed by Plaintiff since 2021 at substantial expense and belong to Plaintiff.  MHL was granted only a limited, conditional, and

12

revocable right to use those assets subject to compliance with the Brand License Agreement. As set forth further herein, MHL has repeatedly failed to comply with the agreement's requirements.

40.    The Brand License Agreement does not convey to MHL any independent rights to operate stores in the United States outside the brand-control framework set forth therein.

**C.    The Joint Venture Entities**

41.    Following execution of the Brand License Agreement, three New York Molly Tea stores were opened through a joint-venture structure between MHL, led by Defendants Lin and Liu, and Mollytea Shops. A separate New York operating entity was formed for each of the three stores: Defendants Molly Tea NYC, incorporated on October 12, 2023, Molly Tea BK, incorporated on May 31, 2024, and Molly Tea Manhattan Chinatown, incorporated on July 29, 2024. The parties entered into Shareholder Agreements and Bylaws for each of the three operating entities. True and accurate copies of the Shareholder Agreements and Bylaws are annexed hereto as **Exhibits 3, 4 and 5**.

42.    The duties imposed on MHL pursuant to the Brand License Agreement explicitly extended to the operation of the Joint Venture Stores.

43.    Pursuant to the Shareholder Agreements, Mollytea Shops holds a thirty-five percent (35%) interest in each of the Joint Venture Entities. MHL holds a sixty-five percent (65%) interest in each of the Joint Venture Entities.

44.     At or around the time the Shareholder Agreements were executed, Mollytea Shops made capital contributions of more than $600,000 to the Joint Venture Entities, including $362,916 to Molly Tea NYC and $238,651 to Molly Tea BK, plus additional contributions in brand-system support, training, and operational services.

45.    In his capacity as Director, Defendant Liu is the signatory on each of the Shareholder Agreements. By signing in that capacity, Liu personally bound himself as an officer

13

and director of each Joint Venture Entity to the duties of loyalty, care and good faith owed to the Joint Venture Entities and their shareholders, including the non-compete, confidentiality and corporate-opportunity provisions set forth in Article VI of the Shareholder Agreements.

46.     Each of the Joint Venture Entities entered into a multi-year commercial lease to operate a Molly Tea store in New York.  Specifically, (i) Molly Tea NYC. executed a lease on November 14, 2023 for the Flushing Store; (ii) on or about June 6, 2024, Molly Tea BK entered into a lease for the Brooklyn Store; and (iii) Molly Tea Manhattan Chinatown executed a lease on July 29, 2024 for the Chinatown Store.  Defendant Lin signed each of the leases in his capacity as President of the respective Joint Venture Entity and signed a personal guaranty in connection with each lease.  Plaintiffs had advance knowledge of, and approved, the signing of each of these leases.

47.     Pursuant to the Shareholder Agreements and Bylaws, Mollytea Shops is the "Brand Shareholder" with significant minority protections that Defendants have systematically violated, including, but not limited to:  (i) the right to designate one director (the "**Brand Director**") on the two-director board, removable only by the Brand Shareholder; (ii) that "no action by the Corporation may materially impair Brand Shareholder's rights under the License Agreement or the Bylaws without its prior written consent" (Bylaws Section 4.4); (iii) unanimous director approval for major financial decisions, including capital expenditures or debt over $20,000, the opening or closing of any stores, material modifications to the business plan, expansion of territory, entry into new markets, and entry into contracts with a term exceeding one (1) year or value exceeding $50,000 (Bylaws Section 4.15); (iv) the Brand Director's express approval for all matters relating to operating standards, product specifications, quality control, training, brand and marketing, store design and systems (including POS), and supply chain, including vendor selection, ingredient specifications and purchasing (Bylaws Section 4.16); and (v) the express

14

prohibition that no officer, agent or employee may bind the Corporation by any contract or engagement, or pledge its credit or render it liable for any purpose or for any amount, absent express board authorization (Bylaws Section 10.1).  Biao Zhang, as representative of Molly Tea Shops, LLC, is identified as the "director" in the signature blocks of the Bylaws for all three operating entities.

48.    The Shareholder Agreements further incorporate and reinforce the Brand License Agreement's brand standards, requiring each of the Joint Venture Entities to "comply with the terms of the License Agreement," including following Molly Tea's operating standards and utilizing only the point-of-sale and payment processing systems designated by Molly Tea.

49.     With respect to each of the Joint Venture Entities, Plaintiffs: (i) designated Chowbus as the POS system and provided copies of Plaintiff's operations manuals with the understanding that the operational systems would be strictly followed by MHL in operating the Joint Venture Stores.

50.    On September 3, 2025,  one of the Joint Venture Entities, Molly Tea NYC, entered into a sponsorship agreement with the operator of the Brooklyn Nets/Barclays Center (the "**Brooklyn Nets Sponsorship Agreement**"), under which Molly Tea NYC committed to a $500,000 first year sponsorship of the Brooklyn Nets.  Using capital provided by Molly Tea Shops, Molly Tea NYC paid $250,000 of that amount at execution and was obligated to remit the balance of $250,000 on October 1, 2025.  Defendants subsequently caused Molly Tea NYC to repudiate the Brooklyn Nets Sponsorship Agreement, refusing to pay the outstanding balance of $250,000 as detailed below.

**D.**    **The Columbia Store Lease and Good Guy Guaranty**

51.    On or about January 8, 2026, Molly Tea Holding, together with Defendants Lin and Xu, executed a Good Guy Guaranty (the "**Columbia Guaranty**") in connection with a then-

15

proposed lease for the Columbia Store at 2857 Broadway, New York, New York 10025. The Columbia Guaranty guaranteed obligations of the tenant under the Columbia lease. A true and accurate copy of the Columbia Guaranty is annexed hereto as **Exhibit 6**.

52.    Molly Tea Holding signed the Columbia Guaranty in reliance on the parties' then-existing joint-venture relationship and its understanding that the Columbia Store would be opened and operated as the next Joint Venture store, in compliance with the Brand License Agreement, and the then existing joint-venture framework. At the time the Columbia Guaranty was executed, Plaintiffs reasonably believed that the Columbia Store would be operated through the same joint-venture structure that governed the three existing Joint Venture Stores. Specifically, Plaintiffs believed that Molly Tea Shops and MHL would form a New York operating entity for the Columbia Store, which would be subject to a Shareholder Agreement with the same terms applicable to the three other Joint Venture Stores. Consistent with that understanding, and the terms of the Brand License Agreement, Molly Tea provided design services and approved a Columbia Store floor plan dated December 17, 2025. But Defendants did not intend on proceeding pursuant to the Brand License Agreement, the joint venture structure, or in good faith.

53.    Rather than proceeding as the parties had with the three existing Joint Venture Stores, Defendants Lin, Liu, and Xu unilaterally formed Molly Tea CU, which is wholly owned and controlled by Defendants, and operates entirely outside the joint venture structure and the requirements of the Brand License Agreement. Unlike the Joint Venture Entities, Plaintiff Mollytea Shops was not granted any equity interest in Molly Tea CU, nor was Plaintiff's prior written consent sought or obtained for its formation or operation.

54.    On information and belief, on or about January 9, 2026, and unbeknownst to Plaintiff , Molly Tea CU executed a lease for the Columbia Store as tenant. Plaintiffs did not

16

become aware of the lease signing until the Columbia Store's grand opening was marketed by the Defendants, as further set forth herein.  Despite multiple requests to Molly Tea CU, it has refused to provide a copy of the operative lease.

55.    At the time Molly Tea CU signed the lease, Defendants were on actual notice that they were not authorized to open or operate the Columbia Store unless and until the Columbia lease was signed in the name of a new joint entity within the joint venture framework that governed the other New York stores.  Defendants refused or were unwilling to do so, and took steps to open the Columbia store without Plaintiffs' authorization.

56.    Molly Tea CU is an alter-ego of Defendants Lin, Liu, Xu and MHL.  Molly Tea CU was formed and is operated as a vehicle by and through which Defendants have captured the benefits of the Molly Tea brand, including the brand's name, marks, reputation, and consumer goodwill, deliberately circumventing the contractual and corporate governance framework that governs all other authorized Molly Tea locations. Specifically: (i) Lin, Liu and Xu exercise common ownership and control over Molly Tea CU, with no meaningful separation between their personal conduct and the entity's operations; (ii) Molly Tea CU was formed specifically to evade the 65%/35% joint venture structure and the Brand Shareholder governance rights that would otherwise apply under the Shareholder Agreements and Bylaws; (iii) Molly Tea CU is, on information and belief, inadequately capitalized and has secured its inventory and other capital through unlawfully converting assets and inventory belonging to the Joint Venture Entities; and (iv) Molly Tea Holding was induced to provide its corporate credit support under the Columbia Guaranty, in connection with a store from which Plaintiffs were then entirely excluded and over which they exercise no ownership, governance, or brand oversight whatsoever, and which they

17

derive no compensation from.  Because Molly Tea CU is an alter-ego of Defendants, Molly Tea CU is bound by the Brand License Agreement.

