**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

SHENZHEN MOLLY TEA FOOD AND
BEVERAGE MANAGEMENT CO., LTD.,
MOLLYTEA SHOPS LLC and MOLLY TEA
HOLDING INC.,

                            Plaintiffs,

     -and-

MOLLYTEA SHOPS LLC, derivatively on behalf
of MOLLY TEA NYC INC., MOLLY TEA BK
INC., and MOLLY TEA MANHATTAN
CHINATOWN INC.,

                            Plaintiff,

     -against-

MHL NY LLC, MOLLY TEA CU LLC, GENESIS
BRAND MANAGEMENT LLC, MEI HUI LIN,
XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN
XU,

                            Defendants,

     -and-

MOLLY TEA NYC INC., MOLLY TEA BK INC.,
and MOLLY TEA MANHATTAN CHINATOWN
INC.,

                       Nominal Defendants.

-------------------------------------------------------------X

1:26-cv-04051

1

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER AND IN FURTHER SUPPORT OF DEFENDANTS' CROSS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

LAW OFFICES OF CHEN & ASSOCIATES, P.C.
Yimin Chen, Esq.
*Attorneys for Defendants*
37-12 Prince Street, Suite 9D
Flushing, New York 11354
Tel: (718)886-4858

## TABLES OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ 4

FACTUAL BACKGROUND ............................................................................... 6

    A.  Molly Tea's Structure ......................................................................... 6

    B.  The Parties' Cooperation to Develop Molly Tea's Business in New York City 7

    C.  Molly Tea's Franchise Registration and Approval in January 2026 and Molly Tea's Demand for Restructure of Joint Venture Entities since January 2026.... 10

    D.  Molly Tea's Coercion to Defendants and Consequence................................11

    E.  Defendants' Efforts in Good Faith to Mitigate Damages .............................. 13

    F.  Thereafter, Molly Tea's Termination of the Cooperation Agreement and the Commencement of the Instant Action...................................................................... 14

ARGUMENT........................................................................................................ 15

    I.  LEGAL STANDARD.................................................................................. 15

    II.  DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A TRO AND PREMILINARY INJUNCTION .............................................................. 16

    III.  PLAINTIFFS FAILED TO DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS ........................................................................... 22

    A.  Trademark Infringement/Unfair Competition................................................ 22

    B. Breach of Contract ...................................................................................... 23

    IV.  THE BALANCE OF EQUITIES TIPS SHARPLY IN DEFENDANTS' FAVOR AND THE PRELIMINARY INJUNCTION SOUGHT BY DEFENDANTS IS IN THE PUBLIC INTEREST ............................................. 27

    V. DEFENDANTS SHOULD NOT BE REQUIRED TO POST AN UNDERTAKING........................................................................................... 30

CONCLUSION .................................................................................................... 32

CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1 .............................. 33

**TABLE OF AUTHORITIES**

Cases

*34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 198 N.E.3d 1282 (2022) .............. 22

*Congregation Rabbinical Institute of Tartikov, Inc. v. Village of Pomona, NY,* 2026 WL

507849 (S.D.N.Y. Feb. 23, 2026) ............................................................. 16

*Coscarelli v. ESquared Hosp. LLC*, 364 F.Supp.3d 207, 221 (S.D.N.Y. 2019) ......... 17

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995)

............................................................................................................ 23

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir.1996) .............................. 27

*eBay Inc. v. MercExchange,* LLC, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d

641 (2006) ............................................................................................. 17

*Hancock v. Essential Resources, Inc.*, 792 F.Supp. 924, 928 (E.D.N.Y.1992) .......... 19

*Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F.Supp.547 (E.D.N.Y. 1995)................. 19

*JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed.Appx. 31, 33 (2d Cir. 2015) ..... 17

*Kadant, Inc. v. Seeley Machine, Inc.*, 244 F.Supp.2d 19 (N.D.N.Y. 2003) ................ 25

*Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002) ....................................... 15

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 340 F.Supp.2d 415 (S.D.N.Y. 2004)

............................................................................................................ 21

*Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997)

............................................................................................................ 16

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)... 16

*O.D.F. Optronics Ltd. v. Remington Arms Co., Inc.*, 2008 WL 4410130 (S.D.N.Y. Sept. 26, 2008) ................................................................................................................... 22

*Perri v. Bloomberg*, 2008 WL 2944642 (E.D.N.Y. Jul. 31, 2008) ............................. 16

*Rex Med. L.P. v. Angiotech Pharmaceuticals (US), Inc.,* 754 F. Supp. 2d 616, 623 (S.D.N.Y. 2010) .......................................................................................................... 22

*Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F,3d 227, 234 (2d Cir. 1999)............. 17

*Safka Holdings LLC v. iPlay, Inc.*, 42 F.Supp.3d 488 (S.D.N.Y. 2013)...................... 23

*Tetra Sales (U.S.A.), a Div. of Warner-Lambert Co. v. T.F.H. Publications, Inc.,* 839 F.2d 881, 886 (2d Cir. 1988) ..................................................................................... 28

*T-Mobile Northeast LLC v. Water Authority of Western Nassau County*, 249 F.Supp.3d 680 (E.D.N.Y. 2017) ................................................................................................... 19

*WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir.1996) ................................................................................................................................... 15

*Winter v. Natural Resources Defense Council, Inc.,* 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)......................................................................................................................... 25

Rules

Fed. R. Civ. P. 65 (c)................................................................................................... 26

**FACTUAL BACKGROUND**

**A.  Molly Tea's Structure**

Plaintiffs SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC and MOLLY TEA HOLDING INC., ("Plaintiffs") and MOLLYTEA FRANCHISING LLC, MOLLYTEA USA INC., MOLLY TEA IP INC., MOLLYTEA BRAND LLC, MOLLYTEA SUPPLYCHAIN LLC, (collectively "Molly Tea" or "Headquarters") operate as an integrated enterprise under the MOLLY TEA brand, with overlapping ownership, management, personnel, and unified control over branding, franchising, supply chain, and operations. Molly Tea was owned, controlled and managed by, including but not limited to, individual BIAO ZHANG, DUO GAO WEN a/k/a JASON WEN, HAIYANG ZHANG, YIDING SUN, JIANA CHEN, YANG LIU (collectively "Headquarters Officer"). At all relevant times, each Headquarters Officer acted individually or personally and in concert with the other Headquarters Officer and was the agent, servant, employee, alter ego, and/or co-conspirator of the others. Each Headquarters Officer personally participated in the wrongful conduct alleged herein and is liable for his or her own tortious acts. These actions were carried out through Headquarters Officer, including those responsible for supply chain, franchising, and operational control. SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD ("Shenzhen Molly" or "Headquarters")

6

is the ultimate headquarters and controlling entity of Molly Tea, which exercised direct control over the Molly Tea business regarding the strategic decision, supply chain approval, shipment decision and overseas expansion or restructuring decision.

**B.  The Parties' Cooperation to Develop Molly Tea's Business in New York City**

In December 2023, Defendant MHL NY LLC ("MHL LLC") and SHENZHEN MOLLY executed a **Brand Authorization and Technical Services Cooperation Agreement ("Cooperation Agreement") dated December 20, 2023**, authorizing Defendant MHL NY LLC to use Molly Tea's intellectual property, i.e., the Molly Tea brand, and agreeing to provide operational support to Plaintiff's Molly Tea Stores in the New York City, not more than five Stores, from December 20, 2023 to **December 20, 2026**.

The Parties planned to open and operate five stores in New York City. Notably, Molly Tea has not entered into the New York City market at that point. As a result of Defendants' enormous investment and efforts, three Stores, i.e., **Brooklyn Store** at 5909 8th Avenue., Brooklyn, NY 11220, **Flushing Store** at 37-11C Prince Street, Flushing, NY 11354, and **Manhattan Store** at 63 Mott Street Southerly Store and Basement, have opened and been operating successfully **since 2024.** Due to Defendants' successful opening and operation of Brooklyn Store, Flushing Store and Manhattan Store from 2024, Plaintiff MollyTea Shops LLC and Defendant MHL NY LLC entered into a three Limited Liability Company Agreements (collectively "LLC Agreements") for the

formation of three Joint Venture entities, i.e., Molly Tea BK Inc. ("Molly Tea BK"), Molly Tea Manhattan Chinatown Inc. ("Molly Tea Manhattan"), and Molly Tea NYC Inc. ("Molly Tea NYC", together with Molly Tea BK and Molly Tea Manhattan, collectively "Joint Venture Entities"), on **July 3, 2025**. Pursuant to the LLC Agreements, Defendant MHL NY LLC owns 80.1% of Joint Venture Entities, while Plaintiff MollyTea Shops LLC owns 19.9% of Joint Venture Entities. Despite minority ownership, these Joint Venture Entities were controlled disproportionately by Defendants over and through material supply chain, branding and marketing, and operational systems and standards.

Defendants have been also actively pushing forward the establishment, opening and operation of Columbia University Store ("CU Store") and Long Island City Store ("LIC Store") in late 2025. Plaintiffs were deeply involved in every stage of the CU store, including but not limited to, providing the construction drawings, branding materials, and design specifications, communicating regularly regarding construction details, shipping materials for renovation and scheduled opening internationally, and conducting a pre-opening site inspection. More importantly, Molly Tea, by and through its president, Biao Zhang, executed a good guy guaranty for the CU Store's lease agreement. Similarly, Molly Tea knew and agreed about LIC Store from the beginning and actively participated in the LIC Store's design and development process.

Additionally, Plaintiffs, in July 2024, expressly authorized and recognized the Xiaohongshu account "茉莉奶白纽约 MollyTea NYC" and the Instagram account

"mollyteanyofficial" as the local New York social media accounts used to promote Molly Tea stores in the New York market. Defendants' promotional efforts have been successful in the establishment and development of the social media accounts on Instagram and RedNote (Xiaohongshu) platform. These accounts have been actively operated for a substantial period of time and currently have approximately 13,000 followers. Throughout this period, Plaintiffs were fully aware of the accounts and their activities. Plaintiffs followed the accounts, provided promotional materials and content, interacted with the accounts, and at times reposted Defendants' content. This longstanding pattern of conduct demonstrates Plaintiffs' knowledge, consent, and acceptance of Defendants' local marketing activities on behalf of the New York Molly Tea Stores.

