UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHENZHEN MOLLY TEA FOOD AND
BEVERAGE MANAGEMENT CO., LTD.,
MOLLYTEA SHOPS LLC and MOLLY TEA
HOLDING INC.,

                    Plaintiffs,

    -and-

MOLLYTEA SHOPS LLC, derivatively on behalf
of MOLLY TEA NYC INC., MOLLY TEA BK
INC., and MOLLY TEA MANHATTAN
CHINATOWN INC.,

                    Plaintiff,

    -against-

MHL NY LLC, MOLLY TEA CU LLC, GENESIS
BRAND MANAGEMENT LLC, MEI HUI LIN,
XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN
XU,

                    Defendants,

    -and-

MOLLY TEA NYC INC., MOLLY TEA BK INC.,
and MOLLY TEA MANHATTAN CHINATOWN
INC.,

                    Nominal Defendants.

------------------------------------------------------------X

1:26-cv-04051

**DECLARATION OF
MEI HUI LIN**

MEI HUI LIN, declares, pursuant to the provision of 28 U.S.C. §1746, as follows:

1. I am the president of Defendant MHL NY LLC and one of Defendants in this action,

    and as such, I am fully familiar with the facts and circumstances set forth in this

    affirmation.

2. I make this Declaration in opposition to Plaintiffs' application for a temporary

restraining order and preliminary injunction and in support of Defendants' Cross-Motion for Temporary Restraining Order and Preliminary Injunction.

**Factual Background and Key Timeline**

3. Upon information and belief, Plaintiffs SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC and MOLLY TEA HOLDING INC., ("Plaintiffs") and MOLLYTEA FRANCHISING LLC, MOLLYTEA USA INC., MOLLY TEA IP INC., MOLLYTEA BRAND LLC, MOLLYTEA SUPPLYCHAIN LLC, (collectively "Molly Tea" or "Headquarters") do not operate independently but instead function as part of a coordinated system under the direction of the Individual of Headquarters Officer, including but not limited to BIAO ZHANG, DUO GAO WEN a/k/a JASON WEN, HAIYANG ZHANG, YIDING SUN, JIANA CHEN, YANG LIU (collectively "Headquarters Officer").

4. Upon information and belief, Biao Zhang is the Founder and President of the MOLLY TEA brand and serves as the Manager and Chief Executive Officer of MOLLYTEA Franchising LLC since its formation in or about January 2025. Mr. Zhang oversees brand strategy, system development, and operational standards across all MOLLY TEA locations and manages the franchise system, including operations affecting the New York Stores.

5. Upon information and belief, at all relevant times, each Headquarters Officer acted individually or personally and in concert with the other Headquarters Officer and was

the agent, servant, employee, alter ego, and/or co-conspirator of the others. Each Headquarters Officer personally participated in the wrongful conduct alleged herein and is liable for his or her own tortious acts.

6. SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD ("Shenzhen Molly" or "Headquarters") is the ultimate headquarters and controlling entity of Molly Tea, which exercised direct control over the Molly Tea business regarding the strategic decision, supply chain approval, shipment decision and overseas expansion or restructuring decision.

7. Since late 2023, Defendant MHL NY LLC ("MHL LLC") and SHENZHEN MOLLY executed a Brand Authorization and Technical Services Cooperation Agreement ("Cooperation Agreement") dated December 20, 2023, authorizing Defendant MHL NY LLC to use Molly Tea's intellectual property, i.e., the Molly Tea brand, and agreeing to provide operational support to Plaintiff's Molly Tea Stores in the New York City, not more than five Stores, from December 20, 2023 to December 20, 2026. A copy of the Brand Authorization and Technical Services Cooperation Agreement is hereto annexed as Exhibit "A".

8. The Parties planned to open and operate five stores in New York City, while Molly Tea has not entered into the New York City market at that point.

9. During the years 2024 and 2025, the Molly Tea actively participated in the operation and management of the New York stores, created and managed Lark (Feishu)

3

operational groups for each New York store, provided Defendants access to the Radnova training and operations platform and participated in supply chain management, finance, operations, marketing and store management.

10. As a result of Defendants' enormous investment and efforts and the Parties cooperation, three Stores, i.e., Brooklyn Store at 5909 8th Avenue., Brooklyn, NY 11220, Flushing Store at 37-11C Prince Street, Flushing, NY 11354, and Manhattan Store at 63 Mott Street Southerly Store and Basement, have opened and been operating successfully since 2024. Individual Defendants, including me and Defendant Xiaozhe Liu, executed personal guaranty for each Store's lease agreements.

