**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD. *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　-against-<br><br>MHL NY LLC, *et al.*,<br><br>　　　　　　　　　　Defendants. | 1:26-cv-04051-JPC<br><br>**DECLARATION OF LEE BERGSTEIN IN FURTHER SUPPORT OF PLAINTIFFS' MOTION AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION** |

I, Lee Bergstein, Esq., an attorney duly admitted to practice law before this Court and the Courts of the State of New York, declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am a partner at Bergstein Flynn Knowlton & Pollina PLLC, attorneys for Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("**Shenzhen Molly Tea**"), Mollytea Shops LLC ("**Mollytea Shops**"), and Molly Tea Holding Inc. ("**Molly Tea Holding**") and for Mollytea Shops in its derivative capacity on behalf of Nominal Defendants Molly Tea NYC Inc., Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. (collectively, "**Plaintiffs**").

2. I am over 18 years of age. I have knowledge of the facts and circumstances stated herein.

3. Pursuant to the Court's order to submit supplemental briefing in response to the arguments and testimony adduced at the May 27, 2026 hearing, I respectfully submit this declaration in support of Plaintiffs' motion, by order to show cause, for a temporary restraining

order and preliminary injunction, and in opposition to Defendants' cross-motion, by order to show cause, for a temporary restraining order and preliminary injunction.

4.      The arguments set forth in Plaintiffs' letter, dated May 26, 2026 (ECF No. 57), with exhibit annexed thereto (ECF No. 57-1), in opposition to Defendants' cross-motion, are incorporated by reference as if fully set forth herein.

5.      As previously discussed in Plaintiffs' papers, Defendant MHL NY LLC ("**MHL**") moved the New York State Supreme Court, Queens County, for a temporary restraining order and preliminary injunction against, *inter alia*, Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd., Mollytea Shops LLC, and Molly Tea Holding Inc. (Index Number 711066/2026).

6.      At the May 27 hearing, counsel for Defendants, Ms. Chen, stated that the Queens court had not denied MHL's motion for a temporary restraining order.  (Hearing Tr. 18:18-19.)[1] That is inaccurate.  In its order, dated April 16, 2026, the Queens court did, in fact, deny MHL's motion for a TRO, having crossed out the entire section of MHL's proposed order to show cause that sought the TRO.  A true and accurate copy of the order to show cause issued by the Court on April 16, 2026 (NYSCEF No. 24) is annexed hereto as **Exhibit 1**.  The portion of MHL's motion seeking a preliminary injunction, which the aforementioned Plaintiffs, *inter alia*, opposed, remains pending before the Queens court.

7.      Defendants' characterization of Plaintiffs' termination of the Brand License Agreement—following Defendants' numerous material breaches and repeated notices from

---

[1] "Hearing Tr." refers to the transcript of the May 27, 2026 oral argument and hearing before this Court on Plaintiff's motion, by order to show cause, for a temporary restraining order and preliminary injunction and Defendants' cross-motion, by order to show cause, for a temporary restraining order and preliminary injunction.  A copy of that transcript is annexed as Exhibit 2 to the accompanying declaration of Biao Zhang, dated June 1, 2026.

Plaintiffs to cure, all of which were ignored—as "retaliation" (Def. Mem. of Law, ECF No. 53, at 11, 14) is wholly inaccurate.  As set forth in the Verified Complaint, Defendants' breaches included the unauthorized opening and operation of the Columbia Store and the LIC Concession; the diversion of inventory and assets from the Joint Venture Stores; the use of unauthorized point-of-sale, supply-chain systems, and social-media accounts; and the failure to provide financial reporting and remit brand usage and management fees.  Plaintiffs' termination was intended to cease and prevent these ongoing breaches, which were causing significant erosion of the Molly Tea brand.

8.    Moreover, Defendants erroneously argue that Plaintiffs' motion should be analyzed under a heightened standard, pursuant to *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015), whereby Plaintiffs must show a "clear or substantial likelihood of success on the merits . . . and make a strong showing of irreparable harm." *Schneiderman*, 787 F.3d at 650 (internal citations and quotation marks omitted).  (Def. Mem. of Law at 16.)  However, this is incorrect, as the heightened standard applies only if "the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Id*. (internal quotation marks omitted).  Neither circumstance is true here.

