**BFKP**

**BERGSTEIN**
**FLYNN**
**KNOWLTON+**
**POLLINA**

**Joseph DiPietro**
Office: (212) 803-9025
Direct: (212) 803-9041
joseph@bfklawoffice.com
780 Third Avenue, Suite 902
New York, New York 10017

June 12, 2026

**Via ECF and E-Mail**
Hon. John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007-1312
CronanNYSDChambers@nysd.uscourts.gov

>   **Re:    *Shenzhen Molly Tea Food and Beverage Management Co., Ltd. et al. v. MHL NY LLC et al.*;  Case No. 1:26-cv-04051-JPC**

Dear Judge Cronan:

We represent the Plaintiffs in the above action.  We respectfully submit this letter, pursuant to Rule 6(A) of Your Honor's Individual Rules and Practices in Civil Cases, to notify the Court that Plaintiffs intend to move for an order of contempt against all Defendants due to their continuing disregard for the Court's preliminary injunction—notwithstanding the June 11 conference before the Court on the issue of Defendants' non-compliance.

On June 8, 2026, via written Order (ECF No. 62), the Court immediately enjoined Defendants and their agents from utilizing the Molly Tea name, trademarks, trade dress, and trade secrets and Plaintiffs' intellectual property in any way, including by operating or permitting the operation of the three Joint Venture Stores and the Columbia Store to the extent they make use of same.  At the hearing, the Court inquired of Defendants' counsel as to her understanding of the scope of the injunction so as to specifically avoid any possibility of contempt.

On June 10, the undersigned notified Defendants' counsel of blatant violations of the injunction, and received no meaningful response.  Therefore, that day, Plaintiffs filed a pre-motion letter (ECF No. 63), supported by substantial evidence, seeking an order of civil contempt against all Defendants due to their blatant violations of the injunction, including by continuing to fully operate the Joint Venture Stores and the Columbia Store under the Molly Tea name and marks and utilizing Molly Tea property, including proprietary ingredients, menus, and formulas.

At 10:00 a.m. on June 11, the Court held a conference on Plaintiffs' pre-motion letter.  At that hearing, Defendants' attorney, Ms. Chen, affirmatively represented to the Court that all three Joint Venture Stores and the Columbia Store had closed, effective 4:00 p.m. on June 10.  On that basis, the Court declined to hold the Defendants in contempt.

However, contrary to that representation, Plaintiffs' investigators visited the Joint Venture Stores and the Columbia Store and found them to be fully operational, busy, and open to the public—that is, operating as normal—as of **June 11**—*after* Ms. Chen's representation at the conference.  True and accurate copies of photographs of same, taken between 10:43 a.m. and 1:14 p.m., are annexed hereto as **Exhibits 1 through 7**.  The only apparent change was that at least some instances of the word "Molly" on the stores' building had been covered by wood or paper, with a question mark written on top.

At 5:07 p.m. on June 11, the undersigned e-mailed Defendants' counsel, notifying them of the stores' continued operation and emphasizing that Ms. Chen's representation on the record that the stores had closed was the basis on which the Court declined to hold Defendants in contempt.  Given the centrality of that representation, the undersigned urged Defendants' counsel to contact the Court to correct the record and, should they fail to do so, the undersigned would notify the Court and seek an order of contempt.

At 6:48 p.m. on June 11, Ms. Chen responded, asserting that the stores had closed on June 9 at 4:00 p.m. and reopened on June 10 at 11:00 a.m.,[1] yet simultaneously contending that her prior representation to the Court that the stores had closed on June 10 at 4:00 p.m. was accurate.  As of this submission, Defendants have made no effort to correct the record.  A true and accurate copy of the June 11 e-mail correspondence with Ms. Chen is annexed hereto as **Exhibit 8**.

There is no indication that the stores have paused their operations for any meaningful amount of time since the issuance of the injunction and, instead, have effectively disregarded the Court's injunction, save for nominal compliance.  Put simply, Ms. Chen's representation to the Court that the stores were closed as of June 10 was flatly wrong—a fact she explicitly conceded in her June 11 e-mail.  Nonetheless, Ms. Chen has refused to correct the record.  It is now conclusively established that the stores continued operating under the Molly Tea marks after the issuance of the injunction.  On that basis alone, Defendants should be held in contempt.

Additionally, it is now clear that even **after the June 11 conference**, Defendants have continued operating all four stores in violation of the injunction.  Most critically, the stores almost certainly continue to sell proprietary Molly Tea products and utilize proprietary Molly Tea inventory, menus, and formulas.

As was brought to Ms. Chen's attention in the June 11 e-mail, it defies reason that the four stores could have sourced non-Molly Tea inventory to fully replace the proprietary Molly Tea inventory, formulas, and ingredients on such a short timeframe, without any interruption in store operations, and in sufficient quantity to keep pace with what appears to be very high customer volume.  Indeed, Exhibit 2 to Plaintiffs' June 10 pre-motion letter (ECF No. 63-2) depicts a line of customers out the door of the Flushing Store at 4:37 p.m. on June 9, and Plaintiffs' investigators confirmed that, as of the afternoon of June 11, the stores remain very busy.

