

**Joseph DiPietro**

Office:    (212)    803-9025
Direct:    (212)    803-9041
joseph@bfklawoffice.com
780 Third Avenue, Suite 902
New York, New York 10017

June 19, 2026

**Via ECF and E-Mail**
Hon. John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007-1312
CronanNYSDChambers@nysd.uscourts.gov

Re:    ***Shenzhen Molly Tea Food and Beverage Management Co., Ltd. et al. v.  MHL NY LLC et al.***;  **Case No. 1:26-cv-04051-JPC**

Dear Judge Cronan:

We represent the Plaintiffs in the above action.  Plaintiffs respectfully submit this supplemental memorandum pursuant to the Court's June 17, 2026 directive at the contempt hearing that Plaintiffs specify Defendants' continuing violations of the preliminary injunction issued on June 8, 2026 (the "**Order**").

### A.  Continuing Violations of Trade Dress (Order ¶ 1(a))

"Protection of trade dress, no less than of trademarks, serves the [Lanham] Act's purpose to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers."  *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp.2d 431, 450 (S.D.N.Y. 2000) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)).

"Trade dress has a broad meaning, and includes 'all elements making up the total visual image by which [a] product is presented to customers, . . . as defined by its overall composition and design, including size, shape, color, texture, and graphics.'"  *Best Cellars*, 90 F. Supp.2d at 449–50 (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (internal quotations omitted)).  "'Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry.  Thus, if the overall dress is arbitrary, fanciful, or suggestive, it is distinctive despite its incorporation of generic [or functional] elements.'"  *Id*. at 451 (quoting *Jeffrey Milstein*, 58 F.3d at 32).

An "arbitrary trade dress consists of the total visual image which a customer entering a [given] store encounters."  *Best Cellars*, 90 F. Supp.2d at 451.  For example, this Court recently issued a permanent injunction against the use of "any wood paneling, cedar planks, tropical/floral designs, handmade signs, [and] old-fashioned illustrations" as falling within Trader Joe's

distinctive trade dress.  *See Trader Joe's Co. v. Joes Wine Inc., et al.*, No. 1:24-cv-08835-LJL, ECF No. 61 ¶ 3(e) (S.D.N.Y. Jan. 28, 2025) (annexed hereto as **Exhibit 1**).  Likewise, in *KatiRoll*, this Court found that a reasonable fact-finder could conclude that "the store banner, the unified color scheme, the decorative elements, and the open kitchen layout, among others . . . are a distinctive, non-functional trade dress" of the plaintiff.  *See The KatiRoll Co., Inc. v. Kati Junction, Inc., et al.*, No. 1:14-cv-01750-SAS, ECF No. 77 at 20 (S.D.N.Y. Sept. 25, 2015) (annexed hereto as **Exhibit 2**).

Here, as in *Best Cellars*, "[t]he combination of . . . visual elements . . . dominates the overall look" of each Molly Tea store, including the stores at issue in the instant litigation.  *See Best Cellars*, 90 F. Supp.2d at 443.  Indeed, the Molly Tea stores at issue were designed under Plaintiffs' direction so as to deliberately hew closely to Molly Tea's iconic visual qualities—to embody the "look and feel" of a Molly Tea location.

The combination of visual elements that "dominates the overall look" of each Molly Tea store encompasses the following distinctive and non-functional features as expressed through the exterior storefront and interior environment.  This design is standardized across locations through architectural drawings issued by Plaintiffs.

i.   Exterior storefront

Each Molly Tea location presents a distinctive camel-colored baked lacquer aluminum panel fascia bearing illuminated bilingual brand characters—"茉莉奶白" in stylized Chinese script and "Molly Tea" in a proprietary serif typeface.  The brand's proprietary four-petal jasmine "super symbol" is positioned between the Chinese and English name marks on the fascia.  A secondary fascia strip in marble-effect stone material immediately below carries the brand tagline "Eastern Jasmine Tea."  The storefront entrance is framed by full-height tempered glass panels set in gold-tone aluminum framing, through which the interior visual environment is immediately visible and recognizable to passersby.  DuPont paper lightboxes are mounted flanking the entrance opening.

ii.   Interior environment

The interior of each Molly Tea location is characterized by: (i) a signature geometric tile floor in a distinctive 600-by-1,200-millimeter grid-pattern checkered design; (ii) warm birch wood-grain wall paneling applied uniformly to all primary wall surfaces; (iii) a central ordering counter with a white marble-effect front panel bearing the "Molly Tea" name in non-illuminated black stainless steel characters; (iv) the proprietary four-petal jasmine super symbol displayed as a prominent decorative feature element on the interior walls; (v) large-format, backlit promotional poster lightboxes in the brand's signature pink and cream color palette mounted symmetrically on both side walls; and (vi) integrated merchandise display shelving and a recessed, soft-form rectangular ceiling light panel.

