**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC, and MOLLY TEA HOLDING INC. <br><br> Plaintiffs, <br><br> and <br><br> MOLLYTEA SHOPS LLC, derivatively on behalf of MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC., <br><br> Plaintiffs, <br><br> v. <br><br> MHL NY LLC, MOLLY TEA CU LLC, GENESIS BRAND MANAGEMENT LLC, MEI HUI LIN, XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN XU, <br><br> Defendants, <br><br> and <br><br> MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC., <br> Nominal Defendants. | Case No. 1:26-cv-04051 (JPC) |

**DECLARATION OF YUE LANG**

1

I, **Yue Lang**, declare under penalty of perjury under the laws of the United States of America as follows:

1.  I am an attorney licensed to practice law in the People's Republic of China. I have practiced commercial law for approximately twelve (12) years and have substantial experience in intellectual property matters. My practice includes advising clients concerning trademark licensing, commercial cooperation agreements, franchise arrangements, and brand management agreements. I regularly advise clients regarding the Trademark Law of the People's Republic of China (effective November 1, 2019), the Implementing Regulations of the Trademark Law of the People's Republic of China (effective May 1, 2014), the Civil Code of the People's Republic of China (effective January 1, 2021), related judicial interpretations, and their application by Chinese courts.

2.  I have been asked to provide my opinion concerning issues of the laws of the People's Republic of China relating to the 茉莉奶白 **Brand Licensing and Technical Services Cooperation Contract** executed on December 20, 2023 (the **"Cooperation Agreement"**).

3.  I have carefully reviewed this English-language Declaration in its entirety. It accurately reflects my opinions concerning the laws of the People's Republic of China. The opinions expressed herein are based upon my education, professional experience, review of the Cooperation Agreement, and my understanding of the applicable laws, administrative regulations, judicial interpretations, and judicial decisions of the People's Republic of China.

4.  In my opinion, the "Trademark" defined in the Cooperation Contract refers to the four Chinese characters "茉莉奶白" and the contract does not mention the term "Molly Tea"

2

or whether it is used as a brand. Under the laws of the People's Republic of China, clarifying this matter is of significant legal importance when interpreting the rights and obligations of both contracting parties.

5. Article 1 of the Cooperation Agreement defines the term "Trademark" and states that execution of the Cooperation Agreement itself does not constitute a trademark license while contemplating that the parties would later execute a separate Trademark License Agreement.

6. Under PRC law and legal practice, this language indicates that no separate Trademark License Agreement was executed between the parties.

7. Under PRC law, where parties expressly contemplate executing a future trademark license agreement but ultimately never execute that agreement, the parties' respective rights are determined primarily from the agreement they actually executed.

8. Neither the statutes, administrative regulations, judicial interpretations, nor reported judicial decisions of the People's Republic of China establish that merely authorizing one party to operate a branded business automatically transfers ownership of the goodwill associated with that business.

9. It is my opinion that under PRC law, merely authorizing another party to operate a branded business does not, by itself, establish a contractual transfer of ownership of the brand or the goodwill associated with it.

10. Under the laws of the People's Republic of China, if the parties intend to transfer ownership of intellectual property, trademarks, goodwill, or other assets of significant commercial value to each other, such rights should generally be clearly specified in a written agreement between the parties. In the absence of express contractual language,

PRC courts generally do **not** infer or imply contractual allocations of significant commercial rights that the parties themselves did not express, particularly where the agreement demonstrates that the parties knew how to address those subjects elsewhere.

11. In the absence of explicit contractual provisions, courts in the People's Republic of China generally do not infer or imply that the parties have agreed on the allocation of significant commercial rights, especially when the original contract indicates that the parties intend to enter into a separate agreement regarding such matters; they are even less likely to infer rights arrangements not expressly stated in the original contract.

12. This principle is reflected in Articles 142 and 466 of the Civil Code of the People's Republic of China and Article 1 of the Supreme People's Court's Interpretation on the General Provisions of the Contract Book of the Civil Code. Under those authorities, contracts are interpreted according to:

- the ordinary meaning of the contractual language;
- the agreement as a whole;
- the nature and purpose of the agreement;
- commercial customs;
- the principle of good faith;
- the background of negotiations; and
- the parties' subsequent performance.

13. Contract interpretation should always begin with the words and phrases used by the parties in the contract. Courts will not infer or deduce contractual rights and obligations beyond what is expressly stated in the language of the contract.

4

14. Here, the Cooperation Agreement refers only to the PRC registration of the Chinese characters trademark "茉莉奶白" (Registration No. 50234810, Class 43). It contains no provision allocating ownership of trademark rights or goodwill arising under the laws of another country.

15. Accordingly, under PRC principles of contract interpretation, a Chinese court would not infer ownership of foreign trademark rights or goodwill merely because the Agreement discusses use of the registered Chinese trademark.

16. Under PRC law, ownership of a trademark registered in China and trademark rights or goodwill arising under the laws of another country are distinct legal concepts. A contract governed by PRC law may regulate the parties' relationship concerning trademarks registered in China. If the parties intend to allocate ownership of trademark rights or goodwill arising in another jurisdiction, that intention ordinarily should be expressed clearly in the contract.

17. The Cooperation Agreement defines the term "Trademark" exclusively as the "茉莉奶白" Chinese characters trademark registered with the Trademark Office of the People's Republic of China under Registration No. 50234810 in Class 43. The Agreement contains no reference to trademarks registered outside the People's Republic of China or to rights arising under foreign trademark laws.

18. My opinions are limited to the interpretation of the Cooperation Agreement under the laws of the People's Republic of China. I express no opinion concerning the ownership of trademark rights arising under the laws of the United States or any other foreign jurisdiction.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on June 29, 2026.

_____

**Yue Lang**

6