## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC, and MOLLY TEA HOLDING INC.<br><br>Plaintiffs,<br><br>and<br><br>MOLLYTEA SHOPS LLC, derivatively on behalf of MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MHL NY LLC, MOLLY TEA CU LLC, GENESIS BRAND MANAGEMENT LLC, MEI HUI LIN, XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN XU,<br><br>Defendants,<br><br>and<br><br>MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC.,<br>Nominal Defendants. | Case No. 1:26-cv-04051 (JPC) |

**DEFENDANTS MHL NY LLC, MOLLY TEA CU LLC, GENESIS BRAND MANAGEMENT LLC, MEI HUI LIN, XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN XU'S MOTION FOR RECONSIDERATION OF THE COURT'S AMENDED PRELIMINARY INJUNCTION ORDER**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...........................................................................................................1

II. RELEVANT BACKGROUND .........................................................................................................2

    A.    THE DECEMBER 2023 BRAND AUTHORIZATION AGREEMENT ...........................................2

    B. DEFENDANTS ESTABLISHED AND OPERATED THE MOLLY TEA BUSINESS IN THE UNITED STATES ........................3

    C. PLAINTIFFS' TRADEMARK APPLICATIONS RELIED UPON USE BY MOLLY TEA NYC INC.......................................4

    D. PLAINTIFFS LATER PROPOSED FRANCHISE DOCUMENTS ADDRESSING TRADEMARK OWNERSHIP AND GOODWILL ...........................................................................................5

    E. PLAINTIFFS' TERMINATION OF THE RELATIONSHIP AND THIS LITIGATION ...............................5

III. LEGAL STANDARDS..................................................................................................................6

    A. STANDARD FOR RECONSIDERATION ...............................................................................6

    B. TRADEMARK RIGHTS ARISE THROUGH USE IN COMMERCE AND OWNERSHIP OF THE ASSOCIATED GOODWILL....6

    C. FEDERAL REGISTRATION IS PRIMA FACIE EVIDENCE OF OWNERSHIP BUT DOES NOT RESOLVE OWNERSHIP DISPUTES.............................................................................................7

    D. USE BY ONE ENTITY DOES NOT AUTOMATICALLY ESTABLISH TRADEMARK RIGHTS IN ANOTHER ENTITY ..........8

IV. THE COURT OVERLOOKED CONTRACT LANGUAGE DEMONSTRATING THAT THE DECEMBER 2023 AGREEMENT DID NOT RESOLVE THE TRADEMARK OWNERSHIP ISSUES PRESENTED HERE.....................................................................................................................8

V. PLAINTIFFS' FEDERAL TRADEMARK REGISTRATIONS DO NOT RESOLVE THE OWNERSHIP ISSUES ...............................................................................................................10

VI. PLAINTIFFS FAILED TO ESTABLISH THAT PRC LAW CLEARLY SUPPORTS THEIR INTERPRETATION OF THE DECEMBER 2023 AGREEMENT ....................................................14

IX. CONCLUSION.........................................................................................................................15

ii

# TABLE OF AUTHORITIES

Cases

*Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367-68 (2d Cir. 1959) ...................................................... 8

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996) ............................................................ 10

*Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 414 (1916) ................................................................................ 6

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 ............................................................................................................... 7

*King v. Innovation Books*, 976 F.2d 824, 828 (2d Cir. 1992) .................................................................................... 8

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) .................................... 7, 10

*Omega Nutrition, Inc. v. Spectrum Mktg., Inc.*, 756 F. Supp. 435, 440-42 (N.D. Cal. 1991) ................................. 7, 11

*Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) ............................................................................... 6, 7, 8, 11, 12

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ................................................................................. 6

*Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 600-02 (S.D.N.Y. 2001) ................................. 7, 8, 10

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ......................................................................... 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ............................................ 6

*Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank*, 696 F.2d 1371, 1375-76 (Fed. Cir. 1982) ...................................... 8

*Wrist-Rocket Mfg. Co. v. Saunders*, 379 F. Supp. 902, 909-14 (D. Neb. 1974) ...................................................... 7, 11

Statutes

15 U.S.C. § 1055 ....................................................................................................................................................... 9

15 U.S.C. § 1057(b) .................................................................................................................................................. 8

15 U.S.C. §§ 1051(a) ................................................................................................................................................ 9

Defendants MHL NY LLC, Molly Tea CU LLC, Genesis Brand Management LLC, Mei Hui Lin, Xiaozhe Liu, and Binbin Xu (collectively, "Defendants") respectfully move, pursuant to Federal Rule of Civil Procedure 54(b), Local Civil Rule 6.3, and the Court's inherent authority, for reconsideration of the Court's Amended Preliminary Injunction Order.

