# Exhibit 9

Q6HESHE1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SHENZHEN MOLLY TEA FOOD AND
BEVERAGE MANAGEMENT CO., LTD.,
*et al.*,

                    Plaintiffs,

          v.                              26 Civ. 4051 (JPC)

MHL NY LLC, *et al.*,

                                          Hearing

                    Defendants.

------------------------------x

                                          New York, N.Y.
                                          June 17, 2026
                                          10:00 a.m.

Before:

                    HON. JOHN P. CRONAN,

                                          District Judge

                         APPEARANCES

BERGSTEIN FLYNN KNOWLTON & POLLINA PLLC
      Attorneys for Plaintiffs
BY:  LEE BRETT BERGSTEIN
     JOSEPH MATTHEW DIPIETRO

     Attorneys for Defendants
BY:  YIMIN CHEN
     *-and-*
     PETER ERIK SVERD

Q6HESHE1

attorneys of this, but your performance has made me need to remind you.  As an officer of the court, you need to make a truthful statement to me.  Are you telling me that Ms. Lin does not speak English right now?

MS. CHEN:  Your Honor --

THE COURT:  No more "your Honor," just give me an answer to my question.  Are you telling me Ms. Lin does not speak English?  That's a "yes" or "no."

MS. CHEN:  Your Honor, I only said Ms. Lin had limited spoken language English.  I mean, she has better understanding English in writing, but as to spontaneous speaking, she might have some difficulty.  I'm only --

THE COURT:  But she was able to verify the complaint. A verified complaint is unlike most complaints.  It is held to a higher standard.  She was able to verify a complaint without the use of an interpreter?

MS. CHEN:  She would be able to -- I mean, the client reviews those pleadings but it's not a spontaneous understanding.  Of course, there's a difference.  But, your Honor, while we need to produce Ms. Lin to testify in English.  I just don't want to mislead the Court that she's versed in speaking English.

THE COURT:  Let me ask some other questions.  So, I'm having trouble understanding how you made the representation to me on, I believe it was June 11, that all stores had closed as

Q6HESHE1

of 4:00 p.m. on June 10.  In reality, on June 11, the day of our hearing, and perhaps even at the time the hearing was still going on, those doors had opened.  Even if you had an explanation for why those stores had reopened, how do you possibly think you did not have an obligation, as an officer of the court, to tell me that your representation that the stores were closed is no longer accurate?

Your pause here is because there's no explanation, Ms. Chen.  There's no explanation.  Regardless of whether there was an excuse to reopen, you made a statement to me that the stores were closed as of the day before at 4:00 p.m.  At a hearing the following day, the same day, those stores reopened.

MS. CHEN:  Your Honor, I mean, I explained in my letter to the Court I was not aware that -- because I was in courtroom, I have no access.  I mean, I understand, your Honor, you're putting me on the burden that I should indeed to verify with the client before I step in the courtroom on the morning of June 11.

THE COURT:  I can't recall, but were either of your clients in the courtroom that day, on June 11?

MS. CHEN:  No, your Honor.  The client was not available because I think due to the activities overnight.  So --

THE COURT:  Opening the store, in other words.

MS. CHEN:  Not -- doing the rebranding that -- the

Q6HESHE1

remodeling the stores.

THE COURT:  With the plan to open that day.

MS. CHEN:  Well, which was -- I -- I'll be honest with your court -- with your Honor:  I was not aware that the reopening was going to happen so fast on the June 11.  At the 11th.

THE COURT:  Did you ever ask them when they planned to reopen the stores?

MS. CHEN:  Your Honor, I planned -- yeah, but that's not -- that's not -- that didn't happen on the morning of June 11, because apparently the client is not awakened to respond to me.  I couldn't even verify with them whether they're going to be available in the courtroom.

THE COURT:  Well, whatever excuse you had for not knowing the morning of June 11 that the stores were opening pretty much at that very time, and the excuse you're giving is not a convincing one, but regardless of whatever excuse you have, why did you not have an obligation to correct the record immediately once you realized those stores were opened? Especially -- put aside the fact that the plaintiff's counsel told you you did and you disregarded them, why did you not realize you had an independent obligation to correct what you represented to me in this courtroom?

MS. CHEN:  Your Honor, I was on the communication with the plaintiff's counsel on that day and the following day.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q6HESHE1

THE COURT:  You're not being responsive at all to my question.  Why did you not have an independent obligation to correct the record with me after you made a statement earlier that day that you learned was inaccurate?

Do you practice in federal court very much, Ms. Chen?

MS. CHEN:  Yes.

THE COURT:  Do you behave this way before other federal judges?

MS. CHEN:  No, your Honor.  This is my first time.

THE COURT:  When you make a representation to the Court that you find out was inaccurate, there may be a reason for why that was inaccurate, but you have an obligation to correct that record immediately.  You don't have to wait until the other side tells you to correct the record.  If the other side has a courtesy to tell you about the error, even more so you should bring it to the Court's attention, but that is your obligation.  That is your duty as candor to the Court under the professional rules and your duty as an officer of the court, and you did not do that here.

