**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC, and MOLLY TEA HOLDING INC. <br><br> **Plaintiffs,** <br><br> and <br><br> MOLLYTEA SHOPS LLC, derivatively on behalf of MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC., <br><br> Plaintiffs, <br><br> v. <br><br> MHL NY LLC, MOLLY TEA CU LLC, GENESIS BRAND MANAGEMENT LLC, MEI HUI LIN, XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN XU, <br><br> Defendants, <br><br> and <br><br> MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC., <br> Nominal Defendants. | Case No. 1:26-cv-04051 (JPC) <br><br> Verified Compliance Report |

Pursuant to the Court's Amended Preliminary Injunction (Dkt. 83), Defendants submit

this Verified Compliance Report. As of the date of this Report, Defendants are in full compliance

with every operative requirement of the Amended Preliminary Injunction. The chronology below

describes the steps Defendants took to achieve that compliance immediately after receiving the Court's Order.

## I.    June 8, 2026

On the evening of June 8, 2026, after receiving notice of the Court's Order, I immediately began planning the steps necessary to comply. Because the Order was received late in the day, immediate physical changes to the stores were not possible. Nevertheless, I immediately began assessing the operational, staffing, and logistical requirements necessary to implement the Court's directives.

## II.    June 9, 2026

On June 9, 2026, the first full business day after receiving notice of the Court's Order, I immediately began taking steps to implement the injunction. My objective from the outset was to remove all Molly Tea trademarks from public view as quickly as reasonably possible while transitioning the stores to a new brand.

First, I consulted with counsel regarding the requirements of the Court's Order and the practical steps necessary to comply. I immediately tried to understand the details of the Order and how to accomplish its requirements while responsibly managing the impact on approximately 100 employees working at the four store locations.

Second, on that day, I retained a general contractor and directed the contractor to visit each store location to evaluate the work necessary to remove, cover, or otherwise eliminate Molly Tea signage, logos, and branding from both the interior and exterior of the stores. Exhibit

1.[1] The contractor was instructed to identify which work could be completed immediately and what additional work or materials would be required.

Third, I began contacting vendors to obtain replacement cups, bags, packaging, and other materials that did not display the Molly Tea trademarks so that all branded packaging could be replaced as quickly as possible. Exhibits 2-9.

Finally, by this time our stores already had tea ingredients that we had independently sourced after Plaintiffs had stopped supplying ingredients to our stores months earlier. The remaining compliance efforts therefore focused on removing Molly Tea branding, replacing branded packaging, transitioning online accounts, and implementing a new brand.

## III.    June 10, 2026

On June 10, 2026, we began implementing the physical and operational changes necessary to comply with the Court's Order.

3:45 PM – Management formally notified managers and shift supervisors at all four stores to immediately cease operations. All stores were instructed to stop accepting in-store and third-party delivery orders by 4:30 PM. At the same time, I instructed store managers and shift supervisors that the stores were no longer operating as Molly Tea. They were directed to tell all employees to advise customers that the stores were transitioning to a new brand and were no longer affiliated with Molly Tea.  The process of fully educating all employees was intended to

---

[1] I have prepared and reviewed each of the attached exhibits and believe they are true and accurate copies of the information shown in each exhibit.

be completed on June 10 but some additional retraining was required and the process was not completed until the following day.

3:53 PM – Flushing Toast POS disabled online ordering. Exhibit 10.

3:54 PM – Brooklyn Toast POS disabled online ordering. Exhibit 11.

3:55 PM – Manhattan Chinatown Toast POS disabled online ordering. Exhibit 12.

3:55 PM – Columbia Toast POS disabled online ordering. Exhibit 13.

4:20 PM – Detailed compliance instructions were distributed through the management WeChat group covering removal, covering and replacement of Molly Tea branding and materials. Exhibit 14.

Approximately 4:30 PM – All four stores stopped accepting customer orders.

That same day DoorDash operations ceased and were never resumed under the Molly Tea accounts. Exhibits 15-18.

Defendants' counsel provided Plaintiffs' counsel with administrative credentials for Google Business Profiles, RedNote, Instagram, TikTok, website administration and Yelp. Exhibit 19.

Approximately 5:30 PM – Contractors arrived at the Flushing location and began removing, covering and repainting exterior signage before proceeding to the remaining stores. Exhibits 20-24. Because of the amount of signage and branding that had to be addressed at

4

multiple stores, not every item could be completed the same day, but the work was initiated on June 10 and continued without interruption until completed.

We also ceased using Molly Tea-branded consumable items. We discontinued the use of Molly Tea-branded cups, bags, and other packaging materials and replaced them with independently sourced packaging. Exhibits 25-28.  We also began a repainting of both the interior and exterior of the Flushing store.

Throughout June 10, I also coordinated with our IT personnel to begin the process of transferring ownership and administrative control of the online accounts to Plaintiffs. Although certain platforms ultimately required additional verification, participation by Plaintiffs, waiting periods, and platform-specific transfer procedures before ownership could be formally transferred, Defendants immediately began that process and continued cooperating until the transfers were completed.

## IV.    June 11, 2026

In the early morning of June 11, between approximately 1:00 AM and 2:00 AM, our store managers reported completion of the Molly Tea brand removal work.

The contractors continued the signage work through the morning (Flushing approximately 6:00–8:30 AM; Chinatown approximately 9:00–11:00 AM).

