**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHENZHEN MOLLY TEA FOOD AND
BEVERAGE MANAGEMENT CO., LTD., *et al*.,

                    Plaintiffs,

            -against-

MHL NY LLC, *et al.*,

                   Defendants.

1:26-cv-04051-JPC

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

**BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC**
780 Third Avenue
Suite 902
New York, New York 10017
(212) 803-9025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ IV

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

    I.        The Parties and the Joint Venture ................................................................. 3

    II.      Sections 8.1, 8.2, and 9.3 of the Shareholder Agreements ......................... 4

    III.    MHL's Dissolution Events Under Section 8.1(b) ......................................... 5

    IV.    Mollytea Shops' Election to Dissolve and Assume Operational Control of the Joint Venture Entities ............................................................................ 8

    V.    MHL's Continuing Refusal to Comply with the Required Pre-Dissolution Procedure 9

LEGAL ARGUMENT ......................................................................................................... 10

    I.        Legal Standard ............................................................................................ 10

    II.      Plaintiffs Have a Substantial Likelihood of Success on the Merits ........... 11

        A.    Dissolution Events Have Occurred Under Section 8.1(b) and Are Incapable of Cure ................................................................................ 11

        B.    Mollytea Shops Validly Elected Dissolution and Assumed Operational Control Under Sections 8.2(a)(2) and 8.2(c) of the Shareholder Agreements .................. 13

        C.    Mollytea Shops is Expressly Contractually Entitled to Obtain the Instant Injunction, Notwithstanding the Shareholder Agreements' Arbitration Clause ... 15

    III.    Mollytea Shops Faces a Substantial Threat of Irreparable Harm Absent the Injunctive Relief Sought .................................................................... 15

        A.    The Shareholder Agreements Expressly Stipulate That Damages Are an Inadequate Remedy ........................................................... 16

          i.    Independent of the Contractual Stipulation, the Undisputed Facts Establish Irreparable Harm .................................................. 17

        B.    The balance of hardships tips strongly in mollytea shops' favor .......... 19

    IV.    No Public Interest Would be Disserved by an Injunction ......................... 21

        A.    Notice to Defendant MHL ................................................................... 22

B.    A Temporary Restraining Order and Preliminary Injunction are Appropriate ..... 22

CONCLUSION ............................................................................................................................... 24

WORD COUNT CERTIFICATION ............................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*159 MP Corp. v. Redbridge Bedford, LLC*,
33 N.Y.3d 353 (2019) ........................................................................................ 21

*Almontaser v. N.Y.C. Dep't of Educ.*,
519 F.3d 505 (2d Cir. 2008) .............................................................................. 16

*Andino v. Fischer*,
555 F. Supp.2d 418 (S.D.N.Y. 2008) ................................................................. 16

*Basank v. Decker*,
449 F. Supp.3d 205 (S.D.N.Y. 2020) ................................................................. 16

*Beal v. Stern*,
184 F.3d 117 (2d Cir.1999) ............................................................................... 10

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015) .............................................................................. 10

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*,
934 F.2d 30 (2d Cir. 1991) ................................................................................ 16

*Church of Scientology Int'l v. Elmira Mission of Church of Scientology*,
794 F.2d 38 (2d Cir. 1986) ................................................................................ 19

*Doctor's Associates, Inc. v. Distajo*,
107 F.3d 126 (2d Cir. 1997) .............................................................................. 23

*Dunkin' Donuts Inc. v. National Donut Restaurants of New York, Inc.*,
291 F. Supp.2d 149 (E.D.N.Y. 2003) ................................................................. 18

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) .............................................................................. 15

*G.F.F. v. Trump*,
781 F. Supp.3d 195 (S.D.N.Y. 2025) ................................................................. 23

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007) ................................................................................ 16

*Heisman Trophy Tr. v. Smack Apparel Co.*,
595 F. Supp.2d 320 (S.D.N.Y. 2009) ................................................................. 23

*I.T. by & through Next Friend B.V.T.R. v. Kennedy*,
No. 26-CV-02563 (JAV), 2026 WL 882917 (S.D.N.Y. Mar. 31, 2026) .............. 15

*Interlink Int'l Fin. Servs., Inc. v. Block*,
    145 F. Supp.2d 312 (S.D.N.Y. 2001)...................................................................... 23

*Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC*,
    725 F. Supp.2d 389 (S.D.N.Y. 2010)...................................................................... 17

*Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*,
    No. CV-18-814-SJF-SIL, 2018 WL 2012875 (E.D.N.Y. Apr. 30, 2018).............................. 14

*Mt. Hawley Ins. Co. v. Beach Cruiser, LLC*,
    No. 1:22-CV-10354-GHW, 2025 WL 723365 (S.D.N.Y. Mar. 6, 2025) ............................... 21

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018).................................................................................. 10

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015).................................................................................. 10

*Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*,
    937 F.2d 77 (2d Cir. 1991).................................................................................. 14

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
    754 F. Supp. 2d 616 (S.D.N.Y. 2010)...................................................................... 20

*Rivera v. Town of Huntington Hous. Auth.*,
    No. 12-cv-901-DRH-ARL, 2012 WL 1933767 (E.D.N.Y. May 29, 2012)............................ 23

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010).................................................................................. 10

*Semmes Motors, Inc. v. Ford Motor Co.*,
    429 F.2d 1197 (2d Cir. 1970)............................................................................... 19

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004).................................................................................. 19

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999).................................................................................. 17

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir.1995).................................................................................. 10, 18

*Tuccillo v. Geisha NYC, LLC*,
    635 F. Supp.2d 227 (E.D.N.Y. 2009) ...................................................................... 21

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp.2d 515 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013)........................ 14

*Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*,
    73 F. Supp. 3d 209 (S.D.N.Y. 2014)......................................................................................... 20

**Rules**

Federal Rule of Civil Procedure 65 ....................................................................................... 10, 23

Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("**Shenzhen Molly Tea**"), Mollytea Shops LLC ("**Mollytea Shops**"), and Molly Tea Holding Inc. ("**Molly Tea Holding**") and Mollytea Shops LLC, derivatively on behalf of Molly Tea NYC Inc., Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. respectfully submit this memorandum of law in support of their motion, by order to show cause, for a temporary restraining order and preliminary injunction.  For the reasons set forth below, the Court should enjoin Defendant MHL NY LLC as set forth in the proposed order to show cause.

