**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHENZHEN MOLLY TEA FOOD AND
BEVERAGE MANAGEMENT CO., LTD., *et al*.,

           Plaintiffs,

      -against-

MHL NY LLC, *et al.*,

          Defendants.

1:26-cv-04051-JPC

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO RECONSIDER THE COURT'S AMENDED PRELIMINARY
INJUNCTION**

---

**BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC**
780 Third Avenue
Suite 902
New York, New York 10017
(212) 803-9025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ III

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 2

LEGAL ARGUMENT ................................................................................................................. 3

    A.    Legal Standard ................................................................................................... 3

    B.    Defendants Rely Entirely on New Theories, Contrary to the Standard for Reconsideration ................................................................................................... 5

    C.    Even if They Had Been Properly Raised, Defendants' Arguments in Support of Reconsideration are Meritless ........................................................................... 9

        i.    Plaintiffs Unambiguously Own their Federally Registered Trademarks ................ 9

        ii.    Under Chinese Law, Shenzhen Molly Tea Lawfully Terminated the Brand License Agreement ....................................................................................... 12

        iii.    Chinese Law's Interpretation of the Brand License Agreement Does Not Require Arbitration of the Instant Dispute in China ........................................... 14

CONCLUSION............................................................................................................................ 15

WORD COUNT CERTIFICATION ........................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012)................................................................................. 4

*Associated Press v. U.S. Dep't of Def.*,
  395 F.Supp.2d 17 (S.D.N.Y. 2005)................................................................... 4

*Bocoum v. Daimler Trucks N. Am. LLC*,
  No. 17-cv-7636-JPC-BCM, 2023 WL 1466597 (S.D.N.Y. Feb. 2, 2023) ................................ 4

*Calltrol Corp. v. Loxysoft AB*,
  No. 18-cv-9026-NSR, 2026 WL 1243330 (S.D.N.Y. May 6, 2026) .......................................... 3

*Can't Stop Prods., Inc. v. Sixuvus Ltd.*,
  295 F. Supp. 3d 381 (S.D.N.Y. 2018)................................................................ 11

*Chowdhury v. VEON Ltd.*,
  No. 21-cv-3527-JPC-RWL, 2023 WL 2266479 (S.D.N.Y. Feb. 28, 2023) ....................... 3, 4, 9

*City of New York v. Lopez*,
  No. 21-CV-7862-JPO, 2025 WL 1638033 (S.D.N.Y. June 10, 2025) ...................................... 4

*Davidson v. Scully*,
  172 F. Supp.2d 458 (S.D.N.Y. 2001)................................................................. 3

*Hawaii-Pac. Apparel Grp., Inc. v. Cleveland Browns Football Co.*,
  418 F. Supp. 2d 501 (S.D.N.Y 2006)................................................................. 10

*Idaho Potato Comm'n v. M&M Produce Farm and Sales*,
  335 F.3d 130 (2d Cir. 2003)........................................................................... 10

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*,
  933 F. Supp. 347 (S.D.N.Y. 1996).................................................................... 13

*Kaplan v. City of New York*,
  No. 14-cv-4945-RJS, 2018 WL 2084955 (S.D.N.Y. Mar. 22, 2018)......................................... 4

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
  729 F.3d 99 (2d Cir. 2013)............................................................................. 4

*Lashify, Inc. v. Qingdao Network Tech. Co.*,
  No. 25-cv-4183-LJL, 2025 WL 2298837 (S.D.N.Y. Aug. 8, 2025)...................................... 4, 8

*MHL NY LLC v. Mollytea Franchising LLC, et al.*,
   Index No. 711066/2026 (N.Y. Sup. Ct. Queens Cnty. Filed Apr. 16, 2026) ........................... 15

*Miller v. Apple, Inc.*,
   No. 25-cv-1172-JPC-RFT, 2026 WL 1283333 (S.D.N.Y. May 11, 2026) ................................ 3

*MPEG LA LLC v. Samsung Elecs.*,
   166 A.D.3d 13 (1st Dep't 2018) .................................................................................... 14

*Nat. Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Pro. Football Ltd. P'ship.*,
   409 F. App'x 401 (2d Cir. 2010) .................................................................................... 3

