# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., MOLLYTEA SHOPS LLC, and MOLLY TEA HOLDING INC.<br><br>**Plaintiffs,**<br><br>and<br><br>MOLLYTEA SHOPS LLC, derivatively on behalf of MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC.,<br><br>**Plaintiffs,**<br><br>v.<br><br>MHL NY LLC, MOLLY TEA CU LLC, GENESIS BRAND MANAGEMENT LLC, MEI HUI LIN, XIAOZHE LIU a/k/a ZIAOZHE LIU, and BINBIN XU,<br><br>**Defendants,**<br><br>and<br><br>MOLLY TEA NYC INC., MOLLY TEA BK INC., and MOLLY TEA MANHATTAN CHINATOWN INC.,<br>**Nominal Defendants.** | **Case No. 1:26-cv-04051 (JPC)** |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION

**TABLE OF CONTENTS**

I.     INTRODUCTION........................................................................................................................1

II.    THE COURT SHOULD REACH THE TRADEMARK OWNERSHIP ISSUE ..........................................2

       A.    PLAINTIFFS MISSTATE THE PROCEDURAL HISTORY..........................................................2

       B.    RECONSIDERATION IS APPROPRIATE BECAUSE THE COURT DID NOT CONSIDER FACTS GOING TO THE

       THRESHOLD ISSUE OF U.S. TRADEMARK OWNERSHIP. ...........................................................2

       C.    AT A MINIMUM, THE COURT SHOULD RECONSIDER WHETHER THE INJUNCTION SHOULD REMAIN IN PLACE..3

III.   THE BRAND LICENSE AGREEMENT DOES NOT ALLOCATE OWNERSHIP OF UNITED

STATES TRADEMARK RIGHTS .........................................................................................................4

       A.    THE AGREEMENT DOES NOT ALLOCATE OWNERSHIP OF FUTURE UNITED STATES TRADEMARK RIGHTS........4

       B.    PLAINTIFFS CANNOT CREATE AN AGREEMENT THROUGH EXPERT TESTIMONY. .............................5

IV.    THE EVIDENCE SHOWING MOLLY TEA NYC INC.'S FIRST USE IS UNREFUTED......................7

V.     EQUITY FAVORS DISSOLUTION OF THE RESTRAINTS ......................................................7

VI.    CONCLUSION ......................................................................................................................8

## TABLE OF AUTHORITIES

Cases

*Buti v. Impressa Perosa, S.R.L.,* 139 F.3d 98 (2d Cir. 1998) ...........................................................................6

*Doe v. N.Y.C. Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir. 1983) ...............................................................3

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007) ...................................................................................6

*Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001)...........................................................................5

*Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 383-84 (1992) ................................................................3

*Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 157 (1983) ...........................................................................5

*Sys. Fed'n No. 91 v. Wright,* 364 U.S. 642, 647-48 (1961)...............................................................................3

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)....................................3

*W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, (N.Y. 1990)...........................................................5

Rules

Fed. R. Civ. P. 60(b)(5) .....................................................................................................................................3

## I.        Introduction

Plaintiffs' opposition does not cure the fundamental deficiencies in the record supporting the preliminary injunction. Plaintiffs still have not established that they own the United States trademark rights they seek to enforce. They have not shown that any Plaintiff ever used the MOLLY TEA mark in commerce in the United States. And, they have not identified a contract between Shenzhen Molly Tea (the purported owner of the TMs) and the entity that actually used the Molly Tea marks in commerce.  The now undisputed evidence establishes that the first use occurred through Molly Tea NYC Inc., the entity that developed, opened, and operated the first MOLLY TEA store in the United States and that was solely owned by Defendant Mei Hui Lin at the time. Molly Tea NYC Inc. was not a party to the December 2023 Brand License Agreement, no separate United States trademark license agreement was ever executed with that entity, and Plaintiffs identify no agreement requiring the goodwill generated by its use of the mark to vest in any Plaintiff.

Plaintiffs' own expert cannot identify any provision of the parties' agreements allocating ownership of United States trademark rights, nor any principle of Chinese law that automatically transfers or causes goodwill arising from first use in the United States to inure to Plaintiffs.

