IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| MHL NY LLC,<br><br>Petitioner,<br><br>v.<br><br>SHENZHEN MOLLY TEA FOOD AND<br>BEVERAGE MANAGEMENT CO., LTD.,<br><br>Respondent. | Cancellation No. _____<br><br>Registration Nos. 7,996,117<br>and 8,205,316<br><br>**PETITION FOR CANCELLATION** |

Petitioner MHL NY LLC ("MHL"), by its undersigned counsel, petitions pursuant to Section 14 of the Trademark Act, 15 U.S.C. § 1064, to cancel U.S. Trademark Registration Nos. 7,996,117 and 8,205,316 (collectively, the "Registrations"), owned of record by Respondent Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("Shenzhen"). As grounds for cancellation, MHL alleges as follows:

## THE PARTIES

1. MHL is a New York limited liability company having an address at 152-15 Jewel Avenue, Apt.175B, Flushing, New York 11367.

2. Respondent Shenzhen is a company organized under the laws of China with an address at Room 301, Building 2, Industrial Factory, Block 28, Dalang Community, Xinan Subdistrict, Baoan District, Shenzhen 518100, China.

**THE CHALLENGED REGISTRATIONS**

3. Shenzhen is identified in the records of the United States Patent and Trademark Office ("USPTO") as the owner of Registration No. 7,996,117 for the stylized MOLLY TEA mark, issued October 21, 2025, from Application Serial No. 98/360,430, for the following services in International Class 43: "Eateries; Bar services; Bubble tea shops; Café services; Providing of food and drink; Rental of cooking equipment for industrial purposes; Rental of portable buildings; Rental of water dispensers; Restaurant services; Tea shops" (the "'117 Registration").

4. Application Serial No. 98/360,430 was filed on January 17, 2024, under Section 1(b) of the Trademark Act. On January 9, 2025, Shenzhen filed a Statement of Use claiming first use anywhere and first use in commerce on April 6, 2024.

5. The specimens submitted with the Statement of Use for the '117 Registration depict the New York business developed and operated through corporations initially owned and controlled by Mei Hui Lin, also known as Kristy Lin ("Lin"), including photographs of the Flushing Store operated by Molly Tea NYC and the Brooklyn store operated by Molly Tea BK Inc.

6. Shenzhen is also identified in the USPTO records as the owner of Registration No. 8,205,316 for the standard-character mark MOLLY TEA, issued April 7, 2026, from Application Serial No. 99/379,782, for services in International Classes 35 and 43 (the "'316 Registration").

7. Application Serial No. 99/379,782 was filed on September 8, 2025, under Section 1(a) of the Trademark Act. For the restaurant, tea-shop, and related services in Class 43, Shenzhen again claimed April 6, 2024 as the date of first use in United States commerce.

8. The specimens submitted in support of the '316 Registration include photographs and commercial materials from stores operated through corporations initially owned and

controlled by Lin, including the Flushing Store and the Chinatown store operated by Molly Tea Manhattan Chinatown Inc. The specimens also include a DoorDash page for the Flushing Store. Shenzhen held no ownership interest in any of those operating corporations when their respective stores commenced use of the challenged marks.

## PETITIONER'S ENTITLEMENT TO A STATUTORY CAUSE OF ACTION

9.  Shenzhen and its affiliates have asserted the Registrations against MHL in Shenzhen Molly Tea Food and Beverage Management Co., Ltd. v. MHL NY LLC, No. 1:26-cv-04051-JPC (S.D.N.Y.) (the "SDNY Action").

10. Based in part on Shenzhen's assertion of the Registrations, the court in the SDNY Action has restrained MHL and related defendants from using the challenged marks and has ordered the transfer of social-media and other customer-facing accounts developed by the New York operating team.  The SDNY has not addressed the trademark ownership, qualifying-use, or nonuse grounds alleged in this Petition as they were not identified at the time the injunction was entered, and to date, the court has not addressed them in a motion for reconsideration.

11. The continued existence of the Registrations directly exposes MHL to claims of infringement, restricts MHL's business activities, and impairs its interests in the New York business and goodwill that Shenzhen claims under the Registrations. MHL therefore has a real interest in this proceeding and a reasonable belief of damage proximately caused by the Registrations. The issues raised in this Petition concern registrability and ownership under the Trademark Act, which have not been litigated or decided in the SDNY Action and therefore are properly before the Board.

