UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHENZHEN MOLLY TEA FOOD AND BEVERAGE MANAGEMENT CO., LTD., *et al.*,

Plaintiffs,

-v-

MHL NY LLC, *et al.*,

Defendants.

26 Civ. 4051 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

In an oral ruling on June 8, 2026, the Court granted the motion for a temporary restraining order and preliminary injunction brought by Plaintiffs Shenzhen Molly Tea Food and Beverage Management Co., Ltd. ("Shenzhen Molly Tea"), Mollytea Shops LLC ("Mollytea Shops"), and Molly Tea Holding Inc., Dkt. 136 ("6/8/26 Hr'g Tr.") at 20:7-41:7, and preliminarily enjoined Defendants MHL NY LLC ("MHL"), Molly Tea CU LLC, Genesis Brand Management LLC ("Genesis"), Mei Hui Lin, Xiaozhe Liu, and Binbin Xu[1] from, *inter alia*, using Plaintiffs' trademarks, trade dress, and trade secrets, *see* Dkt. 62 ("Orig. PI"). On June 23, 2026, the Court narrowed the scope of that preliminary injunction to eliminate mention of trade dress and trade secrets, but otherwise kept it in place (the "Amended Preliminary Injunction"). Dkt. 83 ("Am.

[1] Lin is the president of MHL. Dkt. 53-1 ("5/24/26 Lin Decl.") ¶ 1. The Verified Complaint alleges that Liu is the operational principal of MHL as evidenced by his signing multiple contracts on its behalf, the president of Genesis, and a member of Molly Tea CU LLC. Dkt. 11 ("Verified Complaint") ¶ 16. Xu is alleged to be an owner and/or principal of Molly Tea CU LLC. *Id.* ¶ 17.

PI"). Defendants now move for reconsideration of the Court's oral ruling and the Amended Preliminary Injunction. Dkt. 90. For the reasons that follow, the Court denies Defendants' motion.

## I. Background

The Court assumes familiarity with the facts and recites them only as relevant to resolving Defendants' motion for reconsideration. Plaintiffs commenced this action on May 15, 2026, alleging unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark infringement and unfair competition under Section 32(a) of the Lanham Act, *id.* § 1114, trademark infringement and unfair trade practices under New York's General Business Law and common law, breach of contract, and various other common-law claims, and seeking a declaratory judgment. *See* Verified Complaint ¶¶ 119-209.[2] Shenzhen Molly Tea is a Chinese company that operates thousands of stores worldwide selling premium floral scented milk teas. *Id.* ¶¶ 2, 9, 24. Molly Tea Holding Inc. is a Delaware corporation that holds Plaintiffs' direct ownership interests in Molly Tea stores in the United States that are not joint ventures. *Id.* ¶ 11. Mollytea Shops is a Delaware limited liability company through which Plaintiffs participate in joint-venture operations of Molly Tea stores in the United States. *Id.* ¶ 10. Mollytea Shops is one of two shareholders—along with MHL—of Nominal Defendants Molly Tea NYC Inc., Molly Tea BK Inc., and Molly Tea Manhattan Chinatown Inc. (the "Joint Venture Entities") and brings derivative claims on their behalf. *Id.* at 1-2; *see id.* ¶¶ 10, 12, 18-20.

Shenzhen Molly Tea is the record owner of two trademarks registered with the U.S. Patent and Trademark Office (the "U.S. Marks"). *Id.* ¶¶ 9, 30. U.S. Trademark Registration No. 7996117

[2] The Amended Preliminary Injunction under reconsideration was based on the initial Verified Complaint. Neither party argues that the Amended Verified Complaint filed on July 11, 2026, Dkt. 100, alters the basis for the Amended Preliminary Injunction. The Court cites to the initial Verified Complaint for purposes of this motion only.

is a service mark that "consists of the stylized letters 'MOLLY TEA' situated to the left of a vertical line and four Chinese characters situated to the right of the vertical line." *Id.*, Exh. 1 ("USPTO Registrations") at 3.[3] The registration lists April 6, 2024, as the date of its "First Use Anywhere" and "First Use in Commerce." *Id.* U.S. Trademark Registration No. 8205316 is a service mark consisting of the words "MOLLY TEA" in "standard characters without claim to any particular font style, size, or color." *Id.* at 8. This registration states that its "First Use Anywhere" was February 15, 2021, and its "First Use in Commerce" was April 6, 2024. *Id.* Shenzhen Molly Tea has registered at least one other mark in China (the "Chinese Mark"). Verified Complaint ¶ 32.