57.    The formation and operation of Molly Tea CU constitutes multiple independent breaches of the Brand License Agreement by Defendants, including:  (i) creating a new operating entity outside the authorized structure without Shenzhen Molly Tea's approval, in violation of Section 6.3.3; (ii) creating a new operating entity beyond the scope of the authorization granted to MHL, in violation of Section 5.3.1; (iii) procuring product and supplies through unauthorized channels, and on information and belief, through the diversion of inventory and assets from the Joint Venture Entities in violation of Section 8.1; (iv) utilizing the POS platform Toast, rather than Plaintiff's designated POS system, Chowbus, without Plaintiff's knowledge or consent, depriving Plaintiff of the telemetry, financial oversight, and quality-control visibility that is expressly required, in violation of Section 10.2; (v) operating an Instagram account, @mollyteamood and @mollyteany, a RedNote account, 茉莉奶白纽约, and the commercial website "mollyteany.com," all without Plaintiff's consent, in violation of Section 10.7.4.

58.    Also, as described further herein, upon information and belief, Defendants used the inventory and assets of the Joint Venture Entities to capitalize, open and operate the Columbia Store.

59.    By operating outside the four corners of the Brand License Agreement and deviating from the agreed upon joint-venture framework, Defendants MHL, Lin, Liu, and Xu, extracted the credit support of Plaintiff Molly Tea Holding under the Columbia Guaranty while simultaneously capturing for themselves the benefits of the Molly Tea name, brand and reputation without the required approvals or oversight, and without any accountability to Plaintiffs, causing serious harm to the Molly Tea brand in the process.

18

**E.** **Defendants' Repudiation of the Joint Venture**

60.    Following the unauthorized lease signing for the Columbia Store and beginning in late February 2026, Defendants embarked on an unequivocal course of conduct breaching and/or repudiating the Brand License Agreement, the Shareholder Agreements, and the parties' joint-venture relationship.  On February 26, 2026, without warning, Defendants cancelled a scheduled March 2, 2026 business meeting between MHL and Molly Tea principals.  At the same time, Defendant Liu removed himself from a Molly Tea legal coordination WeChat group (the "**Legal Coordination Group**") and removed personnel associated with Plaintiffs from the designated Flushing Store WeChat group, both of which groups had, to that point, been used by the parties to coordinate the legal, operational, and brand-standard affairs of the Joint Venture Stores, and to ensure compliance with the Brand License Agreement.

61.    On February 27, 2026, in a separate WeChat conversation with Mr. Zhang, Defendant Liu stated that MHL refused to remit the outstanding balance under the Brooklyn Nets Sponsorship Agreement and, in sum and substance, that he would continue to operate all Joint Venture Stores "if permitted. If not let's talk resolution." As set forth further herein, MHL was not permitted to operate the stores in this manner nor did it take steps to "talk resolution." Defendants simply continued to operate the Joint Venture Stores, freezing Plaintiffs out, and using joint venture inventory and assets to expand its New York operations.

62.    Defendants' statements and actions in late February 2026 constituted an unequivocal repudiation of the joint-venture relationship, a freeze-out of Mollytea Shops from Joint Venture Store operations and recordkeeping in clear violation of the governing agreements, and a repudiation of the quality-control and brand-standards obligations owed to Plaintiffs under the Brand License Agreement and the Shareholder Agreements.

19

63.    On March 25, 2026, Plaintiff's representative, Yiding Sun, emailed Lin and Liu, copying Plaintiffs' senior management, with a written proposal to resolve Defendants' breaches. With respect to the Joint Venture Stores, Plaintiffs offered to (i) either take over all shares and continued operations of the stores or (ii) permit Defendants to continue operating the stores subject to Defendants executing certain required paperwork and producing comprehensive financial documentation regarding store activity, which had not been provided for months, within two weeks.

64.    With respect to the Columbia Store, Plaintiffs proposed that its headquarters would directly operate the contemplated store and offered MHL and/or Lin and Liu a minority equity participation in a new operating entity if they wished to be involved with same.  As part of the proposed settlement, Plaintiffs offered to assume the remaining obligations under the Brooklyn Nets Sponsorship Agreement, which MHL had expressed an inability to comply with.

65.    Lin responded the next day, rejecting each element of the proposal and instead demanded that (i) Plaintiffs continue subsidizing the Brooklyn Nets sponsorship obligation; (ii) compensate Defendants for any losses caused by what Lin characterized as "forced" demands to transfer equity in the Columbia Store and the LIC Concession; and (iii) provide written assurance that Plaintiffs would not interfere with Defendants' continued unilateral operation of the existing Joint Venture Stores.  This response confirmed that Defendants would not comply with the Brand License Agreement or the Shareholder Agreements, and would not agree to the resolution path offered by Plaintiffs.

66.    On March 27, 2026, Plaintiffs issued a written notice to all relevant overseas store operators, including MHL, regarding compliance with brand and operational standards at all Molly Tea stores.  The notice documented that since late 2025, Plaintiff's Compliance Department had

identified issues at certain stores, including unclear accounting records, non-standard financial management, and a failure to sign required legal documents in a timely manner.

67.     Pursuant to Plaintiff's financial reporting and supervision rights, and termination and remedy rights under the Brand License Agreement Sections 7.11, 9.1, 10.2, 12.2, 14.3, 14.4, 16.2, 16.3 and 16.10, the letter demanded, that MHL provide the requested information or face an indefinite closure until Plaintiff could complete a review of the store's historical legal and financial records and an operational assessment. A true and accurate copy of the March 27, 2026 email is annexed hereto as **Exhibit 7**.

68.     On March 30, 2026, Plaintiffs again contacted Defendant Liu to follow-up on the outstanding compliance items, advising that MHL's failure to comply would result in suspension of store operations.

69.     Defendants did not respond to Plaintiffs' emails or inquiries and, unbeknownst to Plaintiffs at the time, continued to advance the unauthorized opening of the Columbia Store. Based on MHL's failure to comply, on April 2, 2026, Shenzhen Molly Tea sent a notification to the three Joint Venture Stores, stating that operations at those stores would be suspended indefinitely effective 12:00 a.m. on April 3, 2026, as it had the right to do pursuant to the Brand License Agreement. The notice cited the affected stores' failure to communicate effectively with headquarters regarding required agreements and operational quality standards and stated that suspension was necessary to protect the brand's overall image and prevent further losses to both parties. A true and accurate copy of the April 2 Notice is annexed hereto as **Exhibit 8**.

70.     The April 2, 2026 suspension was a measured intermediate enforcement step intended to preserve the brand. However, Defendants failed to cure their behavior.

21

71.     Defendants Lin, Liu and MHL, as the parties holding day-to-day operational control over the three Joint Venture Stores, refused to comply with Plaintiff's directive and, rather than taking steps to rectify the breaches set forth in the notices, continued to operate the Joint Venture Stores without authorization.   Defendants' refusal to cure their breaches culminated in the unauthorized opening of the Columbia Store on April 17, 2026.

72.     On April 15, 2026, two days before opening the unlawful Columbia Store, MHL commenced an action against Plaintiffs in the Supreme Court of the State of New York, Queens County, Index Number 711066/2026 (the "**Queens Action**").   The Queens Action was a transparent attempt to enjoin Plaintiffs from exercising their contractual and statutory rights to prevent Defendants' continued unauthorized operations.  Its timing – two days in advance of the unauthorized Columbia Store opening and after Defendants had received the April 2, 2026 suspension notice – and its reliance on demonstrably false allegations, reflect that its primary goal was a bad faith shield to preempt enforcement action against the opening of the unauthorized store. The claims asserted herein arise under the Lanham Act and related state-law theories distinct from the issues raised in the Queens Action.

**F.      Defendants' Unauthorized Opening of the Columbia Store and Material Deviations from the Approved Columbia Design**

73.     On or about April 17, 2026, Defendants opened the Columbia Store to the public under the Molly Tea name, with an advertised grand-opening promotion, without the authorization of Plaintiffs, and in material non-compliance with the Brand License Agreement and Plaintiffs' brand standards.

74.     Section 6.4.3(f) of the Brand License Agreement states that "[a] Store may be opened only upon Party A[2]'s verification and approval.  If Party B opens the Store without Party

---

[2] Under the Brand License Agreement, "Party A" in Shenzhen Molly Tea and "Party B" is MHL.

22

A's prior consent, such act shall constitute a material breach of this Contract." Shenzhen Molly Tea never approved the opening of the Columbia Store, and it was not authorized by any written license, sublicense, franchise, or other agreement between Plaintiffs and Molly Tea CU, MHL, Lin, Liu, Xu or Genesis.

75.    Defendants did not obtain Plaintiffs' approval of the Columbia Store's buildout, signage, equipment, suppliers, menu, or grand-opening promotions, all of which were required under the Brand License Agreement.

76.    Section 6.4.3(b) of the Brand License Agreement provides: "In order to standardize Party A's brand image and service requirements, Party B agrees to entrust the Store's decoration works to the professional decoration and design companies designated by Party A, and Party B shall bear all decoration and design costs of the Store."