Defendants, through their affiliated entity Molly Tea NYC Inc., also entered into a Sponsorship Agreement dated September 3, 2025 with Brooklyn Events Center, LLC and Brooklyn Nets, LLC in connection with the operation of a MOLLY TEA store at Barclays Center (the "Sponsorship Agreement"). Pursuant to that agreement, Defendants committed to substantial financial obligations in exchange for branding rights and the ability to operate a store within Barclays Center. Defendants have already made significant payments under the Sponsorship Agreement and remains subject to ongoing contractual obligations. Molly Tea has always been aware of this agreement and understood that Defendants' ability to perform the Sponsorship Agreement depended on continued store operations and access to supply chain and systems controlled by

9

Plaintiffs.

**C. Molly Tea's Franchise Registration and Approval in January 2026 and Molly Tea's Demand for Restructure of Joint Venture Entities since January 2026**

MOLLYTEA FRANCHISING LLC and MOLLY TEA IP INC., (collectively, the "Molly Tea Franchising Entities") were formed to control franchising, branding, and licensing activities in the United States, which has completed franchise registration in New York State and obtained approval in accordance with U.S. franchise laws to be qualified to conduct franchise operations in or about **January 2026**. Thus, Molly Tea sent a Franchise Disclosure Documents ("FDD") to Defendants via email and demanded Defendants to sign a FDD receipt in January 2026. Thereafter, Molly Tea communicated with Defendants through multiple channels, including MOLLY TEA domain email accounts (including mollyteausa@mollytea.com), as well as internal messaging platforms such as Lark and WeChat, through which Molly Tea issued operational directives and coercive demands. In March 2026, Molly Tea repeatedly demanded Defendants to sign the FDD receipt and a Franchise Agreement for the five Stores. However, the Franchise Agreement for the Stores would reduce Defendant MHL NY LLC's ownership in the Joint Venture Entities and Stores from 80.1% to 30%, which fundamentally alters the Parties' bargain and agreement under the Cooperation Agreement and LLC Agreements. Thus, Defendants refused and failed to sign the Franchise Agreement and FDD receipt as requested by Molly Tea.

**D.  Molly Tea's Coercion to Defendants and Consequence**

In retaliation, Molly Tea began retroactively alleging the CU Store and LIC Store as "unauthorized" after the disputes arising from the Franchise Agreement regarding the Parties' ownership in and control over Joint Venture Entities and Stores.

Molly Tea threatened to take over the business of the Joint Venture Entities and to suspend the operation of all Molly Tea Stores in New York City. On or about April 2, 2026, Molly Tea issued a formal notice to affiliates and suppliers directing that Flushing Store, BK Store, and Manhattan Store would be "suspended business indefinitely for rectification" until "the rectifications have been completed to meet standards and have been approved by headquarters". The following day, Molly Tea implemented this directive by shutting down delivery platforms, disabling Defendants' Chowbus POS systems, blocking social media accounts, and halting all supply chain logistics. Molly Tea also falsely reported to social media platforms, including but not limited to Instagram, that Defendants' stores were "unlawfully and unauthorized" to operate as Molly Tea brand, resulting in the blocking of Defendants' social media accounts and the destruction of substantial online promotional investments. Molly Tea also thereafter withheld supply chain support, suspended logistics, and blocked Plaintiff's operational access to hardware and system, such as food delivery platform, including but not limited to DoorDash, and POS provider, Chowbus. Molly Tea, by and through Headquarters Officer, including but not limited to, Haiyang Zhang acting in a supply chain capacity, withheld supply and

suspended logistics despite Defendants' full compliance with ordering and payment obligations. The suspension substantially impaired Defendants' marketing, customer outreach, and promotional activities for both the Columbia University store and the three existing New York Molly Tea stores, negatively impacting customer traffic, public exposure, and sales revenue. For example, Defendants' April 2026 sales on DoorDash declined approximately 44% for the Flushing Store, 60% for the Manhattan Chinatown Store, and 71% for the Brooklyn Store compared to the prior month, as a result of Molly Tea's interference with Defendants' use of the DoorDash merchant account.

Molly Tea's interference and coercion were ongoing and continued to prevent Defendants from normal and stable operations. Molly Tea deliberately imposed a deadline of April 15, 2026, just days before the scheduled opening of the CU Store, to maximize pressure on Defendants at the most critical stage of their business operations.

Upon information and belief, Molly Tea further induced or encouraged Brooklyn Events Center and/or its affiliates to pressure Defendants to transfer or relinquish its rights under the Sponsorship Agreement, including by making demands for payment and performance while Molly Tea had already rendered Defendants unable to normally and/or continuingly operate their business.

Plaintiffs also unreasonably objected to the lease and refused to provide the required design plan and renderings documents for LIC Store, despite Plaintiffs' approval for the LIC Store's Letter of Intent in January 2026, preventing the renovation process and

operation of LIC Store. As of today, the LIC Store was and is not ready for opening and operation.