11. Plaintiffs also authorized Defendants' affiliated company, Molly Tea NYC Inc., to operate the official social media account on RedNote (Xiaohongshu) platform as 茉莉奶白纽约 MollyTea NYC and Instagram as "mollyteanyofficial", in order to promote Molly Tea brand in social media and New York market. A copy of the authorization for RedNote (Xiaohongshu) is hereto annexed as Exhibit "B".

12. These accounts have been actively operated for a substantial period of time and currently have approximately 13,000 followers.

13. At all relevant times, Plaintiffs were fully aware of these accounts and their activities. Plaintiffs followed the accounts, provided promotional materials and content, interacted with the accounts, and at times reposted Defendants' content, which implied Plaintiffs' consent and authorization for Defendants' promotional efforts on social

media platforms.

14. Due to Defendants' successful opening and operation of Brooklyn Store, Flushing Store and Manhattan Store from 2024, Plaintiff MollyTea Shops LLC and Defendant MHL NY LLC entered into a three Limited Liability Company Agreements (collectively "LLC Agreements") for the formation of three Joint Venture entities, i.e., Molly Tea BK Inc. ("Molly Tea BK"), Molly Tea Manhattan Chinatown Inc. ("Molly Tea Manhattan"), and Molly Tea NYC Inc. ("Molly Tea NYC", together with Molly Tea BK and Molly Tea Manhattan, collectively "Joint Venture Entities"), on **July 3, 2025**. A copy of the LLC Agreements is hereto annexed as Exhibit "C".

15. Pursuant to the LLC Agreements, Defendant MHL NY LLC owns 80.1% of the Joint Venture Entities, while Plaintiff MollyTea Shops LLC owns 19.9%. Notwithstanding Plaintiffs' minority ownership interest, Plaintiffs exercised substantial influence over the Joint Venture Entities through their control of supply-chain logistics, branding approvals, operational systems, training platforms, and marketing support.

16. Defendants have been also actively pushing forward the establishment, opening and operation of Columbia University Store ("CU Store") and Long Island City Store ("LIC Store") in late 2025.

17. Plaintiffs were deeply involved in every stage of the CU store, including but not limited to, providing the construction drawings, branding materials, and design specifications, communicating regularly regarding construction details, shipping

materials for renovation and scheduled opening internationally, and conducting a pre-opening site inspection.

18. More importantly, Molly Tea, by and through its president, Biao Zhang, executed a good guy guaranty for the CU Store's lease agreement. Similarly, Molly Tea knew and agreed about LIC Store from the beginning and actively participated in the LIC Store's design and development process.

19. In addition to the Stores, one of the Joint Venture Entities, Molly Tea NYC Inc., entered into a Sponsorship Agreement dated September 3, 2025 with Brooklyn Events Center, LLC and Brooklyn Nets, LLC in connection with a MOLLY TEA store at Barclays Center (the "Barclays Store").

20. Defendants, by and through Molly Tea NYC Inc. has already paid $250,000 of the required fees, and Defendants are directly exposed to the financial consequences of that sponsor agreement.

21. Upon information and belief, Plaintiffs formed MOLLYTEA FRANCHISING LLC and MOLLY TEA IP INC., (collectively, the "Molly Tea Franchising Entities") to control franchising, branding, and licensing activities in the United States, which has completed franchise registration in New York State and obtained approval in accordance with U.S. franchise laws to be qualified to conduct franchise operations in or about **January 2026**.

22. Thereafter, Molly Tea repeatedly demanded Defendants to sign a Franchise

Disclosure Document ("FDD") and Franchise Agreement through multiple channels, including MOLLY TEA domain email accounts (including mollyteausa@mollytea.com), as well as internal messaging platforms such as Lark and WeChat, through which Molly Tea issued operational directives and repeated demands that Defendants execute franchise-related documentation. A copy of the FDD is hereto annexed as Exhibit "D" and a copy of the Franchise Agreement is hereto annexed as Exhibit "E".

23. The Franchise Agreement for the Stores would reduce Defendant MHL NY LLC's ownership in the Joint Venture Entities from 80.1% to 30%, which fundamentally alters the Parties' bargain and agreement under the Cooperation Agreement and LLC Agreements. Thus, we failed to sign the FDD receipt and Franchise Agreement.

24. In March 2026, Molly Tea began aggressively pushing the signing of the Franchise Agreement, restructuring the ownership of the Joint Venture Entities and lease transfer for the CU store, by the following actions and demands.