9.    Plaintiffs' motion does not seek substantially all the relief Plaintiffs request in their Verified Complaint, which also seeks significant legal relief in the form of compensatory and consequential damages in an amount to be determined at trial, treble damages on the causes of action brought pursuant to the Lanham Act, punitive damages, Plaintiffs' costs, and pre- and post-judgment interest.  Nor does the injunctive relief sought in Plaintiffs' motion even encompass all of the equitable relief sought in the Verified Complaint, which additionally seeks a declaratory judgment on three distinct questions of law and fact, as well as injunctive relief mandating

3

Defendants to render a full and verified accounting of all funds and transactions at issue. Each of these modes of relief requested in the Verified Complaint is not sought in Plaintiffs' motion for a temporary restraining order and preliminary injunction, but are equally critical to redressing the completed and ongoing harms Defendants are doing to Plaintiffs.

10. Nor can Defendants demonstrate that the preliminary injunctive relief sought by Plaintiffs cannot be undone if Defendants were to prevail at a trial on the merits. The preliminary injunctive relief would simply prevent Defendants from utilizing the Molly Tea Marks in their commercial activity. Thus, any injury to Defendants would be limited to lost business or other economic injuries that are readily calculable *ex post facto* and, therefore, would be entirely compensable through money damages.

11. As such, the ordinary standard for preliminary injunctive relief should govern Plaintiffs' motion. In any event, Plaintiffs readily satisfy the heightened standard, as the Verified Complaint, their motion papers, and the hearing record soundly demonstrate that their likelihood of success on the merits is both "clear" and "substantial" and that their showing of irreparable harm is "strong."

12. Moreover, Defendants' cross-motion is procedurally barred and should not be considered; in any event, it is entirely without merit. As set forth more fully in Plaintiffs' letter, dated May 26, 2026 (ECF No. 57), by virtue of Fed. R. Civ. P. 3, a court is not permitted to issue an injunction based on a claim not pleaded in a counterclaim: "[o]nly after an action has been commenced can preliminary injunctive relief be obtained." *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985). That is because "[a]n injunction is a remedy for a violation alleged in a complaint" or answer. *Williams v. N.Y.C. Dep't of Corr.*, No. 1:19-cv-03347-LJL-JLC, 2020 WL 7079497, at *2 (S.D.N.Y. Dec. 3, 2020).

13.     As of this submission, Defendants have not answered the Verified Complaint or otherwise pleaded any counterclaims against Plaintiffs.  As such, Defendants cannot seek injunctive relief against Plaintiffs.

14.     In any event, even had Defendants properly pleaded counterclaims, their cross-motion papers are procedurally deficient because the relief sought in the cross-motion is substantially identical to and, therefore, duplicative of the claims Defendant MHL has brought against, *inter alia*, Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd., Mollytea Shops LLC, and Molly Tea Holding Inc. in the action pending before the Queens court. *See MHL NY LLC v. Mollytea Franchising LLC et al.*, Index No. 711066/2026 (N.Y. Sup. Ct. Queens Cnty.)  Because the cross-motion "seek[s] the same relief on the same grounds asserted here, in the New York State Supreme Court" which was already denied, "that decision thereby became the law of the case in this proceeding." *Gemini Supply Corp. v. Zeitlin*, 590 F. Supp. 153, 159 (E.D.N.Y. 1984).

15.     Even if the Court were to entertain Defendants' cross-motion, it should be denied as meritless.

16.     "A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)) (internal quotation marks omitted).

17.    Initially, to the extent the Court is inclined to apply the heightened standard to Plaintiffs' motion, Defendants' cross-motion should, *a fortiori*, be analyzed under that heightened standard.  Defendants' cross-motion would "provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Schneiderman*, 787 F.3d at 650.  The heightened standard is applicable "[w]hen either condition is met."  *Id*.

18.    The heightened standard applies to Defendants' cross-motion for an additional and more fundamental reason: Defendants have not pleaded any counterclaims.  Without an underlying pleading, there is no claim against which to measure the requested injunctive relief, and any relief granted in the cross-motion would, by definition, exhaust Defendants' available remedies in this action.  The procedural defect and the heightened standard analysis result in the same point: there is nothing more Defendants could obtain in this action because there is nothing else they have pleaded.