---

[1] It is important to note that Google Maps lists ordinary opening time of the Flushing, Chinatown, and Columbia Stores as 11:00 a.m.  True and accurate screenshots of same are annexed hereto as **Exhibits 9 through 11**.  Thus, the stores did not delay their opening on June 10.

Even if Ms. Chen's e-mail representation to the undersigned is true—that the stores closed slightly early on the evening of June 9 and then resumed normal business hours the following morning—it is utterly implausible that, *overnight*, the stores could have somehow developed an entirely new menu of products, obtained a full supply of non-Molly Tea ingredients, cups, and uniforms to meet very high customer demand, and performed an extensive renovation of the stores' interiors and exteriors, which were all designed in conformity with the proprietary Molly Tea Corporate Identity System (CIS).

Indeed, one food influencer's Instagram video[2] posted on the evening of June 11, clearly depicts the Flushing Store open at night and filled with customers, using the same menu structure and headings as prior to the injunction, promoting Molly Tea proprietary products, with the word "Molly" replaced by "?" being the only apparent change.

The only plausible explanation is that the stores continue to operate as Molly Tea stores in all but name—even then, store employees apparently have continued to refer to the stores as Molly Tea locations.  Merely covering some instances of the word "Molly" on exterior signage falls far short of complying with the injunction by ceasing to utilize Plaintiffs' intellectual property.

Plaintiffs' investigators have observed that Defendants' "compliance" has been limited to placing wooden slats over the word "Molly" and adding a "?" mark on the storefronts.  The photographs annexed here as Exhibits 1 through 7 confirm that:  (a) the word "TEA" remains in its original typeface, font, color and illumination at all locations; (b) the store interiors, fixtures, color scheme, cup design, menu boards, and store layout are identical to before the injunction; and (c) employees at each location continued to identify themselves to customers as Molly Tea staff and continue to sell Molly Tea products.  The Order at Paragraph 1(a) prohibits use of "trade dress, or any colorable limitation thereof," which language captures exactly the kind of cosmetic rebrand Defendants now concede they have conducted.

Critically, Defendant Liu elected to sit for an interview about the instant litigation, which was published by Bloomberg News on the afternoon of June 12.  A true and accurate copy of the article is annexed hereto as **<u>Exhibit 12</u>**.  Liu's stated position was reported as follows: "[Liu] plans to continue operating the shops under the '? Tea' brand, which he said is 'a scream for myself, for my team, for my staff.'  The business has enough supplies to operate for another month." (*See* Ex. 13.)  Those month-long supplies almost certainly belong to Plaintiffs; indeed, Defendants previously conceded in their cross-motion that in late May, they possessed two to three months of Plaintiffs' proprietary inventory. (*See* Def. Mem. of Law, ECF No. 53, at 14.)

Liu's admission is particularly significant because it confirms two distinct ongoing violations of the order.  First, the quotation appears to concede that the inventory being used at all locations consists of Plaintiffs' proprietary recipes, formulas, and ingredient specifications, all "Trade Secrets" as defined by the Brand License Agreement.  Second, the quotation confirms Liu's intention to sell those Trade Secret products for at least another month under the "? Tea" branding, publicly expressing his intent to violate the Order on a continuing basis.

---

[2]  Dylan + Whitney | Toronto/NYC Food (@foodiesxto), Instagram (June 11, 2026), https://www.instagram.com/reel/DZd_zGWgZGj/.  The undersigned will provide an offline version of the video to the Court upon request.

Thus, Liu has publicly ratified what Plaintiffs' evidence strongly suggests: that Defendants have no intention of complying with this Court's injunction and will carry on using Molly Tea's proprietary CIS and inventory for as long as they are permitted. The Court must bring this contemptible scheme to an end.

In light of the foregoing, Plaintiffs respectfully submit that there is a clear basis to hold all Defendants in contempt. Defendants have been given ample notice of their liability for contempt due to continued violation of the injunction, and Plaintiffs' application is urgent, given Defendants' ongoing and compounding harm to the Molly Tea brand and Plaintiffs' goodwill. Accordingly, Plaintiffs respectfully submit that no further briefing is required and request that the Court order Ms. Chen and Defendant Liu to appear for a contempt hearing on June 15 or as soon thereafter as counsel may be heard, at which sworn testimony can be elicited and other evidence presented.

Upon a finding of contempt, Plaintiffs intend to seek sanctions of $20,000—equal to approximately half of the aggregate daily revenue of the four stores, according to Ms. Chen's June 8 representation—per each day after June 8 that the four stores have remained open while utilizing Plaintiffs' intellectual property, as well as attorneys' fees and investigator costs for investigating Defendants' violations and briefing and appearing before the Court on the two pre-motion letters. Given Mr. Liu's conduct, he should be jointly and severally liable for the sanctions along with the corporate defendants.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

**BERGSTEIN FLYNN KNOWLTON & POLLINA PLLC**

By:    /s/ Joseph M. DiPietro
Joseph M. DiPietro
Lee Bergstein

cc:    All counsel of record
       (via ECF and e-mail)

4