These visual elements are not incidental or functionally dictated.  Executed by each franchisee as a condition of licensure and subject to an express confidentiality obligation, Molly Tea's Overseas Brand Standards and BOSS Training Manual require that all advertising props,

store equipment, and materials be procured exclusively through Plaintiffs, and prohibit any deviation from the approved store design without authorization. The result is a total visual image that is deliberately uniform, controlled, and distinctive across every Molly Tea location worldwide, rendering the Molly Tea store environment an immediately recognizable source identifier of the brand.

Here, Defendants merely added wooden planks to cover the word "Molly,"[1] and in some locations, the stylized Chinese script as well. The wood planks do not fully obscure the Molly Tea Marks. At each location the word "Tea" remains visible in the Molly Tea stylized typeface and the original illumination. Also remaining is the Molly Tea brand tagline displayed: "Eastern Jasmine Tea" at the Chinatown location and "Oriental Jasmine Tea" at the Flushing location. Defendants did not redesign the signage at any location; they covered one word of the two-word registered mark and left the remainder of the Molly Tea brand presentation—the typeface, color and illumination—in place. This is itself a colorable imitation of the registered design mark within the meaning of the Order.

Even if Defendants' crude modifications had fully addressed the registered trademark-which as set forth above, they did not—those modifications would not address the Molly Tea ***trade dress***, which encompasses a much broader set of distinctive visual elements. Indeed, Defendants have utterly failed to address the trade dress: a distinctive camel-colored storefront with floor-to-ceiling tempered glass, allowing customers a view of the shop's pink and cream interior. Once inside, the light and airy aesthetic is supported by distinctive geometric, checkered-pattern floor tiling, recessed lighting, warm wood-grain wall paneling, and a central ordering counter with a white marble-effect front panel. The net effect of Defendants' purported remediation was to obscure a single word on the exterior signage while leaving wholly intact the curated visual environment that consumers associate exclusively with Molly Tea. A customer who has previously visited any authorized Molly Tea location would, upon entering Defendants' stores, encounter a substantially identical total visual image. Defendants did not alter Molly Tea's trade dress; they attempted to obscure only its textual identifier, while preserving every other element of the Molly Tea store experience. To preserve the complete visual exterior and interior environment of Molly Tea stores while only covering the brand name constitutes use of a "colorable imitation" of Plaintiffs' trade dress and the continued maintenance of enjoined "elements of store design" in direct violation of this Court's Order. *See* Order ¶¶ 1(a), 1(c).

## B. Continuing Violations of Trade Secrets (Order ¶ 1(a))

Furthermore, Molly Tea's distinctive and proprietary menu and product formulae, ingredients, and preparation methods are Plaintiffs' trade secrets and intellectual property, within the meaning of the Order. *See* Order ¶ 1(a).

---

[1] Defendants' installation of the wooden slats—rather than removing the original Molly Tea signage—independently violates Order ¶ 1(d), which prohibits "devices for the purpose of circumventing or otherwise avoiding the directives of this injunction." The same is true of other conduct including the "Store Upgrade in Progress signage," which falsely suggests that an authorized Molly Tea store upgrade is underway when no such upgrade has been approved by Plaintiffs.

In *KatiRoll*, this Court specifically observed, in denying defendants' motion for summary judgment, that a fact-finder could determine that "lists of specific ingredients and proportions for [KatiRoll's] menu items, not the generally known preparation methods of those menu items, are . . . trade secrets." *KatiRoll*, ECF No. 77 at 22-23. Indeed, the Court found that "it is possible for mere *proportions* to be trade secrets—even if the entire ingredient list is in the public domain." *Id*. at 23 (emphasis in original). Even if "the process used to prepare a particular menu item is generally known, . . . the precise ingredients and proportions used" may be "the heart of the secret." *Id*.

For the avoidance of doubt, the Brand License Agreement makes clear that Molly Tea's menus and product formulae, ingredients, and preparation methods are Plaintiffs' intellectual property. By its own terms, upon the termination of the Brand License Agreement, "[MHL] shall no longer use any trademarks, trade names, patents, or *trade secrets* licensed under this Contract." (Brand License Agreement, Ex. 2 to Verified Compl., ECF No. 11-2, § 13.4) (emphasis added.) "Trade secret" is defined as "all information, documents, materials, items, . . . (including all data contained in any software system), and any other business resources provided by [Shenzhen Molly Tea] to [MHL], including but not limited to . . . operational procedures, manuals of all kinds, forms, systems . . . *proprietary knowhow, and other confidential business information*." (Brand License Agreement Art. 1) (emphasis added.)