## I. Preliminary Statement

This motion concerns a threshold issue that underlies Plaintiffs' trademark claims: whether Plaintiffs established ownership of the trademark rights and goodwill associated with the MOLLY TEA business in the United States.

The preliminary injunction rests upon the premise that all goodwill generated through operation of the New York MOLLY TEA stores belongs exclusively to Plaintiffs and that Defendants' use of the MOLLY TEA name automatically inured to Plaintiffs' benefit. Yet Plaintiffs never established either proposition, and both remain genuinely disputed.

The record instead demonstrates that Defendants established and operated the first MOLLY TEA business in the United States, generated the first U.S. use upon which Plaintiffs later relied in their trademark applications, built the customer goodwill associated with that business, and implemented the day-to-day quality-control procedures through which customers experienced the brand. Lin Decl. ¶¶ 2, 7, 13-37.[1] Those facts bear directly on whether the goodwill arising from Defendants' use belonged to Defendants, Plaintiffs, or both—a question Plaintiffs were required to establish before obtaining extraordinary injunctive relief.

Because Plaintiffs failed to establish a clear likelihood of success on these threshold ownership issues, reconsideration is warranted and the trademark-based portions of the Preliminary Injunction should be vacated.

---

[1] Citations to Lin Decl are to the Declaration of Mei Hui Lin In Support of Defendants' Motion for Reconsideration.

1

## II. Relevant Background

### A.      The December 2023 Brand Authorization Agreement

On December 20, 2023, one of the plaintiffs, Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("Shenzhen Molly Tea") and one of the defendants, MHL NY LLC ("MHL") signed a document entitled the "Molly Tea Brand Licensing and Technical Services Cooperation Contract" (the "December 2023 Agreement"). Dkt. 11-2. The December 2023 Agreement was the focus of the Preliminary Injunction hearing and is the principal agreement upon which Plaintiffs rely in asserting ownership of the trademark rights at issue in this case.

The December 2023 Agreement defines "Trademark" narrowly as the single Chinese languate trademark Shenzhen Molly Tea registered in China.  Dkt. 11-2 at 5. The Agreement further provides that "[t]he signing of this Contract shall not constitute the grant of any license to use the Trademark to Party B." *Id*. Instead, the Agreement states that the parties "shall separately enter into a Trademark License Contract," which would serve as a supplemental agreement to the December 2023 Agreement. *Id*. Neither party asserts that any further trademark license agreement was ever executed.

Although the December 2023 Agreement expressly states that it does not grant a license to use the Trademark, it does grant MHL "a license to <u>operate</u> under the 'Molly Tea' brand during the term of this Contract." Thus, the Agreement distinguishes between the defined Chinese language Trademark and the broader authorization to operate a Molly Tea-branded business in the United States.

Importantly, the December 2023 Agreement contains no provision addressing ownership of the goodwill generated through operation of the business in the United States. There is no provision claiming the goodwill arising from use of the MOLLY TEA name by MHL will inure to Shenzhen Molly Tea.

B. Defendants Established and Operated the Molly Tea Business in the United States

When Defendants began developing the MOLLY TEA business in New York, there were no MOLLY TEA stores operating in the United States and the brand had no established consumer recognition in this country. With Shenzhen Molly Tea's knowledge, Defendant Mei Hui Lin formed Molly Tea NYC Inc., an entity that was not a party to the December 2023 Agreement, to establish and operate the first MOLLY TEA store in New York. Lin Decl. ¶¶ 2, 7, 13-15. Mei Hui Lin owned Molly Tea NYC Inc., personally guaranteed the lease, funded the business, and, together with Xiaozhe Liu, directed the efforts necessary to introduce the MOLLY TEA brand to the United States.