MS. CHEN:  Your Honor, I understand as the court officer I have the duty.  Your Honor, I'm a general practitioner and I have a very busy schedule.  I'm sorry I couldn't have a conversation my client earlier, but I have other matters I have obligation to.  I'm sorry for not being able to, but it's not my intention to defraud or conceal the

Q6HESHE1

transferred over to the plaintiffs.  So, in other words, why don't you just shut them down?  Or can you shut them down?  I mean, the concern I see with these is that the name of the store is changed but you have 2,000-plus ratings and a 4.9 rating.  So ? Tea is now benefiting from the reputation of Molly Tea, which it would seem to me could be easily resolved by just shutting down these accounts.  So, what am I missing here?

MR. BERGSTEIN:  Yeah.  I mean, I believe there was information submitted by the defendants as part of their opposition that set forth various accounts being deactivated, and then my assumption is that there was communication -- I don't know this for sure.

THE COURT:  Uh-huh.

MR. BERGSTEIN:  I'm speculating that there was -- based on that and based on the fact that they are up and running, that there were communications between the defendants and Uber Eats, DoorDash and other delivery platforms informing them that the name of Molly Tea had changed to ? Tea and changing some of those menu items, which explains kind of the brief period of deactivation that is set forth in one of the exhibits attached to the opposition to the contempt motion.

We don't have the ability -- my understanding is we don't have the ability to shut down these particular platforms. I agree with the Court that this is in violation of the order

Q6HESHE1

the contact information for the defendant's IT personnel that was provided by Ms. Chen several days ago. It took, from what I'm told, a number of days for defendant's IT personnel to respond. Eventually, there was a conference between the two IT departments. And the latest update that I'm able to provide to the Court is that as of yesterday, our clients do not have access to the Google account, RedNote account, Instagram, TikTok, and Yelp accounts, and that they do have access to the websites.

THE COURT: That seems much less than what is required under paragraph two of the order, isn't it?

MR. DIPIETRO: I agree, your Honor.

THE COURT: Is there a reason why this still hasn't occurred, Ms. Chen or Mr. Sverd?

MR. SVERD: Judge --

THE COURT: It seems like there's a very easy solution here.

MR. SVERD: Well, with respect to the Uber Eats page, it's no longer being operated as a Molly Tea brand page. When you -- it's now ? --

THE COURT: Whoa, whoa, whoa. Yes, it is. It is referring to 2,000 reviews and a 4.9 rating. That is all Molly Tea reviews, so that's wrong. That is wrong.

If access to that Uber Eats page has not been granted, that will be a basis for an immediate contempt finding of your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q6HESHE1

client right now.  Immediate.  So, why has that access not been provided?

(Counsel confer)

THE COURT:  He's playing games here, Mr. Sverd, and I'm sick of it.  I'm sick of him playing games here.

MR. SVERD:  I understand, Judge.

THE COURT:  He thinks I'm an idiot.

(Counsel confer)

MR. SVERD:  Your Honor, I think that during the course of testimony, it'll all be explained as to what steps and measures have been taken.  I know, for example, DoorDash, when trying to take -- you cannot order from ? Tea on DoorDash.  The reason why is because DoorDash would not change or they couldn't change the photographs that depict the Molly Tea brand on that particular website.  So, while my client still works with them to try to get it removed, DoorDash -- they're having issues with the vendor, so that's why you cannot order on DoorDash as ? Tea.  That's not something that they can control.

THE COURT:  Okay.  Let me be very clear.  And I'm just quoting from the order here:  Every social media, E-commerce, delivery platform, or marketing account established by the defendants or used in connection with intellectual property identified in the order, for all of those, all access, credentials, passwords, anything needed to access those, must be turned over to the plaintiffs immediately, and those include

Q6HESHE1

the Uber Eats, DoorDash, or any account of those sorts that Ms. Mishra just walked through.  These are accounts that were opened under Molly Tea, the title may now be ? Tea, but all the ratings and reviews relate to Molly Tea and not to ? Tea, and those must be turned over immediately so the plaintiffs can take whatever steps they need to take to deactivate those accounts.

Maybe your client needs to open up new DoorDash or Uber Eats accounts, but he cannot be using the account that was used by Molly Tea.  Am I clear about that?

MR. SVERD:  Yes, Judge.

THE COURT:  And if this does not happen by midnight tonight, I will entertain a civil confinement contempt order for your client.  Am I clear about that?

MR. SVERD:  Did you say "civil confinement," Judge?

THE COURT:  Correct.  I will have coercive sanctions that I will consider, including him being confined at the MDC, if he continues to flack my orders.  Am I clear about that?

MR. SVERD:  Yes, Judge.  Just to be clear, by midnight tonight, if all those credentials are not turned over for DoorDash and Uber Eats, the social media stuff that's not yet been turned over, then the Court has the authority and the power to impound my client at the -- whatever MHC facility, which is right next door, I believe, it's a prison where they hold people --