By approximately 11:00 AM the Molly Tea trademarks visible to the public had been removed or covered at the stores that reopened that morning. The Brooklyn location completed

its rebranding work later that day, and the Columbia location required a follow-up contractor visit on June 13 because of the additional exterior work required.

By June 11, Defendants were no longer holding themselves out to the public as Molly Tea stores and were not using Molly Tea consumables. Exhibits 25-28. Employees had been instructed that the stores were operating under a different brand and were directed to communicate that fact to customers.

Defendants also continued working with Plaintiffs and the various online platforms to transfer ownership and control of the social media, website, and delivery platform accounts identified in the Court's Order. Although many of the transfers required participation by Plaintiffs, platform-specific verification procedures, mandatory waiting periods, or additional information from the receiving party, Defendants remained available and continued cooperating with each requested step in the transfer process.

## V.     Continued Compliance Efforts Regarding Social Media and Online Platform Accounts

Immediately after entry of the Court's Order, Defendants began taking steps to transfer to Plaintiffs the social media, website, and online platform accounts identified in the injunction. Unlike the physical changes at the stores, these transfers could not be completed unilaterally because the various platforms required participation by both parties, platform-specific verification procedures, waiting periods, changes to account ownership information, and, in some instances, assistance from the platform providers themselves.

On June 10, 2026, Defendants provided Plaintiffs with administrative credentials for the Google accounts, Xiaohongshu (RED Note), TikTok, Yelp, Instagram, and website administration accounts. Exhibit 19. At that time, the DoorDash and Hungry Panda accounts operating under the Molly Tea brand had already ceased operating.

On June 12, 2026, Plaintiffs' IT personnel confirmed receipt of the account credentials and requested Defendants' assistance in scheduling a meeting to complete the ownership transfer process and update account ownership information in accordance with each platform's transfer requirements. Exhibit 31.

On June 14, Defendants confirmed their willingness to cooperate fully and explained that the transfers required Plaintiffs' designated email addresses, telephone numbers, and other information before ownership could be transferred. Id.

On June 15, the parties then met online to begin completing those transfers. Exhibits 30 and 31.

As additional platforms required further action, Defendants continued cooperating with Plaintiffs.

On June 17, Defendants provided access to the Uber Eats, DoorDash, and Hungry Panda delivery platform accounts. Exhibit 29. Because those platforms required changes to ownership information, banking information, verification procedures, and platform approval before ownership could be transferred, additional work remained necessary. Defendants continued scheduling meetings and communicating with Plaintiffs to complete those platform-specific requirements.

On June 18, Defendants sent a follow-up email sent to Plaintiffs' IT interface requesting another meeting to complete the remaining transfers. Exhibit 31.

The parties participated in another online meeting on June 29, 2026, during which ownership transfers for multiple accounts were completed and the remaining outstanding issues were identified. Between June 29 and July 6, Defendants and Plaintiffs continued communicating through WeChat and other means to complete the remaining platform-specific transfer requirements, including verification requests and ownership confirmations required by Uber Eats, DoorDash, and Hungry Panda.

The table below represents the status of all social media and ordering platforms as of July 6, 2026.

| Platform | Status |
|---|---|
| Google Business Profiles | Transfer Completed |
| RedNote | Transfer Completed |
| TikTok | Transfer Completed |
| Instagram | Transfer Completed |
| Yelp | Transfer Completed |
| Websites / Domains | Transfer Completed |
| Hungry Panda | Transfer Completed |
| DoorDash | Transfer Completed Brooklyn, Transfer Completed Flushing, Transfer Completed Chinatown, |

| | *Pending DoorDash Support* Columbia (all actions to accomplish transfer completed by Defendants) |
|---|---|
| Uber Eats | Pending Uber Support review (all actions to accomplish transfer completed by Defendants) |

Any remaining issues relating to delivery platform accounts resulted from platform-specific procedures or actions required by Plaintiffs or the platform providers themselves, rather than any refusal by Defendants to cooperate. Throughout this process, Defendants remained available, participated in every requested meeting, provided requested credentials and information, and continued working with Plaintiffs until the transfers were completed or all actions required of Defendants had been performed.

At no time did I intend to disregard, evade, or violate the Court's injunction. Where compliance could be accomplished directly by Defendants, I instructed that it be completed as quickly as possible. Where compliance depended upon third-party platform providers, technical requirements, or cooperation from Plaintiffs, I continued working with those parties until the required transfers or other actions could be completed. Throughout this process, it was my sincere intention to comply fully with the Court's Order, and I believed in good faith that Defendants were making continuous and diligent progress toward that objective.

## VI.    Current Status as of July 8, 2026

As of the date of this Report, Defendants believe they are in full compliance with every operative requirement of the Court's Amended Preliminary Injunction.

- No Molly Tea trademarks are displayed to the public at any Defendant-operated store.

- The social media and online accounts identified in the injunction have been transferred to Plaintiffs or Defendants have completed all actions required of them to effectuate those transfers, with any remaining steps dependent upon the receiving party or the platform provider.

- Defendants continue to cooperate with Plaintiffs in completing any remaining ministerial transfer requirements.

## VII.    Verification

I, Mei Hui Lin, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Compliance Report, that I have personal knowledge of the facts stated therein, and that those facts are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 8, 2026.

_____    Mei Hui Lin