## PRELIMINARY STATEMENT

Beginning in early 2026, MHL embarked on a sustained course of conduct that breached the three Shareholder Agreements governing the joint venture that operates the three Joint Venture Stores, and its fiduciary obligations to Mollytea Shops.  This included first opening the unauthorized Columbia Store and the LIC Concession and then misusing the Joint Venture Entities to open and operate the unauthorized "? Tea" stores.  In the course of opening and operating these unauthorized stores, MHL disclosed trade secrets and confidential information, as expressly defined by the Shareholder Agreements, engaged in competitive business in direct violation of the Shareholder Agreements, installed an unauthorized point-of-sale system (Toast) at the Columbia Store and the Joint Venture Stores; operated unauthorized social-media accounts (@mollyteamood and @mollyteany) and a commercial website (mollyteany.com); advertised and conducted unauthorized promotional pricing campaigns; diverted inventory supplied through Plaintiffs' designated supply chain to unauthorized locations, caused quality control failures at the Chinatown Store that led to delivery delays and order issues that have damaged the Molly Tea brand image, failed to provide the financial reporting, and audit access, and froze Mollytea Shops out of the WeChat channels used to administer the Joint Venture Entities.

MHL has not merely breached discrete covenants but improperly commandeered the Joint Venture Entities themselves, converting companies, whose sole contractual purpose is the operation of Molly Tea-branded stores, into vehicles for competing "? Tea" businesses, while fully exploiting the Joint Venture Entities' leases, inventory, and employees.   The Shareholder Agreements were negotiated and provide for this very contingency, permitting Mollytea Shops to end the Joint Venture Entities and assume operational control as it does so.  Based on the many breaches of the Shareholder Agreements and, more fundamentally, MHL's direct subversion of the heart of the agreements, on July 10, 2026, Mollytea Shops exercised its express right to elect to dissolve the Joint Venture Entities and, pursuant to the Shareholder Agreements, directed MHL to immediately surrender control over the Joint Venture Entities to Mollytea Shops and cease operating the Joint Venture Stores.  MHL did not comply.  MHL's clear refusal to honor its bargain is the emergency this motion addresses.

Each day the Joint Venture Entities remain outside of Mollytea Shops' operational control, Mollytea Shops suffers immediate and irreparable harm, as it is deprived of its contractually bargained-for and guaranteed rights to assume operational control of the entities and is injured by MHL's exploitation of the Joint Venture Entities—and the full array of Mollytea Shops' contributions to that joint venture—as competitor stores, for the sole benefit of MHL.

For the reasons set forth below, the Court should enjoin MHL as set forth in the accompanying Proposed Order to Show Cause, preventing MHL from interfering in Mollytea Shops' contractual right to take over operational control over the Joint Venture Entities.  The Court should further order MHL to make a verified report to the Court within thirty (30) days setting forth all actions taken by it to comply with the injunction and the dates such actions were taken.

**STATEMENT OF FACTS**

The facts relevant to the Court's consideration of this motion are set forth in the First Amended Verified Complaint, dated July 11, 2026 (the "**Amended Verified Complaint**"), the exhibits annexed thereto, the Declaration of Lee Bergstein, dated July 11, 2026 ("**Bergstein Decl.**"), and the exhibits annexed thereto, and the Memorandum of Law, dated May 18, 2026 (ECF No. 7), in support of Plaintiffs' first preliminary injunction motion, all of which are fully incorporated herein by reference. A summary of the relevant facts is reproduced below.

## I.    THE PARTIES AND THE JOINT VENTURE

On December 20, 2023, Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("**Shenzhen Molly Tea**") and Defendant MHL NY LLC ("**MHL**") entered into a Brand Licensing and Technical Services Cooperation Contract Agreement (the "**Brand License Agreement**"), under which MHL was granted a limited, conditional license to open and operate up to five Molly Tea stores. Pursuant to that license, the parties formed three operating entities (collectively, the "**Joint Venture Entities**" or "**Joint Venture Stores**" and each singularly a "**Joint Venture Entity**" or "**Joint Venture Store**"): Molly Tea NYC Inc., operating the store at 37-11C Prince Street, Flushing, New York 11354 (the "**Flushing Store**"); Molly Tea BK Inc., operating the store at 5909 8th Avenue, Brooklyn, New York 11220 (the "**Brooklyn Store**"); and Molly Tea Manhattan Chinatown Inc., operating the store at 63 Mott Street, New York, New York 10013 (the "**Chinatown Store**"). The Joint Venture Entities are each governed by their own respective Shareholder Agreement and Bylaws (collectively, the "**Shareholder Agreements**" and each singularly a "**Shareholder Agreement**"). Mollytea Shops and MHL are parties to every Shareholder Agreement, while each Joint Venture Entity is a party to the Shareholder Agreement governing each respective entity. All three Shareholder Agreements are substantially identical.

3

Under the Shareholder Agreements, Mollytea Shops holds a 35% "Brand Shareholder" interest in each Joint Venture Entity, while MHL holds a 65% "Investor Shareholder" interest. Mollytea Shops contributed more than $600,000 in capital to the Joint Venture Entities and provided the brand-system support, training, and operational infrastructure that allows each store to operate as an authorized Molly Tea location.

## II.    SECTIONS 8.1, 8.2, AND 9.3 OF THE SHAREHOLDER AGREEMENTS

Section 8.1(b) of the Shareholder Agreements provides that a Joint Venture Entity "shall be dissolved" upon an event ("**Dissolution Event**") which includes:  when the Brand Shareholder (Mollytea Shops) elects to dissolve the Joint Venture Entity following a material breach by the Investor Shareholder (MHL).  A material breach is defined to include MHL's "unauthorized disclosure of Trade Secrets or Confidential Information," as defined (Shareholder Agreements § 8.1(b)(3)) and "engagement in activities that cause material damage to the brand or reputation of the [Joint Venture Entities]" (Shareholder Agreements § 8.1(b)(5)).