*O'Toole v. City of New York*,
   No. 15-cv-6885-LTS-SLC, 2023 WL 4760579 (S.D.N.Y. July 26, 2023) ................................ 5

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003) .......................................................................................... 4

*Omega Nutrition Inc. v. Spectrum Mktg., Inc.*,
   756 F. Supp. 435 (N.D. Cal. 1991) ................................................................................ 11

*Pan v. City of Niagara Falls*,
   No. 23-7513, 2025 WL 1169057 (2d Cir. Apr. 22, 2025) ....................................................... 5

*RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*,
   692 F. Supp. 3d 135 (S.D.N.Y. 2023) .............................................................................. 10

*Semmes Motors, Inc. v. Ford Motor Co.*,
   429 F.2d 1197 (2d Cir. 1970) ......................................................................................... 4

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
   96 F.3d 1217 (9th Cir. 1996) ......................................................................................... 11

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ............................................................................................ 3

*Stone v. Theatrical Inv. Corp.*,
   80 F. Supp.3d 505 (S.D.N.Y. 2015) ................................................................................. 4

*Tactica Int'l Inc. v. Atlantic Horizon Int'l Inc.*,
   154 F. Supp. 2d 586 (S.D.N.Y. 2001) .............................................................................. 11

*Van Buskirk v. United Grp. of Companies, Inc.*,
   935 F.3d 49 (2d Cir. 2019) ......................................................................................... 3, 5

*Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*,
   379 F. Supp. 902 (D. Neb. 1974), *aff'd as modified*, 516 F.2d 846 (8th Cir. 1975) .................. 11

**Statutes**

15 U.S.C. § 1055................................................................................................................... 10

15 U.S.C. § 1127................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 54 ................................................................................................................... 4

S.D.N.Y. Local Civ. R. 6.3 ................................................................................................ 3, 8

Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("**Shenzhen Molly Tea**"), Mollytea Shops LLC ("**Mollytea Shops**"), and Molly Tea Holding Inc. ("**Molly Tea Holding**") and Mollytea Shops LLC, derivatively on behalf of Molly Tea NYC Inc., Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. (collectively, "**Plaintiffs**") respectfully submit this memorandum of law in opposition to Defendants' motion to reconsider the Court's amended preliminary injunction.  For the reasons set forth below, the Court should deny Defendants' motion.

## PRELIMINARY STATEMENT

Cautioned by the Court that a motion for reconsideration "may not be used to advance new facts, issues, or arguments not previously presented," Defendants have filed a motion composed of nothing else.  At the June 11, 2026 conference, Defendants previewed two new theories as the basis for a reconsideration motion: that Chinese law governs the Brand License Agreement and that the agreement requires arbitration in Shenzhen.  Their motion abandons both.  In their place, Defendants advance theories not present in the preliminary injunction record: that Plaintiffs ownership of their federally registered trademarks is in dispute and that the goodwill of the Molly Tea brand in the United States belongs to the licensee that operated stores under it.  Those arguments are procedurally barred, and they fail on their own terms.

Shenzhen Molly Tea's federal registrations are prima facie evidence of ownership.  The Brand License Agreement, which is the *only* source of any right Defendants had to use the Molly Tea marks, states that Shenzhen Molly Tea was registering "trademarks and intellectual property rights in the jurisdiction where [MHL] operates," and MHL covenanted not to obstruct those registrations. (Brand License Agreement Article 1.) Defendants' theory rests on reading the agreement as a license of nothing more than four Chinese characters registered in China.  But that

1

is not a permissible reading even under Chinese law: the Brand License Agreement authorized the entire Molly Tea brand and operating system, including the marks, trade dress, recipe, manuals and supply chain, in the place where MHL, the licensee, operates.  Use of a mark by a licensee inures to the benefit of the licensor as a matter of black letter United States trademark law, which is the only law governing ownership of United States trademark rights, as Defendants' own expert concedes.  Nor can Defendants conjure a freestanding "goodwill" right to escape that result; Chinese law recognizes none.