Plaintiffs devote much of their opposition to procedural arguments concerning reconsideration and offer no fact declarations or in-depth argument regarding the dispositive ownership issue. Plaintiffs' procedural arguments miss the point. Whether analyzed under the standard governing reconsideration or under the Court's continuing equitable authority to modify or dissolve preliminary injunctive relief, the central question remains the same: whether Plaintiffs have demonstrated a sufficient likelihood that they own the United States trademark rights underlying the injunction. An injunction is an equitable remedy that exists only so long as its factual and legal predicates remain intact. If the record demonstrates that Plaintiffs have failed

1

to establish ownership of the asserted United States trademark rights, the Court is not required to continue enforcing an injunction simply because Plaintiffs characterize Defendants' arguments as procedurally untimely. Equity requires the Court to ensure that extraordinary relief rests on a legally sufficient foundation, and Plaintiffs' opposition does not supply one.

**II.        The Court Should Reach the Trademark Ownership Issue**

    **A.        Plaintiffs Misstate the Procedural History.**

Plaintiffs incorrectly argue that Defendants first raised the trademark ownership issue in their request for permission to file an oversized brief. Opposition Brief at 7. At the June 23, 2026 hearing, Defendants advised the Court that newly retained intellectual property counsel had identified a substantial issue concerning Plaintiffs' ownership of the asserted United States trademark rights and that the issue would become a central component of Defendants' motion. June 23 Hr'g Tr. 229:14–230:4. The Court acknowledged that the issue appeared to be new to Plaintiffs, suggested the parties confer, and left the existing briefing schedule in place. Plaintiffs therefore had advance notice of the ownership issue before Defendants filed their motion and cannot credibly claim surprise or prejudice. Plaintiffs also sought and received extra time as a result of the ownership issue and sought and received extra pages to address it. They still spent the majority of their opposition discussing issues other than fundamental trademark ownership issue.

    **B.        Reconsideration Is Appropriate Because the Court Did Not Consider Facts Going to the Threshold Issue of U.S. Trademark Ownership.**

Even under the standard Plaintiffs advocate, reconsideration is appropriate where the Court overlooked material facts or where reconsideration is necessary to prevent manifest injustice.

That is precisely the circumstance presented here. At the time the preliminary injunction was entered, the Court was not presented with evidence establishing that the first use of the MOLLY

2

TEA mark in the United States occurred through Molly Tea NYC Inc., that Molly Tea NYC Inc. was not a party to the December 2023 Brand License Agreement, that the Brand License Agreement only covered a Chinese trademark, that Molly Tea NYC Inc never executed a trademark license with any Plaintiff entity, that no Plaintiff entity ever executed any US trademark license with any defendant entity, that Plaintiffs' own trademark applications rely on Molly Tea NYC's first use, that Plaintiff never actually used the Molly Tea mark in U.S. commerce or that neither the governing agreements nor Chinese law identify any mechanism by which the goodwill arising from that first use automatically vested in any of the Plaintiffs.

Finally, reconsideration is necessary to prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)*; Doe v. N.Y.C. Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir. 1983). Plaintiffs seek to preserve extraordinary equitable relief based upon ownership of United States trademark rights that they still have not established. If Defendants are correct that Plaintiffs never acquired those rights, continuing to enforce an injunction premised upon Plaintiffs' ownership would work precisely the type of manifest injustice that reconsideration is intended to prevent.

    C.      At a Minimum, the Court Should Reconsider Whether the Injunction Should Remain in Place.

Even if the Court were to conclude that reconsideration is procedurally unavailable, that does not end the analysis. A preliminary injunction is an equitable remedy that remains subject to the Court's continuing authority to modify or dissolve it when its factual or legal foundation has been materially undermined. *Sys. Fed'n No. 91 v. Wright,* 364 U.S. 642, 647-48 (1961) ("the court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it was been doing has been turned through changing circumstances into an instrument of wrong."); *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 383-84 (1992)*;* Fed. R. Civ. P.