## FACTUAL BACKGROUND

12. Shenzhen and MHL began as commercial collaborators seeking to introduce MOLLY TEA products to the United States market. The parties did not establish a conventional United States franchisor-franchisee relationship.

13. MHL did not agree that the New York business would operate merely as a franchise whose United States goodwill belonged to Shenzhen. Shenzhen had not registered a franchise offering in New York when the challenged marks were first used at the Flushing Store.

14. On or about December 20, 2023, Shenzhen and MHL entered into a Brand Licensing and Technical Services Cooperation Contract. Molly Tea NYC was not a party to that agreement.

15. That agreement did not assign to Shenzhen any United States trademark rights or goodwill created by Molly Tea NYC, and it did not provide that the use or goodwill of Molly Tea NYC would inure to Shenzhen's benefit.

16. Shenzhen never entered into a trademark-license, franchise, accession, or other agreement with Molly Tea NYC, Molly Tea BK Inc., or Molly Tea Manhattan Chinatown Inc. providing that any such corporation's use of the challenged marks, or the goodwill generated through that use, would inure to Shenzhen's benefit.

17. Neither Molly Tea NYC, Molly Tea BK Inc., nor Molly Tea Manhattan Chinatown Inc. ever assigned to Shenzhen any United States trademark rights or goodwill arising from the operation of its New York store.

## THE NEW YORK OPERATING ENTITIES CREATED AND CONTROLLED THE U.S. BUSINESS

18. Molly Tea NYC was formed in New York on October 12, 2023, to develop and operate the Flushing Store. At the time the Flushing Store opened and the challenged marks were first used in United States commerce, Molly Tea NYC was wholly owned and controlled by Lin.

Neither Shenzhen nor any Shenzhen-affiliated entity held an ownership interest in Molly Tea NYC. Molly Tea NYC held the lease, maintained its own bank accounts, hired employees, obtained permits and licenses, entered vendor and service-provider agreements, and conducted the store's day-to-day operations.

19. From the outset, Molly Tea NYC and the New York operating team also created and controlled the marketing, social-media, and customer-development efforts through which the Flushing Store and the challenged marks were introduced to United States consumers. They created and administered the United States social-media accounts, developed and published the content, communicated with customers, and designed the promotional campaigns and customer experience associated with the Flushing Store. Shenzhen did not create or administer those accounts, preapprove their content, or direct those customer-facing activities.

20. Following the success of the Flushing Store, Lin and the New York operating team expanded the MOLLY TEA business through additional New York corporations, including Molly Tea BK Inc., which operated the Brooklyn store, and Molly Tea Manhattan Chinatown Inc., which operated the Chinatown store. Molly Tea NYC, Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. are referred to collectively as the "New York Operating Entities."

21. Each New York Operating Entity was initially wholly owned and controlled by Lin. When each entity commenced use of the challenged marks, neither Shenzhen nor any Shenzhen-affiliated entity held an ownership interest in that entity.

22. Each New York Operating Entity held or controlled the lease and operating assets for its respective store, employed or managed the store personnel, maintained the relevant business and vendor relationships, and conducted the day-to-day operation of its store.

23. In 2026, MHL signed and transmitted undated proposed shareholder agreements concerning Molly Tea NYC, Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. to Mollytea Shops LLC ("Mollytea Shops"), an alleged affiliate of Shenzhen. MHL did not receive copies countersigned by Mollytea Shops or Shenzhen.

24. The versions later submitted by Shenzhen in the SDNY Action contain purported effective dates and handwritten information that did not appear on the copies signed and transmitted by MHL. MHL disputes that the proposed shareholder agreements became binding contracts and disputes that the subsequently appearing dates were agreed upon.

25. Shenzhen's principal, Biao Zhang, has asserted under penalty of perjury that shareholder agreements concerning the New York Operating Entities were executed on or about January 15, 2026.

26. Even assuming, without conceding, that any proposed shareholder agreement became effective, neither a purported retroactive effective date nor any other provision assigned to Shenzhen the preexisting United States trademark rights or goodwill of any New York Operating Entity, caused prior use or goodwill to inure to Shenzhen, or retroactively established actual quality control by Shenzhen.

27. Zhang has further acknowledged that, from 2024 through 2026, MHL, acting through Lin and Xiaozhe Liu ("Liu"), handled the day-to-day operations of the New York stores. The New York operating team, rather than Shenzhen, implemented the product, quality-management, employee, marketing, social-media, and customer-experience practices actually used in those stores.