**A. The Brand License Agreement**

On approximately December 20, 2023, Shenzhen Molly Tea executed a Brand Licensing and Technical Services Cooperation Contract (the "Brand License Agreement" or the "Agreement") with MHL. *Id.* ¶ 2; *see id.*, Exh. 2 ("BLA") at 1. Liu signed the Brand License Agreement on MHL's behalf. Dkt. 59-3, Exh. 2 ("5/27/26 Hr'g Tr.") at 40:7-10. The Brand License Agreement authorized MHL to open up to five "Molly Tea" stores, BLA § 2.2, and MHL agreed, "on a paid basis, to utilize the 'Molly Tea' brand and its associated business resources, and to establish and operate . . . 'Molly Tea' store[s] under [Shenzhen Molly Tea's] operational system, subject to the professional technical guidance and management services provided by [Shenzhen Molly Tea]." *Id.* at 3. The Agreement defines Shenzhen Molly Tea as the "Licensor" and MHL "and/or, subject to [Shenzhen Molly Tea's] prior approval, [MHL's] authorized tea beverage stores, successors, authorized agents, employees, and the like," as the "Licensee." *Id.* art. 1.

[3] The page numbers for this exhibit correspond to the ECF-generated pagination.

As part of the Agreement, Shenzhen Molly Tea granted MHL use of an expansive list of "business resources" including the "[a]uthorized brand 'Molly Tea'"; proprietary technology such as formulas and management and sales techniques; operations manuals; "[a]uthorized marks"; and "authorized systems." *Id.* § 2.1. The term "[a]uthorized marks" refers to the corporate identity system, or CIS, which the Agreement defines as the "unified system" comprising

> the identifying symbols associated with the "Molly Tea" authorized business system and their carriers, including but not limited to trademarks, authorization certificates, store signage, packaging materials and packaging methods, utensils, trays and tray liners, equipment, distinctive exterior and interior designs (including decoration, ornamentation, color schemes, layouts, furniture, etc.), uniforms, advertisements and other promotional materials, documents, coupons, business cards, letterheads, and the like.

*Id.* art. 1. "'Authorized [s]ystem' refers to the unified 'Molly Tea' authorized business system, including but not limited to, products, trademarks, service marks, store signage," and software systems such as point-of-sale programs. *Id.*

The Agreement sets out detailed requirements for MHL. Article 6 governs establishing stores and the formation of related corporate entities to facilitate store operations, conditions store openings on Shenzhen Molly Tea's "verification and approval," and provides that opening a store "without [Shenzhen Molly Tea's] prior consent . . . shall constitute a material breach of this [c]ontract." *Id.* § 6.4.3(f); *see id.* art. 6. Article 7 lays out the terms for operating a store, providing that MHL shall "in the course of operation . . . strictly comply with and implement [Shenzhen Molly Tea's] standardized specifications, including service standards, operational procedures, sales processes, and work specifications formulated by [Shenzhen Molly Tea]," *id.* § 7.1, and "shall operate the [s]tore strictly in accordance with [Shenzhen Molly Tea's] unified business model," *id.* § 7.8(a). Section 7.11 specifies how MHL must issue regular financial reports to Shenzhen Molly Tea. *Id.* § 7.11. Article 8 governs supply chain management and Article 9

governs food-quality control. *Id.* arts. 8-9. Articles 14 and 15 further set out the parties' respective rights and obligations. *Id.* arts. 14-15.