77.    Prior to the collapse of the joint-venture, Plaintiffs had reviewed and approved a floor plan, dated December 17, 2025, for the Columbia Store. The approved plan was never implemented as Molly Tea CU, Lin, Liu and Xu simply designed the store in the manner they desired to the detriment of the Molly Tea brand and Plaintiffs.  On or about April 17, 2026, a site inspection of the Columbia Store revealed the following six material deviations from Plaintiffs' approved design, in violation of Sections 5.7.2, 6.4.3, 7.1, 7.4, 8.3, 9.1, 14.2, 14.7 and 15.6 of the Brand License Agreement:

| Element | Approved Brand Standard | Columbia Store (April 17, 2026) |
|---|---|---|
| Storefront design | Unified size, front, and luminous effect standards with ambient light strips per approved drawings. | Not constructed per approved plans; storefront shape and ambient light strips missing. |
| Side sign logo | Side logo installed per plans. | Not installed; absent from site. |
| Storefront waterproof | Required. | Missing; awning not installed. |

23

| awning | | |
|---|---|---|
| Kitchen counter partition | Partition curtain required between kitchen and counter. | Not installed. |
| Ceiling treatment | Light-film ceiling design required. | Light film design not used; substituted with ordinary spotlights. |
| Ceiling-to-wall connection | Stepped design where ceiling meets wall. | Not executed per plans; no stepped design. |

78.  Each of these deviations impairs the brand value, consumer perception, and the distinctiveness of the Molly Tea Marks and trade dress.  These material deviations were undertaken by Defendants without Plaintiffs' required knowledge or consent.

79.  Also, Section 7.4 of the Brand License Agreement provides that "Party B shall, in accordance with Party A's instructions and regulations, hang and post unified advertisements, signboards, display boards, and other authorized marks within the Store."  This was not done; indeed, Molly Tea was not consulted with respect to signage because the store is unauthorized.

80.  Section 7.1 of the Brand License Agreement requires strict compliance with Shenzhen Molly Tea's standardized specifications: "Party B undertakes that, in the course of operation, it shall strictly comply with and implement Party A's standardized specifications, including service standards, operational procedures, sales processes, and work specifications formulated by Party A." Section 7.2 further provides that "Party A may, as required for the operation of the Store and the development of the 'Molly Tea' business system, continuously revise, improve, and provide to Party B the relevant standardized specifications . . . Party B undertakes to strictly implement the updated specifications."

81.  On the day of the Columbia Store opening, the store suffered from operational conditions inconsistent with ordinary Molly Tea retail operations and its standardized

24

specifications including: (a) repeated malfunctioning of the POS system at checkout, with the system repeatedly lagging or failing; (b) prospective customers being held at or near the entrance rather than being permitted to enter the store; and (c) defensive and guarded demeanor from staff toward customers, inconsistent with Molly Tea's typical customer-facing retail hospitality.

82. Section 9.1 of the Brand License Agreement ensures operational quality through compliance with Shenzhen Molly Tea's food-safety system and submission to its inspection: "Party A shall provide Party B with a complete set of system standards and regulations relating to food safety standardized management, and Party B agrees to strictly comply with and implement the same. Party B agrees that Party A shall have the right to supervise and inspect Party B's implementation of food safety standardized management at any time… Party A shall have the right to entrust third parties to conduct audits and inspections of Party B and may require Party B to bear all related audit and supervision costs." Clearly, none of this took place. Indeed, by removing Molly Tea personnel from the WeChat, Defendants took active steps to prevent supervision and oversight of not just the unauthorized Columbia store, but all stores.

83. Upon information and belief, none of the employees have obtained "the required certificates, including health certificates for practitioners and other relevant qualifications," as required by the Brand License Agreement, which requires that Plaintiff be provided with copies of all "relevant certificates, lease agreements, and other supporting documents."

84. Section 10.7.4 of the Brand License Agreement prohibits independent self-media accounts: "The Store is strictly prohibited from independently establishing any official self-media accounts on any platform, including but not limited to WeChat Official Accounts, Weibo accounts, Xiaohongshu accounts, or Dianping accounts. … Party B's daily WeChat operations shall be

25

conducted through Party A's corporate WeChat system, including but not limited to fan groups and related communications."

85.    As part of the Columbia Store opening, Defendant promoted and advertised the store through social-media channels not authorized by Plaintiffs, including the Instagram account @mollyteamood and the RedNote Account "茉莉奶白纽约 MollyTea NYC."  Each of these social-media accounts use the Molly Tea Marks and trade-dress without Plaintiffs' required authorization, in direct violation of the Brand License Agreement and Molly Tea's trademark rights.  As recently as May 6, 2026, Defendants were advertising and promoting the Columbia Store on the Instagram account @mollyteany.  As of the date of this Complaint, the mollyteany.com website, operated by Defendants, remained live and functional, and allowed for users to "order online" from the Columbia Store.

86.    Defendants posted, on those unauthorized social-media accounts, information regarding pricing, promotions and offerings at the Columbia Store that were never reviewed or approved by Plaintiffs.  For example, the Columbia Store's grand-opening campaign included a "buy one, get one free" promotion running from on or about April 17 through April 19, 2026, and a promotion offering the first one hundred customers a "Jasmine Needle King Tea Gift Box" valued at $24.99.  Additional unauthorized promotions included a 12% discount offer and a free magnet for customers purchasing two drinks, all of which were promoted through unauthorized social-media campaigns designed to engage influencers.  None of these actions were authorized by Plaintiffs, and they are inconsistent with Plaintiffs' pricing and promotional standards which are followed by the thousands of other Molly Tea stores in operation.

87.    Further, these actions are in direct violation of the Brand License Agreement, which expressly requires Plaintiffs' prior written approval of all pricing, promotions, and

26

marketing activity.  Section 7.8 of the Brand License Agreement provides that "The selling prices of the products shall be determined by Party A with reference to the prices of Party A's stores and taking into account local market conditions.  Party B shall not adjust such prices at its sole discretion."  The pricing at the Columbia Store was in clear contravention of this provision.

88.    Section 9.4 of the Brand License Agreement mandates the installation of monitoring systems and prohibits Plaintiffs' exclusion from supervision: "To strengthen food safety standardization management, Party B agrees to install monitoring systems in the Authorized Stores as required by Party A and accept Party A's supervision from time to time.  Without Party A's prior written consent, Party B shall not turn off the monitoring system, adjust the camera angles, or damage the monitoring system; otherwise, such conduct shall be deemed a material breach of this Contract." Defendants have operated the  Columbia Store entirely outside Plaintiffs' monitoring infrastructure.   Further, they have prevented Plaintiffs' supervisory access by removing Plaintiffs' personnel from the operational WeChat group and refusing further communications, in material breach of the Brand License Agreement.  Likewise, since April 3, 2026, the Joint Venture Stores have also been operated by MHL outside of Molly Tea's monitoring and supervisory infrastructure.

**G.    Defendants' Off-System Point-of-Sale and Supply-Chain Diversion**

89.    All authorized Molly Tea stores are required by the Brand License Agreement and the Shareholder Agreements, to use the designated POS system.  Article 10 of the Brand License Agreement, expressly provides that stores "shall use the POS system in accordance with [Licensor's] requirements and standards."  The designated system permits Plaintiffs to access store information, including sales data for purposes of royalty calculation, supply-chain management, and quality control.

27

90.     For each of the Joint Venture Stores, Chowbus, Inc. ("**Chowbus**") entered into a technology agreement with the operating Joint Venture Entity for use of its system.  Chowbus is a third-party restaurant technology company whose POS and payment processing platform allows for uniform restaurant operations management across multiple stores.  Specifically, the POS system routes transaction-level telemetry, such as sales, menu, pricing and SKU data, from each store directly to Molly Tea headquarters.  The transaction-level telemetry allows Molly Tea headquarters to make decisions regarding sales reporting, brand-compliance monitoring and revenue settlement at each Molly Tea branded location.

91.     Prior to the Columbia Store opening on April 17, 2026, Defendant Liu independently contracted with Toast, Inc. to install and use the Toast point-of-sale system at the Columbia Store, without notice to or approval from Plaintiffs.  The Toast POS system was installed at the Columbia Store as of its grand opening and remains in use.

92.     By installing and using a different POS system from the system utilized at all other authorized locations, Defendants thwarted Plaintiffs' ability to access sales data, depriving Plaintiffs of necessary transparency into store operations and other information required by the Brand License Agreement, and have deprived Plaintiffs of their royalty, supply-chain and data rights.

93.     Under Section 8.1 of the Brand License Agreement, "Party B shall complete the procurement of basic materials and equipment required for pre-opening of the Store in accordance with the procurement list provided by Party A or suppliers designated by Party A, no later than 60 days prior to the opening of the Store." Shenzhen Molly Tea, through their affiliate Mollytea Supplychain, LLC or a designated intermediate trader, supplies the materials and equipment for authorized Molly Tea stores.

28

94.    Further, Section 8.3 states that "All items used by Party B for business purposes that form part of the 'Molly Tea Authorized Identification System" [the CIS] shall be uniformly produced by Party A. Party B shall procure all such items from Party A and shall not privately produce them or procure them from any third party.  In the event of special circumstances, Party B shall submit a written application to Party A and may only produce or procure such items from a third party upon Party A's prior written approval." This designated supply arrangement ensures that every Molly Tea branded location receives the same authentic, quality-controlled products and that Plaintiffs are able to police the quality and uniformity of goods sold under the Molly Tea Marks.