**E.  Defendants' Efforts in Good Faith to Mitigate Damages**

Defendants' Stores were forced to materially curtail operations temporarily following Molly Tea's April 2, 2026 shutdown notice and operational interference. Defendants thereafter made extraordinary efforts to mitigate damages and preserve the business. Absent immediate injunctive relief, Defendants suffered and continue to suffer irreparable harm, including but not limited to, limitation of their going business, loss of customer goodwill, suspension of the social media accounts, interference with CU Store and stay the opening and operation of LIC Store, personal liability on leases, and the effective nullification of MHL NY LLC's 80.1% equity interest. Therefore, Defendant MHL NY LLC commenced an action against Molly Tea and Headquarters Officer in the New York State Supreme Court, County of Queens ("Queens State Court"), on April 16, 2026 and submitted an order to show cause for a preliminary injunction and temporary restraining order. The application has been pending in the Queens State Court.

Simultaneously, Defendants nevertheless used all available resources and undertook extraordinary efforts to temporarily continue the operation of the Flushing Store, Brooklyn Store and Manhattan Store and to complete the scheduled opening of CU Store. Defendants recovered their access to DoorDash and Social Media accounts, including but not limited to the Instagram and RedNote (Xiaohongshu), by submitting multiple

documents to demonstrate Defendants' ownership in these accounts and Defendants' legal use of the Molly Tea trademark to Instagram, RedNote and DoorDash.

Defendants also temporarily reopened and/or continued limited operations after April 3, 2026, which was possible only because Defendants had previously stockpiled inventory in accordance with Molly Tea's own supply-chain requirements, requiring generally each store to maintain approximately two to three months of inventory on hand. In addition, the severe winter storms and blizzards in New York during February 2026 significantly reduced customer traffic and sales volume, slowing inventory depletion. However, Molly Tea's supply cutoff has been complete and ongoing. Defendants have been unable to replenish inventory because Molly Tea excluded Plaintiff from the operational Lark (Feishu) systems and supply chain process since April 2026. Existing inventory continues to diminish, and once current inventory is exhausted, Defendants' Stores may no longer be able to continue normal operations and may ultimately be forced to cease operations entirely.

**F. Thereafter, Molly Tea's Termination of the Cooperation Agreement and the Commencement of the Instant Action**

To retaliate against Defendant MHL NY LLC's judicial actions and to justify Molly Tea's misconduct, after two weeks of MHL NY LLC's commencement of the Queens Action, Plaintiffs, on May 1, 2026, by and through their counsel, served Defendant MHL NY LLC a notice of termination of the Brand Authorization and Technical Service

Cooperation Agreement ("Termination Notice"). The Termination Notice was made by Plaintiffs arbitrarily based upon wrongful accusations against Defendants. See Declaration of Mei Hui Lin. On or about May 13, 2026, Plaintiffs commenced this action in New York federal court, falsely alleging Defendants infringed Molly Tea's trademark and brand. In support of their coercive relief contained in their Order to Show Cause for Preliminary Injunction and TRO, Plaintiffs made multiple misleading and unsupported allegations regarding the Parties' disputes and intentionally concealed and/or omitted some factual backgrounds, which has been fully discussed in the accompanying Declaration of Mei Hui Lin.

**ARGUMENT**

## I.    LEGAL STANDARD

The United States Court of Appeals for the Second Circuit has held: "A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002). The purpose of a preliminary injunction "is not to give the plaintiff the ultimate relief it seeks. It is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir.1996) (internal quotations omitted).

"[W]here a movant seeks 'substantially all the relief sought and that relief cannot be undone even if the [non-moving party] prevails at a trial on the merits,' courts apply a heightened standard. Under that heightened standard, the movant must (1) show a "clear" or "substantial" likelihood of success on the merits, (2) make a "strong showing" of irreparable harm, and (3) demonstrate that the preliminary injunction is in the public interest." *Congregation Rabbinical Institute of Tartikov, Inc. v. Village of Pomona, NY,* 2026 WL 507849 (S.D.N.Y. Feb. 23, 2026); citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997).

"The same standards govern consideration of an application for a temporary restraining order." *Perri v. Bloomberg*, 2008 WL 2944642 (E.D.N.Y. Jul. 31, 2008).

As discussed below, Defendants have made a strong showing that injunctive relief should be issued in favor of Defendants and against Plaintiffs.

## II.    DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A TRO AND PREMILINARY INJUNCTION

"A movant must show irreparable harm before the other requirements for a preliminary injunction will be considered". *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002). Since "[i]rreparable harm is the single most important prerequisite for the

issuance of a preliminary injunction[,] ... the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F,3d 227, 234 (2d Cir. 1999); see also *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed.Appx. 31, 33 (2d Cir. 2015); *Coscarelli v. ESquared Hosp. LLC*, 364 F.Supp.3d 207, 221 (S.D.N.Y. 2019).

The Court may grant injunctive relief, if absent a preliminary injunction the movant will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm. *eBay Inc. v. MercExchange,* LLC, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006).