25. On or about March 24, 2026, Molly Tea, by and through Headquarters Officer, confirmed that opening merchandise and refrigerator magnets for the Columbia University store grand opening promotion had been prepared and arranged for shipment, including logistics and payment coordination. Shortly thereafter, Molly Tea headquarters instructed that the products should no longer be shipped and instead be reserved for use by Molly Tea headquarters' own directly operated stores. A copy of

7

the Communication is hereto annexed as Exhibit "F".

26. On or about March 25, 2026, Molly Tea headquarters formally proposed to take over the three New York Stores, i.e., Brooklyn Store, Manhattan Store and Flushing Store, take control of the CU Store by requiring the transfer of the lease agreement and bank account associated with the CU Store, and reduce Defendant MHL NY LLC's ownership interests in these Stores and Joint Venture Entities to no more than 30%. A copy of the email dated March 25, 2026, is hereto annexed as Exhibit "G".

27. On or about March 27, 2026, Molly Tea headquarters issued an internal "Compliance and Store Rectification Notice" threatening to suspend overseas stores that did not complete franchise or legal compliance requirements of Molly Tea by April 15, 2026. A copy of the March 27, 2026 Notice is hereto annexed as Exhibit "H".

28. On or about March 30, 2026, Molly Tea headquarters again confirmed that the franchise agreement had not been signed and the franchise process was still ongoing. Simultaneously, Molly Tea sent Defendants a proposed Columbia University store restructuring agreement to transfer the lease to a new entity operated and controlled entirely by Molly Tea and Defendants' ownership in the CU store would be reduced to only 30%. A copy of the March 30, 2026 Email is hereto annexed as Exhibit "I".

29. On or about March 31, 2026, Headquarters Officer, Yiding Sun, as Molly Tea overseas director, sent a voice message stating that if the franchise agreement cannot be signed, all (New York) stores will be suspended and that the CU store could not

8

open unless the lease transfer and restructuring into a new entity were completed. A copy of the voice message is hereto annexed as Exhibit "J".

30. On or about April 2, 2026, Molly Tea headquarters formally issued a Notice Letter regarding the indefinite suspension of operations of Brooklyn Store, Manhattan Store and Flushing Store, effective April 3, 2026, at 12.00 a.m. A copy of the April 2, 2026 Notice Letter is hereto annexed as Exhibit "K".

31. As a result of Plaintiffs' interference, since April 3, 2026, Defendants lost access to the DoorDash merchant account, which Defendants took more than ten days to recover. On April 3, 2026, Defendants immediately contacted DoorDash regarding the loss of merchant account access and requested restoration of administrative control.

32. The DoorDash disruptions affected the stores for varying periods of time, including approximately April 3–10, 2026 for the Flushing Store, April 3–14, 2026 for the Manhattan Chinatown Store, and April 3–21, 2026 for the Brooklyn Store, resulting in substantial declines in sales revenue. Defendants' April 2026 sales declined approximately 44% for the Flushing Store, 60% for the Manhattan Chinatown Store, and 71% for the Brooklyn Store compared to the prior month. A copy of the DoorDash Sale Records for April 3 to April 14, 2026 is hereto annexed as Exhibit "L".

33. On or about April 7, 2026, Molly Tea further cut off Defendants' operational systems

9

by removing Defendants' employees from all Lark (Feishu) operational groups, disabling access to the Radnova training/operations platform and suspending operational and training support to Defendants' Stores.

34. Molly Tea also contacted Chowbus challenging Defendants' authorization status and interfered with Defendants' use of the Chowbus system, rendering Defendants' designated POS and operational system inoperable. Defendants thereafter had no choice but to transition to an alternative POS provider, Toast, in order to continue limited operations and mitigate damages.

35. The Instagram account @mollyteanyofficial was suspended on April 3, 2026 as a result of Plaintiffs' reports and trademark infringement complaints submitted by Plaintiffs to Instagram. A copy of the Instagram account deactivation proof is hereto annexed as Exhibit "M".

36. Defendants were excluded from operational systems and communications with Molly Tea. Therefore, Defendants had no choice but to bring an action against Molly Tea and to seek the preliminary injunction against them. A copy of the Summons and Complaint dated April 15, 2026, filed April 16, 2026 is hereto annexed as Exhibit "N".

37. On or about April 16, 2026, Defendant MHL NY LLC, by and through its counsel, commenced the Queens State Action by filing a Summons and Complaint and served Molly Tea with the application for preliminary injunction and temporary restraining order.