19.    Additionally, the relief Defendants seek cannot be undone even if Plaintiffs were to prevail on all their causes of action at a trial on the merits.  As discussed in detail in Plaintiffs' initial motion papers and in the Verified Complaint, Defendants' ongoing use of the Molly Tea Marks, including Shenzhen Molly Tea's federally Registered Marks, coupled with Defendants' significant deviations from Molly Tea standards—constituting breaches of the Brand License Agreement and Shareholder Agreements—is doing immediate, severe, and ongoing harm to the Molly Tea brand and Plaintiffs' hard-earned goodwill.  As a matter of law, "[s]uch injuries are not readily compensable by monetary damages alone and are the type for which injunctive relief is traditionally available under the Lanham Act."  *Folkes Home Servs. Heating, Cooling, Plumbing*

6

*& Elec., LLC v. Folkes Bros. Home Servs. LLC*, No. 24 CV 9844 (NSR), 2026 WL 311515, at \*14 (S.D.N.Y. Feb. 5, 2026).

20.     In essence, Defendants' cross-motion seeks to authorize their ongoing egregious breaches of the Brand License Agreement and Shareholders Agreements and permit Defendants to continue operating the Joint Venture Stores and the never-authorized Columbia Store and LIC Concession with near-total disregard for those agreements and without any oversight from Plaintiffs.  That is, Defendants' cross-motion effectively asks the Court to ratify those ongoing, irreparable injuries during the pendency of the instant litigation, thereby ossifying the harms for which there can be no monetary relief.

21.     Thus, Defendants' cross-motion both would provide the movant with substantially all the relief sought and seeks relief that cannot be undone at a trial on the merits.  As such, Defendants should be required to demonstrate a "clear or substantial likelihood of success on the merits . . . and make a 'strong showing' of irreparable harm."  *Schneiderman*, 787 F.3d at 650 (internal citations and quotation marks omitted).

22.     The heightened standard applies to Defendants' cross-motion for the additional reason that it seeks a "mandatory" injunction.  *Schneiderman*, 787 F.3d at 650.  "[P]rohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024).  The injunction Defendants seek is mandatory in that it would require Plaintiffs to undertake affirmative actions to lend supply chain and logistical support and products, as well as permit the ongoing use of the Molly Tea marks.  As such, the heightened standard governs Defendants' cross-motion.

23.     Moreover, and most importantly, even under the ordinary standard for preliminary relief, Defendants cannot, and do not, demonstrate that they will suffer irreparable harm, but for the issuance of the injunction.  The "'showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'"  *I.T. by & through Next Friend B.V.T.R. v. Kennedy*, No. 26-CV-02563 (JAV), 2026 WL 882917, at *2 (S.D.N.Y. Mar. 31, 2026) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).

24.     None of the alleged harms Defendants will suffer in the absence of their desired injunction would be non-compensable by money damages.  All of them regard the purported closure of the Joint Venture Stores and the Columbia Store and LIC Concession.  (*See* Def. Mem. of Law at 20-21).  That is, Defendants simply allege that they will suffer lost business, an injury that is readily calculable and compensable by money damages, in the highly unlikely event Defendants were to succeed on their non-existent counterclaims.

25.     As set forth in detail in Plaintiffs' initial motion papers, Plaintiffs are highly likely to succeed on the merits of their claims of trademark infringement and unfair competition under the Lanham Act and breach of contract regarding the Brand License Agreement and Shareholder Agreements.  This likelihood of success was only bolstered by the hearing testimony of Liu, Defendants' own witness.

26.     When repeatedly asked whether Defendants had received permission to open the Columbia Store, Liu provided evasive answers before expressly stating, "I don't think I need the permission.  I just need to open it as soon as possible." (Hearing Tr. 42:12-15; *see* Zhang Decl. ¶¶ 7-13.)

27.     Even more glaringly, Liu conceded on redirect examination that not only did Defendants lack authorization to open the Columbia Store, but that ***prior*** to its opening, Plaintiffs affirmatively notified Defendants that they were not permitted to open the store:

Q.  At any point the plaintiff tell you that they will not allow you to open the Columbia store?

A.  Just one last week. Like, I don't remember the exact date.  Like, for example, if I told, okay, I want to open in April 12th, something like that, they told me one week before.

Q.  That means in the beginning of April?

A.  I think so.  I think so.  It's all in evidence.

(Hearing Tr. 45:18-24.)