Here, Molly Tea's menu and product formulae, ingredients, and preparation methods are distinctive to Molly Tea and proprietary and, as such, are Plaintiffs' intellectual property. Defendants continue to exploit these trade secrets in violation of the Order. *See* Order ¶ 1(a). A comparison of Molly Tea's authorized menu (annexed hereto as **Exhibit 3**) with the menu displayed on Defendants' Uber Eats order platform for the Chinatown location (annexed hereto as **Exhibit 4**) as of June 15, 2026 and Defendants' DoorDash order platform as of June 16, 2026 (annexed hereto as **Exhibit 5**) reveals that Defendants have reproduced Molly Tea's proprietary product lineup virtually in its entirety: the same beverage names, including "Premium Jasmine Milk Tea," "Premium Jasmine Matcha," "Gardenia Milk Tea," "Peach Oolong Milk Tea," and "Osmanthus Milk Tea," appear at identical price points.

Defendants' continued production of Molly Tea's proprietary beverages is made possible by the continued operation of a custom-manufactured, brand-specific automated beverage machine that is branded "Molly Tea," ordered from headquarters, and shipped directly to each franchise location (photos annexed hereto as **Exhibit 6**). The beverage machine operates using pre-formulated, sealed ingredient cartridges supplied by Plaintiffs. The machine's computer contains the proprietary blends of ingredient information in the precise compositions that define each Molly Tea product. When a customer orders a drink, an employee scans the QR code of the customer's receipt with the beverage machine, and the machine assembles and mixes the drink according to the recipe stored in the machine. Defendants' continued operation of this machine is, by its nature, continued use of Plaintiffs' proprietary ingredient formulations and trade secrets.

## C. Continuing Operations of the Enumerated Stores (Order ¶ 1(c))

Order ¶ 1(c) prohibits Defendants from operating the four enumerated locations to the extent they use any of Plaintiffs' intellectual property. As set forth above, Defendants continue to

operate each of the four locations using Plaintiffs' protected trade dress, trade secrets, and registered marks. The continued operation of these specific locations is a continuing violation of Order ¶ 1(c).

### D. Failure to Transfer Online Platform Accounts (Order ¶ 2)

Order ¶ 2 requires Defendants to transfer to Plaintiffs all administrative access, credentials ownership rights, and control over Defendants' online business accounts. At minimum, Defendants did not transfer the Uber Eats and DoorDash accounts for all of the locations at issue. Instead, Defendants retained ownership and control of those accounts and changed only the displayed account name from "Molly Tea" to "? Tea." The listings on those accounts continued to use Molly Tea's product images, product names, proprietary recipes and topping options.

Defendants also retained the customer reviews, star ratings, and order-count metrics accumulated under the Molly Tea name during 2024 and 2025, when the stores were operating as authorized Molly Tea locations. The DoorDash screenshot introduced at the June 17 hearing displays a 4.9 star rating based on more than 1,000 customer reviews and individual customer reviews. Those reviews are "Molly Tea" reviews now serving "? Tea." The Uber Eats product listings also contain orders-placed metrics which reflect the period of time when the stores were operated as a Molly Tea location (albeit in the case of Columbia, an unauthorized one). While the injunction was in place, customers attempting to order "Molly Tea" products were re-routed to "? Tea," direct evidence of the continuing consumer association of the re-branded operation with the Molly Tea brand. This conduct violates both Order ¶ 2 and Order ¶ 1(a) (continued use of Plaintiffs' proprietary product names, images, recipes, and accumulated goodwill on platform accounts that should have been surrendered to Plaintiffs).

For the foregoing reasons, Defendants' conduct from June 8, 2026 through the present is a continuing violation of Order ¶ 1(a) (use of Plaintiffs' trade dress and trade secrets and any colorable imitation thereof), ¶ 1(c) (operation of the four enumerated stores with Plaintiffs' intellectual property), and ¶ 1(d) (circumventing or otherwise avoiding the directives of the injunction). Plaintiffs respectfully submit that the evidence already adduced at the June 17 hearing, together with the evidence Plaintiffs intend to introduce at the continued hearing, establishes these violations by clear and convincing evidence.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

**BERGSTEIN FLYNN KNOWLTON & POLLINA PLLC**

By:     */s/ Joseph DiPietro*
Lee Bergstein
Joseph M. DiPietro

cc:    All counsel of record
       (via ECF and e-mail)