Defendants identified store locations, negotiated leases, funded store development, hired employees, established banking relationships, obtained permits and licenses, and opened the first MOLLY TEA store in the United States. Defendants also managed the day-to-day operation of the business, including employee supervision, inventory management, purchasing, supplier relationships, logistics, customer service, marketing, and store operations. Plaintiffs themselves later acknowledged that Defendants were responsible for operating the New York stores, implementing operational and quality standards, maintaining the brand image, handling customer complaints, and managing the customer-facing aspects of the business. Dkt. 11-10 at § 5; Lin Decl. ¶¶ 14-16.

Defendants likewise developed and managed the customer experience associated with the New York business. Plaintiffs did not provide written customer-service procedures governing customer interactions. Lin Decl. ¶¶ 16-25. Defendants instead implemented and refined their own day-to-day quality-management practices used in the stores, including product-testing procedures, regular tea tasting, environmental monitoring, enhanced filter replacement schedules, internal inspection protocols, employee supervision, and opening and operating

3

checklists designed to promote product consistency and customer satisfaction. Defendants also managed customer communications across delivery platforms, social-media accounts, and approximately twenty-four WeChat customer groups, while developing local marketing campaigns, influencer relationships, loyalty programs, and community partnerships. Lin Decl. ¶¶ 17-35. Through these efforts, Defendants personally built the customer relationships, online reputation, social-media presence, and consumer goodwill associated with the MOLLY TEA name in New York. Lin Decl. ¶¶ 29-35. Plaintiffs themselves later acknowledged that Defendants created and managed many of these customer-facing assets, including the social-media accounts associated with the New York business. Dkt. 11-10 at § 3(d).

These facts are significant because they bear directly upon the source of the goodwill associated with the New York business and whether that goodwill necessarily inured to Plaintiffs' benefit.

### C. Plaintiffs' Trademark Applications Relied Upon Use by Molly Tea NYC Inc.

The trademark registrations Plaintiffs seek to enforce in this action were filed after execution of the December 2023 Agreement and were based upon use of the MOLLY TEA mark in commerce in the United States. The applications relied upon photographs depicting the Flushing, Brooklyn, and Chinatown stores operated by Defendants. At the time those photographs were taken, the Flushing and Brooklyn stores were owned solely by Defendants, and Plaintiffs held no ownership interest in those stores. Lin Decl. ¶39.

At the time of the claimed first use, the Flushing store was operated by Molly Tea NYC Inc., an entity that was not a party to the December 2023 Agreement. Molly Tea NYC Inc. was solely owned by Defendant Mei Hui Lin and was responsible for operating the business from which the claimed use arose. Lin Decl. ¶¶ 29-35.

Defendants were not involved in the preparation or filing of the trademark applications

4

and were not informed that Plaintiffs intended to rely upon the New York operations as the basis for claiming ownership of U.S. trademark rights. Lin Decl. ¶¶ 38-43. Plaintiffs nevertheless relied upon photographs and use generated by the New York business operated by Molly Tea NYC Inc. in support of those applications. Defendants never executed any agreement acknowledging that goodwill generated through the New York operations belonged exclusively to Plaintiffs.

D. Plaintiffs Later Proposed Franchise Documents Addressing Trademark Ownership and Goodwill

More than two years after execution of the December 2023 Agreement and after Defendants had established and operated multiple MOLLY TEA stores in New York, Plaintiffs sought to replace the existing arrangement with a franchise structure. In January 2026, Plaintiffs provided Defendants with a Franchise Disclosure Document and proposed Franchise Agreement. Dkt. 53-5 and 53-6.

Unlike the December 2023 Agreement, the proposed franchise documents expressly addressed ownership of the goodwill associated with the MOLLY TEA business. The proposed franchise agreement contained explicit language stating that goodwill arising from operation of the business and use of the MOLLY TEA name would belong to Plaintiffs. Dkt. 53-6 at 29 ("All goodwill associated with Franchisee's use of the System and Intellectual Property **will inure solely to the benefit of Franchisor**") (emphasis added).

Defendants did not execute the proposed franchise documents. Lin Decl. ¶¶ 44-47.