Section 8.1(b)(i)-(iv) provides that Mollytea Shops must give written notice specifying the breach, after which MHL may cure its breach within fifteen days, "if [the breach is] capable of cure."  "Upon commencement of dissolution," after the conclusion of the pre-dissolution period, Section 8.3 of the Shareholder Agreement provides for the precise procedures of dissolution.

Upon a Dissolution Event, Section 8.2(a)(2) permits Mollytea Shops to elect to "proceed with dissolution" of the Joint Venture Entity.  Section 8.2(c) further independently entitles Mollytea Shops, upon that election, to "assume control of [the Joint Venture Entity's] operations to protect brand standards during any pre-dissolution period."  There is no set period of time by which the "pre-dissolution period" must expire.

In aid of these rights Section 9.3(a) provides that, "[n]otwithstanding Section 9.2" (the Shareholder Agreement's otherwise-mandatory arbitration clause), "any party shall be entitled to

4

seek interim or provisional relief, including a temporary restraining order, preliminary injunction or permanent injunction in any court of competent jurisdiction to (1) prevent any actual or threatened breach of this Agreement; (2) specifically enforce the provisions of this Agreement; or (3) otherwise avoid immediate and irreparable harm." Section 9.3(b) further provides that the parties expressly "acknowledge that damages would be an inadequate remedy for any breach" of, *inter alia*, Article VI of the Shareholder Agreement, entitled "Confidentiality and Non-Compete" and Article VII, entitled "Representations and Warranties." Article VI contains MHL's confidentiality, trade-secret, and non-competition obligations, including Section 6.3's prohibition on the disclosure or use of Joint Venture Entity's trade secrets and confidential information, both of which are defined expansively by the Shareholder Agreement (*see* Shareholder Agreements § 6.1(a)-(b)). Article VII contains MHL's express representations, including that it "(1) does not own or operate any competing business; (2) has no interests that conflict with the Company's business; and (3) acknowledges that active involvement is material to this Agreement and therefore will dedicate sufficient time and resources to the Company." (*See* Shareholder Agreements § 7.3(b)(1)-(3)). Additionally, Section 9.4 entitles the prevailing party in any "court proceeding" to its reasonable attorneys' fees and costs.

## III.    MHL'S DISSOLUTION EVENTS UNDER SECTION 8.1(B)

Beginning in early 2026, MHL, in concert with the other Defendants, embarked on a sustained course of conduct that breached the Shareholder Agreements, and their fiduciary obligations to Mollytea Shops, as set forth in Section II of the Dissolution Notices. While MHL has engaged in numerous breaches, each independently constituting an uncurable breach of the Shareholder Agreements, the most egregious breach is the direct subversion of the fundamental purpose of the Joint Venture Entities and the Shareholder Agreements by operating the former Joint Venture Stores as competing "? Tea" stores for the sole benefit of MHL.

Without Mollytea Shops' knowledge or consent, Defendant Liu formed a new entity, Molly Tea CU LLC ("**Molly Tea CU**"), wholly owned and controlled by Defendants and outside the joint venture structure. Through Molly Tea CU, Defendants opened an unauthorized store at 2857 Broadway, New York, New York 10025 (the "**Columbia Store**") on April 17, 2026. Defendants also attempted to open an unauthorized food-court concession at 28-07 Jackson Avenue, Long Island City, New York 11101 (the "**LIC Concession**"). This concession stand was backed by an unauthorized corporate guaranty pledging the credit of Joint Venture Entity Molly Tea NYC Inc. The Columbia Store was built out, stocked, and operated using Plaintiffs' confidential brand system, proprietary recipes, and inventory diverted from one or more Joint Venture Entities.

MHL also installed an unauthorized point-of-sale system (Toast, in place of Plaintiffs' designated Chowbus system) at the Columbia Store and, as Defendant Lin has since admitted (Verified Compliance Report, ECF No. 94, at 4 and Exs. 10–13, ECF Nos. 94-10 – 94-13), at each of the Joint Venture Stores; operated unauthorized social-media accounts (@mollyteamood and @mollyteany) and a commercial website (mollyteany.com) that promoted the Columbia Store until the issuance of the Court's injunction in June, requiring the transfer of those accounts and website to Plaintiffs; advertised and conducted unauthorized promotional pricing campaigns (*see* Shareholder Agreements § 4.16(c)); and diverted inventory supplied through Plaintiffs' designated supply chain to unauthorized locations including the Columbia Store and, later, the unauthorized "?Tea" stores. Quality control failures at the Chinatown Store led to delivery delays and order issues that have damaged the Molly Tea brand image. MHL stopped providing the financial reporting, audit access, and revenue remittances required by the Shareholder Agreements, and froze Mollytea Shops out of the WeChat channels used to administer the Joint Venture Entities.

6

Finally, on May 1, 2026, Shenzhen Molly Tea terminated the Brand License Agreement based, in part, on these breaches. While the Brand License Agreement was terminated and this Court subsequently issued a preliminary injunction specifically prohibiting the use of Molly Tea trademarks owned by Shenzhen Molly Tea, Defendants, in a variety of ways, continued to operate the Joint Venture Stores and the Columbia Store under the Molly Tea brand system while only superficially changing the store name in a crude attempt to comply with the Court's order. To the public, Defendants presented the Brooklyn, Chinatown, Flushing, and Columbia Stores as "? Tea" by covering only the word "Molly" on the storefronts, while retaining Plaintiffs' trade dress, trade secrets, recipes, and proprietary beverage-preparation equipment.

Most egregiously, the opening of the "? Tea" Stores in place of the former Joint Venture Stores co-opts Molly Tea's Trade Secrets and Confidential Information and is a clear subversion of those companies' explicit purposes and a material breach of the Shareholder Agreements.