Finally, the questions the Court actually directed the parties to address – none of which Defendants' motion answers – only confirm the result: Chinese law honors the parties' bargained for termination provisions; Shenzhen Molly Tea validly terminated the Brand License Agreement by its May 1, 2026 notice, which MHL has never challenged; and no reading of Chinese law would disturb the Amended Preliminary Injunction as to any of the three categories the Court identified.

For the reasons set forth below, the Court should deny Defendants' motion to reconsider the Order granting Plaintiffs an amended injunction.

## STATEMENT OF FACTS

The facts relevant to the Court's consideration of this motion are set forth in the First Amended Verified Complaint, dated July 11, 2026 with exhibits annexed thereto (ECF Nos. 100 – 100-12), in the principal and supplemental papers filed by Plaintiffs in support of their initial motion for a preliminary injunction (ECF Nos. 7 – 7-3, 59 – 59-7) and at the May 27, 2026 (*see* ECF No. 59-5) and June 8, 2026 conferences on Plaintiffs' motion, all of which are incorporated herein by reference.

## LEGAL ARGUMENT

**A.      Legal Standard**

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). Such a motion must "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked." S.D.N.Y. Local Civ. R. 6.3. "Motions for reconsideration are 'addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances.'" *Miller v. Apple, Inc.*, No. 25-cv-1172-JPC-RFT, 2026 WL 1283333, at *1 (S.D.N.Y. May 11, 2026) (Cronan, J.) (denying reconsideration motion that relied on new factual assertions) (quoting *Calltrol Corp. v. Loxysoft AB*, No. 18-cv-9026-NSR, 2026 WL 1243330, at *1 (S.D.N.Y. May 6, 2026)).

"'The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Van Buskirk*, 935 F.3d at 54 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Miller*, 2026 WL 1283333, at *1. "'It is black letter law that a motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court.'" *Chowdhury v. VEON Ltd.*, No. 21-cv-3527-JPC-RWL, 2023 WL 2266479, at *3 (S.D.N.Y. Feb. 28, 2023) (Cronan, J.) (denying reconsideration motion) (quoting *Nat. Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Pro. Football Ltd. P'ship.*, 409 F. App'x 401, 403 (2d Cir. 2010)); *see Miller*, 2026 WL 1283333, at *1 (quoting *Davidson v. Scully*, 172 F. Supp.2d 458, 461 (S.D.N.Y. 2001)). It is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.'" *Stone v.*

3

*Theatrical Inv. Corp.*, 80 F. Supp.3d 505, 506 (S.D.N.Y. 2015) (quoting *Associated Press v. U.S. Dep't of Def.*, 395 F.Supp.2d 17, 19 (S.D.N.Y. 2005)).

It "may not be used as a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple." *Bocoum v. Daimler Trucks N. Am. LLC*, No. 17-cv-7636-JPC-BCM, 2023 WL 1466597, at *2 (S.D.N.Y. Feb. 2, 2023) (Cronan, J.) (internal quotation marks omitted) (denying reconsideration motion based on new facts); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). "Specifically, the Second Circuit has instructed that a motion for reconsideration under Rule 54(b) should be granted only when the moving party meets the burden of identifying: (1) 'an intervening change of controlling law,' (2) 'the availability of new evidence,' or (3) 'the need to correct a clear error or prevent manifest injustice.'" *Bocoum*, 2023 WL 1466597, at *2 (quoting *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013).

"'[A] court must be mindful that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Chowdhury*, 2023 WL 2266479, at *3 (quoting *Kaplan v. City of New York*, No. 14-cv-4945-RJS, 2018 WL 2084955, at *5 (S.D.N.Y. Mar. 22, 2018)); *see Coopers & Lybrand*, 322 F.3d at 167. Importantly, "[t]he Second Circuit 'disapprove[s] [of] the practice of trying to relitigate on a fuller record preliminary injunction issues already decided.'" *Lashify, Inc. v. Qingdao Network Tech. Co.*, No. 25-cv-4183-LJL, 2025 WL 2298837, at *4 (S.D.N.Y. Aug. 8, 2025) (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1207 (2d Cir. 1970)); *City of New York v. Lopez*, No. 21-CV-7862-JPO, 2025 WL 1638033, at *2 (S.D.N.Y. June 10, 2025). "[I]f the movant had

4

the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver," then the Court should not revisit its decision. *O'Toole v. City of New York*, No. 15-cv-6885-LTS-SLC, 2023 WL 4760579, at *2 (S.D.N.Y. July 26, 2023).