60(b)(5). Procedural objections do not justify continuing an injunction that may rest upon trademark rights Plaintiffs do not own. There is no "we already got away with it" defense while a temporary injunction stands. Because Defendants have presented substantial evidence creating a genuine dispute concerning Plaintiffs' ownership of the asserted United States trademark rights, the Court should determine whether the injunction remains equitable and legally justified, regardless of the procedural label attached to Defendants' motion.

**III.      The Brand License Agreement Does Not Allocate Ownership of United States Trademark Rights**

A.      The Agreement Does Not Allocate Ownership of Future United States Trademark Rights.

Plaintiffs' ownership theory depends entirely upon the December 2023 Brand License Agreement. But that Agreement does not assign existing or future United States trademark rights. It does not assign goodwill generated through use of the mark in the United States. It contains no provision stating that goodwill arising from future United States use automatically inures to Plaintiffs. Nor does it require the first United States user to assign any trademark rights or goodwill that might arise from first use in commerce.

Molly Tea NYC, the entity that first used the MOLLY TEA mark in the United States was not even a party to the Agreement, and no separate United States trademark license agreement was ever executed with that entity. Plaintiffs' contractual theory assumes all the rights it wishes to claim without any clause in any agreement before the court that specifically addresses those rights, much less grants them to a Plaintiff.

There is also a good explanation for why the Brand License Agreement did not address any rights in the future U.S. marks.  That agreement was a boiler plate agreement that Shenzhen Molly Tea had created and used for Molly Tea stores in China.  That is why it only addresses the Chinese trademark, why it is in Chinese and why it has Chinese law as controlling.  It was never

meant to control any rights in the U.S.

B.      Plaintiffs Cannot Create an Agreement Through Expert Testimony.

Plaintiffs ask their Chinese law expert to supply contractual terms the parties themselves never adopted. But expert testimony interpreting PRC law cannot create a meeting of the minds where the parties' written agreement is silent. *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, (N.Y. 1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.").

Plaintiffs' expert is careful to explain how PRC law interprets the Agreement, but nowhere does he identify the contractual language that actually accomplishes the result Plaintiffs ask this Court to enforce. He identifies no provision assigning future United States trademark rights, allocating the goodwill arising from first use in the United States, providing for the inurement of that goodwill to Plaintiffs, or requiring the first United States user to assign any resulting trademark rights.[1] *Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 157 (1983) (an omission from a contract does not constitute an ambiguity).  To the contrary, he acknowledges that only Shenzhen Molly Tea and MHL executed the Brand License Agreement and that he has seen no agreement binding the entity that first used the MOLLY TEA mark in the United States (Molly Tea NYC Inc.). Contract interpretation cannot supply material terms sophisticated commercial parties never negotiated or expressed. *Reiss v. Fin. Performance Corp*., 97 N.Y.2d

---

[1] Plaintiffs' references to alleged fame of the MOLLY TEA mark in China are also irrelevant. Plaintiffs assert no famous-mark claim, cite no evidence that the mark qualified for such protection in the United States, and identify no authority by which alleged reputation in China altered ownership of United States trademark rights arising through first use in this country.

195, 199 (2001) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.") (internal citations and quotations omitted).

When the Brand License Agreement was executed, Plaintiffs had not yet established any United States trademark rights through use in commerce. Plaintiffs have not established that at that time they had any rights to license. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007)*; Buti v. Impressa Perosa, S.R.L.,* 139 F.3d 98 (2d Cir. 1998). Plaintiffs certainly could authorize Defendants to use their Chinese business system, recipes, know-how, and other intellectual property. But authorization to use a foreign brand with an expectation of a portion of the profit is not the same as ownership of the United States trademark rights and goodwill that might later arise through first use in United States commerce. If Plaintiffs intended to require that all future United States trademark rights and goodwill automatically vest in them regardless of who first created that goodwill, they were required to say so expressly. They did not and Defendants never agreed to that. Neither Chinese law nor expert testimony can supply a contractual allocation of United States trademark rights that the parties themselves never negotiated, particularly as to business entities that were not parties to the Agreement and rights that did not yet exist.

Plaintiffs also fail in their attempt to distinguish Defendants' authorities on the ground that those cases involved the absence of a license agreement. That argument assumes the issue in dispute. Plaintiffs have never established the existence of any agreement allocating ownership of future United States trademark rights or goodwill, much less one binding the entity that first used the mark in the United States. The authorities therefore remain directly applicable.