28. The Flushing Store opened on or about April 6, 2024 and made the first use of the challenged marks in United States commerce. At that time, no MOLLY TEA store was operating in the United States, and the MOLLY TEA name had not developed consumer recognition or goodwill in the United States. The Brooklyn and Chinatown stores opened

later and expanded the New York business model first developed through the Flushing Store.

29. Shenzhen supplied certain ingredients, initial recipes, operating procedures, and brand standards from China. Those materials were starting points for, rather than the finished embodiment of, the products and customer experience ultimately offered to consumers through the New York Operating Entities.

30. Lin and the New York operating team materially adapted the recipes, ingredients, preparation methods, menu presentation, pricing, and product names for the New York market, including to address local consumer preferences and the practical consequences of international shipping, storage, and local preparation.

31. Among other things, the New York operating team created the English product names Premium Jasmine Milk Tea, White Champaca Milk Tea, Snowy Jasmine, Snowy Golden Peony, Snowy Gardenia, and Snowy Dancong.

32. The New York operating team developed and implemented the quality-management procedures actually used by the New York Operating Entities. Those procedures addressed the receipt, condition, temperature, humidity, storage, testing, preparation, and service of internationally shipped ingredients and finished beverages.

33. The New York operating team required each menu beverage to be tasted three times daily, created an internal testing team and store-inspection protocol, imposed frequent equipment-filter changes, and established daily store-opening checks designed to maintain consistent products and customer experiences across the New York stores.

34. The New York Operating Entities used the challenged marks in the same manner and implemented the same locally developed product, quality-management, marketing, social-media, and customer-experience systems.

35. Shenzhen did not exercise sufficient control over the nature and quality of the goods and services provided by Molly Tea NYC or the other New York Operating Entities for their use of the challenged marks to constitute related-company use inuring to Shenzhen's benefit under Section 5 of the Trademark Act.

36. The New York Operating Entities, rather than Shenzhen, controlled the localized products, quality-management practices, store operations, marketing, social media, and customer experiences through which the challenged marks were used and their United States goodwill was created. Shenzhen conducted no inspections during the period in which Molly Tea NYC established the Flushing Store and created the initial United States goodwill. Any later remote observations or inspections were limited and did not amount to systematic control over the nature and quality of the services offered to United States consumers.

37. The New York Operating Entities, acting through Lin and the New York operating team, controlled the customer experience at their respective stores, including staffing, employee management and training, customer service, store presentation, response to customer feedback, and the day-to-day quality of the products and services provided to United States consumers.

**MOLLY TEA NYC CREATED THE INITIAL U.S. GOODWILL**

38. Molly Tea NYC and the New York team created and executed the marketing and customer-development strategy that introduced the challenged marks to United States consumers through the Flushing Store.

39. Following the immediate success of the Flushing Store, the same New York operating team applied and expanded that strategy through the Brooklyn and Chinatown stores.

40. The New York team created and administered the United States social-media accounts used to promote the New York business, developed and published content for those accounts,

communicated with customers, and managed customer communities. Shenzhen did not have access to those accounts, did not preapprove their content, and did not direct or review the customer communications conducted through them.

41. The New York team also created and managed the stores' delivery-platform accounts and customer-review channels; designed promotional events, influencer partnerships, sponsorships, and community outreach; and developed the in-store experience associated with the challenged marks.

42. The Flushing Store was immediately and exceptionally successful. Its success resulted from the localized products, marketing, social-media strategy, promotional campaigns, and customer experience created and implemented by Molly Tea NYC and the New York team.

43. The Brooklyn and Chinatown stores continued and expanded the same locally developed business, marketing, and customer-experience model.

44. Through those efforts, the New York MOLLY TEA business accumulated thousands of customer reviews, more than 18,000 social-media followers, customer and membership data, repeat-customer relationships, influencer and sponsorship relationships, delivery-platform reputations, and substantial recognition among New York consumers.

45. Molly Tea NYC thereby created the first United States business and initial goodwill associated with the challenged marks. The subsequent operation of the Brooklyn and Chinatown stores generated additional United States goodwill. Whether that later goodwill accrued to Molly Tea NYC, to the respective operating corporations, or otherwise among the New York Operating Entities, it did not belong or inure to Shenzhen, and no New York Operating Entity assigned it to Shenzhen.

## SHENZHEN'S PURPORTED LATER MINORITY INTERESTS DID NOT TRANSFER THE GOODWILL

46. When each New York Operating Entity commenced use of the challenged marks, that entity was wholly owned and controlled by Lin. Neither Shenzhen, Mollytea Shops, nor any other Shenzhen-affiliated entity held an ownership interest in the entity when its use began.