The Brand License Agreement also permitted MHL to use Shenzhen Molly Tea's Chinese Mark, subject to terms that, at least on their face, seem contradictory. In its definition of the contract term "Trademark," Article 1 states that "[t]he signing of the [Brand License Agreement] shall not constitute the grant of any license to use the [Chinese Mark] to [MHL]," and the parties "shall separately enter into a *Trademark License Contract*." *Id.* art. 1. The Agreement further provides that Shenzhen Molly Tea "is currently applying for registration of relevant trademarks and intellectual property rights in the jurisdiction where [MHL] operates," and MHL "undertakes not to pre-emptively register such trademarks or engage in any other conduct that may prevent [Shenzhen Molly Tea] from successfully obtaining the registration of the relevant trademarks and intellectual property rights." *Id.* On the other hand, Section 2.8 uses the header "Trademark Licensing" and states that Shenzhen Molly Tea "authorizes [MHL] to use the 'Molly Tea' trademark for the operation of the [s]tore, and the license granted hereunder shall be a non-exclusive license." *Id.* § 2.8(a). Further, that provision states that MHL promises to "maintain the goodwill and brand image of [Shenzhen Molly Tea's] trademark in its use thereof," and authorizes Shenzhen Molly Tea to terminate the Agreement and "revoke the authorization granted herein" if MHL "engages in any conduct that damages such goodwill or brand image." *Id.* § 2.8(b).

Elsewhere in Article 2, the Agreement prohibits MHL from "apply[ing], anywhere in the world, for any trade name, business name, or other intellectual property rights containing or similar to" the "wording containing 'Molly Tea.'" *Id.* § 2.4. In addition, MHL "shall further not, directly or indirectly, use, imitate, or misappropriate [Shenzhen Molly Tea's] business resources for any other brand or scheme, nor shall it guide, transfer, or assist any third party in imitating or using

[Shenzhen Molly Tea's] business resources. Otherwise, [Shenzhen Molly Tea] shall have the right to terminate this Contract . . . ." *Id.*

**B. The Joint Venture Stores**

Pursuant to the Agreement, the parties created three "Molly Tea" stores in New York City—one each in Flushing, Brooklyn, and Chinatown (the "Joint Venture Stores"). Verified Complaint ¶ 3. Each Joint Venture Entity operated a Joint Venture Store. *Id.* ¶ 41. Molly Tea NYC Inc. was incorporated on October 12, 2023, and is the operating entity and tenant for the Joint Venture Store at 37-11C Prince Street, Flushing, New York 11354. *Id.* ¶¶ 18, 41. Molly Tea BK Inc. was incorporated on May 31, 2024, and is the operating entity and tenant for the Joint Venture Store at 5909 8th Avenue, Brooklyn, New York 11220. *Id.* ¶¶ 19, 41. Molly Tea Manhattan Chinatown Inc. was incorporated on July 29, 2024, and is the operating entity and tenant for the Joint Venture Store at 63 Mott Street, New York, New York 10013. *Id.* ¶¶ 20, 41. Each Joint Venture Entity has two shareholders—MHL and Mollytea Shops—and is governed by a shareholder agreement.

**C. Plaintiffs' Termination of the Brand License Agreement**

Starting in 2026, Defendants took actions that led Plaintiffs to terminate the Brand License Agreement. Of particular note was Defendants' opening of an unauthorized Molly Tea shop near Columbia University (the "Columbia Store"). Shenzhen Molly Tea and MHL had begun working on opening the Columbia Store in 2025, and by early 2026, MHL had taken various steps towards launching it, such as forming an entity to lease the storefront, Molly Tea CU LLC, and obtaining design approval and a lease guaranty from Molly Tea Holding. *Id.* ¶¶ 52-53. But the plans fell through and MHL did not obtain ultimate approval to launch the store; notwithstanding that, and without granting Mollytea Shops an equity interest in Molly Tea CU LLC or creating an operating