95.    To Plaintiffs' knowledge, Defendants placed no procurement orders for the Columbia Store with Plaintiff's designated suppliers at any time before or after its April 17, 2026 opening.  The last designated supplier procurement order placed in connection with any Joint Venture Store was on January 22, 2026.  Thus, any product sold at the Columbia Store bearing the Molly Tea Marks was diverted from the Joint Venture Stores' inventory or sourced from unauthorized third parties.  In either event, this is a breach of the Brand License Agreement and serves to severely diminish the quality of the Molly Tea brand.

96.    Section 8.2 of the Brand License Agreement further reinforces Plaintiffs' control over the Licensee's supply chain providing that "Party B shall procure materials designated by Party A (as set out in the material list separately provided and updated from time to time by Party A) from suppliers designated by Party A."  It also provides that "[m]aterials and equipment purchased by Party B from suppliers designated by Party A or directly from Party A shall be used solely for providing services to customers within the Store under this Contract," and that, "[u]nless Party A's prior written consent is obtained, Party B shall not sell such materials or equipment to

29

any third party, use them at any other location, or use them for any other brand's products. Party B shall also not produce or use substitutes, nor procure such materials or equipment from any party other than Party A or Party A's designated suppliers. Any violation of the foregoing shall constitute material breach of this Contract." Defendants' operation of the Columbia Store on a non-designated supply chain, and their diversion of Plaintiffs' supplied materials and equipment from the Joint Venture Stores to the Columbia Store constitutes a material breach of Section 8.2.

97. No designated supply arrangement was ever extended to Molly Tea CU or the Columbia Store, nor was a supply-chain agreement ever reached or executed between Plaintiffs and Molly Tea CU. Indeed, Plaintiffs were never approached to enter into such an agreement before the Columbia Store opened unlawfully using the Molly Tea brand because the Defendants intended to conceal the opening from Plaintiffs until the last moment. As a result, the Columbia Store opened and is operating entirely outside Plaintiffs' designated supply chain. Defendants are either (i) sourcing non-authentic products from non-designated third parties and selling them to the consuming public under the "Molly Tea" brand without Plaintiffs' consent or quality control, and/or (ii) diverting product from the Joint-Venture stores to use at the Columbia Stores. In either scenario, Defendants are depriving consumers of authentic, quality-controlled Molly Tea goods, depriving Plaintiffs of supply-chain margin and royalty rights, and tarnishing the worldwide brand Molly Tea has cultivated.

98. By opening and operating the Columbia Store outside Plaintiffs' designated supply chain, on an unauthorized POS system, Defendants have caused, and continue to cause, consumers to receive counterfeit or substantially non-conforming Molly Tea goods, while simultaneously depriving Plaintiffs of the royalty, supply-chain, and quality-control rights that the parties' written agreements are designed to protect.

30

**H.** **The Unauthorized Long Island City Concession**

99.    On or about January 13, 2026, Defendant Genesis Brand Management LLC, doing business as Molly Tea 茉莉奶白  ("**Genesis**") entered into a Concession Agreement (the "**LIC Concession Agreement**") with The LIC Food Court LLC, the operator of a food court development at 28-07 Jackson Avenue, Long Island City, New York to operate a Molly Tea branded food court stall at the LIC Concession.  The LIC Concession Agreement provides for a ten-year term, fixed annual rent of $194,400 in Year 1 escalating to $227,420.52 in Year 5, percentage rent of ten percent of gross sales over a $162,000 base gross sales figure, and a $97,200 security deposit.  The LIC Concession Agreement was executed on Genesis's behalf by Defendant Liu as President of Genesis.  The LIC Concession Agreement is secured by a guaranty (the "**LIC Guaranty**") executed by Defendants Liu, Lin and Xu in their individual capacities, and Joint Venture Entity Molly Tea NYC as a corporate guarantor (the "**LIC Corporate Guaranty**"). A true and accurate copy of the LIC Concession Agreement and Guaranty is annexed hereto as **Exhibit 9**.  Plaintiff Mollytea Shops holds a 35% interest in the Joint Venture Entity Molly Tea NYC.

100.    Defendant Lin executed the LIC Corporate Guaranty in the name of Molly Tea NYC  without valid corporate authorization from the corporate form of that entity.  The guaranty is unconditional for the first thirty-six months of the LIC term, and converts thereafter to a "good guy" guaranty limited to rent for 180 days following surrender.

101.    Defendants' actions in pledging Molly Tea NYC's credit on the LIC Concession Agreement violated, among other provisions, the following sections of the Bylaws and SHA, each of which requires unanimous approval of all directors, including the Brand Director:  (i) approval of the opening or closing of any store (Bylaws Section 4.15(b)(c));  (ii) the incurrence of debt

exceeding $20,000 (Bylaws Section 4.15(a)(d));  (iii) approval of any contract with a term greater than one year or a value greater than $50,000 (Bylaws Section 4.15(b)(f); and (iv) the express prohibition that no officer, agent, or employee of the Corporation is authorized "to bind the Corporation by any contract or engagement or to pledge its credit or render it liable for any purpose or for any amount absent express board authorization (Bylaws Section 10.1).

102.    Moreover, Bylaws Section 4.4 prohibits any corporate action that materially impairs the Mollytea Shops' rights under the Brand License Agreement or Bylaws without the Brand Shareholder's prior written consent.  On information and belief, no board authorization exists for the LIC Corporate Guaranty.  The Brand Director never approved any guaranty in favor of LIC Food Court LLC, nor did the Brand Shareholder consent to the transaction.  The LIC Corporate Guaranty is therefore void and unenforceable as against Molly Tea NYC.

103.    The LIC Concession is not authorized by any written agreement with Plaintiffs. Genesis is not a signatory to the Brand License Agreement and has not been approved as a licensee of a Molly Tea store, including at the LIC Concession.

104.    In and through the LIC Concession Agreement, Defendants represented to The LIC Food Court LLC that Genesis was affiliated with, sponsored by, or authorized by Plaintiffs to operate a Molly Tea branded food court stall.  This representation is reflected on the face of the executed agreement.  Section 1 of the LIC Concession Agreement defines 'Vendor's Trade Name' as 'Molly Tea 茉莉奶白' and binds Genesis to operate exclusively under that trade name.  The 'Permitted Uses' provision in Section 1 expressly authorizes Genesis to operate the LIC Concession "in keeping with high quality food halls and Vendor's other locations in New York City", falsely representing to The LIC Food Court LLC that Genesis has other Molly Tea branded operating locations in New York City.  In fact, Genesis has no license , or other authority from

Plaintiffs to use the Molly Tea marks at any location, and Genesis has no authorized Molly Tea operating locations.

105. The unauthorized opening of the Columbia Store, and the unauthorized signing of the LIC Concession Agreement, reflect a coordinated pattern of conduct by Defendants Lin, Liu, and their affiliated entities, by which the Defendants have attempted to expand the Molly Tea brand outside of, and in derogation of, Plaintiff's license and brand-standards, while siphoning to themselves the goodwill, name recognition, credit support, and supply chain that Plaintiffs have built.

## I.    The Unlawful Operation of the Joint Venture Stores

106. The Joint Venture Stores have been operated by the Defendants in breach of the Shareholder Agreements and the Brand License Agreement.

107. Specifically, Defendants – acting through Lin and Liu – have caused the Joint Venture Entities to act in breach of the Shareholder Agreements and Bylaws, including by: (i) operating the Joint Venture Stores on an unauthorized POS system, outside Plaintiffs' designated supply chain, and under unauthorized social media accounts and promotional campaigns without the Brand Director's approval required under Bylaws Section 4.16; (ii) entering into material vendor and marketing engagements absent the unanimous director approval required under Bylaws Section 4.15; (iii) materially impairing Mollytea Shops' rights by, among other things, removing Plaintiffs' personnel from the Joint Venture's WeChat coordination groups, refusing financial reporting, and refusing audit and inspection access in violation of Bylaws Section 4.4; and (iv) causing the Joint Venture Entities to be bound to contracts and engagements absent the express board authorization required by Bylaws Section 10.1.

108. Section 9.6 of the Brand License Agreement provides: "Party B's Stores shall properly, sincerely, and diligently handle all complaints, opinions, and suggestions from

33

consumers.  Where consumer rights and interests are damaged, Party B shall issue an apology to the consumer and promptly take remedial measures, and shall not raise any objection thereto."

109.    The poor operation of the Joint Venture Stores has led to a deviation from the standard Molly Tea quality and a barrage of consumer complaints.  To Plaintiff's knowledge, the Defendants have entirely disregarded those complaints.

110.    Section 7.11 of the Brand License Agreement governs revenue recording and reporting: "Party B undertakes to calculate the daily revenue in the manner prescribed by Party A and to accurately record such data in the systems, reports, and accounting records designated by Party A," and "Party B undertakes that, upon completion of each business day, it shall upload the Daily Revenue Report and operational data to Party A through Party A's designated ERP system or by email." Section 7.11 further requires Plaintiff "to settle all outstanding accounts for the preceding month before the 5th day of each month and to provide financial reports to Party A in accordance with the methods and report formats prescribed by Party A," and "to retain monthly financial reports and to accept, at any time, inspections conducted by Party A or audits conducted by a third-party accounting firm designated by Party A."