Here, Plaintiffs alleged that they presently face and will continue to face irreparable harm to their brand, goodwill and reputation as a direction consequence of Defendants' ongoing operation of unauthorized, renegade Molly Tea Stores. Plaintiffs are unlikely to establish actionable trademark infringement under the circumstances presented here. Defendant MHL NY LLC ("MHL LLC") and SHENZHEN MOLLY executed the Cooperation Agreement dated December 20, 2023, authorizing Defendant MHL NY LLC to use Molly Tea's intellectual property. At all relevant times, Defendants have complied with the Cooperation Agreement, by paying the brand usage fees, brand security deposit, management fee, and other applicable fees under the Cooperation Agreement, purchasing the raw materials and inventory from Molly Tea's designated supplier, and complying

with the Molly Tea's quality standards. As Defendants demonstrated, the parties have been cooperating friendly and actively until Plaintiffs forcibly demanded Defendants to sign the Franchise Agreement and surrender Defendants' ownership interest in the joint venture entities since January 2026. Thereafter, Plaintiffs retroactively alleged the unauthorized operation against Defendants. Plaintiffs' allegations regarding purported "material deviations" at the Columbia University Store are similarly misleading and constitute an improper attempt to retroactively recharacterize ordinary construction adjustments as trademark infringement only after the parties' business relationship deteriorated. Throughout the Columbia University Store project, Plaintiffs were deeply involved in the store's design, development, and pre-opening process, including by providing construction drawings, branding materials, design specifications, internationally shipping renovation materials, communicating regularly regarding construction details, and conducting pre-opening inspections. These facts are fundamentally inconsistent with Plaintiffs' present assertion that the Columbia University Store was "unauthorized."

Moreover, the alleged "deviations" identified by Plaintiffs were, at most, practical adjustments necessitated by New York City legal and permitting requirements, shipping damage to materials supplied by Plaintiffs, or ordinary construction solutions already utilized at other MOLLY TEA locations. At no point during the months-long construction and pre-opening process did Plaintiffs characterize these issues as "material breaches" or

claim that the Columbia University Store was unauthorized. Plaintiffs only began reframing these issues as trademark infringement and unauthorized operation after disputes arose concerning ownership, control, and Plaintiffs' demands for additional equity interests and operational control over the stores.

Plaintiffs' Termination Notice should be void as Plaintiffs' conduct was not a good-faith business decision, but a coordinated and intentional effort to weaponize their control over supply chain, systems, and branding to force Defendants into surrendering their contractual and ownership rights. Apparently, the nature of this dispute arises from the parties' contractual, ownership, and operational-control relationships, rather than a trademark infringement matter under Lanham Act. The alleged unauthorized conduct and/or trademark infringement of Defendants were just an excuse to justify Plaintiffs' coercive misconduct and Plaintiffs' desire to take over Defendants' interest in New York Molly Tea Stores. Plaintiffs' conduct went far beyond ordinary franchise or brand management. Plaintiffs demanded that Defendants surrender lease rights, ownership control, employee management authority, and operational control over the Columbia University store to a new entity controlled by Plaintiffs. When Defendants refused, Plaintiffs systematically interfered with Defendants' supply chain, operational systems, social media accounts, delivery platforms, and logistics and retroactively reframed Defendants' operation and development of the CU Store and LIC Store as unauthorized in an effort to coerce Defendants into relinquishing control of the business.

Plaintiffs' application also fails on the ground that plaintiffs have failed to provide any evidence to support its allegations of irreparable harm. *T-Mobile Northeast LLC v. Water Authority of Western Nassau County*, 249 F.Supp.3d 680 (E.D.N.Y. 2017). "Plaintiff's bare allegations, without more, are insufficient for the issuance of a preliminary injunction". *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F.Supp.547 (E.D.N.Y. 1995), citing *Hancock v. Essential Resources, Inc.*, 792 F.Supp. 924, 928 (E.D.N.Y.1992). Here, Plaintiffs only submitted a self-serving affidavit executed by Biao Zhang, the president of Molly Tea Headquarters, and multiple notice and/or letter issued by Molly Tea. Molly Tea has failed to submit any evidence supporting its claims of irreparable harm as required for injunctive relief.

Contrary to Plaintiffs' allegations, it is Defendants, not Plaintiffs, have suffered and will continue to suffer, multiple forms of irreparable harm. Defendants' Stores were forced to suspend or materially curtail operations temporarily as a result of Plaintiffs' misconduct. Defendants' current temporary reopening of the New York Molly Tea Stores after shutdown was based upon the inventory stockpiled in advance to cope with the supply chain cycle between the United States and China as required by Plaintiffs. Plaintiffs' comprehensive and ongoing supply disruption made Defendants unable to replenish their inventory and once the remaining inventory is exhausted, Defendants' Store will no longer be able to continue normal operations and may be forced to cease operations entirely. Defendants were obligated to pay rents for these New York Molly Tea