38. To retaliate against Defendant MHL NY LLC's judicial actions and to justify their misconduct, Molly Tea, on May 1, 2026, by and through their counsel, served Defendants a notice of termination of the Brand Authorization and Technical Service Cooperation Agreement ("Termination Notice"). A copy of the Termination Notice dated May 1, 2026 is hereto annexed as Exhibit "O".

39. Simultaneously, Defendants nevertheless used all available resources and undertook extraordinary efforts to temporarily continue the operation of the Flushing Store, Brooklyn Store and Manhattan Store and to complete the scheduled opening of CU Store.

40. Defendants recovered their access to DoorDash and Social Media accounts, including but not limited to the Instagram and RedNote (Xiaohongshu), by submitting multiple documents to demonstrate Defendants' ownership in these accounts and Defendants' legal use of the Molly Tea trademark to Instagram, RedNote and DoorDash.

41. Defendants also temporarily reopened and/or continued limited operations after April 3, 2026, which was possible only because Defendants had previously stockpiled inventory in accordance with Molly Tea's own supply-chain requirements, requiring generally each store to maintain approximately two to three months of inventory on hand. In addition, the severe winter storms and blizzards in New York during February 2026 significantly reduced customer traffic and sales volume, slowing inventory depletion.

42. About one month after MHL NY LLC's commencement of Queens State Action, on or about May 15, 2026, Molly Tea commenced this federal action against Defendants, asserting, inter alia, trademark infringement, unfair competition, and breach of contract claims against Defendants.

### Molly Tea's Wrongful Accusation in the Termination Notice and Complaint

43. Defendants have always complied with the Cooperation Agreement, by paying the brand usage fees, brand security deposit, management fee, and other applicable fees under the Cooperation Agreement, purchasing the raw materials and inventory from Molly Tea's designated supplier, and complying with the Molly Tea's quality standards. However, Plaintiffs brought this action against Defendants for claims of trademark infringement, unfair competition and breach of contract.

44. In the federal Complaint and Termination Notice, Molly Tea asserted that Defendants refused to communicate with them.

45. Molly Tea asserted, out of context, that Defendants refused communications regarding compliance with the China License Agreement and applicable U.S. franchise law beginning on or about February 26, 2026, including allegations that Defendants removed Molly Tea personnel from an operational WeChat group, failed to attend a March 2, 2026 meeting, and failed to make certain sponsorship payments.

46. The Parties communicated in a WeChat communications group regarding the "Art of Tea" trademark/logo litigation between a non-party in February 2026. The WeChat

Group owner was not Defendants' employee and thus Defendants had no authority or ability to remove any member from the WeChat Group.

47. Defendants continued to communicate afterward with Molly Tea through additional WeChat groups and emails, in order to resolve the disputes between the Parties in good faith. A copy of the email dated March 26, 2026, sent by me to Molly Tea is hereto annexed as Exhibit "P". The said email responded directly to Molly Tea's March 25, 2026 restructuring demands, addressed Molly Tea's requested ownership changes and operational concerns, disputed Molly Tea's allegations, and sought continued good-faith negotiations between the Parties.

48. Molly Tea also incorrectly asserted that Defendants failed to provide accurate and timely financial statements or permit audit and inspection. Before March 2026, Defendants had consistently provided the monthly financial statements as required by Molly Tea.

49. Molly Tea's allegations of Defendants' unauthorized opening and operation of CU Store and LIC Store are incorrect. As of today, LIC Store was not ready to open and operate, while the CU Store was authorized by Molly Tea by actively participating into the establishment, opening and operation of the CU Store and executing the good guy guaranty by Biao Zhang, on behalf of Molly Tea, for the CU Store.

50. Defendants' Stores were forced to materially curtail operations temporarily following Molly Tea's April 2, 2026 shutdown notice and operational interference. Defendants

thereafter made extraordinary efforts to mitigate damages and preserve the business.

51. In the federal Complaint, Molly Tea incorrectly asserts that Defendants were unauthorized to use and manage the RedNote (Xiaohongshu) Account, which is refuted by Exhibit "B".

52. Additionally, Molly Tea asserted in the federal Complaint that six material deviations from Plaintiffs' originally approved design for CU Store. Indeed, the alleged issues identified by Plaintiffs were, at most, minor and practical adjustments caused by (i) New York City legal and permitting requirements; (ii) material defects and shipping damage from items supplied by Plaintiffs; and (iii) standard construction adaptations already used at other Molly Tea locations.

53. At no point during the months-long construction and pre-opening process did Plaintiffs characterize these issues as "material breaches" or claim the Columbia store was unauthorized.

54. Plaintiffs only began raising these allegations after attempting to demand greater ownership and operational control over the store shortly before opening.