28.     The Brand License Agreement is unequivocal:  it explicitly requires MHL to "perform[]all pre-opening obligations" (Brand License Agreement § 6.4.3(e)) and provides: "Upon satisfying the above conditions for store opening, [MHL] shall provide [Shenzhen Molly Tea] with copies of the relevant certificates, lease agreements, and other supporting documents, and shall submit a written application for store opening to [Shenzhen Molly Tea] by email or other written means.  The Store may be opened only upon [Shenzhen Molly Tea]'s verification and approval.  If [MHL] opens the Store without [Shenzhen Molly Tea]'s prior consent, such act shall constitute a material breach of this Contract."  (Brand License Agreement § 6.4.3(f).)

29.     Thus, Defendants have now admitted that they opened the Columbia Store without Shenzhen Molly Tea's authorization, in material breach of the Brand License Agreement, and that they continue to operate it under the Molly Tea Marks despite that breach.

30.     As discussed in detail in the accompanying declaration of Biao Zhang, dated June 1, 2026 (the "**Zhang Decl.**"), Liu's testimony also suffers from serious credibility issues.

31.     Liu provided evasive and contradictory answers as to whether he owns an equity interest in MHL.  Initially, when asked whether he owned any equity interest in that entity, he

stated "I refuse to answer."  When Plaintiffs' counsel asked the Court to direct Liu to answer, Liu asserted MHL was "[his] fiancée's" and that he did not know whether legally he owns any interest. (Hearing Tr. 37:9-18.)  However, promptly thereafter, Liu was again asked whether he had any equity interest in MHL and Liu straightforwardly replied "Yeah, yes" and then promptly stated that his "personal" interest was "zero."  (Hearing Tr. 37:21-38:3; *see* Zhang Decl. ¶¶ 25-26.)

32.    Furthermore, Liu implausibly testified that he did not recall signing or even recognizing the Shareholder Agreement for one of the Joint Venture Stores when it was presented to him at the hearing, despite conceding "I see my signature, but it looks like electric signature." (Hearing Tr. 39:4-23.)

33.    However, as discussed in the Zhang Decl., documentary evidence refutes that assertion, as WeChat records demonstrate that Liu electronically received the Shareholder Agreements, promptly responded and posed questions about the Shareholder Agreements, sent screenshots of portions of the agreements to Plaintiffs, and that later that day, returned the executed versions of the Shareholder Agreements.  (*See* Zhang Decl. ¶¶ 33-34.)

34.    Moreover, Lin—the owner of MHL, according to Liu, who was present at the May 27 hearing and seated at counsel's table, and also the individual who submitted a sworn declaration in opposition to the instant motion—chose not to testify, despite presumably being able to clarify Liu's claimed confusion.  (Hearing Tr. 3:4-9; *see* Zhang Decl. ¶ 26.)

35.    In support of its motion before the New York State Supreme Court, Queens County, for a temporary restraining order and preliminary injunction, Defendant MHL submitted an affirmation of Lin, dated April 15, 2026 (the "**Lin Aff.**")[2]  In it, Lin affirmed that she was the "managing member of Plaintiff MHL NY LLC" with "direct, day-to-day oversight of all aspects

---

[2] A copy of the Lin Aff. is annexed as Exhibit 3 to the Zhang Decl.

of its business operations, including store management, supply chain, marketing, and financial matters." (Lin Aff. ¶ 1; *see* Zhang Decl. ¶ 27.)

36. Critically, Lin affirmed, under penalty of perjury, that the "Flushing Store, BK Store, and Manhattan Store have been closed since April 3, 2026." (Lin Aff. ¶ 48.) Indeed, the alleged closure of those three stores is the basis for the injunctive relief that MHL seeks from the Queens Supreme Court. (*See* Zhang Decl. ¶ 28.)

37. Yet, in Lin's declaration, dated May 24, 2026 (ECF No. 53-1) (the "**Lin Decl.**"), submitted to this Court, Lin directly contradicts this assertion, stating "Defendants nevertheless used all available resources and undertook extraordinary efforts to temporarily continue the operation of the Flushing Store, Brooklyn Store and Manhattan Store" (Lin Decl. ¶ 39) (emphasis added) and even that "Defendants also temporarily reopened and/or continued limited operations after April 3, 2026, which was possible only because Defendants had previously stockpiled inventory in accordance with Molly Tea's own supply-chain requirements." (Lin Decl. ¶ 41) (emphasis added.) Making this point repeatedly, Lin declared: "Defendants continued limited operations after the April 2, 2026 Notice Letter and May 1, 2026 Termination Notice" (Lin Decl. ¶ 59) (emphasis added) and "[o]nce the remaining inventory is exhausted, Defendants' stores will no longer be able to continue normal operations and may be forced to cease operations entirely." (Lin Decl. ¶ 68) (emphasis added); *see* Zhang Decl. ¶¶ 29-30.)