E. Plaintiffs' Termination of the Relationship and This Litigation

Shortly thereafter, Plaintiffs issued a notice directing closure of the New York stores. Dkt. 11-8. The notice expressly stated that the stores were being closed because they had failed to communicate with headquarters regarding "the franchise agreements and related matters" and referenced unspecified concerns regarding operational quality standards.

5

The notice did not identify any specific breach of the December 2023 Agreement, cite any provision of that Agreement, specify any quality issue, or identify any specific misconduct by Defendants.  It did specifically reference the unexecuted franchise agreement.

Plaintiffs subsequently issued a termination notice, commenced this action, and sought preliminary injunctive relief. The Court entered a preliminary injunction and later narrowed the injunction to remove non-trademark intellectual property.

### III. Legal Standards

A. Standard for Reconsideration

A motion for reconsideration is appropriate where the Court has overlooked controlling decisions or factual matters that might reasonably be expected to alter the conclusion reached. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is also appropriate to correct clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

These principles apply with particular force where the challenged ruling grants preliminary injunctive relief. A preliminary injunction is an extraordinary remedy, and the plaintiff bears the burden of establishing a likelihood of success on the merits of the rights it seeks to enforce. *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).

B. Trademark Rights Arise Through Use in Commerce and Ownership of the Associated Goodwill

Trademark rights arise through use in commerce, not mere adoption of a mark. *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 414 (1916). Those rights are inseparable from the goodwill symbolized by the mark. As the Supreme Court explained, "[t]here is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918).

6

Accordingly, where trademark ownership is disputed, courts must determine who owns the goodwill associated with the mark. In doing so, courts look beyond formal title and examine the parties' commercial relationship, their use of the mark, and the source of the goodwill associated with the business. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154-55 (2d Cir. 2007).

Courts confronting ownership disputes arising from collaborative commercial relationships likewise examine the underlying commercial realities, including which party maintained quality and uniformity, interacted with customers, received and resolved customer complaints, developed the commercial reputation associated with the mark, and generated the goodwill symbolized by the mark. *Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 600-02 (S.D.N.Y. 2001) (applying manufacturer-distributor ownership factors); *Omega Nutrition, Inc. v. Spectrum Mktg., Inc.*, 756 F. Supp. 435, 440-42 (N.D. Cal. 1991); *Wrist-Rocket Mfg. Co. v. Saunders*, 379 F. Supp. 902, 909-14 (D. Neb. 1974), aff'd as modified, 516 F.2d 846 (8th Cir. 1975).

C. Federal Registration Is Prima Facie Evidence of Ownership but Does Not Resolve Ownership Disputes

A federal registration constitutes prima facie evidence of the validity of a registered mark and the registrant's ownership of that mark. 15 U.S.C. § 1057(b). The presumption created by registration, however, is not conclusive. Where ownership, goodwill, priority, or the legal effect of the parties' relationship is disputed, courts must determine the underlying source of the goodwill symbolized by the mark. *See ITC Ltd.*, 482 F.3d at 154-55.

Registration provides a procedural advantage, but does not relieve a plaintiff of its burden to establish ownership of the rights it seeks to enforce. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999); *Salinger*, 607 F.3d at 79-80. Once ownership is disputed, courts look beyond the registration and examine the underlying commercial realities

7

giving rise to the claimed trademark rights, including the source of the associated goodwill. *Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 600-02 (S.D.N.Y. 2001). Registration therefore identifies a presumptive owner; it does not answer the question of whether the goodwill reflected in the registration legally belonged to the registrant.

### D. Use by One Entity Does Not Automatically Establish Trademark Rights in Another Entity

The Lanham Act recognizes that, in appropriate circumstances, use of a mark by one entity may inure to the benefit of another. 15 U.S.C. § 1055. Such inurement, however, is not automatic. Where one party claims ownership of trademark rights arising from another entity's use of a mark, courts examine the parties' commercial relationship, their agreements, the degree of control exercised over the use of the mark, and the source of the goodwill associated with that use. *Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 600-02 (S.D.N.Y. 2001); *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367-68 (2d Cir. 1959); *Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank*, 696 F.2d 1371, 1375-76 (Fed. Cir. 1982).

Where a plaintiff seeks to enforce trademark rights based upon use by a separate entity, the plaintiff bears the burden of establishing the legal and factual basis for that assertion. See 15 U.S.C. §§ 1051(a), 1055; *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010). *King v. Innovation Books*, 976 F.2d 824, 828 (2d Cir. 1992).