Each of these acts constitutes an independent Dissolution Event under Section 8.1(b). MHL's unauthorized use and disclosure of Plaintiffs' trade secrets and confidential information to operate the Columbia Store and the "? Tea" stores violates Section 8.1(b)(3) and Section 6.3 of each Shareholder Agreement. MHL's conduct damaging the Molly Tea brand, including the unauthorized rebranding and operation of the Joint Venture Stores and the Columbia Store, the off-system point-of-sale system, the supply-chain diversion, the unauthorized social-media and promotional activity, operational and quality control failures that generated consumer complaints, and misappropriation of Joint Venture Entity funds violates Section 8.1(b)(5). MHL further breached Section 6.5's non-solicitation covenant by diverting customers, employees, and suppliers to its competing, unauthorized operations at the Columbia Store, the LIC Concession, and the "? Tea" Stores, and breached the representations in Section 7.3(b) by operating undisclosed

7

competing businesses.  None of this conduct is capable of cure within the meaning of Section 8.1(b)(ii):  the unauthorized stores were opened and operated, the confidential information was disclosed and used—both by the unauthorized stores and the "? Tea" stores—the inventory was diverted, and the funds were misappropriated.  These are completed acts the effects of which cannot be undone.

## IV.    MOLLYTEA SHOPS' ELECTION TO DISSOLVE AND ASSUME OPERATIONAL CONTROL OF THE JOINT VENTURE ENTITIES

On July 10, 2026, Mollytea Shops, pursuant to Section 8.1(b) of the Shareholder Agreement, served written dissolution notices on Defendants for each of the three Joint Venture Entities.  Each notice was delivered by electronic mail and nationally recognized overnight courier, in the manner required by Sections 10.3(a)(1) and 10.3(a)(4), and was effective upon confirmation of receipt under Section 10.3(c)(1), and, independently on the first business day after sending by overnight courier under Section 10.3(c)(3).  Each notice expressly identified the Dissolution Events described above; stated that, because those breaches were not capable of cure, no cure period applied under Section 8.1(b)(ii); and formally elected, pursuant to Section 8.2(a)(2), to proceed with the dissolution of each Joint Venture Entity.

Simultaneously, and pursuant to Section 8.2(c), Mollytea Shops exercised its contractual right to assume full operational control of each Joint Venture Entity and its associated store during the pre-dissolution period, expressly reserving its priority return of capital under Section 8.4, all claims arising from MHL's breaches, and all rights and remedies at law or in equity, including in the event the election is adjudicated ineffective.  Each notice demanded that, by 5:00 p.m. on July 10, 2026, MHL: (i) cease all involvement in the operations, management, and affairs of the Joint Venture Entities; (ii) vacate and withdraw all of its officers, managers, employees, agents, and representatives from the Joint Venture Stores; (iii) deliver all keys, access codes, security

credentials, point-of-sale system credentials, bank account access and signatory authority, vendor accounts, third-party delivery-platform credentials, and social-media account credentials; and (iv) deliver all financial records, books of account, bank statements, lease files, insurance certificates, employee records, vendor contracts, point-of-sale data, inventory records, tax filings, and all other business records of each Joint Venture Entity in MHL's possession, custody, or control.

## V.   MHL'S CONTINUING REFUSAL TO COMPLY WITH THE REQUIRED PRE-DISSOLUTION PROCEDURE

MHL has not complied; indeed, it has expressly refused to do so. By letter from Defendants' counsel dated July 10, 2026, Defendants, including MHL, "categorically reject[ed] each of the purported notices," without providing any basis for that rejection, and stated that they "will not, under any circumstances, surrender possession or control of the stores, keys, bank accounts, point-of-sale systems, vendor relationships, operational records, social media accounts, management authority, or any other company assets by 5:00 p.m. today, or at any other time, absent an order of a court of competent jurisdiction." (Bergstein Decl. ¶ 6 and Ex. 4.)

Accordingly, at 5:00 p.m. on July 10, 2026, the deadline in each dissolution notice passed, and MHL had not relinquished operational control, vacated the stores, or surrendered any keys, point-of-sale credentials, bank access, vendor accounts, or business records.  MHL has instead continued to operate the Joint Venture Stores, in direct violation of the express terms of Section 8.2(c), granting Mollytea Shops operational control, and the dissolution notice, constituting a continuing breach of each Shareholder Agreement that persists as of the filing of this motion. MHL's refusal to cede operational control, and continued operation of unauthorized stores in contravention of the Joint Venture Entities' express purpose, leaves Mollytea Shops, the record capital contributor and Brand Shareholder, responsible for the brand system under which these stores operate.

## LEGAL ARGUMENT

### I.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) authorizes federal courts to issue a preliminary injunction, while Federal Rule of Civil Procedure 65(b) authorizes federal courts to issue a temporary restraining order.  "A party seeking a preliminary injunction must demonstrate:  (1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction."  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)) (internal quotation marks omitted).  Plaintiffs satisfy this standard.

An injunction is "prohibitory" if it "maintain[s] the status quo pending resolution of the case; mandatory injunctions alter it."  *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018).  A movant is held to a heightened standard if "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'"  *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir.1995)).  "When either condition is met, the movant must show a 'clear' or 'substantial' likelihood of success on the merits" (*id*. (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir.1999)), and make a 'strong showing' of irreparable harm."  *Id*. (quoting *Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981)).

The injunctive relief Plaintiffs now seek is prohibitory in nature, as it seeks to maintain the status quo.  Here, the status quo is furnished by contract.  Mollytea Shops' exercise of its rights to

assume control of the Joint Venture Entities during the pre-dissolution period is unambiguous; hence, MHL's failure to abide by this provision alters that status quo.

Mollytea Shops exercised its vested contractual rights to proceed with the dissolution of the Joint Venture Entities, pursuant to Section 8.2(a)(2) of the Shareholder Agreement, and to assume control of the Joint Venture Stores' operations, pursuant to Section 8.2(c). Thus, as of July 10, 2026, Mollytea Shops, as a matter of law, possesses full control over the Joint Venture Entities. Yet, MHL has failed to comply with Mollytea Shops' directive to cease any involvement in the Joint Venture Entities and has, instead, continued operating the Joint Venture Stores. The instant preliminary injunction merely seeks to prohibit MHL from continuing its conduct in violation of the contractually prescribed status quo.