Denial of a motion for reconsideration is proper when the movant submits evidence, including "sworn declarations" "for the first time" on reconsideration. *Van Buskirk*, 935 F.3d at 54. That is, when a movant does "not provide[] the district court with . . . evidence until the motion for reconsideration," as a matter of law, the district court has "overlooked nothing." *Id*.

## B.    Defendants Rely Entirely on New Theories, Contrary to the Standard for Reconsideration

Defendants have "not identif[ied] any controlling decisions or facts that would have altered the district court's dismissal." *Pan v. City of Niagara Falls*, No. 23-7513, 2025 WL 1169057, at *3 (2d Cir. Apr. 22, 2025). Instead, their motion relies exclusively on new facts and theories that are found nowhere else in the record. Defendants now contend that: (1) Plaintiffs never established ownership of Molly Tea's federally Registered Marks,[1] because, Defendants contend, Plaintiffs proved neither that the goodwill associated with the Joint Venture Stores belongs exclusively to Plaintiffs nor that Defendants' use of the Molly Tea name at those stores inured to Plaintiffs' benefit (Def. Mem. of Law, ECF No. 90-8, at 1); and (2) that Plaintiffs did not prove that their "interpretation" of the Brand License Agreement is "clearly established" under Chinese law (without making clear what "interpretation" Defendants even refer to) (Def. Mem. of Law at 15).

These arguments are wholly absent from both the initial and supplemental papers filed by Defendants in opposition to Plaintiffs' motion for a preliminary injunction (ECF Nos. 53 – 53-19,

---

[1] Defined terms used herein take their definitions from the First Amended Verified Complaint (ECF No. 100).

5

54 – 55, 58 – 58-5), in which Defendants argued only that their use of the Molly Tea trademarks on the social media accounts was consistent with the parties' course of conduct (May 24, 2026 Def. Mem. of Law in Opp. to Prelim. Inj., ECF No. 53 ("**May 24 Def. Mem. of Law**")), at 22-23) and that they had performed their obligations under the Brand License Agreement and (in support of their procedurally improper cross-motion for a temporary restraining order) that Plaintiffs had breached that agreement (May 24 Def. Mem. of Law at 24). That is, Defendants contested only whether they had breached the Brand License Agreement. At no point, in the papers or at oral argument, did Defendants ever contest Plaintiffs' ownership of the Molly Tea trademarks.

Indeed, Defendants now pay only lip service to the standard governing a motion for reconsideration, making only a cursory and unexplained assertion that the Court "overlooked" certain contract language. (Def. Mem. of Law at 8.) In fact, the Court did not overlook any fact or controlling authority, nor has its order produced clear error or manifest injustice. Instead, Defendants merely seek to raise tenuously reasoned, factually unsupported, and unmeritorious arguments for the first time on reconsideration.

Most tellingly, the novel theories Defendants now seek to advance even differ from those *other* novel theories they initially indicated that they sought to advance in support of a reconsideration motion. The first time Defendants indicated that they would seek reconsideration, they asserted twofold bases: that the Brand License Agreement was governed by Chinese law and that the agreement required the instant dispute to be arbitrated in China. *See* June 10, 2026 Def. Letter Mot., ECF No. 65). At the subsequent hearing, Defendants maintained those theories as the bases for their reconsideration motion.

The Court explicitly reminded Defendants' counsel that a "motion for reconsideration may not be used to advance new facts, issues, or arguments not previously presented to the Court" and

6

directly asked: "Where did you make these arguments in the briefing before me, both the lead briefing and the supplemental briefing, or at either of the two hearings we had here?  I don't remember hearing anything about Chinese law and the import of Article 18 of the agreement." Defendants' counsel acknowledged: "I reviewed the docket.  I didn't see any express notes or arguments about the application of the Chinese law as to the validity of the termination of the license."  The Court then again observed, "Doesn't that bar reconsideration under very settled law in this district?" and Defendants' counsel conceded, "Upon my review of the law, it's certainly an obstacle . . ."  (June 11, 2026 Hearing Tr. 22:1-18).  Plaintiffs also noted at that point that Defendants' motion was improper for being based entirely on novel theories.  (*See* June 11, 2026 Hearing Tr. 3:10-17).