Defendants purchased Plaintiff's supplies and used their own money and creativity to

6

build an enormously successful U.S. brand.  There is no legal or equitable basis for taking the fruits of that labor from Defendants.

**IV.        The Evidence Showing Molly Tea NYC Inc.'s First Use is Unrefuted**

Plaintiffs did not submit any factual declaration to contradict any of the testimony of Mei Hui Lin's declaration.  This was not an oversight.

Plaintiffs argue that "MHL did not, as Defendants contend, open the stores at which the marks were first used; the Joint Venture Entities did." Opposition Brief at 10. Plaintiffs make that statement without any citation or support as if unsupported lawyer argument trumps evidence.  It does not.  The first substantive paragraph of the declaration of Mei Hui Lin submitted with the opening brief states "I am the owner of MHL NY LLC. I was also the sole owner of Molly Tea NYC Inc. at the time the first MOLLY TEA store opened in Flushing, New York and at the time of the first U.S. use date identified in Plaintiffs' U.S. trademark filings." Dkt. 90-1 at 2.

If Plaintiffs had any witness that could claim that the joint venture entities existed at the time of first use, they would have supplied a declaration.  The absence of that declaration speaks volumes about the evidence Plaintiffs have and the arguments they are willing to make.

Plaintiffs' argument is also an admission that they have no evidence of any Plaintiff's use of the mark in U.S. commerce that predates Molly Tea NYC Inc.  Their position is now that they have no evidence of use but at least, they were a 1/3 owner of the entity that did the use.  They were not.  At the time of first use no Plaintiff entity had any ownership interest in Molly Tea NYC Inc.  The JV entitles were not formed until approximately half a year later, long after Molly Tea NYC Inc. had established Molly Tea as an incredible success and New York phenomena.

**V.        Equity Favors Dissolution of the Restraints**

Plaintiffs' opposition treats this case as though it involved an ordinary franchise

7

relationship in which a foreign trademark owner entered the United States through an established licensing structure. The record developed since entry of the injunction demonstrates that the relationship was materially different.

The undisputed evidence now shows that Defendants located the first U.S. site, funded construction, hired employees, developed suppliers, adapted recipes to the U.S. market, created English-language marketing, established pricing, and opened the first U.S. store months before any joint venture structure existed. Plaintiffs, by contrast, identify no evidence that they themselves used the mark in U.S. commerce or that they had any agreement allocating the goodwill arising from Defendants' first use.

Equity should not preserve an injunction where substantial doubt now exists as to whether the party seeking that injunction owns the rights it seeks to enforce.

## VI.        Conclusion

Plaintiffs have now had a full and fair opportunity to address the ownership issue. After Defendants identified the issue at the June 23 hearing, Plaintiffs submitted a comprehensive opposition and expert testimony. Despite that opportunity, Plaintiffs still have not identified any contractual provision, principle of Chinese law, or principle of United States trademark law by which the goodwill arising from the first use of the MOLLY TEA mark in the United States vested in Plaintiffs rather than the entity that created it.

Because Plaintiffs have failed to establish ownership of the United States trademark rights underlying the preliminary injunction, the Court should reconsider and vacate the injunction. Alternatively, if the Court concludes that reconsideration is procedurally unavailable, it should exercise its continuing equitable authority to dissolve or modify the injunction because the injunction's fundamental predicate—Plaintiffs' ownership of the asserted United States trademark rights—has not been established and has now been materially undermined by the fully

8

developed record before the Court.

.

Dated: July 16, 2026

By: /Michael Cukor/s
Michael Cukor, Esq.
**McGeary Cukor LLC**
1460 Broadway
New York NY 10036
mcukor@mcgearycukor.com

Yimin Chen
37-12 Prince Street, Suite 9D
Flushing, NY 11354
718-886-4858
Email: chenattorney@yahoo.com

Peter Erik Sverd
**Law Offices of Peter Sverd, PLLC**
225 Broadway, Ste. 613
New York, NY 10007
(646) 751-8743
Fax: (212) 964-9516

Attorneys for Defendants

9