47. Shenzhen and its affiliates later claimed that Mollytea Shops obtained minority equity interests in the New York Operating Entities pursuant to proposed shareholder agreements bearing a purported effective date of January 1, 2025. MHL disputes that those proposed agreements became binding contracts.

48. Even assuming that Mollytea Shops obtained minority equity interests, neither those interests nor any purported retroactive effective date transferred to Mollytea Shops or Shenzhen the New York Operating Entities' corporate assets, including trademark rights and goodwill created through their prior use.

49. No New York Operating Entity executed an assignment to Shenzhen of the challenged marks or their associated United States goodwill in connection with any proposed shareholder agreement, related bylaws, purported minority investment, or purported effective date.

50. In or about January 2026, Shenzhen and its affiliates presented proposed franchise documents that, unlike the parties' existing agreements, expressly provided that goodwill associated with use of the proposed franchise system and intellectual property would inure to the franchisor.

51. MHL and the New York Operating Entities did not execute those proposed franchise documents. Before those documents were proposed, neither MHL nor any New York Operating Entity had executed an agreement containing comparable goodwill-inurement language for the New York business.

## COUNT I
## INVALID STATEMENT OF USE AND NONQUALIFYING USE
## REGISTRATION NO. 7,996,117

52. MHL repeats and realleges the preceding paragraphs as if fully set forth herein.

53. The application that matured into the '117 Registration was filed under Section 1(b). The '117 Registration issued only after Shenzhen filed its January 9, 2025 Statement of Use.

54. The Statement of Use relied on the April 6, 2024 use made at the Flushing Store and included specimens depicting the Flushing and Brooklyn stores operated by Molly Tea NYC and Molly Tea BK Inc.

55. At the time each depicted store commenced use, its operating corporation was wholly owned and controlled by Lin. Each corporation began using the challenged marks before Mollytea Shops claims to have obtained a minority interest in it and before MHL signed any proposed shareholder agreement concerning that corporation.

56. Shenzhen did not exercise sufficient control over the nature and quality of the goods and services provided by the depicted operating corporations for their use to constitute related-company use inuring to Shenzhen under Section 5. The New York Operating Entities controlled the localized products, quality-management practices, store operations, marketing, social media, and customer experiences through which the marks were used and their United States goodwill was created.

57. When Shenzhen filed its Statement of Use on January 9, 2025, none of the New York Operating Entities had entered an agreement with Shenzhen assigning its trademark rights or goodwill to Shenzhen or providing that its use would inure to Shenzhen's benefit. The proposed shareholder agreements that Shenzhen now identifies as governing instruments were not presented and signed by MHL until 2026, were never returned to MHL in countersigned form, and are disputed.

58. Even assuming, without conceding, that any proposed shareholder agreement later became effective, a subsequently asserted retroactive effective date did not assign to Shenzhen the trademark rights or goodwill previously created by Molly Tea NYC, cause prior use to inure to Shenzhen, or retroactively supply the actual control required before the statutory deadline for filing the Statement of Use.

59. Neither the Brand Licensing and Technical Services Cooperation Contract, the disputed proposed shareholder agreements and bylaws, nor any other agreement provided that the use or goodwill of Molly Tea NYC, Molly Tea BK Inc., or Molly Tea Manhattan Chinatown Inc. would inure to Shenzhen. None of those corporations assigned the challenged marks or associated goodwill to Shenzhen.

60. On information and belief, Shenzhen had no other qualifying use in United States commerce sufficient to support the Statement of Use before expiration of the statutory period for filing a valid Statement of Use. Shenzhen did not itself operate a MOLLY TEA store or provide the identified Class 43 services in United States commerce. Its claimed United States use depended upon the activities of the New York Operating Entities, whose use and goodwill had not been assigned to Shenzhen and over which Shenzhen did not exercise sufficient control for related-company use under Section 5.

61. The Statement of Use therefore did not establish qualifying use of the mark in United States commerce by Shenzhen or by a licensee or related company whose use inured to Shenzhen. The disputed proposed shareholder agreements and their purported retroactive effective dates did not cure the missing qualifying use. Registration No. 7,996,117 issued without the qualifying use required by Sections 1(d) and 5 of the Trademark Act and should be cancelled.