entity modeled on the Joint Venture Entities, MHL and the individual Defendants moved ahead anyway and launched the Columbia Store in April 2026. *Id.* ¶¶ 52-57, 71; *see* 5/27/26 Hr'g Tr. at 42:12-15 ("[Plaintiffs' counsel:] I'm asking you if you ever received permission from my client to open on April 17th. [Liu:] I don't think I need the permission. I just need to open it as soon as possible."), 45:22 (Liu testifying that Plaintiffs told him not to open the Columbia Store "one week before" he opened it); *see also* Verified Complaint ¶¶ 73-78 (explaining provisions of the Brand License Agreement governing verification and approval prior to opening new stores); BLA § 6.4.3(f) (setting forth conditions for a store opening). Plaintiffs maintain that operating the Columbia Store additionally violated the Agreement's provisions governing store design, supply chain management, inventory control, social-media and brand-marketing accounts, and promotional pricing. *See* Verified Complaint ¶¶ 78-88; *id.*, Exh. 10 ("Termination Notice") at 2-3.

Plaintiffs identified further alleged breaches by MHL beyond the Columbia Store. Those include MHL's refusal to maintain contractually designated channels of communication with Shenzhen Molly Tea; failure to provide accurate and timely financial statements and to permit audit and inspection; operating Genesis, which is a competing business, and through Genesis entering an agreement to open a Molly Tea concession in a Long Island City food court (the "LIC Concession")[4]; and harming the Molly Tea brand by mishandling customer complaints and mismanaging deliveries. *See* Termination Notice at 1-4.

On May 1, 2026, Shenzhen Molly Tea served a notice of termination, effective immediately, on MHL. *See* Verified Complaint ¶ 113; Termination Notice at 1. The notice directed MHL to cease using, *inter alia*, "Shenzhen Molly Tea's trademarks, trade names, patents,

[4] It is not clear from the record whether the LIC Concession ever opened.

trade secrets, or other intellectual property authorized under the [Brand License Agreement], including [the U.S. Marks], U.S. Trademark Application Serial No. 98360425 (Class 035, pending registration), and [the Chinese Mark].” Termination Notice at 5.

**D. The Preliminary Injunction**

On May 18, 2026, Plaintiffs filed an emergency motion for a temporary restraining order and a preliminary injunction to enjoin the Defendants from using the U.S. Marks “and any other ‘Molly Tea’ trade name, trademark, or trade dress” at the Joint Venture Stores, the Columbia Store, and the LIC Concession. Dkt. 7 (“PI Motion”) at 2. Defendants opposed that motion on May 24, 2026, and filed a cross-motion for a preliminary injunction. *See* Dkt. 53 (“PI Opposition”). On May 27, 2026, the Court held a hearing on the motions, at which it heard argument from the parties and received testimony from one of the Defendants, Liu. *See* Minute Entry, May 27, 2026; 5/27/26 Hr’g Tr. at 30:18-46:4. The Court permitted the parties to file supplemental briefs, which they did on June 1, 2026. *See* Dkts. 58-59. On June 8, 2026, the Court resumed the hearing, granted Plaintiffs’ motion to the extent the Court issued a preliminary injunction on their Lanham Act claims, and denied Defendants’ cross-motion as procedurally barred. *See* 6/8/26 Hr’g Tr. at 20:7-41:20.

The Court concluded that Plaintiffs had demonstrated a likelihood of prevailing at trial on their trademark-infringement claim. First, the Court held that the U.S. Marks were valid and protectable on the ground that Plaintiffs had proffered their certificates of registration with the U.S. Patent and Trademark Office—which is “prima facie evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce,” *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 224 (2d Cir. 2012)—and Defendants did not contest Plaintiffs’ ownership. 6/8/26

Hr'g Tr. at 31:7-15; *see id.* at 30:19-23 (citing *Christian Louboutin*, 696 F.3d at 224).[5] Second, the Court determined that there was a strong likelihood of confusion, explaining that MHL and its affiliates were holdover ex-licensees, and consumer confusion is likely in the holdover ex-licensee scenario because of the "increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder." *Id.* at 32:1-5 (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004)); *see id.* at 32:6-33:14.