111.    Upon information and belief, MHL has not calculated the daily revenue for the Joint Venture Stores, nor have they recorded it in the manner prescribed by Shenzhen Molly Tea. Alternatively, if MHL has calculated the daily revenue, those records have not been provided to Plaintiff in the manner set forth in the Brand License Agreement.  MHL has failed to settle all outstanding accounts since January of 2026 and has not provided financial reports since February 26, 2026 (which reports cover the period ending January 2026).  It has refused all requests made by Shenzhen Molly Tea to conduct audits or inspections of the financials and has failed to provide monthly financial reports for February 2026, March 2026, or April 2026.  Upon information and

34

belief, MHL is and has been retaining revenue beyond what is entitled to under the Shareholder Agreements and/or diverting it to the Columbia Store or the LIC Concession and taking steps to conceal its wrongdoing.

112.    MHL has also failed to pay the $15,000 brand usage fee, the $15,000 brand security deposit or the 2% management fees owed to Shenzhen Molly Tea under the Brand License Agreement.  Due to MHL's failure to provide Shenzhen Molly Tea with the required financial reports, Shenzhen Molly Tea does not have an accurate understanding of how much is presently owed to Shenzhen Molly Tea in unpaid management fees.

**J.        Termination of the Brand License Agreement**

113.    On May 1, 2026, Shenzhen Molly Tea formally terminated the Brand License Agreement by written notice to MHL, citing Defendants' material breaches as set forth above, including the unauthorized opening and operation of the Columbia Store; the unauthorized LIC Concession Agreement and pledge of Joint Venture Entity Molly Tea NYC's corporate credit; the diversion of Joint Venture inventory and assets; the use of unauthorized POS and supply-chain systems; the operation of unauthorized social-media accounts; the freeze-out of Plaintiffs from the Joint Venture Stores; and the failure to provide required financial reporting or to remit brand usage fees, brand security deposits, and management fees owed to Shenzhen Molly Tea.  The termination extinguished any and all rights of MHL, and of any alter-ego or affiliate of MHL (including Molly Tea CU and Genesis), to use the Molly Tea Marks, the CIS or Authorized Molly Tea System, including its operations manuals, proprietary recipes and product specifications, and the designated POS and supply-chain infrastructure.  A true and accurate copy of the May 1, 2026 Termination Notice is annexed hereto as **Exhibit 10**.

114.    Notwithstanding the termination, Defendants have refused to cease operations or to discontinue their use of the Molly Tea Marks, and continue to operate the Columbia Store and

35

each of the three Joint Venture Stores under the Molly Tea name, marks, trade dress, and brand system, in flagrant violation of Plaintiffs' rights, the Brand License Agreement, the Shareholder Agreements, and the Lanham Act.

115.    As of the date of this filing, all three Joint Venture stores remain open for business and Defendants continue to operate under the Molly Tea name.  Indeed, Defendants have co-opted the name as their own on social media.  Specifically, the Defendants operate and post on an unauthorized Instagram account, @mollyteany, that publicly identifies itself as "Molly Tea Official" and the account's public profile biography lists multiple locations operated under the Molly Tea name: Flushing, Brooklyn, Chinatown, Manhattan, Barclays, and Columbia.   In addition, Defendants control the commercial website mollyteany.com, which prominently uses the Molly Tea name and marks without Plaintiff's authorization.  As of the date of this Complaint, mollyteany.com remains a fully functional, live commercial website featuring an "order online" button that allows consumers to place orders at the three Joint Venture Stores.

116.    Each day that Defendants' unauthorized operations continue, Plaintiffs lose further control over the reputation, goodwill, and quality of goods and services sold under the Molly Tea Marks, and the consuming public is exposed to non-conforming, non-authorized goods and services bearing the Molly Tea Marks.

**K.    <u>Irreparable Harm to Plaintiffs</u>**

117.    Defendants' ongoing unauthorized use of the Molly Tea Marks, trade dress, and brand system at the Columbia Store, in unauthorized promotions, on unauthorized social-media accounts, on an off-system POS, and outside of Plaintiffs' designated supply chain is causing, and will continue to cause, Plaintiffs to lose control over the reputation, goodwill, and quality of goods and services sold under the Molly Tea Marks.

36

118. Plaintiffs cannot (i) verify that the products being sold at the Columbia Store or the LIC Concession (to the extent it is operating) conform to Molly Tea recipes, ingredient specifications, or quality standards; (ii) cannot police the pricing or promotional environment; (iii) cannot reach the consumer transaction data necessary to enforce the Brand License Agreement or the Shareholder Agreements; and (iv) cannot ensure that the consumer experience at the Columbia Store or LIC Concession is consistent with the consumer experience at authorized Molly Tea locations.

**FIRST COUNT**
**Common Law Breach of Contract under New York Law – Brand License Agreement –**
**Against MHL and Molly Tea CU**

119. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

120. On or about December 20, 2023, Shenzhen Molly Tea and MHL entered into the Brand License Agreement.

121. The Brand License Agreement governs MHL's limited license to use the Molly Tea brand and imposes, inter alia, the following obligations on MHL:

> a. to construct and operate stores strictly in accordance with Shenzhen Molly Tea-approved design specifications;
>
> b. to use only Shenzhen Molly Tea-designated suppliers, ingredients, and product specifications;
>
> c. to utilize Shenzhen Molly Tea-mandated POS systems;
>
> d. to obtain prior approval for pricing, promotions, and marketing;
>
> e. to refrain from operating unauthorized social media accounts;
>
> f. to source inventory exclusively through designated supply channels;
>
> g. to limit store development to approved locations and quantities; and

37

h.  to pay required brand usage fees, deposits, and management fees.

122.    Shenzhen Molly Tea has fully performed its obligations under the Brand License Agreement.

123.    As set forth above, Molly Tea CU is the alter-ego of MHL.

124.    MHL and Molly Tea CU materially breached the Brand License Agreement by, *inter alia*, opening and operating the Columbia Store, and contracting for the LIC Concession without authorization or approval by Shenzhen Molly Tea, using an unauthorized POS system; sourcing and procuring inventory from outside of the designated supply chain; operating unauthorized social media and marketing channels; failing to comply with design, branding, and operational standards; failing to provide required financial reporting and access for audit; refusing to communicate and cooperate with Shenzhen Molly Tea regarding compliance; and failing to pay required contractual fees.

125.    These breaches were material and go to the essence of the Brand License Agreement, depriving Shenzhen Molly Tea of the benefit of its bargain, including the ability to maintain brand integrity, quality control, and system uniformity.

126.    As a direct and proximate result of MHL and Molly Tea CU's breaches, Shenzhen Molly Tea has suffered damages, in an amount to be determined at trial, that are or will be in excess of Five Million Dollars, including but not limited to harm to brand goodwill, loss of contractual revenues, and impairment of trademark rights.

### SECOND COUNT
**Common Law Breach of Contract under New York Law – Shareholder Agreements – Against MHL**

127.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

38

128. Mollytea Shops, MHL, and Nominal Defendants entered into the Shareholder Agreements.

129. The Shareholder Agreements require, among other things, that MHL and the Nominal Defendant operating entities:

      a. comply with the Brand License Agreement;

      b. adhere to brand and operational standards established by Molly Tea;

      c. utilize designated systems, suppliers, and processes; and

      d. operate subject to oversight and approval rights of the Brand Shareholder, i.e. Mollytea Shops.

130. Plaintiffs performed all of their obligations under the Shareholder Agreements.

131. MHL breached the Shareholder Agreements, including by:

      a. refusing to comply with brand and operational standards;

      b. excluding Mollytea Shops from operational communications and governance processes;

      c. failing to provide financial transparency and required reporting; and

      d. diverting resources and opportunities away from the Joint Venture Entities.

132. These breaches constitute material violations of the Shareholder Agreements and undermine the joint venture structure agreed upon by the parties.

133. As a result, Mollytea Shops, individually, and Nominal Defendants, on whose behalf Mollytea Shops also sues, have suffered damages in an amount to be determined at trial that are or will be in excess of Five Million Dollars.

39

**THIRD COUNT**
**Common Law Conversion under New York Law – By All Plaintiffs, Directly, and Mollytea
Shops, Derivatively on Behalf of the Joint Venture Entities  – Against All Defendants**

134.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth
herein.

135.    At all relevant times, Mollytea Shops and Nominal Defendants have had a
possessory right and ownership interest in the Molly Tea inventory and products, including tea
bases, flavor concentrates, proprietary recipes, packaging, marketing materials, and other materials
bearing the Molly Tea Marks and trade dress that are contractually authorized for use in the Joint
Venture Stores.

136.    Upon information and belief, the Defendants, without authorization, have exercised
dominion and control over the aforementioned by wrongfully taking possession of Molly Tea's
inventory and products in order to divert it from the Joint Venture stores to the Columbia Store
and/or themselves.  Upon information and belief, Defendants have used, consumed, transferred,
or otherwise exercised dominion over Plaintiffs' supplied inventory and Molly Tea branded
materials in connection with the Columbia Store and the Joint Venture Stores, in each case outside
the requirements of the Brand License Agreement and without Plaintiffs' consent.