20

Stores and individual Defendants have signed personal guaranties for each of the Stores. If the stores are unable to continue operations, Defendants, both corporate and individual, will face substantial liabilities arising from personal guarantees, lease obligations, and business debts incurred in reliance on Plaintiffs' representations and agreements. Moreover, once Defendants exhaust their inventory and cash revenues, Defendants will have to lay off the current 110 trained employees and lose their online promotion efforts on RedNote (Xiaohongshu) and Instragram. Defendants also faces immediate and irreparable harm arising from its obligations under the Barclays Center Sponsorship Agreement. Defendants have already paid substantial sums and remains exposed to additional contractual liability, despite being deprived of the ability to operate the Barclays Center Store due to Plaintiffs' conduct. Plaintiffs' conduct has rendered Defendants' business curtailed and maybe inoperable soon after while Defendants remain bound to substantial fixed obligations, including long-term commercial leases personally guaranteed by individual Defendants. These harms are ongoing, immediate, and cannot be remedied by monetary damages alone. Absent immediate injunctive relief in favor of Defendants, Defendants will continue to suffer an irreparable harm as discussed above.

Therefore, the injunctive relief should be granted in favor of Defendants and against Plaintiffs.

### III.    PLAINTIFFS FAILED TO DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

In this case, independent application of the preliminary injunction analysis to each of Plaintiffs' claims is unnecessary, as Plaintiffs' pleadings focus on the two main headings, i.e., trademark infringement/unfair competition and breach of contract.

### A.  Trademark Infringement/Unfair Competition

As discussed above and shown by the factual background, Plaintiffs are unlikely to establish actionable trademark infringement under the circumstances presented here, because the disputes between the Parties arise from contractual and operational-control issues stemming from the parties' joint venture relationship. Plaintiffs' allegations regarding "unauthorized" social media accounts are equally inconsistent with the parties' longstanding course of conduct. Since 2024, Plaintiffs expressly authorized and recognized Defendants' Instagram account "mollyteanyofficial" and Xiaohongshu account "茉莉奶白纽约 MollyTea NYC" as the official local social-media channels promoting the New York MOLLY TEA stores. Plaintiffs followed these accounts, provided promotional materials, interacted with account content, and at times reposted Defendants' promotional materials. These accounts collectively developed approximately 13,000 followers and served as a central marketing platform for the New York MOLLY TEA operations.

Only after disputes arose concerning ownership interests and operational control

shortly before the Columbia University Store opening did Plaintiffs begin retroactively characterizing these longstanding, previously accepted marketing activities as "unauthorized." Plaintiffs' current position directly contradicts their prior knowledge, authorization, participation, and acquiescence in Defendants' operation of these accounts and further demonstrates that this dispute is fundamentally a contractual and operational dispute rather than a true trademark infringement matter.

Plaintiffs' trademark infringement allegations fail also because there is no substantial and real breach of contract in support of Plaintiffs' termination of Cooperation Agreement and authorization. See Declaration of Mei Hui Lin. Partial non-compliance alleged by Plaintiffs is indeed Defendants' good-faith efforts to mitigate the damages caused by Plaintiffs' arbitrary and irrational exercise of their discretion and management. Therefore, Plaintiffs are unlikely to succeed on the merit for trademark infringement and/or unfair competition as Defendants did not act in bad faith at all relevant times. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 340 F.Supp.2d 415 (S.D.N.Y. 2004).

**B. Breach of Contract**

"[T]o plead a cause of action for breach of contract, a plaintiff usually must allege that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 198 N.E.3d 1282 (2022); *O.D.F. Optronics Ltd. v. Remington Arms Co., Inc.*, 2008 WL 4410130 (S.D.N.Y. Sept.

23

26, 2008) (applying New York law and granting the requested injunctive relief); see also *Rex Med. L.P. v. Angiotech Pharmaceuticals (US), Inc.*, 754 F. Supp. 2d 616, 623 (S.D.N.Y. 2010) (granting a preliminary injunction to bar a distributor from terminating a distribution agreement).

Here, all four elements are satisfied by Defendants.

First, a valid contract exists. Shenzhen Molly and Defendant MHL NY LLC executed the Cooperation Agreement in 2023, authorizing Defendants to use the Molly Tea brand for five stores in New York City for a three-year term.

Second, Defendants have performed their obligations under both Cooperation Agreement and LLC agreements. Defendants made payments for brand usage fee, management fee and deposit in accordance with the Cooperation Agreements to Plaintiffs. Defendants opened and operated the Stores in NYC continuously since 2024 and at all relevant times complied with Molly Tea's requirements and quality standards.

Third, Plaintiffs have materially breached both agreements. Plaintiffs materially breached the Cooperation Agreements by, inter alia: (a) issuing a directive on April 2, 2026 suspending Defendants Stores; (b) halting supply chain shipments despite confirmed production and payment; (c) disabling Defendants' access to delivery platforms and POS systems; (d) falsely reporting Defendants' Stores to social media platforms, resulting in the block of the account; and (e) raising unreasonable objections to the LIC Store lease after having approved the LOI in January 2026, thereby preventing

24

Defendants from renovation and operation of the LIC Store. These actions deprived Defendants of the core contractual right to operate their business under the Cooperation Agreement and LLC Agreements with MOLLY TEA brand.

Fourth, Defendants have suffered and continues to suffer substantial damages as a direct result of Plaintiffs' breaches as fully discussed above. These damages are directly traceable to Plaintiffs' breaches.

Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on its breach of contract claim.

"Where a contract contemplates the exercise of discretion, under New York law, the implied covenant imposes a duty not to act arbitrarily or irrationally in exercising that discretion." *Safka Holdings LLC v. iPlay, Inc.*, 42 F.Supp.3d 488 (S.D.N.Y. 2013), citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995). Here, the Cooperation Agreement required Defendants to obtain Plaintiffs approval for opening additional Molly Tea Store at Plaintiff Shenzhen Molly's sole discretion. Moreover, Plaintiff Shenzhen Molly "may, in its sole discretion, re-evaluate and adjust the scope of the [Defendants] Protected Area due to changes in market conditions or the trade area. See Article 4.1(c) and (d) of Exhibit [X] for Cooperation Agreements. As set forth in the Declaration of Mei Hui Lin, Plaintiffs have not acted in good faith in connection with the signing of the Franchise Agreement or in Defendants' efforts to operate the New York Molly Tea Stores. Molly Tea breached the implied covenant of

good faith and fair dealing under the Cooperation Agreements and LLC Agreements by exercising their contractual discretion and enforcement leverage in an arbitrary, irrational, and pretextual manner. Plaintiffs arbitrarily denied the opening and operation of CU Store and LIC Store, suspended supply chain support, logistics, and operational access, terminated the Cooperation Agreement without good cause, and commenced this action asserting unsupported trademark claims, for a single purpose, i.e., to coerce Defendants into extracontractual concessions and recapture value allocated to Defendants. Upon information and belief, Plaintiffs have leased or are actively seeking additional Molly Tea store locations within a two-mile radius of Defendants' existing New York stores, including a location at 862 Broadway, New York, NY 10003, which is located approximately 1.9 miles from Defendants' Manhattan Chinatown store. Plaintiffs may argue that they are entitled to re-evaluate and adjust the scope of Defendants' protected area as the Cooperation Agreement indicates. However, such conduct directly conflicts with the Parties' prior agreements restricting competing Molly Tea operations within a two-mile radius and further demonstrates Plaintiffs' intent to appropriate Defendants' established customer base, goodwill, and market presence in New York.

Notably, Plaintiffs' TRO application relies primarily upon selective corporate bylaws and conclusory assertions of control, yet Plaintiffs failed to submit the operative LLC agreements, shareholder agreements, joint venture agreements, or other governing ownership documents defining the parties' respective ownership, management, and

26

operational rights relating to the New York MOLLY TEA stores. This omission is highly significant because the parties' actual ownership and control rights remain actively disputed and are the subject of the previously filed Queens County action. Plaintiffs' failure to provide the governing contractual agreements further demonstrates that this matter involves disputed joint venture and operational-control issues inappropriate for resolution through emergency trademark injunction proceedings.

Under these circumstances, Plaintiffs have failed to demonstrate their likelihood of success on the merit for breach of contract, despite Plaintiffs own the Molly Tea Brand and trademark.

Accordingly, Plaintiffs are very unlikely to succeed on the merits.

IV.    **THE BALANCE OF EQUITIES TIPS SHARPLY IN DEFENDANTS' FAVOR AND THE PRELIMINARY INJUNCTION SOUGHT BY DEFENDANTS IS IN THE PUBLIC INTEREST**

"A preliminary injunction is an extraordinary remedy never awarded as of right; in each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.,* 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*

Plaintiffs again fail to show that the balance of hardships tips in their favor by

27

offering only conclusory assertions that their business and reputation would be harmed. Conversely, the balance tips in Defendants' favor because preliminary injunction, sought by Plaintiffs, disallowing Defendants' operation and sale of products, would effectively shut down their Stores. "This factor alone may outweigh any real or alleged hardship to Plaintiff". *Kadant, Inc. v. Seeley Machine, Inc.*, 244 F.Supp.2d 19 (N.D.N.Y. 2003).

The balance of equities further favors Defendants because Plaintiffs' conduct has exposed Defendants to liability to third parties, including under the Barclays Center Sponsorship Agreement. Plaintiffs seek to benefit from Defendants' investment and effort in expand Molly Tea brand in New York market while shifting the associated contractual risks onto Defendants, a result that equity does not permit.

By contrast, Plaintiffs have little equity on their side. Plaintiffs are subsidiary and/or affiliate of an international corporation with franchises throughout the world. As of February 2026, Molly Tea has already opened over two thousand and two hundreds (2200) stores in China and more than forty (40) stores overseas. Unlike Defendants, Plaintiffs are unlikely to suffer cognizable trademark-related harm because Defendants' operation of the New York MOLLY TEA stores arose from longstanding authorized business relationships and ongoing contractual arrangements between the parties. Plaintiff will also suffer no harm by being required to do what they were already contractually obligated to do—namely, provide supply chain support and refrain from interfering with Defendants' operations. Plaintiffs are only being asked in the injunctive

relief sought by Defendants to refrain from interfering with Defendants' existing supply-chain operations and inventory procurement efforts, and to cease their false reports – all of which Plaintiffs agreed and promised to do under the Cooperation Agreement and LLC Agreements.