55. Similarly, Plaintiffs actively participated in the LIC store's early-stage development, design, and planning discussions, including storefront and façade concepts, logo placement and signage discussions, renderings and CAD drawings, operational layout and workflow planning, branding presentation, and practical construction adjustments based on site conditions.

56. The LIC Store was never an "unauthorized" or secretly operated location. It was one of the five New York stores expressly contemplated under the Parties' Cooperation Agreement and was developed with Plaintiffs' full knowledge and participation.

57. Defendants possess extensive WeChat communication records demonstrating that Plaintiffs and their design representatives were deeply involved in the LIC store's planning and design process, and that preliminary design concepts had already been created and reviewed. Accordingly, Plaintiffs' current attempt to portray the LIC store as an "unauthorized" location falsely representing itself as Molly Tea is fundamentally inconsistent with Plaintiffs' own prior conduct and participation.

58. Similar to the CU Store and social media accounts, only after Defendants refused to surrender ownership and operational control did Plaintiffs begin attempting to stop the LIC Store and retroactively characterize previously approved and jointly developed activities as "unauthorized".

59. Defendants continued limited operations after the April 2, 2026 Notice Letter and May 1, 2026 Termination Notice solely in a good-faith effort to mitigate damages, preserve employee jobs, satisfy lease obligations personally guaranteed by individual Defendants, and reduce losses to the extent possible.

60. Defendants' mitigation efforts do not negate the severe and ongoing harm caused by Molly Tea's conduct, however, Molly Tea has asserted these efforts as non-compliance with and breach of contract in the federal Complaint.

61. Defendants have only been able to partially restore certain operations through their own independent efforts, including recovering access to Instagram, RedNote (Xiaohongshu) and DoorDash and replacing the Chowbus POS system with Toast.

62. Plaintiffs abused their position as Molly Tea's brand manager and licensor, by utilizing the inventory supply management authority pressure Defendants to sign the Franchise Agreement and give up Defendants ownership interest in the NYC Molly Tea Joint Venture Entities and Columbia University Store.

63. Molly Tea's conduct went far beyond ordinary franchise or brand management. Molly Tea demanded that Defendant surrender lease rights, ownership control, employee management authority, and operational control over the Columbia University store to a new entity controlled by Molly Tea.

64. When Defendants refused, Molly Tea systematically interfered with Defendants' Store and supply chain, operational systems, social media accounts, delivery platforms, and logistics in an effort to coerce Defendants into relinquishing control of the business.

65. Plaintiffs' allegations regarding unauthorized conduct and trademark infringement arose only after disputes developed concerning ownership interests, operational control, and Defendants' refusal to execute the proposed franchise restructuring documents.

66. Upon information and belief, Molly Tea has leased or is actively seeking additional Molly Tea store locations within a two-mile radius of Defendants' existing New York stores, including a location at 862 Broadway, New York, NY 10003, which is located

approximately 1.9 miles from Defendants' Manhattan Chinatown store. Such conduct directly conflicts with the Parties' prior agreements restricting competing Molly Tea operations within a two-mile radius and further demonstrates Plaintiffs' intent to appropriate Defendants' established customer base, goodwill, and market presence in New York.

### Defendants' Irreparable Harm and Damages

67. Defendants' current inventory levels are rapidly diminishing.

68. Defendants employ more than 100 people across their Stores in NYC. Once the remaining inventory is exhausted, Defendants' stores will no longer be able to continue normal operations and may be forced to cease operations entirely and those employees will lose their livelihoods, through no fault of their own.

69. Individual Defendants will face substantial liabilities arising from personal guarantees, lease obligations, and business debts incurred in reliance on Molly Tea's assurance and agreements.

70. Monetary damages alone cannot adequately compensate for these harms. Plaintiffs' conduct threatens the viability of Defendants' ongoing business operations, including the newly opened CU Store, the retention of Defendants' approximately 110 employees, customer goodwill, brand reputation, and established market presence in New York. These injuries are continuing, difficult to quantify, and irreparable as a matter of law.

71. Defendants have no adequate remedy at law. The only way to preserve the status quo and prevent further irreparable harm is for this Court to enjoin Plaintiffs from further interfering

with Defendants' ongoing business operations, including Defendants' operational systems, supply-chain logistics, delivery-platform access, customer communications, and social-media accounts.

**I declare under penalty of perjury that the foregoing statements are true and correct.**

Dated: Queens, New York
      May 24, 2026

                              _____/s/ Mei Hui Lin_____
                                          Mei Hui Lin