38. Furthermore, as discussed *supra*, Defendants have pleaded no counterclaims against Plaintiffs. Therefore, by definition they cannot enjoy a "likelihood of success on the merits." *See Benihana*, 784 F.3d at 895. Even if the Court were inclined to infer the counterclaims Defendants *might* have pleaded, Defendants would be highly unlikely to succeed on such claims. As set forth in the Verified Complaint and Plaintiffs' motion papers, Plaintiffs are the undisputed

owners of the Molly Tea Marks and Shenzhen Molly Tea validly terminated the Brand License Agreement as a result of Defendants' numerous material breaches and ignorance of multiple notices to cure.  As such, the documentary evidence before the Court makes clear that Defendants possess no legal right to utilize the Molly Tea Marks.

39.    Defendants allege that Plaintiffs were "cooperating friendly and actively" prior to the termination of the Brand License Agreement.  (Def. Mem. of Law at 18.)  While Defendants submit no evidence to that effect, even were that true *arguendo*, that in no way mitigates the fact that Defendants engaged in numerous breaches of the Brand License Agreement and refused to cure same or even respond to Plaintiffs' notices to cure.  As set forth in the Verified Complaint, these breaches included the unauthorized opening and operation of the Columbia Store and the LIC Concession; the diversion of inventory and assets from the Joint Venture Stores; the use of unauthorized point-of-sale, supply-chain systems, and social-media accounts; and the failure to provide financial reporting and remit brand usage and management fees. Plaintiffs' termination extinguished any and all remaining authority of MHL—and any alter-ego or affiliate, including Molly Tea CU and Genesis—to use the Molly Tea Marks, the Corporate Identity System, the proprietary recipes, and the designated point-of-sale and supply-chain infrastructure.

40.    Defendants attempt to dismiss those numerous and significant breaches by characterizing them as "at most, practical adjustments necessitated by New York City legal and permitting requirements, shipping damage to materials supplied by Plaintiffs, or ordinary construction solutions already utilized at other MOLLY TEA locations."  (Def. Mem. of Law at 18.)  Initially, if that were true, Defendants would have simply responded to Plaintiffs' multiple notices to cure, saying so.  They did not.  Regardless, the aforementioned breaches were far from trivial or necessary, as they directly undermined the rigorous Molly Tea Corporate Identity System

that is integral to the uniform customer experience at Molly Tea locations.  This is expressly required by the numerous provisions of the Brand License Agreement imposing strict compliance requirements and granting Plaintiffs broad oversight—and termination—authority.

41.    In short, the Brand License Agreement is the sole authority by which Defendants were permitted to utilize the Molly Tea Marks.  That agreement was terminated and, with it, any right of Defendants to utilize the marks.  Despite this, the Joint Venture Stores are still operating under the Molly Tea Marks, as Liu has conceded and documentary evidence establishes.  Liu has further conceded, and documentary evidence also establishes, that the Columbia Store opened without Plaintiffs' permission and, indeed, contrary to Plaintiffs' instruction.  Thus, even at this preliminary stage, the disputed facts are effectively settled.  Hence, Plaintiffs are highly likely to succeed on the merits of their claims.

42.    Plaintiffs' likelihood to prevail is directly controlled by *Singas*:  "[w]here a . . . misimpression results from trademark infringement by a former licensee, courts have found consumer confusion to be at least strong evidence of irreparable harm because 'after a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder.'"  *Singas Famous Pizza Brands Corp. v. New York Advert. LLC*, No. 1:10-cv-08976-RJH, 2011 WL 497978, at *9 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 468 F. App'x 43 (2d Cir. 2012).  When an entity "continues to hold itself out as operating [an authorized location], despite the termination of its . . . agreement, 'likelihood of confusion is inevitable.'"  *Choice Hotels Int'l, Inc. v. Kolath Hotels & Casinos, Inc.*, No. 113-cv-192-GLS-CFH, 2016 WL 225690, at *3 (N.D.N.Y. Jan. 19, 2016) (emphasis added) (quoting *Dunkin' Donuts Inc. v. N. Queens Bakery, Inc.*, 216 F. Supp. 2d 31, 43-44 (E.D.N.Y. 2001)).