## IV. The Court Overlooked Contract Language Demonstrating That the December 2023 Agreement Did Not Resolve the Trademark Ownership Issues Presented Here

The preliminary injunction necessarily assumes that the December 2023 Agreement vested Plaintiffs with the US trademark rights and goodwill arising from operation of the New York business. The text of the Agreement, however, does not clearly resolve the ownership issues presented by this case.

The Agreement defines "Trademark" narrowly as Shenzhen Molly Tea's Chinese

8

language trademark registration. Dkt. 11-2 at 5. The Agreement further provides that "[t]he signing of this Contract shall not constitute the grant of any license to use the Trademark to Party B." *Id*. Rather than granting a trademark license, the Agreement expressly states that the parties "shall separately enter into a Trademark License Contract," which would serve as a supplemental agreement to the December 2023 Agreement. *Id*. No such trademark license agreement was ever executed. Lin Decl. ¶ 5.

At the same time, the Agreement separately grants MHL "a license to operate under the 'Molly Tea' brand during the term of this Contract." Dkt. 11-2 at Article 2. Thus, the Agreement itself distinguishes between the defined Trademark and the broader authorization to operate a Molly Tea-branded business.

The Agreement likewise contains no provision addressing ownership of goodwill generated through operation of the business in the United States. It does not provide that goodwill generated through operation of the New York stores would belong to Plaintiffs. Nor does it otherwise address ownership of trademark rights arising from use of the MOLLY TEA name in the United States. This reading is consistent with the accompanying declaration of PRC counsel, which explains that under PRC law the parties' rights are determined by the agreement they actually executed and that contemplated but unexecuted agreements do not create additional contractual rights. Lang Decl. ¶¶ 5-6.[2]

The significance of the omission of a clause directed to ownership of the goodwill established in the US is underscored by Plaintiffs' later conduct. In January 2026, Plaintiffs presented Defendants with proposed franchise documents that expressly addressed ownership of goodwill and expressly provided that goodwill generated through operation of the business

---

[2] Citations to Lang Decl. are to the Declaration of Yue Lang.

9

would inure solely to Plaintiffs' benefit. Dkt. 53-6 at 29. Plaintiffs therefore knew how to address goodwill ownership when they intended to do so. Yet no comparable provision appears anywhere in the December 2023 Agreement.

At a minimum, the December 2023 Agreement leaves unresolved whether goodwill generated through Defendants' operation of the New York business belonged to Plaintiffs, Defendants, or both. Plaintiffs' ownership theory therefore depends not on language contained in the December 2023 Agreement which never addressed US rights, but on assumptions regarding inurement and goodwill ownership that do not appear anywhere in the Agreement itself.

**V. Plaintiffs' Federal Trademark Registrations Do Not Resolve the Ownership Issues**

Plaintiffs rely heavily on their federal trademark registrations for the MOLLY TEA mark. Those registrations constitute prima facie evidence of the validity of the registered marks and Plaintiffs' ownership of those marks. 15 U.S.C. § 1057(b). The presumption created by registration, however, is not conclusive. Once ownership is disputed, the Court must determine whether the goodwill reflected in the registrations legally belonged to the registrant. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154-55 (2d Cir. 2007); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).

Indeed, in a passage cited approvingly by the Second Circuit, Judge Posner explained that the presumption arising from federal registration "evaporates as soon as evidence of invalidity is presented" and thereafter "drops out of the case." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996); *see also Lane Capital*, 192 F.3d at 345 (citing Door Systems).

Once ownership is genuinely disputed, courts do not resolve the issue by reference to the registration certificate alone. Rather, they examine the underlying commercial realities of the parties' relationship, including which party maintained quality and uniformity, interacted with customers, received and resolved customer complaints, developed the commercial reputation

10

associated with the mark, and generated the goodwill symbolized by the mark. *Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 600-02 (S.D.N.Y. 2001) (applying manufacturer-distributor ownership factors); *Omega Nutrition, Inc. v. Spectrum Mktg., Inc.*, 756 F. Supp. 435, 440-42 (N.D. Cal. 1991); *Wrist-Rocket Mfg. Co. v. Saunders*, 379 F. Supp. 902, 909-14 (D. Neb. 1974), aff'd as modified, 516 F.2d 846 (8th Cir. 1975).