Alternatively, even if analyzed through the lens of a mandatory injunction, as set forth below, Plaintiffs readily satisfy the heightened standard. The conduct constituting the Dissolution Events giving rise to Mollytea Shops' right to dissolve and assume control of the Joint Venture Entities are largely undisputed, as Defendants' own Verified Compliance Report sets forth how they crudely covered up the Molly Tea marks and began operating the stores as competitor "? Tea" businesses. (*See* Verified Compliance Report at 3-5.) Section 9.3 of each Shareholder Agreement independently entitles Plaintiffs to injunctive relief for the very breaches at issue and reflects the parties' own acknowledgement that damages would be an inadequate remedy.

## II. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Dissolution Events Have Occurred Under Section 8.1(b) and Are Incapable of Cure

MHL's conduct establishes multiple, distinct Dissolution Events. To build out and operate the unauthorized Joint Venture Stores turned "? Tea" Stores, the Columbia Store, and the LIC Concession, MHL disclosed and used Mollytea Shops' trade secrets and confidential information,

as explicitly defined in Section 6.1(a)-(b) of the Shareholder Agreements, including the proprietary recipes, beverage-preparation methods, and operations manuals licensed for use exclusively at the authorized Joint Venture Stores—in direct violation of Section 8.1(b)(3) and Section 6.3 of each Shareholder Agreement.  Likewise, MHL engaged in conduct causing material damage to the Molly Tea brand within the meaning of Section 8.1(b)(5): MHL substituted an unauthorized point-of-sale system for Plaintiffs' designated system, diverted Joint Venture Store inventory to unauthorized locations, operated unauthorized social-media accounts and promotions, and generated a pattern of consumer complaints through operational and quality-control failures (*see* Dissolution Notice at 2.)  Most tellingly, MHL continued operating under a thinly disguised "? Tea" identity after this Court had already enjoined Defendants' unauthorized trademark use in clear contravention of the express purpose of the Joint Venture Entities.  It did so while trading exclusively on the Molly Tea brand, relying on its goodwill, recipes and product.

Further, none of this conduct is capable of cure: the unauthorized stores were opened, the trade secrets and confidential information, as defined, were disclosed and used to build and stock both the unauthorized and impermissibly re-branded stores, and the inventory was diverted.  These are completed acts that cannot be undone by any subsequent performance.  In any event, Defendants have removed any doubt by categorically rejecting the notices at issue and confirming that they "will not, under any circumstances" comply with them "at any other time."  (Bergstein Decl. Ex. 4.) MHL has unequivocally renounced performance and cannot rely on the benefit of a cure period it has announced that it has no intention of using.  Hence, because the breaches are incurable, no cure period applies (and even if it did, MHL has announced that it does not intend to cure), and each breach and, *a fortiori* in the aggregate, constitutes an independent Dissolution Event entitling Mollytea Shops to dissolve the Joint Venture Entities, initiate the pre-dissolution

12

procedures, and assume full operational control over the Joint Venture Entities and their respective stores.

**B.  Mollytea Shops Validly Elected Dissolution and Assumed Operational Control Under Sections 8.2(a)(2) and 8.2(c) of the Shareholder Agreements**

Once a Dissolution Event occurs, Section 8.2(a)(2) permits Mollytea Shops to elect to proceed with dissolution.  Section 8.2(c) separately and additionally entitles Mollytea Shops to assume operational control of the Joint Venture Entities "to protect brand standards during any pre-dissolution period."  The length of a "pre-dissolution period" is not defined.  Mollytea Shops formally and explicitly exercised both rights by written notice served in the manner prescribed by Section 10.3, particularly identifying the Dissolution Events, formally electing dissolution, and apprising MHL of the fact that, pursuant to the agreements it was taking over operational control.  And demanding that MHL surrender operational control of the Joint Venture Entities by 5:00 p.m. on July 10, 2026.

Nor can any argument be asserted by MHL that the Dissolution Events did not occur or that they were capable of cure, as both facts are conclusively established by the documentary record.  Namely, MHL cannot dispute—and has not disputed—that it opened the Columbia Store, installed the Toast system, or continued operating as "? Tea" after the issuance of the Court's injunction.  (*See* Verified Compliance Report at 3-5.)

Nor can MHL postulate any cure that would undo those completed acts.  Mollytea Shops has already been harmed by MHL's disclosure of trade secrets and confidential information, as defined by the Shareholder Agreements, to non-parties to those agreements, including at least Molly Tea CU (in regard to the Columbia Store), Genesis Brand Management LLC (in regard to the LIC Concession), and the "? Tea" stores, as businesses distinct from, and competitors to, the Molly Tea businesses, as well as Toast, and any other vendors or suppliers with whom Defendants

13

have engaged to operate the unauthorized locations and "? Tea" stores.  Likewise, the harm to the Molly Tea brand image has already occurred as a result of MHL's actions as set forth extensively in the record, including through the loss of goodwill, reputation, and consumer trust and confidence, and the causation of consumer confusion about the Molly Tea brand.  No action by MHL can cure these losses which, as a matter of law, are "injuries . . . not readily compensable by monetary damages alone."  *Folkes Home Servs. Heating, Cooling, Plumbing & Elec., LLC v. Folkes Bros. Home Servs. LLC*, No. 24 CV 9844 (NSR), 2026 WL 311515, at *14 (S.D.N.Y. Feb. 5, 2026).  Indeed, "the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, [and] remedies at law cannot adequately compensate Plaintiff for its injuries."  *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp.2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (citing *Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*, 937 F.2d 77, 80 (2d Cir. 1991)); *see Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, No. CV-18-814-SJF-SIL, 2018 WL 2012875, at *6 (E.D.N.Y. Apr. 30, 2018).

Hence, the Shareholder Agreements expressly "acknowledge that damages would be an inadequate remedy for any breach" of, *inter alia*, Article VI, containing MHL's trade secret and confidential information obligations.  (Shareholder Agreements § 9.3(b)).