It was only in Defendants' letter motion for leave to file an oversized brief in support of their reconsideration motion that Defendants previewed, for the first time, their intention to raise a variety of novel issues.  *See* June 24, 2026 Def. Letter, ECF No. 84.  Plaintiffs again identified these arguments as novel and improper in opposing their related application for an enlargement of time to respond.  *See* June 25, 2026 Pltf. Letter, ECF No. 86.

Also worthy of note is the fact that the Court expressly directed Defendants that, in their reconsideration motion, they should address: (1) whether the Court can appropriately consider Defendants' novel arguments on reconsideration and (2) how Chinese law applies to the Brand License Agreement and how it would bear on Shenzhen Molly Tea's termination of that agreement and on Plaintiffs' Lanham Act claims.  (June 11, 2026 Hearing Tr. 34:15-35:17.)  For that reason, the Court directed the parties to submit a declaration from an expert in Chinese law addressing the latter question and, for that precise reason, granted Defendants more time than they would

7

ordinarily be entitled to in moving for reconsideration (*see* S.D.N.Y. Local Civ. R. 6.3).[2]  (June 11, 2026 Hearing Tr. 35:18-22.)  While Defendants availed themselves of that extra time, their instant motion addresses none of those issues and, instead, raises entirely new issues.

Indeed, of additional note is the fact that the Court *sua sponte* amended the preliminary injunction to narrow its scope, in Defendants' favor (*see* Amend. Prelim. Inj. Order, ECF No. 83; June 23, 2026 Hearing Tr. 222:6-228:11.)  This rightly evinces the Court's confidence in the propriety of the injunction, having twice thoughtfully considered its scope, the latter time *sua sponte*.  Even then, Defendants raised none of the arguments they now advance, despite having the opportunity to do so at oral argument.

Hence, it is clear that Defendants simply want a second bite at the apple.  Defendants' continually shifting theory of the basis for reconsideration of the preliminary injunction, despite the fact that the Court and Plaintiffs have repeatedly highlighted that novel theories cannot properly be raised in support of a motion for reconsideration, only underscores the fact that Defendants' latest theories are all the more novel and improper.

"The Court gave both parties a full and fair opportunity to litigate the motion for a preliminary injunction . . . going so far as to raise *sua sponte* the question of [amending the original injunction] when Defendants had not raised the issue themselves, and permitting the parties supplemental submissions after the hearing was concluded." *Lashify*, 2025 WL 2298837, at *4.  Rather than present the arguments and theories that they now advance, "Defendants squandered that opportunity."  *Id*.  As such, Plaintiffs should not be made to "battle for [the preliminary

---

[2] S.D.N.Y. Local Civ. R. 6.3 permits a party to move for reconsideration within fourteen days of entry of the order to be reconsidered.  The Court issued the preliminary injunction order on June 8, 2026 but permitted Defendants to move for reconsideration by June 29, 2026, rather than the fourteen-day deadline of June 22, 2026.  The Court explained: "That is why I'm giving the defendants two and a half weeks to file their motion to obtain such expert declaration." (June 11, 2026 Hearing Tr. 34:5-35:22.)

injunction] again," *Chowdhury*, 2023 WL 2266479, at *3, and the Court should decline to revisit the preliminary injunction and deny Defendants' motion.

**C.    Even if They Had Been Properly Raised, Defendants' Arguments in Support of Reconsideration are Meritless**

Even if Defendants had previously raised their instant, novel arguments in support of reconsideration, those arguments are entirely without merit, as set forth below.

**i.    Plaintiffs Unambiguously Own their Federally Registered Trademarks**

Plaintiffs own their trademarks, including the Registered Marks federally registered by Shenzhen Molly Tea, and Defendants present no evidence to the contrary.