## COUNT II
## NONOWNERSHIP AND LACK OF QUALIFYING USE AT FILING
## REGISTRATION NO. 8,205,316

62. MHL repeats and realleges the preceding paragraphs as if fully set forth herein.

63. The application that matured into the '316 Registration was filed under Section 1(a) on September 8, 2025.

64. Shenzhen claimed April 6, 2024 as its date of first use in United States commerce for the Class 43 services and submitted specimens derived from the businesses operated by the New York Operating Entities, including the Flushing and Chinatown stores and the Flushing Store's DoorDash page.

65. The April 6, 2024 use was made and controlled by Molly Tea NYC. At that time, Shenzhen held no ownership interest in Molly Tea NYC, had no trademark-license or goodwill-inurement agreement with Molly Tea NYC, and did not exercise sufficient control over the nature and quality of the services provided there for Molly Tea NYC's use to inure to Shenzhen.

66. The later Brooklyn and Chinatown use was commenced by separate corporations then wholly owned and controlled by Lin. MHL does not ask the Board to determine the ultimate allocation of trademark rights or goodwill among Molly Tea NYC and the other New York Operating Entities. Under any such allocation, however, the use and goodwill did not belong or inure to Shenzhen, and no New York Operating Entity assigned them to Shenzhen.

67. When Shenzhen filed Application Serial No. 99/379,782 on September 8, 2025, no New York Operating Entity had entered a binding agreement with Shenzhen assigning its trademark rights or goodwill to Shenzhen or providing that its use would inure to Shenzhen. The proposed shareholder agreements that Shenzhen now identifies as governing instruments were not presented and signed by MHL until 2026, were never returned to MHL in countersigned form, and are disputed.

68. Even assuming, without conceding, that any proposed shareholder agreement later became effective, a subsequently asserted retroactive effective date did not alter the historical source of the marks' United States goodwill, assign any New York Operating Entity's trademark rights to Shenzhen, cause prior use to inure to Shenzhen, or retroactively establish sufficient related-company control before the September 2025 application was filed.

69. The use of the New York Operating Entities did not inure to Shenzhen under Section 5 of the Trademark Act because Shenzhen did not exercise sufficient control over the nature and quality of the goods and services offered under the challenged marks.

70. Any minority equity interests purportedly acquired by Mollytea Shops did not transfer the New York Operating Entities' corporate assets, previously accrued trademark rights, or goodwill to Mollytea Shops or Shenzhen.

71. On information and belief, when Application Serial No. 99/379,782 was filed, Shenzhen had no independent qualifying use of the standard-character MOLLY TEA mark in United States commerce for the Class 43 services identified in the application. The Class 43 specimens on which Shenzhen relied instead depicted use by the New York Operating Entities.

72. Because Shenzhen was not the owner of the United States rights upon which the Class 43 portion of the application depended and lacked qualifying use by itself or a related company for those services at the time of filing, Application Serial No. 99/379,782 was invalid under Section 1(a) as to Class 43, and Registration No. 8,205,316 should be cancelled at least as to that class.

## COUNT III
## NONUSE AS TO SPECIFIED CLASS 43 SERVICES
### REGISTRATION NO. 7,996,117

73. MHL repeats and realleges the preceding paragraphs as if fully set forth herein.

74. In its January 9, 2025 Statement of Use, Shenzhen represented that the stylized MOLLY TEA mark was in use in commerce for all services identified in the application, including rental of cooking equipment for industrial purposes, rental of portable buildings, and rental of water dispensers.

75. On information and belief, when Shenzhen filed the Statement of Use, neither Shenzhen nor any New York Operating Entity had used the challenged mark in United States commerce in connection with rental of cooking equipment for industrial purposes, rental of portable buildings, or rental of water dispensers.

76. On information and belief, neither Shenzhen nor any New York Operating Entity had rendered any of those three rental services under the challenged mark, entered a transaction for any such service, or received payment from a customer for any such service.

77. The specimens submitted with the Statement of Use depict tea-shop and restaurant operations and do not depict, describe, advertise, or otherwise show use of the challenged mark in connection with any of the three rental services.

78. The Statement of Use was therefore invalid as to rental of cooking equipment for industrial purposes, rental of portable buildings, and rental of water dispensers. If the '117 Registration is not cancelled in its entirety under Count I, those services should be deleted from the registration pursuant to Sections 1(d), 14, and 45 of the Trademark Act.