Defendants countered on grounds of contract law, not trademark law, asserting that because Shenzhen Molly Tea terminated the Brand License Agreement to strong-arm MHL in a business negotiation, the termination was void, so MHL retained its rights under the Brand License Agreement. *Id.* at 33:15-21. The Court rejected that argument, stating that "[r]egardless of what drove the decision to terminate, the plaintiffs have sufficiently shown for purposes of a preliminary injunction that the defendants' material breaches of the Brand License Agreement conferred on the plaintiffs the authority to terminate that agreement and, with it, the defendants' license to use the plaintiffs' marks." *Id.* at 33:21-34:2. The Court then recited the evidence of the alleged breaches. *Id.* at 34:3-36:18. At no point did Defendants make any argument challenging Plaintiffs' ownership of the U.S. Marks or any other intellectual property.

The Court next determined that Defendants had failed to rebut the Lanham Act's "presumption of irreparable harm upon a finding of likelihood of success on the merits," and that Plaintiffs "would face irreparable harm to their brand, good will, and reputation, if the defendants continue to use the Molly Tea marks without a license." *Id.* at 36:20-37:2 (citing 15 U.S.C. § 1116(a)). Finally, the Court also held that the balance of hardships and the public interest favored

[5] The Court also stated that Plaintiffs had established its rights in the Molly Tea trade dress, *see* Orig. PI, but the Court later revisited that conclusion and ultimately revised the preliminary injunction to eliminate references to trade dress, *see* Am. PI.

a preliminary injunction. *Id.* at 37:5-39:9. The Court then announced the terms of the preliminary injunction. *Id.* at 42:15-44:24.

### E. Procedural History

Two days later, on June 10, 2026, Defendants filed a pre-motion letter seeking leave to file motions to dismiss the Verified Complaint, to compel arbitration, and for reconsideration of the Court's order granting Plaintiffs' motion for a preliminary injunction. Dkt. 65 ("Defts. Pre-Motion Letter").[6] The same day, Plaintiffs moved for civil contempt, alleging that Defendants were violating the injunction's terms. Dkt. 63. At a conference on June 11, 2026, the Court set a briefing schedule and directed the parties to submit affidavits from experts in Chinese law when they file their briefs. Dkt. 138 (transcript of June 11, 2026 hearing) at 34:5-14, 35:18-20.

Defendants filed their motion for reconsideration on June 29, 2026. Dkt. 90-8 ("Motion"). They supplemented their filing with declarations by Lin, Dkt. 90-1 ("6/28/26 Lin Decl."), and Yue Lang, an expert in Chinese law, Dkt. 90-7 ("Lang Decl."). On July 13, 2026, Plaintiffs filed their opposition brief, Dkt. 109 ("Opposition"), and submitted a declaration by Qiang Cui, a Chinese law expert, Dkt. 109-1 ("Cui Decl."). Defendants replied on July 16, 2026. Dkt. 115 ("Reply").

## II. Legal Standard

Motions for reconsideration in this District are governed by Local Civil Rule 6.3, which requires the movant to "set[] forth concisely the matters or controlling decisions which the moving party believes the Court has overlooked." S.D.N.Y. Loc. Civ. R. 6.3. Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614

---

[6] Defendants later withdrew their request to file motions to dismiss and compel arbitration. Dkt. 92.

(S.D.N.Y. 2000) (citation modified) (analyzing a motion brought under Federal Rule of Civil Procedure 59(e)); *see Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (explaining that Local Civil Rule 6.3 uses the same standard as motions under Rule 59).

"To succeed on a motion for reconsideration, the movant carries a heavy burden." *D'Amico Dry D.A.C. v. Primera Mar. (Hellas) Ltd.*, 437 F. Supp. 3d 312, 314 (S.D.N.Y. 2019). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation modified). To that end, "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). But the motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Courts do not lightly revisit preliminary injunction rulings. "The Second Circuit 'disapprove[s] [of] the practice of trying to relitigate on a fuller record preliminary injunction issues already decided.'" *City of New York v. Lopez*, No. 21 Civ. 7862 (JPO), 2025 WL 1638033, at *2 (S.D.N.Y. June 10, 2025) (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1207 (2d Cir. 1970)). "Upon a request to revisit a preliminary injunction order, a Court should typically consider 'only truly new evidence.'" *Broker Genius, Inc. v. Seat Scouts LLC*, No. 18 Civ. 8627 (SHS), 2018 WL 11222928, at *2 (S.D.N.Y. Aug. 3, 2018) (quoting *Semmes Motors*, 429 F.2d at 1207) (collecting cases).