137.    On and after the termination of the Brand License Agreement on May 1, 2026,
Defendants' continued to use Plaintiffs' supplied inventory and Molly Tea-branded materials at
the Columbia Store, the LIC Concession, and the three Joint Venture Stores without authorization.
This constitutes a continuing conversion of Plaintiffs' property.

138.    To the extent MHL initially obtained possession lawfully, Mollytea Shops has
made a demand for the return of the aforementioned property and MHL has refused to return it.

40

139.    As a result, Mollytea Shops and Shenzhen Molly Tea, individually, and Nominal Defendants, on whose behalf Mollytea Shops also sues, have suffered damages in an amount to be determined at trial, including the value of the property and consequential damages.

140.    MHL's conduct was willful, intentional, and in reckless disregard of the rights of Mollytea Shops and Nominal Defendants, entitling the same to punitive damages.

<u>**FOURTH COUNT**</u>
**Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) – Against All Defendants**

141.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

142.    Plaintiffs own rights in the Molly Tea Marks, including but not limited to the Registered Marks, and the inherently distinctive and/or acquired-distinctive trade dress, store-design system, and the CIS used in connection with authorized Molly Tea stores.

143.    Defendants' operation of the Columbia Store and the LIC Concession, to the extent it operates, using the Molly Tea trade identity, including its trade name, signage, store design, menu presentation, packaging, social-media branding, and advertising, constitutes a false designation of origin and a false or misleading representation of fact that is likely to cause confusion, to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs.

144.    On May 1, 2026, Plaintiff Shenzhen Molly Tea terminated the Brand License Agreement, thereby extinguishing any rights of MHL and its alter-egos and affiliates to use the Molly Tea Marks, trade dress, CIS, and Molly Tea's Authorized System.

145.    Defendants' continued operation of the three Joint Venture Stores under the Molly Tea name, marks, trade dress, store-design system, and brand identity is thus likewise without

41

authorization, and constitutes a false designation of origin and a false or misleading representation of fact under 15 U.S.C. § 1125(a) that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs and as to Plaintiffs' sponsorship or approval of Defendants' goods, services, and commercial activities.

146. Each day the Columbia Store, the Joint Venture Stores, and the LIC Concession remain open under the Molly Tea name, the universe of consumers who associate the Molly Tea Marks with non-conforming, non-authorized products and a non-conforming retail environment expands, eroding the brand goodwill that Plaintiffs' exclusive trademark rights are designed to protect.

147. Defendants have misused the Molly Tea Marks, including its trade dress, store design system, recipes, proprietary know-how, supply chain, and training materials.

148. Defendants' continued use of the Molly Tea Marks has caused, and will continue to cause, mistake and/or confusion in the marketplace in the minds of actual and potential customers and lead them to believe that the Columbia Store is part of the Molly Tea system and that its products are those of the Plaintiffs' and/or the Molly Tea system and that such products are an authorized Molly Tea licensee/franchisee.

149. Use by Defendants of the Molly Tea Marks for its goods constitutes unfair competition under the Lanham Act.

150. Defendants deliberately attempted to trade upon the goodwill of Plaintiffs and the Molly Tea system by selling and advertising its goods as official Molly Tea goods.

151. Defendants' conduct constitutes fraud and deceit upon the consuming public in the United States.

42

152. Defendants' conduct has resulted and will continue to result in the loss of Molly Tea's goodwill and has caused and will continue to cause Plaintiffs irreparable injury.

153. Plaintiffs have no adequate remedy at law. Plaintiffs' injury is continuing, irreparable, and incapable of being adequately compensated by money damages alone. Only injunctive relief, including the immediate closure of the Columbia Store, the Joint Venture Stores, and the LIC Concession, and the prohibition of the use of the Molly Tea Marks by Defendants at those stores, can prevent further harm.

154. Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116, 1117, and 1125(a).

## FIFTH COUNT
### Trademark Infringement and Unfair Competition under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114 – Against All Defendants

155. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

156. Shenzhen Molly Tea is the owner of valid, subsisting, and federally registered trademarks for the Molly Tea word mark and design, including the Registered Marks, each of which constitutes *prima facie* evidence of the validity of the Registered Marks, Shenzhen Molly Tea's ownership of them, and Shenzhen Molly Tea's exclusive right to use the Registered Marks in commerce.

157. Defendants, without the consent of Plaintiffs, have used and continue to use in commerce reproductions, copies, and colorable imitations of the Registered Marks in connection with the sale, offering for sale, distribution, and advertising of goods and services at the Columbia

Store and the LIC Concession, on unauthorized social-media accounts, on off-system POS, and in unauthorized promotions, in a manner likely to cause confusion, mistake, or deception.

158.    On and after May 1, 2026, following Shenzhen Molly Tea's termination of the Brand License Agreement, Defendants no longer hold any license, sublicense, franchise, or other consent or authority from Plaintiffs to use the Registered Marks. Defendants' continued use in commerce of the Registered Marks at the three Joint Venture Stores on and after that date is therefore likewise without Plaintiffs' consent and constitutes a separate, ongoing infringement of the Registered Marks under 15 U.S.C. § 1114.

159.    Defendants have engaged in such conduct with full knowledge of Plaintiffs' rights in the Registered Marks and with the intent to cause confusion, mistake, or deception.

160.    Defendants' conduct has caused, and will continue to cause, irreparable injury to Plaintiffs and to the goodwill and reputation symbolized by the Registered Marks, for which Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

<u>SIXTH COUNT</u>
**Common Law Unfair Competition under New York Law – Against All Defendants**

161.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

162.    The Molly Tea Marks are known and recognized by consumers throughout the New York City metropolitan area, New York State, and the broader United States, and Plaintiffs' rights in and to the Molly Tea Marks are entitled to protection.

163.    By incorporating the Molly Tea brand system, including the Molly Tea Marks, the CIS and the Authorized System, including Molly Tea's proprietary recipes, designated supply

44

chain, and the Molly Tea name into the Columbia Store and the LIC Concession, including in their appearance, products, and advertising, Defendants have wrongfully and without authorization traded upon and taken advantage of the recognition, goodwill, and business reputation that Plaintiffs have developed in connection with  Molly Tea over years of effort.

164.    On and after May 1, 2026, Defendants' continued operation of the three Joint Venture Stores under the Molly Tea name, marks, trade dress, and brand system is wholly unauthorized, and likewise constitutes common law unfair competition under New York law in that Defendants are continuing to trade upon and exploit Plaintiffs' goodwill, recognition, and business reputation in the Molly Tea brand absent any license or authority from Plaintiffs.

165.    Defendants' use of the Molly Tea brand in and through the Columbia Store, the Joint Venture Stores, and the LIC Concession is willful and intended to and does cause, and will continue to cause, confusion, mistake, or deception as to the sponsorship or approval of Defendants' commercial activities at the Columbia Store, the Joint Venture Stores and the LIC Concession in that actual and potential consumers and others are likely to wrongly believe that Plaintiffs have sponsored, approved, or authorized Defendants' commercial activities at the Columbia Store, the Joint Venture Stores, and the LIC Concession, or is in some other manner affiliated with Defendants' commercial activities at the Columbia Store, the Joint Venture Stores, and LIC Concession, all causing Plaintiffs irreparable harm and injury.

166.    Because of the confusion as to the sponsorship or approval of Defendants' conduct, the valuable good will and business reputation associated with the Plaintiffs and the Molly Tea Marks is at the mercy of Defendants.

167.    Defendants have engaged in this unlawful conduct in bad faith, as evidenced by the fact that Defendants opened and continue to operate the Columbia Store after having:  (a) never

45

obtained authorization or approval from Plaintiffs for the use of the Molly Tea Marks; (b) repudiated Defendants' obligations under the Brand License Agreement and the Shareholder Agreements; (c) purporting to terminate the Joint Venture, refused to honor the existing Brooklyn Nets sponsorship obligation, and abandoned the parties' contemplated U.S. corporate path; (d) ignoring Plaintiffs' repeated demands to bring the relationship into compliance; (e) and removing Plaintiffs' personnel from communications platforms used to administer the Joint Venture.

168. Defendants' acts and conduct complained of herein constitute common law unfair competition in violation of New York law.

169. Defendants' unlawful actions have injured and will continue to injure Plaintiffs irreparably and have caused Plaintiffs to suffer substantial damages in an amount to be determined at trial, that are or will be in excess of Five Million Dollars. Defendants' conduct was willful, intentional, and undertaken in bad faith, entitling Plaintiffs to punitive damages.

## SEVENTH COUNT
**Common Law Trademark Infringement under New York Law – Against All Defendants**

170. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

171. Through their substantial, continuous, and exclusive use, advertising, and promotion of the Molly Tea Marks in commerce, Plaintiffs have developed and own valid and protectable common law rights in the Molly Tea Marks in the State of New York, which marks have come to be associated exclusively in the minds of consumers with Plaintiffs and the authorized Molly Tea system.

172. Defendants' unauthorized use of the Molly Tea Marks, including in the Columbia Store and LIC Concession's trade name, store design, products, packaging, social-media presence, and advertising, is likely to cause, has caused, and is causing confusion, mistake, or deception

46

among the consuming public as to the source, sponsorship, affiliation, or approval of Defendants' goods and services.

173. On and after May 1, 2026, Defendants' continued use of the Molly Tea Marks at the three Joint Venture Stores is likewise likely to cause, has caused, and is causing confusion, mistake, or deception among the consuming public, and likewise constitutes trademark infringement under the common law of the State of New York.