Even if Plaintiffs were to argue that Defendants have failed to meet certain standards (which it has not), that is no basis to deny preliminary injunctive relief sought by Defendants and to grant injunctive relief sought by Plaintiffs, because here the record strongly suggests that Plaintiffs' actions were intended to pressure Defendants into signing the Franchise Agreement and relinquishing substantial ownership and operational rights. Denying Defendants' requested relief and/or granting Plaintiffs' relief would reward bad faith of Plaintiffs.

Moreover, the public has a substantial interest in preserving jobs. Defendants employs more than 100 people across their Stores in NYC. If the stores were forced to close, those employees will lose their livelihoods, through no fault of their own. Mass layoffs harm not only the workers and their families, but also the local economy and community. Courts have recognized that the potential loss of numerous jobs is a factor weighing in favor of injunctive relief. Enjoining Plaintiffs' unlawful conduct will allow Defendants' to normally and stably operate their Stores, retain their workforce, and continue contributing to New York City's economy. Granting Plaintiffs' relief would serve no public interest other than to sanction Plaintiffs' coercive and abusive tactics, as

there is no substantial evidence of consumer confusion or actionable trademark

infringement under the circumstances presented here.

## V.    DEFENDANTS SHOULD NOT BE REQUIRED TO POST AN UNDERTAKING

A court may "issue a preliminary injunction or a temporary restraining order only if

the movant gives security in an amount that the court considers proper to pay the costs

and damages sustained by any party found to have been wrongfully enjoined or

restrained." Fed. R. Civ. P. 65 (c). The Second Circuit has made clear that a district court

"is vested with wide discretion" to determine the appropriate amount of the bond.

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir.1996). Despite the seemingly

mandatory nature of Rule 65(c), a district court in its discretion may deny a bond

altogether if there is "no proof of likelihood of harm" to the non-movant. *Id*.

In cases where, as here, Defendants' preliminary injunction seeks merely to preserve

the status quo through continued contractual performance, courts have generally

concluded that posting an undertaking or bond is unnecessary. *Tetra Sales (U.S.A.), a Div.*

*of Warner-Lambert Co. v. T.F.H. Publications, Inc.*, 839 F.2d 881, 886 (2d Cir. 1988).

In contrast, Defendants have invested a substantial time and efforts and faced

personal liability arising from the business to develop and expand Plaintiffs' Molly Tea

Brand in the New York City market from late 2023, in reliance upon Plaintiffs' assurance

and agreements. As fully discussed above, if Plaintiffs' injunction relief is granted,

Defendants would suffer irreparable losses of their business, including but not limited to the default on the lease agreements and individual Defendants' personal guaranties under the leases and other commercial contracts. Furthermore, the lower Plaintiffs' likelihood of success on the merits, the higher the probability that an injunction in Plaintiffs' favor will later be determined to have been issued in error. In the event the Court determines that security should be required pursuant to Rule 65(c), Defendants respectfully request that Plaintiffs be required to post substantial security sufficient to protect Defendants from the significant operational and commercial damages that would result from any wrongful restraint or operational shutdown.

## VI. MOLLY TEA'S CONDUCT WARRANTS IMMEDIATE STATUS QUO RELIEF

The purpose of a temporary restraining order sought by Defendants is to preserve the status quo. The injunctive relief sought by Defendants is narrowly tailored to preserve and restore the operational status quo ante existing prior to Plaintiffs' April 2–3, 2026 shutdown actions and operational interference. Here, Molly Tea has already altered the status quo by unilaterally suspending the inventory supply and interference with Defendants' operation of Stores. Absent a temporary restraining order in favor of Defendants, Defendants may eventually shut down their business indefinitely. The requested relief does not create a new condition but merely restores the parties to the position that existed prior to Molly Tea's wrongful conduct. Courts routinely grant

injunctive relief where necessary to restore a wrongfully disrupted status quo. On the other hand, Plaintiffs' injunctive relief sought in their application, including but not limited to, enjoining Defendants from utilizing the Molly Tea trademark and operating the five Stores in New York City, requiring Defendants to transfer any and all social media, e-commerce, delivery-platform or marketing account established by Defendants, is to give Plaintiffs the ultimate relief they seek in this action, which is beyond the purpose of the preliminary injunction and/or temporary restraining order and thus warrants a denial of Plaintiffs' application in its entirety.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's application for preliminary injunction and temporary restraining order should be denied in its entirety, while Defendants' application for preliminary injunction and temporary restraining order should be granted in its entirety, together with any other relief the Court may deem proper.

Dated:   May 24, 2026
Flushing, New York

Law Offices of Chen & Associates, P. C.

 /s/ Yimin Chen
By: Yimin Chen, Esq
*Attorneys for Defendants*
37-12 Prince Street, Suite 9D
Flushing, NY 11354
Tel: (718)886-4858

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1</u>

I, Yimin Chen, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that this Memorandum of Law complies with the word count limit set forth in Local Civil Rule 7.1, because it does not exceed 7,000 words, excluding the parts exempted by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Certification.

Dated:   Flushing, New York
         May 24, 2026

                                    /s/ Yimin Chen
                                    Yimin Chen, Esq.