43.     Here, the Joint Venture Stores lost any right to hold themselves out as Molly Tea locations following the termination of the Brand License Agreement, and the Columbia Store and LIC Concession lacked any authority to do so in the first place.  Defendants' characterization of the litigation as a "membership dispute" is of no matter.  The Lanham Act governs and protects Plaintiffs' ownership of their trademarks, including Shenzhen Molly Tea's federally Registered Marks, regardless of the nature of the dispute.  Meanwhile, the Columbia Store and LIC Concession were never contractually authorized to utilize those marks.

44.     To the extent Defendants assert that the termination and prior notices of same were attempts to "coerce" Defendants into relinquishing a portion of their equity in the Joint Venture Entities (Def. Mem. of Law at 10-13, 19, 26), they furnish no evidence of this and the overwhelming evidence of Defendants' many material breaches of the Brand License Agreement directly militates against that assertion.  To the degree Defendants allege that Plaintiffs' motion before this Court, itself constitutes "coercive relief" (Def. Mem. of Law at 15), that bald assertion, too, is unsupported by any evidence and is directly belied by the meritorious nature of Plaintiffs' motion.

45.     Meanwhile, Defendants never received authorization to open or operate the Columbia Store and LIC Concession or otherwise utilize the Molly Tea Marks in connection with those locations.  Indeed, as discussed *supra*, Defendants' own witness admitted that the Columbia Store was opened without authorization and admitted that that constituted a breach of the Brand License Agreement.  The LIC Concession was never authorized at all.  As such, Defendants fare an even dimmer prospect to prevailing on the merits with regard to those stores.

46.     Moreover, bizarrely, Defendants assert that Plaintiffs' motion "failed to submit the operative LLC agreements, shareholder agreements, joint venture agreements, or other governing

14

ownership documents defining the parties' respective ownership, management, and operational rights relating to the New York MOLLY TEA stores." (Def. Mem. of Law at 26-27.) However, that is simply false. The Shareholder Agreements and Bylaws for each of the Joint Venture Stores, which are the sole governing documents for the joint venture, are attached to the Verified Complaint as Exhibits 3 through 5 (ECF Nos. 11-3 to 11-5). Likewise, the Brand License Agreement, which is the sole document governing the operations of the Joint Venture Stores, is attached to the Verified Complaint as Exhibit 2 (ECF No. 11-2).

47. Defendants' continued reference to the "LLC agreements" is perplexing, as those documents were signed in July 2025, before the Joint Venture Entities were even capitalized and were superseded six months later by Shareholder Agreements, dated January 15, 2026, executed by Zhang, on behalf of Molly Tea, and Liu on behalf of MHL. The Shareholder Agreements reflect the parties' actual negotiated ownership allocation: 35% to Mollytea Shops and 65% to MHL. Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd., Mollytea Shops LLC, and Molly Tea Holding Inc. expressly pointed this fact out to the Queens court and MHL in opposition to MHL's motion before that court, yet MHL continues to advance the same meritless argument before this Court.

48. Consequently, Defendants' desired injunctive relief, which would authorize their continued use of those marks, is highly unlikely to succeed on the merits.

49. Nor does the balance of the hardships tip in Defendants' favor. *See Benihana*, 784 F.3d at 895. On the contrary, it tips decidedly in Plaintiffs' favor. As discussed in *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp.2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013), the degree to which and relative amount of time in which the parties have engaged in the particular strain of commerce while utilizing the trademarks in question is influential.

Plaintiffs are the undisputed owners of the Molly Tea Marks and, therefore, and, prior to the termination of the Brand License Agreement, licensed to Defendants the use of those marks, subject to numerous contractual conditions.  Accordingly, Plaintiffs would face a greater hardship from being deprived of control over their own trademarks.  As discussed in greater detail in Plaintiffs' initial moving papers (*see* Pltf. Mem. of Law, ECF No. 7, at 22-24), the balance of the hardships tips strongly in Plaintiffs' favor.