Plaintiffs were required to establish ownership of the asserted trademark rights, ownership of the goodwill associated with those rights, and a legally sufficient basis for claiming the benefit of Defendants' use. *See Salinger*, 607 F.3d at 79-80. Applying those principles here, Plaintiffs' own evidence demonstrates that Defendants performed many of the functions courts consider most relevant to ownership of disputed trademark rights. Plaintiffs acknowledge that Defendants independently operated the New York stores, implemented operational standards, handled customer complaints, maintained the brand image, managed promotional activities and social-media accounts, and performed the day-to-day operational functions through which consumers experienced the MOLLY TEA brand. Dkt. 11-10 §§ 3, 5; Lin Decl. ¶¶ 15-36.

As discussed above, the registrations were filed after execution of the December 2023 Agreement and were based upon use of the MOLLY TEA mark in commerce arising from operation of the New York stores by Molly Tea NYC Inc., an entity that was not a party to the December 2023 Agreement and was solely owned by Defendant Mei Hui Lin at the time of the claimed first use. Lin Decl. ¶¶ 2, 39. Plaintiffs seek to use registrations based upon Defendants' first use in U.S. commerce to establish priority against the very party whose use supplied that priority.

Defendants were not involved in the preparation or filing of the trademark applications and were not informed that Plaintiffs intended to rely upon Defendants' use of Molly Tea in

commerce to claim ownership of U.S. trademark rights. Lin Decl. ¶¶ 38-43. Nor did Defendants execute any agreement that the goodwill associated with that use belonged to Plaintiffs.

Once Defendants challenge Plaintiffs' ownership theory, Plaintiffs have the burden of establishing that the use underlying the registrations and the goodwill arising from that use legally belonged to Plaintiffs. *See Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (plaintiff bears burden of establishing likelihood of success on the merits).

Plaintiffs also cannot resolve the ownership issue by pointing to prior use of the MOLLY TEA mark outside the United States. The Second Circuit has recognized that foreign use does not create trademark rights in the United States. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 165-66 (2d Cir. 2007).  The declaration of Ms. Lang also confirms that under PRC law, ownership of a mark in China and the US are separate concepts.  Lang. Decl. ¶16. Plaintiffs' Chinese operations do not determine ownership of the goodwill and trademark rights arising from the first use of the MOLLY TEA mark in United States commerce.

With regard to controlling the goodwill of the mark, Plaintiffs' own exhibits acknowledge that Defendants were responsible for independently implementing operational standards, handling customer complaints, maintaining the brand image, managing promotional activities and social-media accounts, and performing the day-to-day operational functions through which customers experienced the MOLLY TEA brand. Dkt. 11-10 §§3,5. The accompanying declaration further demonstrates that Defendants independently designed and implemented significant quality-management procedures—including product naming and testing, flavor consistency protocols, internal inspections, employee supervision, and customer-service systems—that Plaintiffs neither prescribed nor managed. Lin Decl. ¶¶ 22-30. The English names for the products on the menu that Plaintiffs have claimed as their own were independently

12

created by Defendants based on their own market research. Lin Decl. ¶¶ 26-27. Defendants likewise created and managed the customer-facing relationships associated with the business, including social-media communities, delivery-platform reputations, customer loyalty programs, and direct customer communications. Lin Decl. ¶¶ 17-35. Those are precisely the activities courts examine in determining which party generated the goodwill symbolized by a disputed mark.

Plaintiffs' theory assumes that because they established recipes and broad brand standards, all goodwill generated by the New York business belonged to them. The evidence, however, demonstrates that the day-to-day customer experience—and the quality-management procedures that maintained it—were implemented by Defendants. Lin Decl. ¶¶ 22-37. Whether goodwill generated through those efforts legally inured to Plaintiffs is precisely the disputed ownership question that Plaintiffs were required to establish before obtaining preliminary injunctive relief.