It is clear that MHL is in breach of the Shareholder Agreements and Mollytea Shops has a substantial likelihood of succeeding on its claim that MHL has breached the Shareholder Agreements by: (1) committing the numerous breaches of the Shareholder Agreements set forth in the Dissolution Notices and the record; and (2) continuing to operate the Joint Venture Stores, refusing to relinquish full control of the Joint Venture Entities to Mollytea Shops, and refusing to cooperate with the dissolution and pre-dissolution procedures provided by the Shareholder Agreements, despite Mollytea Shops' election to proceed with dissolution and assumption of

14

control, as explicitly guaranteed by those agreements.  MHL's statement that it disputes the notices and "will not, under any circumstances," comply, "absent an order of a court of competent jurisdiction" is foreclosed by the Shareholder Agreements themselves.  Section 9.6 provides that "[t]he existence of any dispute shall not excuse either party from continuing to perform its obligations under this Agreement or prevent Brand Shareholder from exercising any of its rights hereunder."  Defendants' categorial, written refusal is thus not a defense of its breach; it is the breach, reduced to writing by their counsel.

    **C.**       **Mollytea Shops is Expressly Contractually Entitled to Obtain the Instant Injunction, Notwithstanding the Shareholder Agreements' Arbitration Clause**

Section 9.2 of the Shareholder Agreement requires arbitration of "any dispute, controversy or claim arising out of or relating to this Agreement."  Section 9.3(a), however, specifically carves out Mollytea Shops' right to seek an injunction in the present circumstances, providing: "Notwithstanding Section 9.2 . . . any party shall be entitled to seek interim or provisional relief, including a temporary restraining order, preliminary injunction or permanent injunction in any court of competent jurisdiction" to prevent a breach of the agreements, to specifically enforce the agreements, or to avoid immediate and irreparable harm.  Simply put, MHL expressly agreed that Mollytea Shops can pursue the injunctive relief it now seeks from the Court.

**III.**    **MOLLYTEA SHOPS FACES A SUBSTANTIAL THREAT OF IRREPARABLE HARM ABSENT THE INJUNCTIVE RELIEF SOUGHT**

"In the Second Circuit, a 'showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *I.T. by & through Next Friend B.V.T.R. v. Kennedy*, No. 26-CV-02563 (JAV), 2026 WL 882917, at *2 (S.D.N.Y. Mar. 31, 2026) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).  "To satisfy the irreparable harm requirement, [Mollytea Shops] must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent,

15

and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Singas Famous Pizza Brands Corp. v. New York Advert. LLC*, 2011 WL 497978, at *6 (S.D.N.Y. Feb. 10, 2011), aff'd, 468 F. App'x 43 (2d Cir. 2012)  (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  That is, "movant must demonstrate 'that [it] would suffer irreparable harm if the TRO does not issue.'"  *Basank v. Decker*, 449 F. Supp.3d 205, 210 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp.2d 418, 419 (S.D.N.Y. 2008)).

"The district court has wide discretion in determining whether to grant a preliminary injunction."  *Basank*, 449 F. Supp.3d at 210 (quoting *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008)).  The ongoing and continuing control over the Joint Venture Entities and operation of the Joint Venture Stores, which the public reasonably continues to confuse with the Molly Tea brand, as well as MHL's failure to provide Mollytea Shops with operational and financial control over the entities "threatens continuing harm to [Mollytea Shops'] goodwill, reputation, and ability to control its marks." *See generally Folkes*, 2026 WL 311515, at *14.  Such an "injur[y] [is] not readily compensable by monetary damages alone." *Id*.

### A. The Shareholder Agreements Expressly Stipulate That Damages Are an Inadequate Remedy

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991) (internal quotation marks omitted).  Here, substantial evidence of irreparable harm can be found in the plain text of the Shareholder Agreements themselves.  Section 9.3(b) stipulates that "damages would be an inadequate remedy" for breaches of Article VI, which contains MHL's trade-secret, information-confidentiality, and non-competition obligations.  MHL breached these requirements by opening, stocking, and operating

16

the Columbia Store, the LIC Concession, and the "'? Tea" stores with Mollytea Shops' proprietary recipes and confidential brand system.

Courts rightly give weight to exactly this kind of advance contractual stipulation. In *Krispy Kreme*, a franchise agreement provided that a franchisee's continued use of the licensor's marks after termination "would result in irreparable injury to Franchisor for which no adequate remedy at law may be available," and that the franchisee "consent[ed] to the issuance of an injunction." *Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC*, 725 F. Supp.2d 389, 397–98 (S.D.N.Y. 2010). This Court held that the defendants "expressly agreed that their continued [breach] . . . constitutes irreparable injury," and relied on that stipulation, together with the franchise context, in finding irreparable harm. *Id*. Likewise, in *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999), the Court found that the "contract sought to be enforced concedes that in the event of [the defendant's] breach of [a particular] competition provision, [the plaintiff] shall be entitled to injunctive relief, because it would cause irreparable injury. Such, we think, might arguably be viewed as an admission by [the defendant] that plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision." *Id*. at 69.

The same logic applies with at least equal force here: MHL expressly agreed in Section 9.3(b) that breaches of precisely the kind at issue cause irreparable injury not compensable in damages.

> ### i. Independent of the Contractual Stipulation, the Undisputed Facts Establish Irreparable Harm

Even apart from the stipulation of the parties to the Shareholder Agreements, the undisputed facts independently establish that Mollytea Shops is, and will continue to suffer, irreparable harm in the absence of the requested preliminary injunction. Despite being served the dissolution notices, MHL has continued the unauthorized operation of the Joint Venture Stores

and explicitly announced its refusal to comply with the Dissolution Notices (see Ex. 4 to Bergstein Decl.), depriving Mollytea Shops and the Joint Venture Entities of the ability to verify that the stores are being operated in compliance with brand, food-safety, and quality standards. This exposes Mollytea Shops and the larger Molly Tea brand to ongoing reputational harm, a fact that is especially acute given the widespread consumer awareness, amplified by media attention—in large part due to Defendant Liu's interview with Bloomberg News—that the "? Tea" Stores were very recently Molly Tea stores. (*See* June 17, 2026 Hearing Tr. 43:16-44:25.) This risk is only heightened by the fact that the Joint Venture Entities—formed to operate *Molly Tea stores*—are now undisputedly perverting the corporate purpose to operate *competitor* stores. The ongoing reputational harm is self-evident and abundant. Simply put, the "? Tea" stores' actions will unavoidably reflect negatively on the Molly Tea brand. Compounding this harm is the fact that Mollytea Shops has no visibility into, or control over, the entities' finances, inventory, or governance. Meanwhile, MHL, the very party who diverted inventory and misappropriated funds, remains in physical possession of the stores, their bank accounts, and their books and records. The Joint Venture Entities also hold leaseholds at prime retail locations in Flushing, Brooklyn and Chinatown. Any surrender, modification, termination or encumbrance of those leases during MHL's unauthorized operation would be irreversible as no damages could restore the location; a risk the proposed order is designed to prevent.