Defendants rightly concede that the registration of the Registered Marks by Shenzhen Molly Tea in the U.S. Patent and Trademark Office constitutes *prima facie* evidence of the validity of those marks and Shenzhen Molly Tea's ownership of them (Def. Mem. of Law at 7).  *See* 15 U.S.C. § 1057(b).  However, they assert that other evidence—in the form of Defendants' supposed prior use of the marks in the United States and their cultivation of Molly Tea's goodwill through use of those marks—disputes that *prima facie* evidence.  That is false.

First, Defendants' evidence to support those assertions is either non-existent or paltry and, in any event, is clearly contradicted by the Brand License Agreement itself.  The sole source of Defendants' right to utilize the Molly Tea marks, is the Brand License Agreement, which conferred on MHL the right to use the Molly Tea trademark:

"[Shenzhen Molly Tea] hereby grants [MHL] a license to operate under the 'Molly Tea' brand during the term of this Contract, in accordance with the provisions hereof.  The business resources granted by [Shenzhen Molly Tea] to [MHL] include: (a) Registered trademark: The registered trademark in Chinese Mainland is "Molly Tea" (Registration No.: 50234810, Class 43); (b) Authorized brand "Molly Tea" (c) Authorized marks and authorized systems (including but

9

not limited to CIS and VI systems)." (Brand License Agreement § 2.1, ECF No. 100-2.) Defendants otherwise possess no legal right to utilize Molly Tea's marks. MHL likewise covenanted, in Article 1 of the agreement, not to obstruct Shenzhen Molly Tea's United States registrations: the agreement recites that Shenzhen Molly Tea is "currently applying for relevant trademarks and intellectual property rights in the jurisdiction where [MHL] operates" and MHL undertakes not to pre-emptively register or use any other means to prevent those registrations. (Brand License Agreement Article 1.)

Defendants' theory – that ownership of the marks is "genuinely disputed" because the goodwill of the New York stores arose from the Defendants' operation of them – fails on the facts and the law. First, MHL did not, as Defendants contend, open the stores at which the marks were first used; the Joint Venture Entities did. The Bylaws for each entity define the sole purpose of those entities as operating stores "under the brand 'Molly Tea' pursuant to the License Agreement" (Bylaws § 1.3(a)) and MHL managed them only as a contractually installed operator.

Further, use of a mark under license inures to the benefit of the licensor. 15 U.S.C. § 1055, 1127; *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.,* 692 F. Supp. 3d 135, 153 (S.D.N.Y. 2023) ("use of a mark by a person while such person was a licensee builds up no rights in the mark as against the licensor"); *Hawaii-Pac. Apparel Grp., Inc. v. Cleveland Browns Football Co.,* 418 F. Supp. 2d 501, 506 (S.D.N.Y 2006) (Chin, J.) (licensor established priority through its licensees' use, which "create[s] enforceable rights in favor of Licensor").

Defendants are in any event estopped from putting the ownership in dispute at all. A licensee "effectively recognizes the validity of [the licensor's] property and is estopped from contesting its validity." *Idaho Potato Comm'n v. M&M Produce Farm and Sales*, 335 F.3d 130, 135 (2d Cir. 2003). Even courts permitting former licensees to challenge ownership bar challenges

10

that, like Defendants', rest "exclusively on facts that arose during the course of the licensing agreement." *Can't Stop Prods., Inc. v. Sixuvus Ltd.,* 295 F. Supp. 3d 381, 393 & n.7 (S.D.N.Y. 2018). Even adopting Defendants' flawed theory, any goodwill from the stores' operation would belong to the Joint Venture Entities and not MHL or its principals.   Nothing rebuts the registrations' presumption of ownership.

The cases Defendants cite for the proposition that courts weigh "commercial realities" to locate trademark ownership applied that analysis only in the absence of an agreement allocating the mark.   Courts "must first look to any agreement or acknowledgment between the parties regarding trademark rights." *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1221 (9th Cir. 1996).   Defendants' authorities are not to the contrary; each applied multi-factor ownership tests only in the absence of an agreement allocating the mark.   *See Tactica Int'l Inc. v. Atlantic Horizon Int'l Inc.,* 154 F. Supp. 2d 586, 600 (S.D.N.Y. 2001) (factors apply where "no agreement controls"); *Omega Nutrition Inc. v. Spectrum Mktg., Inc.,* 756 F. Supp. 435, 438 (N.D. Cal. 1991) ("[a]bsent an agreement between the parties"); *Wrist-Rocket Mfg. Co. v. Saunders Archery Co.,* 379 F. Supp. 902, 913 (D. Neb. 1974), *aff'd as modified*, 516 F.2d 846 (8th Cir. 1975) (no written agreement defined the parties' relationship).   Indeed, *Wrist Rocket* states the rule that governs here: a distributor's use "automatically inures" to the party that is "the original owner of the mark" where the "license to distribute the product includes the license to use the [owner's] mark." 516 F.2d at 850.   Unlike those cases, an express written license controls here.