## COUNT IV
## NONUSE AND LACK OF QUALIFYING USE AS TO CLASS 35
### REGISTRATION NO. 8,205,316

79. MHL repeats and realleges the preceding paragraphs as if fully set forth herein.

80. The '316 Registration identifies the following services in International Class 35: (a) franchise services, namely, offering business management assistance in the establishment and operation of milk tea shops; (b) consumer loyalty services for commercial, promotional, and/or advertising purposes, namely, administration of a frequent flyer program that allows members to redeem miles for points or awards offered by other loyalty programs; (c) administration of a consumer loyalty program to promote rental of apartments by others; (d) drive-through retail store services featuring coffee and related goods; (e) providing consumer product information relating to food or drink products; (f) business management advisory services relating to franchising; and (g) restaurant franchising, namely, offering business management assistance in the establishment and/or operation of restaurants.

81. Because Application Serial No. 99/379,782 was filed under Section 1(a), Shenzhen was required to be using the MOLLY TEA mark in United States commerce for each claimed Class 35 service when the application was filed on September 8, 2025.

82. For the franchise-related services, Shenzhen claimed a first-use-in-commerce date of April 6, 2024 and submitted as a specimen a franchise webpage accessed on September 5, 2025, three days before the application was filed. April 6, 2024 was the date on which Molly Tea NYC opened the Flushing Store.

83. On information and belief, as of September 8, 2025, Shenzhen had not actually rendered in United States commerce under the MOLLY TEA mark any of the identified franchise services, including business-management assistance in the establishment or operation of a milk tea shop or restaurant or business-management advisory services relating to franchising.

84. On information and belief, the franchise webpage accessed three days before the application was filed advertised services that Shenzhen proposed to provide but had not yet actually

rendered in United States commerce. Advertising or offering services before the identified services are actually rendered does not constitute use of a service mark in commerce.

85. Shenzhen also submitted a photograph of an in-store "Top-Up Rewards" promotion. The Top-Up Rewards program was created, developed, launched, and administered entirely by the New York operating team not Shenzhen. The program did not involve frequent-flyer miles, airline miles, or redemption of miles. Shenzhen did not use the mark in commerce with those services and the "Top-Up Rewards" program did not constitute the frequent-flyer service identified in the '316 Registration.

86. The Top-Up Rewards program did not promote the rental of apartments by others. On information and belief, as of September 8, 2025, Shenzhen had never administered under the MOLLY TEA mark any consumer loyalty program promoting apartment rentals.

87. On information and belief, as of September 8, 2025, no MOLLY TEA location in the United States, including any of the New York stores, operated a drive-through retail store featuring coffee or related goods. None of the Class 35 specimens depicts, describes, or advertises a drive-through retail service.

88. On information and belief, as of September 8, 2025, Shenzhen did not provide under the MOLLY TEA mark a separate consumer-product-information service relating to food or drink products. Any menus, product descriptions, or customer information associated with the New York stores constituted ordinary promotion of those stores' own products and services and was created, presented, or controlled by the New York Operating Entities rather than Shenzhen.

89. Shenzhen therefore lacked qualifying use in United States commerce as of the filing date for the Class 35 services identified in the '316 Registration. The Class 35 portion of Application Serial No. 99/379,782 was invalid under Section 1(a) and should be cancelled. Alternatively,

each service for which Shenzhen lacked qualifying use as of September 8, 2025 should be deleted from the registration.

## NOTICE OF RELATED PROCEEDING

90. MHL, Shenzhen, Shenzhen's affiliates, and the challenged Registrations are involved in Shenzhen Molly Tea Food and Beverage Management Co., Ltd. v. MHL NY LLC, No. 1:26-cv-04051-JPC, pending in the United States District Court for the Southern District of New York.

## PRAYER FOR RELIEF

WHEREFORE, MHL respectfully requests that this Petition be sustained; that Registration No. 7,996,117 be cancelled or, alternatively, that rental of cooking equipment for industrial purposes, rental of portable buildings, and rental of water dispensers be deleted from that registration; that Registration No. 8,205,316 be cancelled as to International Classes 35 and 43 or, alternatively, that each service for which Shenzhen lacked qualifying use be deleted; and that the Board grant such other and further relief as it deems just and proper.

Dated: August 3, 2026

Respectfully submitted,

By: /s/Michael Cukor
Michael Cukor, Esq. NJ Bar No. 044041998
mcukor@mcgearycukor.com
McGeary Cukor LLC
3104 E Camelback Rd # 1010
Phoenix, AZ 85016-3402
973-339-7367

Attorneys for Petitioner