## III. Discussion

Defendants argue that reconsideration is warranted on two grounds. Both fall short of the motion's strict standard because they rest on arguments and facts that were available to Defendants when the Court first considered Plaintiffs' motion. *See Sequa Corp.*, 156 F.3d at 144 (presenting new theories on reconsideration is not permitted). Indeed, as an indication of the motion's weakness, the novel theories that Defendants now put forward are different from those that they initially represented would be the basis of their motion. *See* Defts. Pre-Motion Letter at 1-3.[7]

First, Defendants newly contend that Plaintiffs failed to establish that they own the U.S. Marks. Motion at 8-14. Plaintiffs pleaded in their Verified Complaint that Shenzhen Molly Tea's registration of the U.S. Marks "constitutes *prima facie* evidence of [their] validity" and "Shenzhen Molly Tea's ownership of them." Verified Complaint ¶ 156; *see id.* ¶ 30; *see also* USPTO Registrations. Yet Defendants did not contest Plaintiffs' assertion of ownership at any point in the extensive briefing and oral argument leading up to when the Court issued the preliminary injunction, shutting the door to reconsideration. *See* Reply at 2 (conceding that Defendants had not challenged the validity of Plaintiffs' trademarks in the first instance). The Court expressly considered Shenzhen Molly Tea's registrations and Defendants' non-opposition when issuing the preliminary injunction. 6/8/26 Hr'g Tr. at 31:7-15; *see id.* at 30:19-23 ("[A] certificate of registration with the United States Patent and Trademark Office is prima facie evidence that the mark is registered and valid, [*i.e.*,] protectable, that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." (citation modified)). The facts

[7] Defendants' pre-motion letter stated that they would seek reconsideration because (1) the parties agreed to mandatory arbitration and (2) interpreting the Brand License Agreement under Chinese law would require the conclusion that Plaintiffs wrongfully terminated the Agreement. Defts. Pre-Motion Letter at 1-3.

Defendants now rely on have been available to them this whole time: the early uses of the U.S. Marks in the United States, the formation and ownership of Molly Tea NYC, Inc., that entity's role in developing the marks' goodwill, and the negotiation and execution of the Brand License Agreement—and it is probably for that reason that Defendants do not even try to argue that this new theory rests on an intervening legal development or newly discovered evidence. "It is settled law in this District that a motion for reconsideration is" not "an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (collecting cases). Moreover, Defendants presented those facts in an unauthorized filing in connection with their reconsideration motion, Lin's June 28, 2026 declaration, *see* S.D.N.Y. Loc. Civ. R. 6.3 ("No party is to file an affidavit [in connection with a motion for reconsideration] unless directed by the court."), so they have no basis to assert that they are unrefuted, *see* Reply at 7.

Second, Defendants contend—also for the first time—that interpreting the Brand License Agreement under Chinese law somehow affects Plaintiffs' rights to the U.S. Marks. *See* Motion at 14-15. The contours of their argument, however, are hard to define. *See id.*; *see also* Reply at 5-6. As an initial matter, the Brand License Agreement selects Chinese law, BLA art. 18, though the parties troublingly failed to bring that to the Court's attention in their briefing on Plaintiffs' request for injunctive relief, and instead used New York law in interpreting the Agreement. *See* PI Motion at 17; PI Opposition at 23-24. The Court construed the Agreement only for purposes of determining the likelihood of success of the trademark-infringement claim, which turned on whether MHL had lost its license to use the U.S. Marks. Defendants are not now arguing that a Chinese-law interpretation of the Brand License Agreement would alter the Court's determination that Plaintiffs' termination of that agreement likely was valid and thus validly barred Defendants

from using the U.S. Marks. Indeed, Defendants do not even contend that there is an "actual conflict" between Chinese and New York law governing contract interpretation, even if the difference is not outcome determinative. *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005); *see generally* Motion. While Plaintiffs' Chinese-law expert opined that Shenzhen Molly Tea's termination of the Brand License Agreement was valid also under Chinese law, Defendants' expert simply did not comment on that issue. *Contrast* Cui Decl. ¶¶ 29-37, *with* Lang Decl.