174. Defendants' acts constitute trademark infringement under the common law of the State of New York and have been undertaken willfully, with full knowledge of Plaintiffs' rights, and with the intent to trade upon the goodwill and reputation associated with the Molly Tea Marks.

175. Plaintiffs have no adequate remedy at law.

176. Defendants' conduct has caused, and will continue to cause, irreparable injury to Plaintiffs, and Plaintiffs are entitled to injunctive relief and damages in an amount to be determined at trial in excess of Five Million Dollars, together with punitive damages by virtue of Defendants' willful and bad-faith conduct.

**EIGHTH COUNT**
**Trademark Dilution and Injury to Business Reputation under N.Y. Gen. Bus. L. § 360-l –**
**Against All Defendants**

177. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

178. The Molly Tea Marks, including Molly Tea's trademarks and trade dress, are known and recognized by consumers throughout the New York City metropolitan area, New York State, and the broader United States, and Plaintiffs' rights in and to the Molly Tea Marks are entitled to protection as a result.

179. By incorporating parts of the CIS into the Columbia Store, including Molly Tea's appearance, products, and advertising, Defendants have wrongfully and without authorization

47

traded upon and taken advantage of the recognition, goodwill, and business reputation that Plaintiffs have developed in connection with its own name over years of effort.

180.    Defendants' use of "Molly Tea" in the Columbia Store's trade name, appearance, products, and advertising is willful and intended to and does cause, and will continue to cause, confusion, mistake, or deception as to the sponsorship or approval of Defendants' commercial activities at the Columbia Store in that actual and potential consumers and others are likely to wrongly believe that Plaintiffs have sponsored, approved, or authorized Defendants' commercial activities at the Columbia Store, or is in some other manner affiliated with Defendants' commercial activities at the Columbia Store, all causing Plaintiffs irreparable harm and injury.

181.    Because of the confusion as to the sponsorship or approval of Defendants' conduct, the valuable good will and business reputation associated with the Plaintiffs and the Molly Tea Marks is at the mercy of Defendants.

182.    The Molly Tea Marks are inherently distinctive and have acquired distinctiveness and substantial recognition among consumers throughout the State of New York and the New York City metropolitan area as a result of Plaintiffs' long, continuous, exclusive, and extensive use, advertising, and promotion of the Molly Tea Marks.

183.    Defendants' unauthorized use of the Molly Tea Marks at the Columbia Store and the LIC Concession, on unauthorized social-media accounts, on off-system POS, and outside Plaintiffs' designated supply chain has caused and is causing dilution of the distinctive quality of the Molly Tea Marks by blurring the unique association of the Molly Tea Marks with Plaintiffs as the exclusive source of authorized Molly Tea goods and services.

184.    On and after May 1, 2026, Defendants' continued use of the Molly Tea Marks at the three Joint Venture Stores, absent any license or other authorization from Plaintiffs following

48

Shenzhen Molly Tea's termination of the Brand License Agreement, likewise dilutes the distinctive quality of the Molly Tea Marks and tarnishes Plaintiffs' business reputation in further violation of N.Y. Gen. Bus. Law § 360-l, in that the Joint Venture Stores are being operated without Plaintiffs' quality control, supervision, supply-chain oversight, or financial transparency.

185.    Defendants' unauthorized use of the Molly Tea Marks has further caused and is causing injury to Plaintiffs' business reputation and the Molly Tea Marks, in that Defendants are operating the Columbia Store and the LIC Concession in a manner that does not conform to Plaintiffs' recipes, ingredient specifications, quality standards, pricing controls, or consumer-experience standards, exposing the consuming public to non-conforming, non-authorized goods and services bearing the Molly Tea Marks.

186.    Defendants' acts and conduct complained of herein constitute trademark dilution and injury to business reputation in violation of N.Y. Gen. Bus. Law § 360-l, entitling Plaintiffs to injunctive relief and, in light of Defendants' willful intent to trade upon Plaintiffs' reputation, damages and such other relief as the Court deems appropriate.

187.    Defendants' unlawful actions have injured and will continue to injure Plaintiffs irreparably and have caused Plaintiffs to suffer substantial damages in an amount to be determined at trial, that are or will be in excess of Five Million Dollars.  Defendants' conduct was willful, intentional, and undertaken in bad faith, entitling Plaintiffs to punitive damages.

**NINTH COUNT**
**Unfair Competition and Deceptive Trade Practices under N.Y. Gen. Bus. L. § 349 –
Against All Defendants**

188.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

189.    Defendants' operation of the Columbia Store and the LIC Concession using the Molly Tea trade identity, including its trade name, signage, store design, menu presentation,

49

packaging, social-media branding, and advertising, constitutes a false designation of origin and a false or misleading representation of fact that is likely to cause material confusion, mistake, or deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs.

190.    On and after May 1, 2026, Defendants' continued operation of the three Joint Venture Stores under the Molly Tea trade identity following Shenzhen Molly Tea's termination of the Brand License Agreement, and absent any license or other authority from Plaintiffs, likewise constitutes a consumer-directed unfair, deceptive, and misleading act or practice in violation of N.Y. Gen. Bus. Law § 349, in that consumers are misled into believing that products sold at the Joint Venture Stores are authentic, quality-controlled Molly Tea goods made and sold under Plaintiffs' supervision when they are not.

191.    Defendants' conduct was directed at consumers and constitutes a fraud and deceit upon the consuming public in New York State and the United States.

192.    Each day the Columbia Store, the Joint Venture Stores, and the LIC Concession remain open under the Molly Tea name, the universe of consumers who associate the Molly Tea Marks with non-conforming, non-authorized products and a non-conforming retail environment expands, eroding the brand goodwill that Plaintiffs' exclusive trademark rights are designed to protect.

193.    Defendants' unlawful actions have injured and will continue to injure Plaintiffs irreparably and have caused Plaintiffs to suffer substantial damages in an amount to be determined at trial, that are or will be in excess of Five Million Dollars.  Defendants' conduct was willful, intentional, and undertaken in bad faith, entitling Plaintiffs to punitive damages.

50

**TENTH COUNT**
**Breach of Fiduciary Duty under New York Law – Direct – Against Lin and Liu**

194.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

195.    Defendant Liu, in his capacity as a director of each of the Joint Venture Entities owes fiduciary duties of loyalty, care, and good faith to those entities and to each shareholder, including Mollytea Shops as the Brand Shareholder.

196.     Defendant Lin, in her capacity as President of each Joint Venture Entity, likewise owes fiduciary duties of loyalty, care, and good faith to those entities and to Mollytea Shops as the Brand Shareholder.

197.    Lin and Liu have breached those duties to Mollytea Shops, including by, among other things: (a) usurping a corporate opportunity belonging to the Joint Venture by diverting the Columbia Store to Molly Tea CU, an entity wholly owned and controlled by Defendants and outside the 35%/65% Brand Shareholder/Investor Shareholder structure; (b) causing Joint Venture Entity Molly Tea NYC to be pledged as corporate guarantor on the LIC Concession Agreement absent the unanimous director approval required by Bylaws Sections 4.4, 4.15, and 10.1, and absent the Brand Director's consent; (c) causing Molly Tea NYC to repudiate the Brooklyn Nets Sponsorship Agreement, abandoning the $250,000 outstanding payment obligation and exposing the Joint Venture Entity to material breach-of-contract liability and reputational harm; (d) diverting Joint Venture inventory, supplies, and operating assets to Molly Tea CU, the Columbia Store, Genesis, and the LIC Concession; (e) removing Mollytea Shops' representatives from the Joint Venture's WeChat coordination groups and refusing to communicate with Mollytea Shops regarding Joint Venture operations, governance, financials, and brand-compliance matters; (f) withholding required financial reporting and refusing to permit Plaintiffs' audit and inspection

51

rights under the Shareholder Agreements and Brand License Agreement; (g) continuing to operate the Joint Venture Stores after April 3, 2026 in defiance of Plaintiff's lawful directive to suspend operations pending compliance review; and (h) continuing to operate the Joint Venture Stores after May 1, 2026 without any license or authority to use the Molly Tea name, marks, CIS or Molly Tea's Authorized System, exposing the Joint Venture Entities to direct trademark-infringement and unfair-competition liability.

198.    In committing the foregoing breaches, Lin and Liu acted in bad faith and for their own self-interest in conflict with the interests of Mollytea Shops as Brand Shareholder, and with knowledge of, and in willful disregard of, the Brand Shareholder protections, the Brand Director consent rights, and the unanimous-approval requirements set forth in the Shareholder Agreements and Bylaws.

199.    As a direct and proximate result, Mollytea Shops has suffered damages in an amount to be determined at trial, including loss of its 35% Brand Shareholder participation in the Columbia Store, dilution of its participation in the Joint Venture, loss of brand-control rights, and consequential damages, in excess of Five Million Dollars.  Lin's and Liu's conduct was willful, intentional, and in bad faith, entitling Mollytea Shops to punitive damages.