50.     Finally, Defendants have made no showing that the public interest would not be disserved by the issuance of the injunctive relief sought in their cross-motion. *See Benihana*, 784 F.3d at 895.  They simply assert that "more than 100 people" are employed across the stores operated by Defendants in New York City.  (Def. Mem. of Law at 29.)  Presumably, this includes the wholly unauthorized Columbia Store and LIC Concession.

51.     As clearly set forth in the Zhang Decl., Plaintiffs are sensitive to any disruption to those employees resulting from the injunctive relief that Plaintiffs maintain is necessary to prevent ongoing, irreparable harm.  As such, Plaintiffs are prepared to offer alternative employment opportunities to displaced staff at Plaintiffs' New Jersey locations and/or a store planned to open in 2026 at 862 Broadway in Manhattan.  Thus, the public interest is directly served by Plaintiffs' motion and disserved by Defendants' cross-motion.

52.     Additionally, Defendants continue to violate the Brand License Agreement, even after the filing of this lawsuit.  Upon information and belief, beginning at least as early as May 26, 2026, at least the Flushing Store began displaying signage stating that the store's "membership system" would be undergoing an "upgrade and migration" between May 23 and June 8, 2026, that a "new system" would begin operation on June 9, 2026, and that "all membership balances and points will be synchronized to the new system."  The signage stated that the "affected stores" are

16

"Molly Tea Flushing, Brooklyn, Chinatown"—that is, the Joint Venture Stores. A true and accurate copy of a photograph of such signage is annexed hereto as **Exhibit 2**.

53.    Defendants' unilateral decision to "migrate" customer data from the Chowbus point-of-sale system to an unspecified new one is yet another direct violation of the Brand License Agreement, which requires that "[MHL]'s Store shall use the POS system in compliance with [Shenzhen Molly Tea]'s requirement." (Brand License Agreement § 10.2(c).) Pursuant to that provision, Shenzhen Molly Tea designated Chowbus as the exclusive point-of-sale system for use in the Joint Venture Stores. Thus, notwithstanding Plaintiffs' multiple notices to Defendants to cure their ongoing breaches of the Brand License Agreement, and even the filing of the instant suit, Defendants continue their deliberate plan to attempt to place customer data beyond the reach of Plaintiffs, in direct violation of the Brand License Agreement.

54.    Furthermore, the "migration" of customer data constitutes an additional breach of the Brand License Agreement in that, by its own terms, upon the termination of the Brand License Agreement, "[MHL] shall no longer use any trademarks, trade names, patents, or *trade secrets* licensed under this Contract." (Brand License Agreement § 13.4) (emphasis added.) "Trade secret" is defined by the agreement as "all information, documents, materials, items, software (including all data contained in any software system), and any other business resources provided by [Shenzhen Molly Tea] to [MHL], including but not limited to advertising and marketing plans, customer lists, operational procedures, manuals of all kinds, forms, systems . . . proprietary know-how, and other confidential business information." (Brand License Agreement Art. 1.) Thus, despite the Brand License Agreement being terminated, Defendants are now utilizing Plaintiffs' trade secrets in the form of customer data, in breach of the agreement and constituting a conversion.

17

55.     Defendants now attempt to invert the contractual relationship between Shenzhen Molly Tea and MHL, contending that Plaintiffs "interfered" with Defendants' use of various internet platforms, including Chowbus.  This upends the contractual relationship.  As discussed *supra*, the Brand License Agreement vests in Shenzhen Molly Tea the right to designate the point-of-sale system.  (*See* Brand License Agreement § 10.2(c).)  Shenzhen Molly Tea designated Chowbus and is the contractual counterparty; as such, it was entitled to advise Chowbus that Defendants were operating outside of their scope.  Meanwhile, Defendants had no contractual right to substitute the Toast POS system for Chowbus, which itself constitutes an independent breach of the Brand License Agreement.

56.     In sum, the Court should grant Plaintiffs' motion for a temporary restraining order and preliminary injunction and decline to consider or, alternatively, deny *in toto*, Defendants' cross-motion for a temporary restraining order and preliminary injunction.

57.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 1, 2026 in New York, New York

By: ___*/s/ Lee Bergstein*_____
Lee Bergstein
BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
Tel: 212-803-9025

*Counsel for Plaintiffs*

18