Defendants also developed the customer-facing goodwill reflected in thousands of customer reviews, ratings, followers, loyalty programs, and other digital assets. Lin Decl. ¶¶ 29-35, 50-51. Nothing in the December 2023 Agreement provides that goodwill generated through those efforts automatically belonged to Plaintiffs or inured to Plaintiffs' benefit. As explained by Plaintiffs' own choice of governing law, PRC law likewise does not imply a transfer of goodwill merely because one party was authorized to operate a branded business. Lang Decl. ¶¶ 7-9.

As a consequence of the preliminary injunction, Plaintiffs have already obtained control of customer-facing digital assets, customer relationships, and other business value developed through Defendants' operation of the New York business. Those consequences underscore why ownership should not have been assumed, but proven, before extraordinary injunctive relief was

13

granted

Plaintiffs ask the Court to assume that all goodwill generated through Defendants' operation of the first U.S. MOLLY TEA business automatically belonged to Plaintiffs. The governing agreements do not say that, the trademark registrations do not establish it, and the commercial realities identified in *Tactica* and similar cases demonstrate that the issue remains genuinely disputed. On this record, Plaintiffs failed to establish the ownership and inurement necessary to demonstrate a clear likelihood of success on the merits.

## VI. Plaintiffs Failed to Establish That PRC Law Clearly Supports Their Interpretation of the December 2023 Agreement

The December 2023 Agreement is governed by the law of the People's Republic of China. Plaintiffs nevertheless presented no expert testimony or other competent evidence concerning how PRC law interprets the Agreement's distinction between the Chinese language trademark it addressed and broader operating rights, the significance of the Agreement's express statement that it did not itself constitute a trademark license, the parties' failure to execute the contemplated Trademark License Agreement, or the legal effect of the Agreement's silence concerning ownership of goodwill generated through operation of the New York business.

Defendants have submitted the accompanying declaration of Yue Lang, an attorney licensed to practice in the People's Republic of China with substantial experience in commercial and trademark matters. Ms. Lang explains that, under PRC law, the Cooperation Agreement must be interpreted according to the language chosen by the parties, the agreement as a whole, the purpose of the agreement, commercial customs, good faith, and the parties' conduct and performance. Lang Decl. ¶¶ 4, 12-13. She further explains that the Cooperation Agreement distinguishes between the specified Chinese language trademark and authorization to operate a MOLLY TEA-branded business, and that the contemplated separate Trademark License

14

Agreement was never executed. *Id*. ¶¶ 4-7.

Ms. Lang also explains that PRC law does not treat authorization to operate a branded business as automatically transferring ownership of the trademark or associated goodwill, and that PRC courts generally do not infer allocations of significant commercial rights that the parties did not express. *Id*. ¶¶ 8-13. Most importantly here, the Cooperation Agreement defines "Trademark" exclusively by reference to the identified Chinese language PRC trademark registration and contains no provision allocating ownership of trademark rights or goodwill arising under the laws of another country. *Id*. ¶¶ 14-17.

Ms. Lang does not opine that PRC law determines ownership of trademark rights arising under United States law. *Id*. ¶ 18. Her opinion instead demonstrates that Plaintiffs' interpretation of the December 2023 Agreement is not clearly established under the Agreement's governing law. Plaintiffs therefore failed to establish that PRC law clearly supports their interpretation of the Agreement or that the Agreement vested Plaintiffs with the U.S. trademark rights and goodwill arising from Defendants' operation of the New York business. That uncertainty provides an additional reason why Plaintiffs failed to establish the clear likelihood of success necessary to support extraordinary preliminary injunctive relief.

## IX. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant reconsideration of the Preliminary Injunction. Material factual and legal disputes remain concerning ownership of the goodwill associated with the New York business, the legal effect of the December 2023 Agreement, and the basis upon which Plaintiffs claim the benefit of Defendants' use.

Dated: June 29, 2026

15

By: /Michael Cukor/s
Michael Cukor, Esq.
**McGeary Cukor LLC**
1460 Broadway
New York NY 10036
mcukor@mcgearycukor.com

Yimin Chen
37-12 Prince Street, Suite 9D
Flushing, NY 11354
718-886-4858
Email: chenattorney@yahoo.com

Peter Erik Sverd
**Law Offices of Peter Sverd, PLLC**
225 Broadway, Ste. 613
New York, NY 10007
(646) 751-8743
Fax: (212) 964-9516

Attorneys for Defendants

16