Courts have long recognized that this kind of ongoing loss of control over a business, and the goodwill and brand integrity that attach to it, is the paradigm of harm that "cannot be undone even if the defendant prevails at a trial on the merits," *Tom Doherty*, 60 F.3d at 33–34, and that money damages will not adequately remedy. *See Dunkin' Donuts Inc. v. National Donut Restaurants of New York, Inc.*, 291 F. Supp.2d 149, 151–52 (E.D.N.Y. 2003) (recognizing that

18

damages would not make a franchisee whole where "the . . . business would be damaged beyond repair, and no amount of money could 'undo' the problem" (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) (Friendly, J.))); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004) (irreparable harm where continued unauthorized conduct causes ongoing confusion and diversion of business that is "automatic" in the licensing context) (citing *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986)).  Every additional day that MHL retains control of the Joint Venture Entities and, *a fortiori*, operates the Joint Venture Stores as *competitor stores*, compounds harm to the brand, the businesses, and Mollytea Shops' contractually-guaranteed rights that no post-judgment damages award can restore.

The injuries to Mollytea Shops are continuing, irreparable, and incapable of being adequately compensated by money damages alone.  Only injunctive relief—enjoining MHL's continued control over the Joint Venture Entities and operation of the Joint Venture Stores—can prevent further harm.

**B.      THE BALANCE OF HARDSHIPS TIPS STRONGLY IN MOLLYTEA SHOPS' FAVOR**

The balance of hardships weighs heavily, and one-sidedly, in Mollytea Shops' favor. Mollytea Shops seeks only to enforce a contractual right that MHL itself bargained for and agreed to: the right to assume operational control of the Joint Venture Entities following an uncured or uncurable breach by MHL.  Granting the injunction Mollytea Shops seeks imposes no cognizable hardship on MHL beyond the loss of a control it has no continuing contractual right to exercise. *See Sunward Elecs.*, 362 F.3d at 25–26 (an injunction "harms Defendants very little" where they are "no longer authorized" to engage in the enjoined conduct, while the plaintiff "would suffer substantial harm" from its continuation).

19

This Court applied precisely the same reasoning in *Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209 (S.D.N.Y. 2014), writing: "The balance of hardships is heavily in plaintiffs' favor.  The injunction that plaintiffs seek would merely bar Ezriel from violating his non-compete agreements.  It would not impose any new legal duty on him; instead it would give necessary teeth to an existing contractual duty." *Id.* at 237.  The Court there also took note of the fact that "the parties have agreed . . . that any breach of the non-compete agreement may result in irreparable harm." *Id.* at 236 (internal quotation marks omitted).  Likewise, in *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616 (S.D.N.Y. 2010), this Court found any potential damage to the defendant from the issuance of an injunction to be "nonexistent, because being forced to comply with contractual obligations that a party voluntarily entered into is simply not the sort of 'damage' that is compensable at law." *Id.* at 627.  Again, the Court there took note of the fact that the defendant had "expressly agreed that [the plaintiff] would be entitled to seek injunctive relief." *Id.* at 625 (internal quotation marks omitted).

Meanwhile, denying the requested injunction leaves Mollytea Shops—which contributed more than $600,000 in capital and the entire brand system on which the Joint Venture Stores depend—locked out of governance, financial reporting, and physical control of businesses, to which it is contractually entitled and which MHL has used to divert inventory, misappropriate funds, and  as a vehicle to operate a new, unauthorized competitor business trading entirely on the Molly Tea name and product line.  The facts bear out that MHL has flagrantly ignored Mollytea Shops' contractual right to assume control over the Joint Venture Entities due to its election of dissolution.

To the extent MHL will incur any burden as a result of being enjoined from interfering with Mollytea Shops' contractual right to take control of the Joint Venture Entities, such

20

obligations are entirely self-imposed by MHL, as Mollytea Shops' dissolution rights are expressly set forth in the Shareholder Agreements and MHL was provided notice of its uncured and uncurable breaches and Mollytea Shops' election to dissolve and assume control of the Joint Venture Entities.  *See Tuccillo v. Geisha NYC, LLC*, 635 F. Supp.2d 227, 247 (E.D.N.Y. 2009) (discounting self-imposed burdens in the balance-of-hardships analysis).

The equities are not close:  an injunction restores the status quo the parties themselves bargained for in the event of an uncured or uncurable Dissolution Event; such event has obtained and Mollytea Shops is now entitled to take possession of the Joint Venture Entities.  As such, the balance of hardships tips strongly in Plaintiffs' favor.

## IV.   NO PUBLIC INTEREST WOULD BE DISSERVED BY AN INJUNCTION

The public interest favors preliminary relief.  New York's "strong public policy favor[s] freedom of contract;" hence, "agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language."  *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 356 (2019); *Mt. Hawley Ins. Co. v. Beach Cruiser, LLC*, No. 1:22-CV-10354-GHW, 2025 WL 723365, at *11 (S.D.N.Y. Mar. 6, 2025).  This includes advance agreements—like Section 9.3—to make injunctive relief available for specified breaches.  The public interest is also served by preventing continued consumer confusion at retail locations that this Court has already preliminarily enjoined from unauthorized use of Plaintiffs' marks; permitting MHL to remain in unsupervised control of those same locations—now operating under a thinly disguised "? Tea" identity—would perpetuate exactly the confusion and reputational and brand-integrity harm that the Court's prior injunction was designed to prevent.  And the public has an interest in the orderly dissolution and wind-down of a corporate joint venture in accordance with the governance mechanism the parties themselves adopted, rather than in permitting a party that has breached its governing agreements to remain indefinitely in control of the stores, in

21

unambiguous contravention of the corporate purpose, while the underlying disputes are litigated. No legitimate public interest is disserved by requiring MHL to comply with the contractual obligations it voluntarily undertook.