Further, Defendants acknowledge that their own Chinese attorney's opinion does not establish "that PRC law determines ownership of trademark rights arising under United States law."  (Def. Mem. of Law at 15.)   As Mr. Cui explains: "in the PRC legal context, trademark protection is not necessarily confined to the exact Chinese characters appearing in a registered

11

mark. Rather, the translation, imitation, reproduction or principal identifying elements of a well-known mark may also have legal significance, particularly where such use may cause confusion among the relevant public."  *See* July 13, 2026 Cui Declaration ("**Cui Decl.**") ¶ 68.)  In light of this, he concludes that the Brand License Agreement should not be ready to "artificially separate the PRC-registered Chinese-character mark "茉莉奶白" from the broader brand identity and brand operating system authorized and controlled under the Brand License Agreement."  (Cui Decl. ¶ 70.) In short, the Brand License Agreement does not support Defendants' overly narrow reading of the agreement so as to separate the Chinese-character marks mentioned in the Chinese-language agreement from their English-language counterparts that are federally registered in the United States.

Defendants' goodwill argument also fails.  Mr. Cui explains that "Goodwill is not generally treated under PRC law as an independent proprietary right with a separate ownership structure apart from trademarks, brand-related interests or specific business assets.  Nor is 'goodwill' ('商誉') an independent concept expressly used in the Trademark Law of the People's Republic of China."  (Cui Decl. ¶ 75.) Thus, "when analyzed under PRC law, the Brand License Agreement does not sustain Defendants' contention that Defendants possess ownership of or a separate interest in the goodwill associated with the New York stores."  (Cui Decl. ¶ 81.)

Defendants' effort to case ownership of the Molly Tea marks as "genuinely disputed" fails under the facts and the law of both the United States and China.

### ii.    Under Chinese Law, Shenzhen Molly Tea Lawfully Terminated the Brand License Agreement

The Court asked the parties to address the application of Chinese law to the termination provision, and how that bears on the termination of the agreement.  Under PRC law, parties may agree in advance on grounds entitling one party to terminate, and may exercise that right

unilaterally, by notice.  (Cui Decl. ¶ 30-32.)   Termination is effective when the notice reaches the counterparty; an objection neither suspends nor reverses it, and the objecting party's remedy is to seek a judicial or arbitral determination that the termination was invalid.  (Cui Decl. ¶ 31-32.) MHL has never sought any such determination, in any forum.

Shenzhen Molly Tea's May 1, 2026 termination notice asserted five independent grounds for termination, each expressly identified as a fundamental breach under Section 12.2.1 of the Brand License Agreement:  MHL's refusal to communicate and breakdown of the cooperative relationship; its failure to provide financial reporting or permit audit; the unauthorized Columbia Store; its operation of a competing business through Genesis Brand Management LLC; and brand damaging quality failures at the authorized stores.  (ECF No. 100-10.) The agreement, moreover, defines certain conduct as fundamental breaches *per se*: operating outside  Shenzhen Molly Tea's designated POS system (§ 10.2) and diverting designated materials or procuring outside the designated supply chain (§ 8.2), provisions the May 1 notice expressly invoked as to the Columbia Store.  (Am. Verified Compl. ¶ 57, 73, 96.)

Accordingly, Shenzhen Molly Tea validly exercised its contractual termination right by written notice, and the Brand License Agreement terminated when the May 1, 2026 notice reached MHL.  (Cui Decl. ¶ 32, 35-37.)   From that moment, MHL's contractual authorization to operate under the Molly Tea brand ceased, while accrued liabilities and post-termination obligations survived.  (Cui Decl. ¶ 38-42; Brand License Agreement 13.5.)