Instead of raising these arguments when initially opposing the preliminary injunction, Defendants focused their opposition on the validity of Plaintiffs' termination of the Brand License Agreement. *See, e.g.*, PI Opposition at 19 (arguing that "this dispute arises from the parties' contractual, ownership, and operational-control relationships, rather than a trademark infringement matter under [the] Lanham Act," and that the termination "should be void"), 23 (arguing that "Plaintiffs' trademark infringement allegations fail also because there is no substantial and real breach of contract in support of Plaintiffs' termination of [the Brand License Agreement] and authorization"). Defendants are not now entitled to a do-over. *See Associated Press*, 395 F. Supp. 2d at 20 ("[A] party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so."). So reconsideration based on these grounds is barred.

But even were the Court to reconsider the Brand License Agreement under Chinese law, Defendants have failed to articulate how doing so would alter the Court's determination that Plaintiffs are likely to prove at trial that Defendants are infringing their trademarks, *i.e.*, the U.S. Marks. Defendants toss out a bunch of arguments with no apparent relevance to this inquiry. For example, they state that Plaintiffs have not shown how Chinese law "interprets the Agreement's

distinction between the [Chinese Mark] it addressed and broader operating rights." Motion at 14. But Defendants do not provide any reason why the Chinese Mark is relevant to the inquiry into whether Shenzhen Molly Tea owns the *U.S. Marks*. Similarly, it is immaterial that Plaintiffs failed to show that the Brand License Agreement "vested Plaintiffs" with rights under U.S. trademark law. Motion at 15. Plaintiffs never contended that the Brand License Agreement is the source of their rights under the Lanham Act. Rather, they argue that the Agreement is the source of whatever rights *Defendants* have in Molly Tea's intellectual property. *See* Opposition at 9. That is why Defendants are mistaken in asserting that "Plaintiffs' ownership theory depends entirely upon the . . . Brand License Agreement," Reply at 4, and that "[t]he preliminary injunction necessarily assumes that the [Brand License Agreement] vested Plaintiffs with the US trademark rights and goodwill arising from operation of the New York business," Motion at 8. *See* 6/8/26 Hr'g Tr. at 30:19-23, 31:7-15 (stating the standard and noting the validity of Plaintiffs' registered U.S. Marks was undisputed).

Next, Defendants say that there is some significance to the Brand License Agreement's disclaimer that it "did not itself constitute a trademark license" and to the parties' failure to execute the "Trademark License Contract" that the Agreement contemplates. Motion at 14; *see id.* at 8-9 (citing BLA art. 1). This also is irrelevant. That provision appears to discuss the Chinese Mark, not the U.S. Marks. *See* BLA art. 1 ("'Trademark' refers to the 'Molly Tea' trademark registered with and approved by the Trademark Office of the State Administration for Industry and Commerce of the People's Republic of China."). Finally, Defendants fault Plaintiffs for not articulating "the legal effect of the [Brand License] Agreement's silence concerning ownership of goodwill generated through operation of the New York business." Motion at 14. But while Chinese law might govern goodwill associated with intellectual property rights that originate in

the People's Republic of China, it does not govern whatever goodwill is associated with the *U.S. Marks*, which is a matter of U.S. law. *See Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 70 (2d Cir. 2008) (explaining that trademark rights exist in each country solely according to that nation's laws, and under U.S. law a trademark and its goodwill are inalienable); *accord ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007); *see also* Lang Decl. ¶¶ 16, 18.