<u>**ELEVENTH COUNT**</u>
**Breach of Fiduciary Duty under New York Law – By Mollytea Shops, Derivatively on Behalf of the Joint Venture Entities – Against Lin and Liu**

200.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

201.    Mollytea Shops brings this count derivatively, in its capacity as a 35% shareholder of each Joint Venture Entity, on behalf of the Joint Venture Entities.

202.    Demand on the boards of the Joint Venture Entities is excused as futile.  Lin and Liu, together with their affiliated Investor Shareholder MHL, effectively control each Joint

52

Venture Entity and are the very persons whom the Joint Venture Entities would be asked to sue. Lin and Liu have, as alleged above, frozen Mollytea Shops out of Joint Venture governance, refused to communicate with Mollytea Shops or its representative Mr. Zhang regarding Joint Venture matters, expelled Mollytea Shops' personnel from the Joint Venture's coordination platforms, and acted in their own self-interest and against the interests of the Joint Venture Entities. Lin and Liu cannot disinterestedly consider a demand to bring suit against themselves.

203.    As officers and directors of the Joint Venture Entities, Lin and Liu owe each entity fiduciary duties of loyalty, care, and good faith.

204.    Lin and Liu have breached those duties to the Joint Venture Entities, including by, among other things: (a) causing Molly Tea NYC to be pledged, without valid corporate authorization, as corporate guarantor on the LIC Concession Agreement, exposing it to a ten-year, multi-million-dollar guaranty obligation that confers no benefit on the entity; (b) causing Molly Tea NYC to repudiate the Brooklyn Nets Sponsorship Agreement, exposing it to material breach-of-contract liability for the $250,000 unpaid balance and to the loss of the goodwill and brand-association value of that high-profile sponsorship; (c) diverting Joint Venture inventory, supplies, and operating assets to Molly Tea CU and Genesis for use at the unauthorized Columbia Store and LIC Concession, and/or to themselves individually, depriving the Joint Venture Entities of those assets; (d) operating the Joint Venture Stores outside Plaintiffs' designated POS, supply-chain, and quality-control infrastructure, in material breach of the Brand License Agreement, and thereby exposing the Joint Venture Entities to termination of the brand-license rights essential to their lawful continued operation; and (e) continuing to operate the Joint Venture Stores after May 1, 2026 without any license or authority to use the Molly Tea name, marks, or brand system, exposing

53

the Joint Venture Entities to direct trademark-infringement and unfair-competition claims by Plaintiffs.

205.    As a direct and proximate result, the Joint Venture Entities have suffered damages, including but not limited to:  (i) breach-of-contract liability and other damages flowing from the repudiation of the Brooklyn Nets Sponsorship Agreement, including the $250,000 unpaid balance; (ii) the contingent and ongoing guaranty obligations under the LIC Concession Agreement; (iii) the loss of brand-license rights necessary for lawful operation; (iv) loss of inventory and operating assets diverted by Defendants to other locations; and (v) exposure to direct trademark-infringement, unfair-competition, and dilution claims asserted by Plaintiffs herein, in an amount to be determined at trial in excess of Five Million Dollars.  Defendants' conduct was willful, intentional, and in bad faith, entitling the Joint Venture Entities to punitive damages.

**TWELFTH COUNT**
**Declaratory Judgment under 28 U.S.C. § 2201 – Against All Defendants**

206.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

207.    An actual, justiciable controversy exists between Plaintiffs and Defendants concerning, among other things:  (i) the validity and binding effect of the LIC Corporate Guaranty as against Molly Tea NYC; (ii) the validity and effectiveness of Shenzhen Molly Tea's May 1, 2026 termination of the Brand License Agreement; and (iii) Defendants' rights, if any, to use the Molly Tea Marks, trade dress, CIS, and Authorized System at the Columbia Store, the LIC Concession, and the three Joint Venture Stores following that termination.

208.    Plaintiffs are entitled, pursuant to 28 U.S.C. § 2201, to a declaratory judgment that: (a) the LIC Corporate Guaranty is void and unenforceable as against Molly Tea NYC, having been executed by Lin without the unanimous director approval required by Bylaws Sections 4.4, 4.15,

54

and 10.1, without the Brand Director's consent, and without any valid board authorization; (b) the Brand License Agreement was validly and effectively terminated by Shenzhen Molly Tea on May 1, 2026; (c) as a result of that termination, MHL, Molly Tea CU, Genesis, and any of their alter-egos and affiliates, and the individual Defendants, have no license, sublicense, franchise, consent, or other authority to use the Molly Tea Marks, trade dress, the CIS, operations manuals, proprietary recipes, designated supply chain, or brand system at any location, including the Columbia Store, the LIC Concession, and the three Joint Venture Stores; and (d) Defendants' continued use of the Molly Tea Marks, trade dress, and Authorized System at any of those locations on or after May 1, 2026 is unauthorized and unlawful.

209.    A declaration of these rights and obligations is necessary to resolve the parties' dispute and to provide a basis for the injunctive and other relief requested herein.

## JURY DEMAND

210.    Plaintiffs respectfully demand, pursuant to Fed. R. Civ. P. 38(b), a jury trial in this action on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered as follows:

A.    That Defendants, including all of their subsidiaries, affiliates, agents, officers, directors, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined preliminarily and permanently, from:

   a. Utilizing the Molly Tea Marks or any other Molly Tea trade name, trademark, or trade dress;

55

    b.  Operating Molly Tea social media accounts and/or websites purporting to be official Molly Tea websites;

    c.  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction;

    d.  Defendants be ordered to make a verified report to the Court within thirty (30) days setting forth all actions taken by the Defendants to comply with the injunction and the dates such actions were taken;

B.    That Defendants, including their subsidiaries, affiliates, officers, directors, employees, agents, and all others acting in concert with each and all of them, be preliminarily and permanently enjoined from operating the Columbia Store, the LIC Concession and the Joint Venture Stores under the Molly Tea name, marks, trade dress or brand;

C.    That Defendants render a full and verified accounting of all funds and transactions at issue in this action;

D.    That the Court enter a declaratory judgment that (i) the LIC Corporate Guaranty is void and unenforceable as against Molly Tea NYC; (ii) the Brand License Agreement was validly and effectively terminated by Shenzhen Molly Tea on May 1, 2026; and (iii) Defendants and their alter-egos and affiliates have no license or other authority to use the Molly Tea Marks, trade dress, CIS or Molly Tea's Authorized System, including operations manuals, proprietary recipes and designated supply chains at any location, including the Columbia Store, the LIC Concession, and the three Joint Venture Stores;

E.    That Plaintiffs be awarded compensatory and consequential damages in an amount to be determined at trial;

F.      That Plaintiffs be awarded treble damages on their causes of action brought pursuant to the Lanham Act;

G.      That Plaintiffs be awarded punitive damages;

H.      That Defendants be ordered to pay Plaintiffs' costs incurred herein, including but not limited to reasonable attorneys' fees; and

I.      That Plaintiffs be awarded pre- and post-judgment interest; and

J.      That Plaintiffs be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 13, 2026

By:   _/s/ Lee Bergstein_____
Lee Bergstein
Bradley P. Pollina
Joseph M. DiPietro
BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
brad@bfklawoffice.com
joseph@bfklawoffice.com
Tel: 212-803-9025

*Counsel for Plaintiffs*

57

**VERIFICATION**

I, Biao Zhang, declare as follows, pursuant to 28 U.S.C. § 1746:

1.      My native language is Mandarin Chinese and I read Simplified Chinese. The foregoing Verified Complaint, including this Verification, were originally drafted in English and have been translated into Simplified Chinese.  I have read the Simplified Chinese translation of the Verified Complaint, including this Verification, and understand its contents.  A true and accuracy copy of that Simplified Chinese translation, along with a certificate of translation accuracy, is annexed hereto as **Exhibit 11**.

2.      I am over 18 years of age.

3.      I am a principal of Plaintiff Shenzhen Molly Tea Food and Beverage Management Co., Ltd., the manager of Plaintiff MollyTea Shops LLC, and a director of Plaintiff Molly Tea Holding Inc.  I am authorized by each Plaintiff to make this verification.

4.      Plaintiff MollyTea Shops LLC has been a shareholder in each of Nominal Defendants Molly Tea NYC Inc., Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. at all times relevant to the allegations contained in this Verified Complaint.

5.      The instant action is not collusive so as to confer jurisdiction that the Court would otherwise lack.

6.      Plaintiffs made multiple attempts to obtain the Nominal Defendants' compliance with the relief sought herein, in that, as discussed above, the April 2, 2026 notice directed Defendants to cease operating the Joint Venture Entities, the May 1, 2026 notice informed Defendants that the Brand License Agreement had been terminated, ending Defendants' right to utilize the Molly Tea Marks.

58

7.    In any event, demand by Plaintiff MollyTea Shops LLC on the directors or shareholders of the Nominal Defendants should be excused as futile because each of the Nominal Defendants is controlled by Defendants Mei Hui Lin and Xiaozhe Liu a/k/a Ziaozhe Liu, who cannot disinterestedly consider a demand to bring suit against themselves for breach of their fiduciary duties to the Nominal Defendants.

8.    As to the allegations within my personal knowledge, I believe them all to be true.

9.    As to the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited documents and communications of the Plaintiffs.

10.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 13, 2026 in Shenzhen, People's Republic of China

_____
Biao Zhang

59