### A.    Notice to Defendant MHL

On the evening of June 9, 2026, Mollytea Shops sent the dissolution notices to MHL via overnight courier, which it also sent to MHL's counsel via e-mail at 9:03 a.m. on July 10, 2026. The dissolution notices identified MHL's uncurable breaches with particularity, formally electing to proceed with the dissolution mechanism provided by the Shareholder Agreements, and demanding that MHL immediately turn over control of the Joint Venture Entities to Mollytea Shops and cease operating the Joint Venture Stores.

Further, as set forth in the Bergstein Decl., at the same time, the undersigned firm informed counsel for Defendant MHL that Mollytea Shops intended to seek a temporary restraining order and preliminary injunction from this Court on or after July 10, 2026 at 5:00 p.m. if MHL did not comply.

MHL did not comply.  On the contrary, at 3:48 p.m. on July 10, Defendants filed an improper motion (ECF No. 98), deemed a motion for a temporary restraining order and preliminary injunction, apparently seeking to "stay" the Dissolution Notices.  The Court denied that motion (ECF No. 99).  Defendants' counsel thereafter confirmed in writing that Defendants, including MHL, "categorically reject" the notice and will not comply absent a court order.  (Bergstein Decl. ¶ 6 and Ex. 4.)

### B.    A Temporary Restraining Order and Preliminary Injunction are Appropriate

For the reasons set forth above, injunctive relief is warranted. The requested relief also properly extends to Defendants Mei Hui Lin, Xiaozhe Liu, Binbin Xu, Molly Tea CU LLC, Genesis Brand Management LLC as persons and entities acting in active concert or participation

with MHL and/or as its officers, agents, and employees.  *See* Fed. R. Civ P. 65(d)(2).  Ms. Lin has admitted that she personally has "direct, day-to-day oversight of all aspects of [MHL's] business operations, including store management, supply chain, marketing, and financial matters."  (ECF No. 59-6 ¶ 1.)  Mr. Liu likewise testified that both he and Ms. Lin have "management or executive authority" over MHL.  (May 27, 2026 Hearing Tr., ECF No. 59-5, 44:6-8.)  Plaintiffs respectfully request that the Court enter the temporary restraining order and, after hearing Plaintiffs' motion, the preliminary injunction, in the form set forth in the accompanying Proposed Order to Show Cause.

"'Rule 65(c) [of the Federal Rules of Civil Procedure] gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm.'"  *G.F.F. v. Trump*, 781 F. Supp.3d 195, 213 (S.D.N.Y. 2025) (quoting *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)); *see Rivera v. Town of Huntington Hous. Auth.*, No. 12-cv-901-DRH-ARL, 2012 WL 1933767, at *8 (E.D.N.Y. May 29, 2012).  Declining to require security is appropriate unless the opponent of the order can "'show[] that [it] will likely suffer harm absent the posting of [a] bond'" (*Heisman Trophy Tr. v. Smack Apparel Co.*, 595 F. Supp.2d 320, 329 (S.D.N.Y. 2009) (quoting *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)) or when the "assumed item of damages can only be described as speculative and conjectural." *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp.2d 312, 316 (S.D.N.Y. 2001).

Pursuant to the Order, dated June 8, 2026, granting Plaintiffs a preliminary injunction (ECF No. 62 at ¶ 4), Plaintiffs posted security in the amount of $100,000 on June 15, 2026.  (*See* June 23, 2026 Am. Prelim. Inj. Order, ECF 83, ¶ 4; June 15, 2026 Bergstein Decl., ECF No. 75, ¶ 5.) Plaintiffs' instant application for a temporary restraining order and preliminary injunction seeks a

23

separate preliminary injunction requiring MHL to comply with the express terms of the Shareholder Agreements, to which it is a party and the terms of which were bargained-for. As such, MHL will suffer no harm from the issuance of an injunction ordering it to comply with its own contractual obligations. To the extent MHL will suffer any harm, the Court should find that the $100,000 already posted by Plaintiffs is adequate to secure the requested injunction. In the event the Court is inclined to require additional security, such security should be of the smallest amount necessary, in light of the fact that the injunction seeks only to hold MHL to its bargained-for contractual obligations and Plaintiffs' prior showing of harm due to Defendants' actions, in satisfaction of the standard for the issuance of the existing preliminary injunction.

Further, to the extent the Court declines to grant the temporary restraining order solely upon the papers filed, Plaintiffs respectfully request that the Court hold a hearing, in person or telephonically, as may be convenient to the Court, on Plaintiffs' motion as soon as the parties can be heard. A hearing is necessary because, as set forth herein, Mollytea Shops is suffering and will continue to suffer irreparable harm until MHL's conduct is restrained and enjoined.

Defendants have stated they will not comply with the explicit contractual rights and obligations explicitly set forth in the Shareholder Agreements governing the stores at issue, "absent an order of a court of competent jurisdiction." Plaintiffs respectfully request that the Court enter one.

## CONCLUSION

For all of the foregoing reasons, the Court should enjoin Defendant MHL NY LLC as set forth in the accompanying Proposed Order to Show Cause and Plaintiffs' request for a temporary restraining order and a preliminary injunction should be granted, as well as such other and further relief as the Court deems just, equitable, and proper.

24

Dated: New York, New York
      July 11, 2026

By:    */s/ Lee Bergstein*         

Lee Bergstein
Joseph M. DiPietro
BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
joseph@bfklawoffice.com
Tel: 212-803-9025

*Counsel for Plaintiffs*

## WORD COUNT CERTIFICATION

I hereby certify that this Memorandum was prepared using Microsoft Word, and that there are 7,509 words in this document, exclusive of the caption, and signature block.  This document complies with the word count limit in Local Civil Rule 7.1.

Dated: New York, New York
      July 11, 2026

By:    */s/ Lee Bergstein*
Lee Bergstein
BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
Tel: 212-803-9025

*Counsel for Plaintiffs*

26