Chinese law does not differ from New York law in any material respect here.  Under both, sophisticated parties may bargain for unilateral termination rights exercisable by notice, and courts enforce those provisions as written. *See Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996) ("[W]here the parties to a contract have agreed to a written

13

termination clause, it must be enforced as written."); *see also MPEG LA LLC v. Samsung Elecs.*, 166 A.D.3d 13, 18 (1st Dep't 2018) (enforcing commercial licensor's unilateral termination on notice right according to the agreements clear language).   Defendants identify no feature of Chinese law that would have made Shenzhen Molly Tea's termination unlawful, and their own expert offers no opinion on the subject.    To the extent any question about termination could remain, it would concern only whether the underlying breaches – the Columbia Store and the LIC Concession were never licensed under any reading of any agreement –occurred and Defendants' motion nowhere contends that they did not.

### iii.    Chinese Law's Interpretation of the Brand License Agreement Does Not Require Arbitration of the Instant Dispute in China

While Defendants declined to address the issue of whether the Brand License Agreement requires the instant dispute to be arbitrated in the Shenzhen Court of International Arbitration ("**SCIA**")—one of the two issues that they initially raised as bases for their intended motion for reconsideration—Plaintiffs will now address that issue briefly.

In short, Chinese law does not require this dispute to be arbitrated, before the SCIA or otherwise.   Plaintiffs' expert explains, "notwithstanding the SCIA arbitration clause in the Brand License Agreement, the [instant] Action should be resolved by this Court as a whole." (Cui Decl. ¶ 20.)   That is because, under Chinese law, a contractual arbitration clause should not bind a non-party to the agreement, including when only some of the parties to a particular dispute are party to the agreement containing the arbitration clause. *See* Cui Decl. ¶¶ 22-25.   Regarding the instant dispute, Mr. Cui explains, the instant dispute:

> [I]nvolves an indivisible dispute concerning the same Molly Tea brand, the same alleged unauthorized use of the Molly Tea marks, trade dress and brand system, and overlapping injunctive and declaratory relief against multiple parties, including the Non-signatory Par-ties.  Therefore, the SCIA arbitration clause in the Brand License Agreement should not require the SDNY Action to be divided between

14

SCIA arbitration as to Shenzhen Molly Tea and MHL and court litigation as to the Non-signatory Parties.

Cui Decl. ¶ 25.

As such, he concludes that the instant "Action should be resolved by the Court as a whole." Cui Decl. ¶ 25.

Additionally, Mr. Cui has concluded that, in any event, by initiating an action against several of the Plaintiffs in the New York State court (*see MHL NY LLC v. Mollytea Franchising LLC, et al.*, Index No. 711066/2026 (N.Y. Sup. Ct. Queens Cnty. Filed Apr. 16, 2026), based on matters arising under the Brand License Agreement, Defendant MHL NY LLC has waived any putative requirement that disputes arising under that agreement be arbitrated in the SCIA. *See* Cui Decl. ¶¶ 26-28.

Thus, Defendants' prior claim, which they have now abandoned, that this dispute must be arbitrated in China, is without merit..

## CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' motion to reconsider the Order granting Plaintiffs an amended injunction.

Dated: New York, New York
      July 13, 2026

By: ___*/s/ Lee Bergstein*_____
Lee Bergstein
Joseph M. DiPietro
BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
joseph@bfklawoffice.com
Tel: 212-803-9025

15

*Counsel for Plaintiffs*

16

## WORD COUNT CERTIFICATION

I hereby certify that this Memorandum was prepared using Microsoft Word, and that there are no more than fifteen pages in this document, exclusive of the caption, tables and signature block pursuant to this Court's Order granting excess pages (ECF Doc No. 108).  This document complies with the word count limit in Local Civil Rule 6.3 as modified by that Order.

Dated: New York, New York
      July 13, 2026

By:    */s/ Lee Bergstein*
Lee Bergstein
BERGSTEIN FLYNN KNOWLTON & POLLINA
PLLC

780 Third Avenue, Suite 902
New York, New York 10017
lee@bfklawoffice.com
Tel: 212-803-9025

*Counsel for Plaintiffs*