To salvage their motion, Defendants argue in their reply brief that reconsideration is necessary to prevent manifest injustice and, in the alternative, that the Court should construe their motion as one to modify the Amended Preliminary Injunction. *See* Reply at 2-3. The Court declines to consider these requests because Defendants raise them for the first time in their reply brief. *See, e.g.*, *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) ("We need not consider this argument because it is raised for the first time in [the party's] reply brief.").

Defendants do, however, make a colorable argument with respect to Plaintiffs' ownership of the U.S. Marks. *See* Motion at 12. Registration of a trademark does not confer ownership. *Excell Consumer Prods. Ltd. v. Smart Candle LLC*, No. 11 Civ. 7220 (MEA), 2013 WL 4828581, at *21 (S.D.N.Y. Sept. 10, 2013). "Ownership of a trademark stems from prior appropriation and use. Where claimants dispute the right to use a particular trademark, the general rule is that priority of appropriation and use determines which litigant will prevail in its use." *Id.* (citation modified).[8] Defendants put forward evidence—albeit through a declaration that is procedurally improper at this stage—that Molly Tea NYC Inc.—which at the relevant time was owned solely by Lin—was the first to use the U.S. Marks in commerce and did so before Shenzhen Molly Tea registered the

[8] Because trademark law is territorial, trademark rights attach only if the use is within the United States. *See ITC*, 482 F.3d at 155.

U.S. Marks. *See* Motion at 11 (citing 6/28/26 Lin Decl. ¶¶ 2, 39).[9] This first-use defense could be a basis for ultimately defeating Shenzhen Molly Tea's claim to own the U.S. Marks. On the other hand, there is evidence that Molly Tea NYC Inc. acted in concert with Plaintiffs, *see* 15 U.S.C. § 1055,[10] which might explain why Defendants elide their prior representations indicating that the parties collaborated on establishing the Joint Venture Stores and that Defendants' rights to use Plaintiffs' intellectual property came from Plaintiffs' express or implied authorization. *See, e.g.*, 6/28/26 Lin Decl. ¶ 7 ("Defendants independently formed Molly Tea NYC Inc. *for the purpose of developing and operating the Flushing store*." (emphasis added)); PI Opposition at 17 ("[The Brand License Agreement] . . . authoriz[ed MHL] to use Molly Tea's intellectual property."), 22 ("Since 2024, Plaintiffs expressly authorized and recognized" Defendants' social media accounts using the "Molly Tea" name.); 5/24/26 Lin Decl. ¶¶ 7 (stating that the Brand License Agreement "authoriz[ed MHL] to use Molly Tea's intellectual property, i.e., the Molly Tea brand"), 10 ("As a result of Defendants' enormous investment and efforts *and the Parties' cooperation*, three [Joint Venture Stores] have opened and been operating successfully since 2024." (emphasis added)), 11 ("Plaintiffs also authorized Defendants' affiliated company, Molly

[9] So that there is no doubt, this argument is barred upon reconsideration because Defendants did not previously challenge ownership and because it relies on evidence the Court cannot consider on this motion. *See supra*.

[10] Section 1055 provides:

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public. If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be.

15 U.S.C. § 1055.

Tea NYC Inc., to operate the official social media account on RedNote . . . and Instagram . . . in order to promote [the] Molly Tea brand in social media and [the] New York market."). If, as Defendants contend, Molly Tea NYC Inc. was in fact the first to use the U.S. Marks, Plaintiffs would ultimately need to show that this use nevertheless inured to them. *See* 15 U.S.C. §§ 1055, 1127; *cf. Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*, 47 F. Supp. 3d 138, 145-51 (D. Conn. 2014) (analyzing priority of use and the related-companies doctrine).

* * *

A motion for reconsideration is not a laboratory to test new theories. Because Defendants failed to identify any facts or law that the Court "overlooked" when granting Plaintiffs' motion for a preliminary injunction, the Court denies the reconsideration motion.

## IV. Conclusion

Defendants' motion for reconsideration is denied. The Clerk of Court is respectfully directed to close Docket Numbers 65 and 90.

SO ORDERED.

Dated: August 18, 2026
New York, New York

JOHN P. CRONAN
United States District Judge